**KING & SPALDING LLP**
Israel Dahan
1185 Avenue of the Americas, 36th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Fax: (212) 556-2222
idahan@kslaw.com

*Counsel for Defendants*

[*Additional counsel appear on signature page*]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EMPLOYEES' RETIREMENT SYSTEM OF THE PUERTO RICO ELECTRIC POWER AUTHORITY, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:19-cv-08237-SDW-SCM |
| v. | ) ) ) | Motion Day: January 21, 2020 |
| CONDUENT INC., ASHOK VEMURI, and BRIAN WEBB-WALSH, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................1

II.   ARGUMENT ......................................................................................1

    A.   The Safe Harbor Precludes Liability for All Challenged Statements...................................................................................1

        1.    The Challenged Statements are Forward-Looking............................1

        2.    Each of the Safe Harbor's Three Disjunctive Prongs Applies. ..........4

    B.   Plaintiff Fails to Plead Any Materially False or Misleading Statement. ..............................................................................6

        1.    The Immaterial Challenged Statements are Not Actionable. .............6

        2.    Plaintiff Fails to Plead Any Statement was False When Made..........7

            a.    Inventory Theory.........................................................7

            b.    Core Business Theory ...............................................10

    C.   The Amended Complaint is Devoid of Facts Supporting Scienter. .........12

    D.   The Amended Complaint Fails to Adequately Allege Loss Causation. ............................................................................15

III.  CONCLUSION .................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010) ........................................................................2, 3, 4

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)...........................................................................8

*Bauer v. Eagle Pharm., Inc.*,
    No. CV 16-3091(JLL), 2017 WL 2213147 (D.N.J. May 19, 2017).....................3

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
    No. CV 17-10467, 2019 WL 3451523 (D.N.J. July 31, 2019) ...........................9

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,
    114 F. Supp. 2d 316 (D.N.J. 2000)................................................................3, 4

*In re Cigna Corp. Sec. Litig.*,
    No. CIV.A. 02-8088, 2005 WL 3536212 (E.D. Pa. Dec. 23, 2005) ...............6, 7

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
    442 F. App'x 672 (3d Cir. 2011) ....................................................................13

*Dudley v. Haub*,
    No. 2:11-CV-05196 WJM, 2013 WL 1845519 (D.N.J. Apr. 30,
    2013) ...........................................................................................................11

*In re Enzymotec Sec. Litig.*,
    No. CV14-5556JLLMAH, 2015 WL 8784065 (D.N.J. Dec. 15,
    2015) ...........................................................................................................1

*EP Medsystems, Inc. v. EchoCath, Inc.*,
    235 F.3d 865 (3d Cir. 2000) ..........................................................................5

*Fain v. USA Techs., Inc.*,
    707 F. App'x 91 (3d Cir. 2017) ......................................................................12

*In re First Marblehead Corp. Sec. Litig.*,
    639 F. Supp. 2d 145 (D. Mass. 2009)..............................................................9

*Gissin v. Endres*,
    739 F. Supp. 2d 488 (S.D.N.Y. 2010) ................................................................2

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ...........................................................................5

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) ........................................................................4

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
    No. CIV.A. 13-7050, 2015 WL 4469143 (D.N.J. July 22, 2015) ...................3, 4

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ...........................................................................8

*Hoey v. Insmed Inc.*,
    No. CV 16-4323 (FLW), 2018 WL 902266 (D.N.J. Feb. 15, 2018)...................6

*In re Initial Pub. Offering Sec. Litig.*,
    399 F. Supp. 2d 261 (S.D.N.Y. 2005) .............................................................15

*Inst. Investors Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ..............................................................2, 3, 12, 13

*In re Lucent Techs., Inc. Sec. Litig.*,
    217 F. Supp. 2d 529 (D.N.J. 2002)...................................................................2

*Martin v. GNC Holdings, Inc.*,
    No. 2:15-CV-01522, 2017 WL 3974002 (W.D. Pa. Sept. 8, 2017) ....................6

*Mill Bridge V, Inc. v. Benton*,
    No. CIV.A. 08-2806, 2009 WL 4639641 (E.D. Pa. Dec. 3, 2009) ....................13

*MTB Inv. Partners, LP v. Siemens Hearing Instruments, Inc.*,
    No. 12-cv-00340 (SDW) (MCA), 2013 WL 12149253 (D.N.J. Feb.
    19, 2013) ..........................................................................................................14

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010)...................................................................3

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
    834 F.3d 481 (3d Cir. 2016) .........................................................................6, 10

iv

*In re PTC Therapeutics, Inc. Sec. Litig.*,
   No. CV16-1124-KM-MAH, 2017 WL 3705801 (D.N.J. Aug. 28,
   2017) ................................................................................................14

*Roofer's Pension Fund v. Papa*,
   No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ............................9

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................11

*Sec. Police & Fire Prof'ls of Am. Ret. Fund v. Pfizer, Inc.*,
   No. 10-cv-3105 (SDW) (MCA), 2013 WL 1750010 (D.N.J. Apr.
   22, 2013), *aff'd*, 754 F.3d 159 (3d Cir. 2014) ....................................................9

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ................................................................................5

*Strougo v. Lannett Co., Inc.*,
   No. CV 18-3635, 2019 WL 1172992 (E.D. Pa. Mar. 13, 2019) .........................3

*In re Supreme Indus., Inc. Sec. Litig.*,
   No. 3:17-CV-143-PPJ/MGG, 2019 WL 1436022 (N.D. Ind. Mar.
   29, 2019) ..............................................................................................................4

*In re Urban Outfitters, Inc. Sec. Litig.*,
   103 F. Supp. 3d 635 (E.D. Pa. 2015) .................................................................13

*Utesch v. Lannett Co.*,
   316 F. Supp. 3d 895 (E.D. Pa. 2018) ...........................................................13, 14

*In re Veritas Software Corp. Sec. Litig.*,
   No. 04-831-SLR, 2006 WL 1431209 (D. Del. May 23, 2006) ......................6, 10

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) .........................................................................10, 11

**Statutes**

15 U.S.C. § 78u-5........................................................................................3, 4, 5

## I.     INTRODUCTION

Plaintiff's Response (Dkt. 37) ("Resp.") is short on legal rebuttal and heavy on narrative.  Instead of focusing on Defendants' substantive dismissal arguments, Plaintiff regurgitates conclusory, hindsight allegations from the Amended Complaint.  Plaintiff fails to rebut Defendants' arguments that the challenged statements are: (a) protected under the safe harbor, (b) immaterial as a matter of law, and (c) not pled with particularity under the PSLRA.  Nor has Plaintiff addressed the insufficiencies with its scienter and loss causation allegations.  Accordingly, this Court should grant Defendants' Motion to Dismiss (Dkt. 33) ("MTD").

## II.     ARGUMENT

**A.     The Safe Harbor Precludes Liability for All Challenged Statements.**

**1.     The Challenged Statements are Forward-Looking.**

Defendants assert all fifteen of the statements challenged in the Complaint are forward-looking.  MTD at 12; Ex. 14.  In response, Plaintiff agrees the great majority of the challenged statements are forward-looking, and asserts only three statements are not because they contain "present and historical facts."  Resp. at 17.  However, in so arguing, Plaintiff omits key aspects of those three statements, plucks selected quotes out of context, and relies on inapposite cases where the challenged statements concerned past or present matters, even when considered in their full context.[1]  Here,

---

[1] *See, e.g., In re Enzymotec Sec. Litig.*, No. CV14-5556JLLMAH, 2015 WL 8784065, at **11–12 (D.N.J. Dec. 15, 2015) (statements regarding "well positioned

by contrast, the excerpted "present" components of the three statements "cannot meaningfully be distinguished from the future projection of which they are a part." *See Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009).

In determining if a statement is forward-looking, "context is everything." *See Gissin v. Endres*, 739 F. Supp. 2d 488, 506 (S.D.N.Y. 2010) (statements were not "guarantees about the present," but a "guess about what the preceding quarter's financial data would mean for the Company's future"). For example, Plaintiff's Response focuses on one subpart of a challenged statement: "In 2017, we addressed our sub-optimized IT-related workforce and vendor relationships[.]" Resp. at 17. But this phrasing cannot be meaningfully separated from the overall forward-looking statement of which it is a part: "Next, we expect to see benefits from the platform rationalization work completed last year." AC ¶ 148. Each challenged statement must be considered in its full context. *See Avaya*, 564 F.3d at 255; *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 281 & n.7 (3d Cir. 2010) ("we have . . . very strong pricing discipline" was forward-looking because "to the extent that 'disciplined' pricing said anything about the current price of premiums, it did so in the form of a projection");

---

for future growth" and "achieving rapid penetration" made in historical context, *e.g.* "InFat has been achieving rapid penetration in the Chinese and other Asian markets"); *In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529, 546–47, 557 (D.N.J. 2002) (statements "experiencing" growth and "is growing" "depicted both previous and then existing growth rate issues" and made during a call "elaborat[ing] on previously disclosed, false information concerning the Company's growth").

*Strougo v. Lannett Co., Inc.*, No. CV 18-3635, 2019 WL 1172992, at \*12 (E.D. Pa. Mar. 13, 2019) (safe harbor applied where "present-tense statement[]" was "inextricably tied to . . . forward-looking statements"); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 533 (D.N.J. 2010) (similar).[2]

Plaintiff also argues incorrectly that "material omissions are not forward-looking statements and do not qualify for safe harbor protection." Resp. at 18. The PSLRA expressly states, however, that the safe harbor applies in any private action "that is based on an . . . *omission of a material fact* necessary to make the statement not misleading." 15 U.S.C. § 78u-5(c)(1) (emphasis added). The key is to "focus[] on the statements themselves, not on the assumptions or existing facts underlying them." *See In re Hertz Global Holdings, Inc. Sec. Litig.*, No. CIV.A. 13-7050, 2015 WL 4469143, at \*11 n.9 (D.N.J. July 22, 2015). Otherwise, "essentially all financial projections would be unprotected by the . . . safe harbor, since all financial projections are, at some level, based on present or past facts."[3] *Id.*; *Castlerock Mgmt.*

---

[2] Plaintiff argues a "mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present" Resp. at 18 n.5 (quoting *Avaya*, 564 F.3d at 355), but *Avaya* explained that "when read in context, the present-tense statements (i.e., 'we are on track' and 'first quarter results position us') could not 'meaningfully be distinguished from the future projection of which they are a part' (i.e., Avaya's future goals)." *See Aetna*, 617 F.3d at 279–80; *see also Bauer v. Eagle Pharm., Inc.*, No. CV 16-3091(JLL), 2017 WL 2213147, at \*9 (D.N.J. May 19, 2017) ("[S]tatements anticipating FDA approval are not transformed into mixed present/future statements by virtue of references to the 'ongoing' and 'continuing' discussions with the FDA.")

[3] Regardless, Plaintiff fails to plead with particularity any material omitted fact, as

-3-

*Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 326-27 (D.N.J. 2000) (omissions protected by safe harbor); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) ("[T]here is no question under the statute that a material and misleading omission can fall within the forward-looking safe harbor."); *In re Supreme Indus., Inc. Sec. Litig.*, No. 3:17-CV-143-PPJ/MGG, 2019 WL 1436022, at *7 (N.D. Ind. Mar. 29, 2019) (citing "plain language of the statute").

### 2. Each of the Safe Harbor's Three Disjunctive Prongs Applies.

First, as noted above, the statements are forward-looking, and they are accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A)(i); MTD at 14–16. Plaintiff claims Defendants' cautionary language "was inadequate" to warn investors that "the Company was locked into a contract with a 'sub-optimal' vendor[.]" Resp. at 19. But Defendants provided extensive, specific cautionary language concerning third-party vendors, including that Conduent relied "to a significant extent" on vendors and that their failure to "deliver or perform as expected" could materially affect results. MTD at 15–16; Ex. 14. Plaintiff's allegation that one vendor was "sub-optimal" does not render that language ineffective. *See Aetna*, 617 F.3d at 283 (cautionary language concerning cost projections was meaningful even though it did not mention alleged practice of underpricing premiums). Moreover, Plaintiff's allegations are consistent with the

---

discussed in the MTD and below. *See* MTD at 18–29; *infra* Part B.

-4-

Company's disclosures because "after [the alleged] discovery of Atos's failure" Mr. Vemuri stated "the critical network infrastructure had been 'taken back'" from the vendor. Resp. at 14.[4]

Second, many of the challenged statements are immaterial. 15 U.S.C. § 78u-5(c)(1)(A)(ii); *infra* Part B.1; MTD at 17–21. Regardless of whether "financial guidance and growth were important factors," Resp. at 20, the challenged statements are vague, optimistic expressions by corporate managers that no reasonable investor would rely upon. *See infra* Part B.1; MTD at 19–21.

Third, Plaintiff fails to plead that any Defendant had actual knowledge that his statement was false when made. 15 U.S.C. § 78u-5(c)(1)(B); *infra* Part C; MTD at 18, 29–37. Moreover, Plaintiff's suggestion that a statement is "excluded from safe harbor protection" if Plaintiff pleads actual knowledge is wrong. Resp. at 20. "[W]here a future-looking statement is accompanied by sufficient cautions, then 'the state of mind of the individual making the statement is irrelevant, and the statement

---

[4] Plaintiff's caselaw (Resp. at 19) does not support its argument. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 182 n.12, 182–83 (3d Cir. 2000) (case concerned tender offer, which is exempted from safe harbor; for bespeaks caution doctrine, cautionary language did not relate to alleged misrepresentation because it concerned "*future* fiscal years" and misrepresentation pertained to *past* financial results); *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 873, 877 (3d Cir. 2000) (parties did not argue, and district court did not consider, safe harbor argument; representations that were "not accompanied by any cautionary language" not protected by generic cautionary language made in separate document issued months before pertinent statement); *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 243 (3d Cir. 2004) (cautionary language was meaningful and safe harbor applied).

-5-

is not actionable regardless of the plaintiff's showing of scienter.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 502 (3d Cir. 2016) (citation omitted).[5] Accordingly, the safe harbor bars all of Plaintiff's claims.

**B.      Plaintiff Fails to Plead Any Materially False or Misleading Statement.**

**1. The Immaterial Challenged Statements are Not Actionable.**

Several challenged statements are immaterial and thus not actionable.  MTD at 19–21.  Plaintiff responds that the statements "related to material facts."  Resp. at 8.  But the puffery standard is not whether the statement relates to a material aspect of the Company's business (which would encompass nearly all public statements), but whether the statement "is 'too vague to ascertain anything on which a reasonable investor might rely[.]'"  *Hoey v. Insmed Inc.*, No. CV 16-4323 (FLW), 2018 WL 902266, at *9 (D.N.J. Feb. 15, 2018) (citation omitted).  Courts routinely dismiss puffery that relates to a core aspect of a company's business because the statement itself is immaterial.  *E.g. Martin v. GNC Holdings, Inc.*, No. 2:15-CV-01522, 2017 WL 3974002, at *8 (W.D. Pa. Sept. 8, 2017) (in case against retailer of "health and wellness products" concerning unsafe ingredient, statement concerning "quality controls and product purity" was puffery).[6]

---

[5] Plaintiff cites *In re Veritas Software Corp. Sec. Litig.*, No. 04-831-SLR, 2006 WL 1431209, at *7 (D. Del. May 23, 2006), where the court held "[n]o manner of cautionary language can cure false statements knowingly made."  This holding is contrary to subsequent binding Third Circuit authority.  *See OFI*, 834 F.3d at 502.

[6] *Cigna* is inapposite because the allegations were "specific," made "with abundant

-6-

## 2.      Plaintiff Fails to Plead Any Statement was False When Made.

### a.      *Inventory Theory*

Plaintiff argues the Company told investors it "complete[d] its inventory of the Company's legacy IT infrastructure in 2017," Resp. at 11, but Defendants never made such a statement. Instead, Mr. Vemuri stated the Company "continue[s] to build [its] capabilities as a technology company," explaining it "needed to inventory and rationalize [its] technology portfolio" in its first year and would "modernize [its] offerings" in 2018. Ex. 11 at 6. At no point did Mr. Vemuri affirmatively represent the Company had a "complete" inventory, as Plaintiff claims. Resp. at 11.

Second, none of Plaintiff's so-called "specific facts" demonstrate Defendants' statements were false when made. Resp. at 11. For example, Plaintiff claims Conduent "never possessed a complete systems inventory," that Atos identified "14 percent of Conduent's systems" by "summer of 2018," and Conduent was "unable to address [its] relationship" with Atos due to contract terms. Resp. at 11. But Defendants' May 2018 statement that "IT consolidation" was "progressing well" is consistent with a reasonable belief the Company would eventually have an inventory sufficient to effectively migrate its data centers later in 2018. That Defendants'

---

citations of knowledge by [defendants] that they were making false statements to the public as compared to what they themselves knew from internal CIGNA memoranda which they either wrote or received," and "cast significant doubt" on the ability to meet a benchmark previously reported to the public. *See In re Cigna Corp. Sec. Litig.*, No. CIV.A. 02-8088, 2005 WL 3536212, at *11 (E.D. Pa. Dec. 23, 2005).

belief in May 2018 may have subsequently proved incorrect many months later in October 2018 does not render the May statement false when made.  The securities laws do not require clairvoyance, nor disclosure of all facts that "would be interesting, market-wise, but . . . only such [facts,] if any, that are needed so that what was revealed would not be 'so incomplete as to mislead.'"  *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (citation omitted).

Further, Defendants stated throughout the Class Period the Company was continuing to improve its infrastructure including with "an almost $200 million multiyear investment program," MTD at 5–6, 22–26, informed investors the Company took back its network infrastructure after what Plaintiff alleges was a "discovery of Atos's failure," Resp. at 14, and allegedly proceeded to "manually review the legacy IT infrastructure" in an effort to advance the data center migration to completion, AC ¶ 139.  Plaintiff's so-called "facts" may suggest the Company encountered bumps in the road as it worked toward its first planned data center migration later in the year, but those so-called "facts" are entirely consistent with the Company's public statements conveying continued progress on the migration project and a reasonable belief that it would be completed in 2018.[7]

---

[7] Moreover, the securities laws do not require corporate officers to make a negative disclosure at the first sign of possible trouble.  "Taking the time necessary to get things right is both proper and lawful.  Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007).

Third, Plaintiff claims incorrectly the Court should disregard Defendants' argument as a "truth on the market" defense. Resp. at 15–16. But Plaintiff mischaracterizes Defendants' argument, which is that Plaintiff fails to plead any false statement particularly when those statements are considered "in context."[8] *See Sec. Police & Fire Prof'ls of Am. Ret. Fund v. Pfizer, Inc.*, No. 10-cv-3105 (SDW) (MCA), 2013 WL 1750010, at **6–7 (D.N.J. Apr. 22, 2013) (statement "when taken in context was not misleading"), *aff'd*, 754 F.3d 159 (3d Cir. 2014). There is no need for Defendants to cite "corrective information" because, simply put, there was nothing to correct at the time the challenged statements were made. Plaintiff cites inapposite cases where publicly available information failed to neutralize statements that were demonstrably false when made based on particularized facts.[9]

---

[8] A "truth on the market" defense rebuts "a plaintiff's presumption of reliance on the market" and is "not raised" where defendants argue that plaintiffs "failed to plead facts to show that there were any misstatements or scienter in the first place." *In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155 n.75 (D. Mass. 2009).

[9] *See, e.g., Roofer's Pension Fund v. Papa*, No. CV 16-2805, 2018 WL 3601229, at *9 (D.N.J. July 27, 2018) (defendants argued "market was aware of [a] royalty stream's decreased value" due to warnings regarding depreciation and new competition, but nevertheless "maintain[ed] their claim that the royalty stream's fair value exceeded its carrying value"); *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, No. CV 17-10467, 2019 WL 3451523, at *9 (D.N.J. July 31, 2019) (similar). Moreover, these cases—which involve the same underlying allegations and are related to one another—involved distinguishable facts. *See, e.g., Roofer's*, 2018 WL 3601229, at **4–5, 13, 23 (case concerned "one of the largest restatements by any public company in decades," involved allegations "heavily" supported by witnesses, including the "Global Cyber Security Manager" and "supervisors and employees," and concerned issues so serious they "brought key integration processes to a halt").

-9-

### b.   *Core Business Theory*

Plaintiff argues Defendants had "no reasonable basis" to believe the Company could achieve its "financial guidance and expected growth," Resp. at 12–13, but that argument is based on the wrong legal standard.  "The [safe harbor] 'immunizes from liability any forward-looking statement'" if the statement meets any one of its three disjunctive prongs, without regard to the basis provided for the statement.[10]  *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 245 (3d Cir. 2017); *supra* at 4–6.

Regardless, Plaintiff fails to support its "reasonable basis" argument with particularized facts.  Plaintiff's allegations of "penalties" and withheld "anticipated revenue" fail to demonstrate Defendants issued guidance "without any reasonable basis" (Resp. at 12–13), particularly when considered in the context of a Company generating *billions* of dollars in annual revenue from clients throughout the United States and actively investing in infrastructure and technology.  Plaintiff attempts to rebut this argument by claiming the "tolling business" is material, Resp. at 10, but it ignores the isolated "incidents" it relies upon to support its claim, even when viewed

---

[10] Plaintiff cites *Veritas*, 2006 WL 1431209, at *7, where the plaintiff demonstrated defendants had actual knowledge their financial projections were based on improper revenue recognition and, therefore, "lack[ed] a reasonable basis."  As noted above, *supra* Part A, this holding is contrary to subsequent binding Third Circuit authority. *See OFI*, 834 F.3d at 491.  Regardless, *Veritas* is distinguishable because the plaintiff supported its argument with detailed allegations by five confidential witnesses demonstrating the defendants "improperly recognized revenue, thereby knowingly misrepresenting" the company's financial figures.  2006 WL 1431209, at **6–7.

in the aggregate, are not material from a financial perspective.  MTD at 27–28. Plaintiff uses its scattershot allegations in an attempt to bolster "conjecture based on subsequent events"—*i.e.*, speculation Defendants must have lacked a reasonable basis for financial guidance because Conduent ultimately revised its financial guidance.  This is insufficient to plead fraud.  *See Globus*, 869 F.3d at 244.

Second, Plaintiff claims Defendants "falsely stated that the issues [with IT and vendor performance] were isolated to a single client," Resp. at 6, 13, but Defendants never made any such statement.  This allegation is Plaintiff's strained interpretation of Mr. Vemuri's conversation with investors about "a matter that ha[d] been in the press" regarding one tolling client. Ex. 7 at 4.  Plaintiff's argument that a discussion about a set of issues with one particular client was an affirmative representation to investors that any related issues "were isolated to [that] single client" is wholly without merit, and serves to show how far Plaintiff must reach to allege fraud.[11]

---

[11] Plaintiff claims it pleads more than fraud-by-hindsight, but cites inapposite cases with particularized contemporaneous facts. *Dudley v. Haub*, No. 2:11-CV-05196 WJM, 2013 WL 1845519, at **11–12 (D.N.J. Apr. 30, 2013) (allegations included "enormous" losses "both before and during the Class Period"; acknowledgment of "significant decline in expected future cash flows"; relevant business's "goodwill vastly exceeded the market's valuation of the ***entire Company***" for prolonged period; and "economic recession" and "unanticipated price competition" leading to "draconian price cuts" resulting in loss of "an unprecedented amount of money"); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 379–80 (S.D.N.Y. 2007) (alleging contemporaneous facts, *e.g.*, confidential witness allegation that CEO "directed that certain 2005 year-end expenses be recorded as 2006 expenses in order to artificially inflate [] reported year-end financial results and earnings for 2005").

### C.   The Amended Complaint is Devoid of Facts Supporting Scienter.

Plaintiff asserts, without support, that Defendants *must have known* certain statements were false when made. Resp. at 21–23. For instance, Plaintiff claims Mr. Vemuri's statements "evidence his knowledge of the Strategic Transformation, the data center migration, and the serious problems with the tolling business," and thus he "had access to facts demonstrating the serious problems with [these subjects]." Resp. at 21–22. But Plaintiff's argument that Mr. Vemuri "had access to facts" points to *no facts* supporting his knowledge of the alleged fraud. Similarly, Plaintiff claims Mr. Webb-Walsh's "response to [a] pointed inquiry from a stock analyst concerning the tolling platform problems" supports scienter. Resp. at 22. Again, Plaintiff's "must have known" allegation provides *no facts* supporting any knowledge of the alleged fraud. *See Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) (failed "scienter arguments boil down to the assertion that Defendants must have known" of fraud).[12]

---

[12] Plaintiff's citation to *Avaya* is misplaced. In *Avaya*, the plaintiff cited numerous confidential witnesses, an investment report, "alleged admissions," and "an array of circumstantial evidence" demonstrating knowledge of "widespread and unusual discounting." 564 F.3d at 268–69. Despite such particularized, contemporaneous facts evidencing discounting, the defendant "flatly denied" the alleged discounting "in statements evincing certitude" when questioned "directly and repeatedly" about the subject. *Id.* at 270. Moreover, several confidential witness allegations "*directly conflict[ed]* with [CFO's] repeated assurances throughout the class period," *id.* at 264; here, CW1's allegations fail to undermine Defendants' statements, and CW1 was at least three levels of reporting removed from Defendants, *see* AC ¶¶ 136–39.

Second, Plaintiff argues the Amended Complaint "pleads a strong inference of scienter . . . under the 'core operations' doctrine[.]" Resp. at 23. But Plaintiff relies on inapposite cases that included particularized facts supporting scienter.[13] Unlike those cases, Plaintiff's reliance on corporate management's general awareness of core operations does not establish scienter because it fails to include any "additional allegation of specific information conveyed to management and related to the fraud." *Avaya*, 564 F.3d at 270; MTD at 30–31.

Third, Plaintiff's attempt to rely on a "collective scienter" theory is unconvincing. Resp. at 25–27. Even assuming this theory were a permissible means for pleading scienter in this Circuit (which is not at all clear), the facts must be "extraordinary" and involve "long-lasting" misconduct affecting a "substantial portion" of a company's business. *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676–77 (3d Cir. 2011); *compare id.* (this extraordinary standard might be satisfied where a car manufacturer announced it sold "one million SUVs in 2006" when, in fact, "the actual number was zero") *with Utesch v. Lannett*

---

[13] *See In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 644–45, 654 (E.D. Pa. 2015) (particularized facts including six witnesses demonstrated awareness of contemporaneous "declining sales trends and markdowns," and "unusual and suspicious stock sales" where CEO sold $50 million of stock and CFO sold 99% of his holdings just weeks before corrective disclosure); *Mill Bridge V, Inc. v. Benton*, No. CIV.A. 08-2806, 2009 WL 4639641, at **4–5, 30–31 (E.D. Pa. Dec. 3, 2009) (in case arising from stock transaction, alleging insider stock purchases at "strategically-suspicious point" followed by "substantial and telling" stock sales).

*Co.*, 316 F. Supp. 3d 895, 902 n.2 (E.D. Pa. 2018) (price-fixing scheme by top executives does not constitute such extraordinary misconduct). Plaintiff's allegation that certain executives (but not the Individual Defendants) attended meetings to "discuss six to twelve incidents that impacted multiple customers or had significant impact on Conduent's business" is a far cry from such "extraordinary" facts.[14]

Finally, Plaintiff asserts it is "inconceivable" Defendants "were not aware of the problems with the tolling platform[.]" Resp. at 24. This argument is telling, because it reveals the absence of particularized facts supporting scienter.[15] Moreover, even if Plaintiff did plead Defendants were aware of the alleged "fail[ure] to properly process tolls" in New York, "penalties" from state agencies, or "a month-long system outage in Florida DOT's tolling systems," Resp. at 24, those allegations

---

[14] Plaintiff's reliance on *MTB Investment Partners, LP v. Siemens Hearing Instruments, Inc.*, No. 12-cv-00340 (SDW) (MCA), 2013 WL 12149253 (D.N.J. Feb. 19, 2013) is, once again, misplaced. In *MTB*, the court not only observed that the alleged misconduct was "arguably 'so dramatic'" that it must have been approved by corporate officials who knew the misstatements were false, but also that the defendants' statements were "alleged to be complete contradictions of the truth" rather than merely misleading, and the defendant failed to "offer a non-fraudulent reason for its misstatements." *See id.* at **6–7. Plaintiff's allegations in this case are not "so dramatic," nor a complete contradiction of the truth, and are outweighed by a far more compelling non-fraudulent inference. *See* MTD at 29–37.

[15] *PTC* (Resp. at 25) is clearly inapposite. *See In re PTC Therapeutics, Inc. Sec. Litig.*, No. CV16-1124-KM-MAH, 2017 WL 3705801, at **16–17 (D.N.J. Aug. 28, 2017) (plaintiff "demonstrated personal knowledge" of allegedly concealed drug trial results including that trial "failed on its own terms," and drug comprised "100% of [company] revenues" at relevant time and "was everything to [the company]").

-14-

fail to demonstrate a strong inference that Defendants knowingly misled the market. These allegations are far more consistent with the non-fraudulent inference detailed in the Motion to Dismiss: that Defendants, who are not alleged to have sold stock or personally benefitted from the alleged fraud, were working through complex initiatives in their first years as a newly formed public company and issued reasoned financial projections with those factors in mind, but did not foresee the acceleration and coalescence of a number of issues in Q3 2018.[16]  MTD at 35–37.

### D.     The Amended Complaint Fails to Adequately Allege Loss Causation.

Plaintiff claims it adequately alleged loss causation because it alleges the decline in Conduent's stock price was "a direct result of Defendants' misrepresentations and omissions being revealed to investors and the market" in the November 7, 2018 disclosures announcing revised annual guidance.  Resp. at 29. But Plaintiff still has not identified any revelation of fraud that caused its loss.  *See In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005).

### III.   CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

---

[16] Plaintiff's reference to "post-Class Period" conduct fails for the same reasons noted in the Motion to Dismiss.  *Compare* Resp. at 27–28 *with* MTD at 31–32. Moreover, Plaintiff cites a Board member's resignation letter and claims it referred to Mr. Vemuri being "asleep at the switch," but that letter very clearly refers to a separate Board member, not Mr. Vemuri.  Resp. at 28 n.11.  Likewise, Plaintiff's reliance on post-hoc speculation by analysts (Resp. at 7) is just that—post-hoc speculation—and is not probative of fraud.

Respectfully submitted this 13th day of January, 2020.

*/s/ Israel Dahan*
**KING & SPALDING LLP**
Israel Dahan
1185 Avenue of the Americas, 36th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Fax: (212) 556-2222
idahan@kslaw.com

B. Warren Pope (*pro hac vice*)
Brian D. Barnes (*pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100
wpope@kslaw.com
bbarnes@kslaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel registered to receive ECF notifications in this case.

This 13th day of January, 2020.

/s/ Israel Dahan
**KING & SPALDING LLP**
Israel Dahan
1185 Avenue of the Americas, 36th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Fax: (212) 556-2222
idahan@kslaw.com