**LAW OFFICES OF JAN MEYER**
**& ASSOCIATES, P.C.**
Richard L. Elem, Esq.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Telephone: 201-862-9500
Email: relem@janmeyerlaw.com

*Liaison Counsel for Lead Plaintiff*

[Co-Lead Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Case No.: 2:19-cv-08237-SDW-SCM<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br><br>Motion Day: March 1, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

     A.     The Proposed Class Representatives' Work on Behalf of the Class. .................... 2

     B.     The Common Course of Conduct Alleged Against Defendants ........................... 3

     C.     The Proposed Class Definition ........................................................................... 4

     D.     The Proposed Class Representatives ................................................................... 5

          1.     The Oklahoma Firefighters Pension and Retirement System .................... 5

          2.     Plymouth County Retirement Association ................................................. 6

          3.     Electrical Workers Pension Fund, Local 103, I.B.E.W ............................. 7

     E.     Proposed Class Counsel ...................................................................................... 7

ARGUMENT .................................................................................................................... 8

I.     Lead Plaintiff's Claims Are Ideally Suited for Class Certification. .................................. 8

II.     The Class Satisfies the Requirements of Rule 23(a). ........................................................ 8

     A.     The Class Is Sufficiently Numerous That Joinder Is Impracticable. ...................... 8

     B.     There Are Common Questions of Law or Fact to the Class. ................................. 9

     C.     The Proposed Class Representatives' Claims Are Typical of the Class's. ........... 10

     D.     The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class. ...................................................................................... 11

III.     The Requirements of Rule 23(b)(3) Are Satisfied .......................................................... 12

     A.     Common Questions of Law and Fact Predominate Over Individual Questions ... 12

          1.     Common Questions of Law and Fact Predominate Because Lead Plaintiffs' Claims Are Based on the Same Common Course of Conduct. ................................................................................................ 13

          2.     All Class Members Are Entitled To a Presumption of Reliance. ............. 14

     B.     A Class Action Is Superior to Piecemeal Litigation. .......................................... 19

     C.     The Class Is Ascertainable .................................................................................. 20

IV.     Co-Lead Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g) ............. 21

CONCLUSION ................................................................................................................ 23

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................ 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)............................................................................................ 8, 15

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).............................................................................................. 14

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018), *aff'd sub nom.*
*Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019)..................... 9, 10, 21

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ................................................................................. 20

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)....................................................... 15, 16, 17, 18

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003)........................................................................... 18

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
No. 12-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) .................................... 9, 10, 18, 20

*Comcast Corp. v. Behrend*,
569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)..................................... 13

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) ................................................................................. 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)................................................................................... 14, 15, 16

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020) ................................................................................. 20

*Hull v. Glob. Digital Sols., Inc.*,
No. CV 16-5153 (FLW), 2018 WL 4380999 (D.N.J. Sept. 14, 2018) ............................ 16, 18

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*,
795 F.3d 380 (3d Cir. 2015) ................................................................................. 21

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008) (*"DVI Inc. I"*), *aff'd sub nom.*
*In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011)................................................... 16, 18

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011) *("DVI Inc. II"), abrogate*d *by*
*Amgen Inc. v. Conn. Ret. Plans & Tr. F*unds, 568 U.S. 455 (2013)...................... 8, 15, 16, 17

*In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig.*,
No. 08-2177 DMC, 2012 WL 4482041 (D.N.J. Sept. 25, 2012) (*"Merck I"*) ....................... 10

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
MDL No. 1658 (SRC), 2013 WL 396117 (D.N.J. Jan. 30, 2013) (*"Merck II"*).......... 1, 11, 13

*In re Novo Nordisk Sec. Litig.*,
No. 3:17-CV-00209-BRM-LHG, 2020 WL 502176 (D.N.J. Jan. 31, 2020).................. *passim*

*In re PHP Healthcare Corp.*,
128 F. App'x 839 (3d Cir. 2005)............................................................................................ 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................................................................. 11

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
No. 8-397 DMC/JAD, 2012 WL 4482032 (D.N.J. Sept. 25, 2012) ...................................... 12

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) ................ 13, 14

*In re Winstar Commc'ns Sec. Litig.*,
290 F.R.D. 437 (S.D.N.Y. 2013) .......................................................................................... 21

*Johnson v. Comodo Grp., Inc.*,
Civ. No. 16-4469 (SDW)(LDW), 2020 WL 525898 (D.N.J. Jan. 31, 2020) ........................ 20

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001).......................................................................................... 18

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ................................................................................................... 8

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ................................................................................................. 13

*Nepomuceno v. Midland Credit Mgmt., Inc.*,
No. CV 14-05719-SDW-SCM, 2016 WL 3392299 (D.N.J. June 13, 2016).............. 8, 11, 22

iii

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ...................................................................... 10, 11

*Plymouth Cty. Ret. Sys. v. Patterson Companies, Inc.*,
  No. 18-cv-871 (MJD/HB), 2020 WL 5757695 (D. Minn. Sept. 28, 2020) ........................... 7

*Pub. Employees' Ret. Sys. of Mississippi v. TreeHouse Foods, Inc.*,
  No. 16-CV-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) .......................................... 17

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) ...................................................................... 9

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019) ......................................................................*passim*

*Schuler v. Medicines Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) .................................. 13

*Smith v. Suprema Specialties, Inc.*,
  No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007) ................................ 13

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...................................................................... 9

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...................................................................... 13

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005) ...................................................................... 18

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x 51 (3d Cir. 2019) ...................................................................... 9, 14

*Williams v. Jani-King of Philadelphia Inc.*,
  837 F.3d 314 (3d Cir. 2016) ...................................................................... 8

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................... 22

**Statutes**

15 U.S.C § 78u–4 ...................................................................................... 1

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................*passim*

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 8

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 11

Fed. R. Civ. P. 23(g) ............................................................................................. 22

Lead Plaintiff, the Conduent Institutional Investors Group, respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(g) for an Order: (i) certifying the Class as defined herein; (ii) appointing the Oklahoma Firefighters Pension and Retirement System ("OFPRS"); Plymouth County Retirement Association ("PCRA"); and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") as the Class Representatives; and (iii) appointing Bernstein Liebhard LLP and Thornton Law Firm LLP as Class Counsel.[1]

## INTRODUCTION

This Class action will allow thousands of similarly situated investors to litigate their claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). A "Private Class Action[]" is the device contemplated by Congress to enforce the Exchange Act, as Federal Rule 23 allows defrauded investors to band together to litigate their claims. 15 U.S.C § 78u–4. Indeed, "the Supreme Court as well as every circuit that has confronted the issue of class certification in the area of securities litigation has recognized its utility and necessity." *In re Merck & Co., Sec., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2013 WL 396117, at *13 (D.N.J. Jan. 30, 2013) ("*Merck II*").[2]

The proposed Class satisfies all the requirements for class certification. There can be no serious dispute the Class is sufficiently numerous since Conduent's common stock was listed and traded on New York Stock Exchange ("NYSE"). Additionally, all Class members were injured when purchasing Conduent common stock at inflated prices caused by the alleged fraud, which

---

[1] Unless otherwise defined, all capitalized terms have the same definitions as in Amended Class Action Complaint, filed on September 13, 2019 (the "Complaint") (ECF No. 18). "Compl. ¶__" refers to paragraphs in the Complaint. "Rule" refers to the Federal Rules of Civil Procedure.

[2] Unless otherwise noted, internal citations, quotation marks, and ellipses are omitted from case citations in the interest of brevity.

creates common questions of fact or law, as well as renders Class members' claims typical amongst each other. Moreover, the common questions that will arise in this action will predominate over any individual questions of Class members. Accordingly, there is no question that a class action is superior to litigating thousands of individual actions.

The Class should be led by OFPRS, PCRA, and Local 103 (the "Proposed Class Representatives"), who are well suited to represent the Class. Each Proposed Class Representative is a member of the Lead Plaintiff group, an institutional investor, is committed to this action, and has experience leading securities class actions. Finally, Co-Lead Counsel has the necessary expertise to continue to serve the Class and therefore should be appointed Class Counsel.

Accordingly, the Court should grant this motion thereby certifying the Class as defined herein, appointing the Class Representatives, and appointing Class Counsel.

## BACKGROUND

### A.    The Proposed Class Representatives' Work on Behalf of the Class

On May 7, 2019, OFPRS, PCRA, Local 103, and Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA") formed the Conduent Institutional Investors Group and moved to be appointed as Lead Plaintiff pursuant to the PSLRA. ECF No. 6. They were the only Class members who sought to litigate this action for the Class. *See* ECF No. 7. On July 15, 2019, the Court appointed them as Lead Plaintiff and approved Bernstein Liebhard and Thornton Law Firm as Co-Lead Counsel. ECF No. 10.

Lead Plaintiff further investigated the action and filed the Amended Complaint ("Complaint"), which alleged violations of Section 10(b) and 20(a) of the Exchange Act against Defendants. ECF No. 18. On November 12, 2019, Defendants moved to dismiss the Complaint. ECF No. 33. On December 23, 2019, Lead Plaintiff opposed the motion. ECF No. 37. On June

2

5, 2020, the Court denied Defendants' motion to dismiss, and found that the Complaint stated violations of Sections 10(b) and 20(a) of the Exchange Act. ECF Nos. 39-40.

Lead Plaintiff is now in the discovery phase of the case. The parties complied with the procedures and disclosures required by Rule 26, negotiated a case management plan, and conferenced with Magistrate Judges Steven C. Mannion and Leda D. Wettre.  Pursuant to the case management plan, Lead Plaintiff served document requests and interrogatories on Defendants, and responded to Defendants' requests for production and interrogatories.  Additionally, Lead Plaintiff produced responsive documents to Defendants and answered interrogatories prior to the date of this motion.

**B.      The Common Course of Conduct Alleged Against Defendants**

The facts underlying this case are set forth in detail in the Complaint and the Court's Opinion denying Defendants' motion to dismiss. *See* ECF No. 39 at 2-6. In brief, Lead Plaintiff alleges that Defendants made materially false and misleading public statements and omissions to investors about the status of Conduent's so-called "Strategic Transformation" pertaining to its information technology ("IT") infrastructure. *See id.* When the truth was disclosed to investors and the market, that the "Strategic Transformation" was failing and had caused significant disruptions to the Company's core tolling business clients, Conduent's stock price dropped over 29%, harming Lead Plaintiff and the proposed Class of investors. *See id.*; ECF No. 48 at 1-2.

Specifically, the Court found that Lead Plaintiff had properly alleged that Defendants made material misrepresentations, including the public statements by Defendant Vemuri (Conduent's CEO) that "[i]n 2017, we addressed our sub-optimized IT-related workforce and vendor relationships. Next we expect to see benefits from the platform rationalization work completed last year"; and that "[r]eal estate and IT consolidation remain large contributors to our transformation

work and are progressing well." *See* ECF No. 39 at 8. The Court also found that Lead Plaintiff had properly alleged Defendants omitted material "(1) known issues with the legacy IT infrastructure and vendor performance that were impacting Conduent's financial guidance and growth, (2) service issues experienced by multiple tolling clients that were caused by Conduent's deficient IT infrastructure and sub-optimal vendor performance, and (3) IT issues that caused the company to accrue material penalties and revenue losses for failing to perform under tolling clients' contracts." ECF No. 39 at 8-9. Additionally, the Court held that Lead Plaintiff alleged a strong inference of Defendants' scienter based on "specific allegations that Mr. Vemuri supervised the Strategic Transformation, met with customers who told him about data management problems, and affirmatively spoke about the problems with Conduent's tolling platform," and also because of all the circumstances surrounding Defendants' misstatements and omissions. *Id.* at 15-16. Finally, the Court also held that Lead Plaintiff had plausibly alleged loss causation; *i.e.*, that Defendants' corrective disclosures caused the price of Conduent common stock to fall. *Id.* at 18.

### C.    The Proposed Class Definition

Lead Plaintiff seeks to certify the following plaintiff class:

> All persons who purchased Conduent Inc. common stock on the open market on a United States stock exchange between February 21, 2018 and November 6, 2018, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are (1) Conduent, Inc. and its officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest or are a parent; and (2) Defendants, their immediate families, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which any of them has a controlling interest.

*See* Compl. ¶¶ 210-11.  The Class Period begins on the date of the first actionable misstatement and omission and ends on the last day that the Conduent common stock price was inflated as a result of the fraud on the market.

4

D.    **The Proposed Class Representatives**

OFPRS, PCRA, and Local 103—the Proposed Class Representatives—are sophisticated institutional investors with significant purchases of Conduent common stock during the Class Period.[3]  Each suffered significant losses from Defendants' alleged fraud. *See* ECF No. 6-9. Furthermore, each of the Proposed Class Representatives has an established record as an advocate for absent class members in securities litigations, and each has taken an active role in the prosecution of this action to date. *See* ECF Nos. 6-5, 72-1, 72-2.

1.    **The Oklahoma Firefighters Pension and Retirement System**

OFPRS purchased 92,156 shares of Conduent common stock during the Class Period and incurred losses of $586,195.17 as a result of the alleged fraud.  *See* ECF Nos. 6-5, 6-9.

OFPRS is committed to vigorously prosecuting this proposed class action and taking an active role in maintaining this lawsuit. OFPRS supervised and monitored the progress of this litigation through communications with Co-Lead Counsel.  *See* Declaration of Peter J. Harrington in Support of Lead Plaintiff's Motion ("Harrington Decl."), Exhibit A-1 (OFPRS's Responses and Objections to Defendants' Interrogatory No. 1).  OFPRS also conferred with counsel concerning significant developments in this litigation, including the filing of the Complaint, Defendants' motion to dismiss briefing, the Court's ruling denying the motion to dismiss, discovery requests, discovery responses, and this motion for class certification. *Id*.

---

[3] To avoid redundant effort, Lead Plaintiff is not advancing ERS-PREPA as a fourth class representative.  ERS-PREPA, however, filed the initial complaint in this action, and its counsel, Wolf Popper LLP, was involved in drafting the amended complaint and briefing the motion to dismiss. In the interest of efficiency and continuity, ERS-PREPA will continue as a non-class representative Lead Plaintiff, and Wolf Popper will continue to work on this litigation under the supervision of Lead Counsel.

OFPRS is willing to serve as a Class representative and understands the responsibilities of the position, including the duty to prosecute the case in the best interests of all Class members. Harrington Decl. Ex. A-1. In fact, many courts agree that OFPRS is well qualified to represent investors in class actions.  *See* Harrington Decl. Ex. A-2 (OFPRS's Responses and Objections to Defendants' Interrogatory No. 13).  OFPRS has been certified as a class representative pursuant to Rule 23 in securities fraud class actions numerous times—including by Judge Martinotti in *Lehigh County Employees' Retirement System* v. *Novo Nordisk A/S et al.*, 3:17-cv-00209 (D.N.J. 2017). *See id*.

### 2.    Plymouth County Retirement Association

PCRA purchased 40,893 shares of Conduent common stock during the Class Period and incurred losses of approximately $285,246.27 as a result of the alleged fraud. *See* ECF No. 6-9.

PCRA is committed to vigorously prosecuting this proposed class action and taking an active role in maintaining this lawsuit. PCRA supervised and monitored the progress of this litigation through communications with Co-Lead Counsel.  *See* Harrington Decl., Exhibit B-1 (PCRA's Responses and Objections to Defendants' Interrogatory No. 1).  PCRA also conferred with counsel concerning significant developments in this litigation, including the filing of the Complaint, Defendants' motion to dismiss briefing, the Court's ruling denying the motion to dismiss, discovery requests, discovery responses, and this motion for class certification.  *Id*.

PCRA is willing to serve as a Class representative and understands the responsibilities of the position, including the duty to prosecute the case in the best interests of all Class members. Harrington Decl., Ex. B-1.  PCRA is well qualified to represent investors in class actions. *See* Harrington Decl. Ex. B-2 (PCRA's Responses and Objections to Defendants' Interrogatory No. 13).  It has recently been certified as a class representative pursuant to Federal Rule 23 in *Plymouth*

*County Ret. Sys.* v. *Patterson Cos.*, No. 18-cv-871 (MJD/HB), 2020 WL 5757695 (D. Minn. Sept. 28, 2020).

### 3.    Electrical Workers Pension Fund, Local 103, I.B.E.W

Local 103 purchased 39,452 shares of Conduent common stock during the Class Period and incurred losses of approximately $250,927.46 as a result of the alleged fraud. *See* ECF No. 6-9.

Local 103 is committed to vigorously prosecuting this proposed class action and taking an active role in maintaining this lawsuit. Local 103 supervised and monitored the progress of this litigation through communications with Co-Lead Counsel.  *See* Harrington Decl., Exhibit C-1 (Local 103's Responses and Objections to Defendants' Interrogatory No. 1).  Local 103 also conferred with counsel concerning significant developments in this litigation, including the filing of the Complaint, Defendants' motion to dismiss briefing, the Court's ruling denying the motion to dismiss, discovery requests, discovery responses, and this motion for class certification.  *Id.*

Local 103 is willing to serve as a Class representative and understands the responsibilities of the position, including the duty to prosecute the case in the best interests of all Class members. Harrington Decl., Ex. C-1.  Local 103 is well qualified to represent investors in class actions. *See* Harrington Decl., Ex. C-2 (Local 103's Responses and Objections to Defendants' Interrogatory No. 13).

### E.    Proposed Class Counsel

Bernstein Liebhard and the Thornton Law Firm seek appointment as Class Counsel.  On July 15, 2019, the Court approved Bernstein Liebhard's and Thornton Law Firm's application to serve as Co-Lead Counsel after reviewing their qualifications. ECF Nos. 6, 10.  The firms have been ably serving the aligned interests of the Lead Plaintiff and the Class throughout this action.

Indeed, Proposed Class Counsel are also known to the Court through Lead Plaintiff's legal filings and briefing in this action, all of which, were prepared by the Co-Lead Counsel, Bernstein Liebhard and the Thornton Law Firm. ECF Nos. 6, 18, 37.

## ARGUMENT

### I. Lead Plaintiff's Claims Are Ideally Suited for Class Certification

Pursuant to Rule 23, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Nepomuceno* v. *Midland Credit Mgmt.*, No. 14-05719-SDW-SCM, 2016 WL 3392299, at *2 (D.N.J. June 13, 2016) (Wigenton, J.) (*quoting Marcus* v. *BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012)). The threshold requirements of Rule 23(a) are:  numerosity, commonality, typicality, and adequacy. In securities class actions such as this one, certification pursuant to Rule 23(b)(3) is appropriate, which requires establishing that questions of law or fact common to class members predominate over individual questions, and that a class action is superior to other methods of adjudication. *See In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011) ("*DVI Inc. II*"), *abrogated by Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

Rule 23's requirements need only be proved by a "preponderance of the evidence." *Williams* v. *Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016). Here, there is no doubt the Class meets the requirements of Rules 23(a) and 23(b)(3).

### II. The Class Satisfies the Requirements of Rule 23(a)

#### A. The Class Is Sufficiently Numerous That Joinder Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that "joinder of all members is impracticable." "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart* v. *Abraham*, 275 F.3d 220, 226-27 (3d

8

Cir. 2001). Numerosity is easily satisfied "in securities fraud cases involving publicly-owned and nationally-listed corporations that had a large amount of outstanding and traded shares during the relevant class period." *Roofer's Pension Fund* v. *Papa*, 333 F.R.D. 66, 74 (D.N.J. 2019); *Bing Li* v. *Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) ("courts have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security"), *aff'd sub nom. Vizirgianakis* v. *Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019).

Here, Conduent is a publicly owned corporation that had over 210 million shares of common stock outstanding and listed on the NYSE throughout the Class Period. *See* Harrington Decl., Exhibit D (Expert Report of Chad Coffman, CFA, dated October 15, 2020 ("Coffman Rpt.")), ¶ 67. Conduent shares were purchased by Class members on the NYSE throughout the Class Period, at an average weekly trading volume of 8.86 million shares. *Id.* at ¶ 26. *See City of Sterling Heights Gen. Employees' Ret. Sys.* v. *Prudential*, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015) (*"Prudential"*) (numerosity satisfied where company's "stock trade[d] on the NYSE with significant daily volume"). Accordingly, the Class is sufficiently numerous as there are likely thousands of Class members.

### B. There Are Common Questions of Law or Fact to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Pursuant to this rule, the class representative must "share at least one question of fact or law with the grievances of the prospective class." *Rodriguez* v. *Nat'l City Bank*, 726 F.3d 372, 377 n. 6, 382 (3d Cir. 2013) (citation omitted). Since only one question or law *or* fact is necessary, "there is a low threshold for satisfying this requirement." *In re Novo Nordisk Sec. Litig.*, No. 3:17-CV-00209-BRM-LHG, 2020 WL 502176, at *5 (D.N.J. Jan. 31, 2020) (citing *Newton* v. *Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001)). "Where all plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-2177 (DMC)(JAD), 2012 WL 4482041, at *4 (D.N.J. Sep. 25, 2012) ("*Merck I*") (quotation and internal formatting omitted); *see also Bing Li.*, 324 F.R.D. at 339 ("courts in this circuit ... have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock").

Here, the common questions of law or fact include: (1) whether Defendants made materially false or misleading statements or omissions; (2) whether the Defendants acted with scienter; (3) whether the individual Defendants are control persons, as defined in the Exchange Act, of another violator of the Exchange Act; and (4) the extent to which the Class sustained damages for violations of the Exchange Act. *See* Compl. ¶ 213; *see also* ECF No. 39 at 8-9, 14-19. Commonality is thus easily satisfied here. *See Bing Li*, 324 F.R.D. at 339; *Merck I*, 2012 WL 4482041, at *4 (commonality met in "securities fraud class action [that] involves questions such as whether Defendants' alleged statements and omissions were misleading, whether these statements and omissions were material, and whether Defendants acted with scienter").

### C. The Proposed Class Representatives' Claims Are Typical of the Class's

Rule 23(a)(3) requires that the class representative's claims be "typical" of those of the class. Like commonality, typicality is "undemanding," especially in a securities fraud context. *Prudential*, 2015 WL 5097883, at *9; *see also Newton*, 259 F.3d at 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." 259 F.3d at 183-84.

Typicality is met here because the Proposed Class Representatives' claims arise from the same conduct by Defendants that give rise to the claims of all proposed Class members. The Proposed Class Representatives, like the other Class members, purchased Conduent common stock on the open market during the Class Period, at inflated prices as a result of Defendants' materially false and misleading statements and omissions, and suffered damages when the truth was revealed. *See* Compl. ¶ 214; *Merck II*, 2013 WL 396117, at *5 (typicality met where "Plaintiffs' claims arise from the very same alleged Exchange Act violations as those that give rise to the claims of the absent class members").

### D.      The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Novo Nordisk*, 2020 WL 502176, at *6 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998)). Only a "fundamental" conflict will defeat adequacy; that is, where "'some class members claim to have been harmed by the same conduct that benefitted other members of the class.'" *Merck II*, 2013 WL 396117, at *9 (quoting *Dewey* v. *Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012)).

Here, the Proposed Class Representatives assert the same claims and request the same relief as the proposed Class. Compl. ¶¶ 215; 218-33. There is therefore no conflict at all between them and the absent members of the Class, let alone a fundamental conflict. *See Nepomuceno*, 2016 WL 3392299, at *5 (finding adequacy where the plaintiff did "not have interests antagonistic to or in conflict with the class").

Additionally, the Proposed Class Representatives have *already* demonstrated their adequacy by, *inter alia*, researching and filing the Complaint and successfully opposing

11

Defendants' motion to dismiss, and actively participating in discovery and this motion for class certification. *See* ECF Nos. 18, 37, 40, 48. This degree of knowledge and participation, combined with the selection of accomplished counsel, sufficiently demonstrates the Proposed Class Representatives' adequacy. *See Roofer's Pension Fund,* 333 F.R.D. at 77; *Novo Nordisk*, 2020 WL 502176, at *7 (adequacy satisfied where plaintiffs actively participated in similar fashion). Indeed, the Proposed Class Representatives are motivated to vigorously prosecute this case because each purchased tens of thousands of shares of Conduent common stock during the Class Period and each suffered losses ***in excess of $200,000***. *See* ECF No. 6-9; *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 8-397 (DMC)(JAD), 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) ("when Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met").

### III.     The Requirements of Rule 23(b)(3) Are Satisfied

This case is perfectly suited for certification pursuant to Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at *7.

### A.     Common Questions of Law and Fact Predominate Over Individual Questions

Predominance "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prod. Inc.* v. *Windsor*, 521 U.S. 591, 625 (1997). The predominance inquiry asks "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan* v. *DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "The focus of the predominance inquiry is on liability, not damages." *Smith* v. *Suprema Specialties, Inc.*, No. 02-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23,

2007).[4] Here, common factual questions predominate because the Class's claims focus on the same conduct by Defendants, and common legal questions predominate based on the "fraud-on-the-market" doctrine entitling the Class to a presumption of reliance. *See In re Valeant Pharms. Int'l Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *5 (D.N.J. June 15, 2020).

**1.      Common Questions of Law and Fact Predominate Because Lead Plaintiffs' Claims Are Based on the Same Common Course of Conduct**

In securities fraud cases, "Defendants' liability will depend on the same evidence relating to the materiality of the misstatements and omissions at issue and Defendants' state of mind in making such statements or failing to disclose certain information." *Merck II*, 2013 WL 396117, at *12. These questions "are necessarily common to each class member given that Defendants' conduct alone is relevant to their proof." *Schuler* v. *Meds. Co.*, No. 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 23, 2016).

Here, predominance is met because Defendants' common course of conduct of misrepresentations and omissions affected all investors in the same manner, and all Class members have the same interest in proving such conduct. *See Valeant*, 2020 WL 3166456, at *5. Like in *Valeant*, the predominance of common questions exists here where "Lead Plaintiff allege[d] that Defendants' course of conduct artificially inflated (or artificially maintained) the prices of [its securities] and that when the truth regarding [its] financial condition, deceptive business practices,

---

[4] While individual damages calculations may be required for each plaintiff, the need to make such mechanical calculations at a later stage does not affect predominance. *Neale* v. *Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015); *see also Roofer's Pension Fund*, 333 F.R.D. at 88 ("precise damage calculations ... are not required for class certification.... [I]ndividualized issues may affect damages calculations so long as common issues determining liability predominate") (citing *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 35 (2013) and *Neale*, 794 F.3d at 374-75)). Damages here can be calculated using standard, well-accepted methods. *See* Coffman Rpt. at ¶¶ 79-84.

and false accounting was revealed through a series of disclosures ... the price of [its securities] fell and Class Members were damaged." *Id.*

## 2. All Class Members Are Entitled To a Presumption of Reliance

The predominance of common questions is bolstered in this case because the Class will employ the "fraud-on-the-market theory" to prove the Exchange Act's requirement that plaintiffs relied on the misleading statements and omissions. The Supreme Court in *Basic* established this class-wide, rebuttable presumption of reliance in securities fraud class actions, where the security traded in an efficient market such as the NYSE. *Basic Inc.* v. *Levinson*, 485 U.S. 224, 247 (1988); *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014) ("a public, material misrepresentation will distort the price of stock traded in an efficient market, and ... anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation"). Accordingly, the "fraud-on-the-market theory of reliance ... accords plaintiffs in Rule 10b-5 class actions a rebuttable presumption of reliance if plaintiffs bought or sold their securities in an efficient market." *Vizirgianakis*, 775 F. App'x at 53.

The *Basic* presumption will apply for purposes of class certification upon a showing that (1) the alleged misrepresentations were publicly known; (2) the stock traded in an efficient market; and (3) the plaintiff(s) traded stock between the time the misrepresentations were made and the truth was revealed. *Roofer's Pension Fund*, 333 F.R.D. at 79 (citing *Halliburton*, 573 U.S. at 268).[5]

---

[5] While materiality is an additional element that must be proven to establish the *Basic* presumption on the merits, it does not need to be proven at class certification to satisfy Rule 23. *Halliburton*, 573 U.S. at 282 ("Even though materiality is a prerequisite for invoking the *Basic* presumption ... it should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)"); *Amgen*, 568 U.S. at 474 ("materiality need not be proved prior to Rule 23(b)(3) class certification"); *Roofer's Pension Fund,* 333 F.R.D. at 79 n.7 ("Although the *Basic* presumption also requires a showing of materiality, at the class certification stage, Lead Plaintiff need not prove that element.").

The first and third elements are clearly met.  As to the first element, the alleged misrepresentations were all publicly available in Conduent press releases, public conference calls, and Securities and Exchange Commission ("SEC") filings. Compl. ¶¶ 147-164, 198. As to the third element, Defendants in their Answer "admit [that] the Company's stock was listed and traded on the New York Stock Exchange during the alleged class period, admit that the Company periodically filed public reports on Form 10-K and 10-Q with the SEC, and admit that the Company periodically communicated with investors through publicly available press releases." ECF No. 46 at ¶ 198. The second element is also satisfied because Conduent stock traded on the NYSE, a public (and axiomatically efficient) market, during the Class Period. Compl. ¶ 33; *see DVI Inc. II*, 639 F.3d at 634 ("the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency"); *In re PHP Healthcare Corp.*, 128 F. App'x 839, 848 (3d Cir. 2005) (the NYSE is "one of the most efficient capital markets in the world"); *accord Roofer's Pension Fund*, 333 F.R.D. at 80.

In the Third Circuit, courts also use the factors set forth in *Cammer* v. *Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) to evaluate whether a security traded in an efficient market. *DVI Inc. II*, 639 F.3d at 634 n.16 ("the *Cammer* factors may be instructive depending on the circumstances"). The *Cammer* factors are:

> (1) the average weekly trading volume; (2) the number of security analysts following and reporting on the security; (3) the extent to which market makers traded the security; (4) the issuer's eligibility to file an SEC registration Form S-3; and (5) the cause-and-effect relationship between material disclosures and changes in the security's price.

639 F.3d. at 633 n.14. "These factors are not meant to be a rigid checklist.... A plaintiff need only show that the stock traded in a generally efficient market at the class certification stage, a burden that is not onerous." *Roofer's Pension Fund*, 333 F.R.D. at 81 (citing, e.g. *Halliburton*, 573 U.S. at 279) (further citations and internal formatting omitted). In this case, however, **each** of the

15

*Cammer* factors are met and thus further evidence that Conduent common stock traded efficiently and a presumption of reliance is warranted.

**First**, Conduent's average weekly trading volume during the Class Period was high: 8.86 million shares, or 4.20% of the total outstanding Conduent shares available to trade. *See* Coffman Rpt. ¶ 26. This volume indicates an efficient market. *Roofer's Pension Fund*, 333 F.R.D. at 81 ("a trading volume of two percent or more justifies a strong presumption of market efficiency").

**Second**, Conduent was covered at various times by up to 15 analysts employed by brokerage firms who wrote at least 96 publicly available reports about the Company during the Class Period. Coffman Rpt. ¶ 34. This "[e]xtensive coverage by securities analysts" infers an efficient market. *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008) (*"DVI Inc. I"*) (coverage by three analysts, coupled with other publicly-available information during class period, sufficient), *aff'd*, *DVI Inc. II*, 639 F.3d 623 (3d Cir. 2011).

**Third**, there were at least 85 market makers for Conduent common stock. Coffman Rpt. ¶ 42. "A market-maker is one who helps establish a market for securities by reporting bid-and-asked quotations and who stands ready to buy or sell at these publicly quoted prices." *Hull* v. *Glob. Dig. Sols., Inc.*, No. 16-5153 (FLW), 2018 WL 4380999, at *8 (D.N.J. Sep. 14, 2018) (internal quotation and formatting omitted). Eighty-five market makers "justif[ies] a substantial presumption that the market for the security is an efficient one." *Cammer*, 711 F. Supp. at 1293 (ten or more market makers supports efficiency); *Roofer's Pension Fund*, 333 F.R.D. at 83-84 (at least 17 market makers weighs in favor of efficiency).

**Fourth**, Conduent was presumptively eligible to file Form S-3 registration statements with the SEC during the Class Period, further supporting a finding of market efficiency. Coffman Rpt.

16

¶ 45; *see Cammer*, 711 F. Supp. at 1277 (companies "entitled to issue new securities using SEC Form S-3 would almost by definition involve stocks trading in an 'open and developed' market").

*Fifth*, Conduent's stock price immediately reacted to the unexpected news. For example, on November 7, 2018, Conduent's common stock price fell $5.60 per share, or over 29%, to close at $13.62 per share, in response to Conduent's disclosures about its IT issues and their effect on operations. Compl. ¶¶ 27, 146.  Lead Plaintiff's economist, Chad Coffman, performed an "event study" to examine the impact of new public information about Conduent on the market price of Conduent common stock. Coffman Rpt. ¶¶ 49-65.[6] An event study can show that "[a] large abnormal stock price movement occur[ed] at the same time the market receives news about an event," which "suggests that the event caused the abnormal price movement." *Roofer's Pension Fund*, 333 F.R.D. at 84 (internal quotation and citation omitted). Mr. Coffman's event study analysis demonstrates a clear cause-and-effect relationship advancing the conclusion that Conduent common stock was trading in an efficient market. Coffman Rpt. ¶¶ 49-65; *see DVI Inc. II*, 639 F.3d at 634 ("the cause-and-effect relationship between a company's material disclosures and the security price is normally the most important factor in an efficiency analysis").

In addition to the *Cammer* factors, some courts in the Third Circuit also consider the three additional "*Krogman*/*Unger*" factors, which are "(1) the magnitude of the company's market capitalization; (2) the size of the bid-ask spread for the company's stock, *i.e.*, the difference between the price that potential buyers are willing to pay and the price at which potential sellers are willing to sell; and (3) the company's float, *i.e.*, the percentage of shares that are publicly held."

---

[6] Courts have accepted similar reports by Mr. Coffman to prove market efficiency. *See, e.g.*, *Pub. Employees' Ret. Sys. of Miss.* v. *TreeHouse Foods, Inc.*, No. 16-cv-10632, 2020 WL 919249, at *9 (N.D. Ill. Feb. 26, 2020) (noting "dozens of cases in which Coffman's expert opinions have supported the certification of a class").

*Prudential*, 2015 WL 5097883, at \*6 (citing *Krogman* v. *Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) and *Unger* v. *Amedisys*, 401 F.3d 316, 323 (5th Cir. 2005)). All of these factors also support a conclusion of market efficiency for Conduent common stock.

*Market Capitalization:* Conduent's market capitalization during the Class Period was between \$3.92 billion and \$2.25 billion, which was in at least the 72nd percentile of all NYSE and NASDAQ stocks, sufficient to demonstrate market efficiency. Coffman Rpt. Exhibit 1; ¶ 68; *DVI Inc. I*, 249 F.R.D. at 212 (market capitalization that "ranged between \$300 million to \$12 million," but "was well above the median for all companies trading on the NYSE, AMEX or NASDAQ" during most of the class period, was indicative of efficiency).

*Bid-Ask Spread:* The bid-ask spread for Conduent common stock was between 0.014% and 0.030% during the Class Period, "well below the mean and median bid-ask spread of a random sample of 100 other common stocks trading on the NASDAQ and NYSE in July 2018 (the full month when Conduent had the largest bid-ask spread)." Coffman Rpt. Exhibit 1, ¶ 71; *Cheney* v. *Cyberguard Corp.*, 213 F.R.D. 484, 501 (S.D. Fla. 2003) (bid-ask spread below 5.6% suggests market efficiency) (cited by *Hull*, 2018 WL 4380999, at \*6).

*Float:* During the Class Period, over 96% of Conduent's outstanding shares were held by non-insiders, further supporting market efficiency. Coffman Rpt. ¶ 72; *DVI Inc. I*, 249 F.R.D. at 212 (float of 95% supports market efficiency).

In sum, all of the factors customarily considered by courts in determining market efficiency support a finding that Conduent's common stock traded in an efficient market during the Class Period. Thus, the fraud-on-the-market theory applies and class-wide reliance may be presumed. When combined with the other common issues of falsity, materiality, scienter, loss causation, and damages, the predominance requirement under Rule 23(b)(3) is fully satisfied.

### B.   A Class Action Is Superior to Piecemeal Litigation

Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule provides four guideposts for the Court to consider, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* Here, *each* factor unquestionably weighs in favor of the superiority of a class action.

*First*, this case involves a large number of investors; since the typical securities fraud claim is generally too small for each individual class member to maintain a separate action, there is little incentive for Class members here to proceed individually. *See* Compl. ¶ 216; *Novo Nordisk*, 2020 WL 502176, at *9 ("class actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims individually").

*Second*, Lead Plaintiff is unaware of any individual direct shareholder actions brought by a Class member against Defendants alleging the claims at issue here.

*Third*, because of the likely geographical dispersion of the large number of Class members involved in this case, it is desirable to concentrate the litigation in this forum. *See Roofer's Pension Fund*, 333 F.R.D. at 78 ("given the voluminous class size, class adjudication in this forum is appropriate to ensure consistency in adjudication and to prevent the possibility of conflicting outcomes that may be rendered on individual claims").

*Fourth*, as in numerous other securities actions, this Court is unlikely to face any unusual difficulties in managing a class action. *See* Compl. ¶ 217; *Prudential*, 2015 WL 5097883, at \*13 ("it is well-settled that the class action is a particularly appropriate vehicle for adjudication of federal securities cases"). Thus, a class action would be the most fair and efficient way to resolve the common issues alleged in this action. *See Johnson* v. *Comodo Grp., Inc.*, Civ. No. 16-4469 (SDW) (LDW), 2020 WL 525898, at \*11 (D.N.J. Jan. 31, 2020) (Wigenton, J.) (superiority met where "litigating these claims individually would cost many more millions of dollars and take a substantially greater toll on judicial resources").

## C. The Class Is Ascertainable

While not required by the plain language of Rule 23, the Third Circuit has imputed a requirement of ascertainability to classes seeking certification under Rule 23(b)(3). *Byrd* v. *Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). "[A]ll that is required is that [plaintiffs] show there is a reliable and administratively feasible mechanism for determining class membership." *Hargrove* v. *Sleepy's LLC*, 974 F.3d 467, 479 (3d Cir. 2020) (citations omitted). The Third Circuit has noted that "[t]he ascertainability inquiry is narrow" and "will not be relevant in every case." 784 F.3d at 165. This instruction seems especially pertinent to PSLRA cases, which must be based on documented securities transactions. Accordingly, PSLRA class certification decisions generally do not discuss the ascertainability inquiry. *See, e.g.*, *Novo Nordisk*, 2020 WL 502176; *Roofer's Pension Fund*, 333 F.R.D. 66; *Bing Li*, 324 F.R.D. 331.

Nevertheless, to the extent ascertainability is relevant here, it is met. There is a "reliable, repeatable process whereby members of the putative class may be identified." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015). First, the Class is plainly defined with reference to objective criteria—purchases of Conduent common stock in a specified

20

time period. Compl. ¶¶ 3, 210. Second, it is easily determined whether Class members fall within this definition based on the records of Conduent and/or its transfer agent[7] and brokerage statements. Compl. ¶ 212.  Similar to *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, Lead Plaintiff will consult Conduent's and its transfer agent's records of Conduent stock ownership, notify potential Class members, and review brokerage statements to determine Class membership. 795 F.3d at 397 (finding process where the plaintiff consults "business records and then follow[s] a few steps to determine whether the borrower is the real party in interest" was sufficient to demonstrate ascertainablity).  In fact, this process is how classes have been ascertained in nearly every PSLRA securities class action.  *See, e.g.* Order and Final Judgment, *Balon* v. *Agria Corp.*, No. 2:16-cv-08376-SDW-LDW, ECF No. 40 (D.N.J. Dec. 12, 2017) (Wigenton, J.) (finding notice to class via brokerage firms satisfied Rule 23); *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 n.6 (S.D.N.Y. 2013) (ascertainability requirement is "easily met in the context of securities litigation where the list of shareholders is readily obtainable").  Therefore the Class is sufficiently ascertainable.

## IV.    Co-Lead Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g)

Rule 23(g) requires the Court to appoint an applicant as Class Counsel after considering: (i) the quality of work counsel performed investigating the claims; (ii) counsel's experience handling similar class actions; (ii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Rule 23(g)(1)(A).  If the Court

---

[7] The SEC states:  "Companies that have publicly traded securities typically use transfer agents to keep track of the individuals and entities that own their stocks and bonds.  Most transfer agents are banks or trust companies, but sometimes a company acts as its own transfer agent." https://www.sec.gov/fast-answerstransferagenthtm.html#:~:text=Transfer%20agents%20keep%20records%20of,or%20bonds%20each%20investor%20owns.

finds these factors are met, and that counsel will "fairly and adequately represent the interests of the class," then the applicant should be appointed Class Counsel. *See* Rule 23(g)(2).

Co-Lead Counsel has all the qualities required to be Class Counsel. Co-Lead Counsel thoroughly investigated the class's claims, including interviewing witnesses. *See* ECF No. 18 at ¶¶ 135-139. Co-Lead Counsel used its investigation to amend the Complaint and state a claim with the specificity required by Federal Rule 9(b) and the PSLRA. ECF No. 40. Additionally, Co-Lead Counsel are experienced class action attorneys who have extensive knowledge of the applicable securities laws. *See* Harrington Decl. Exhibit E (Firm Résumé of Bernstein Liebhard) and Exhibit F (Firm Résumé of Thornton Law Firm). Bernstein Liebhard has successfully represented investors in securities fraud class actions throughout the United States for over twenty-five years, and has recovered over $3.5 billion on behalf of clients and classes. The Thornton Law Firm also has an established track record in complex plaintiff litigation, and it currently serves in leadership positions in numerous securities class actions pending across the country.[8]

Finally, as Class Counsel, Co-Lead Counsel will continue to devote considerable resources on behalf of the Class. After overcoming Defendants' motions to dismiss, Co-Lead Counsel is now fully engaged in the discovery process. ECF No. 49. Indeed, this motion, including hiring an expert to analyze the market for Conduent stock, is further evidence of Co-Lead Counsel's commitment to devote resources for the benefit of Class. Accordingly, Co-Lead Counsel has and will continue to fairly and adequately represent the Class and should be appointed Class Counsel.

---

[8] *See Nepomuceno*, 2016 WL 3392299, at *6 (appointing class counsel whose firm bios show they have extensive experience in handling class actions and other complex litigation); *Yedlowski* v. *Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *7 (D.N.J. Nov. 10, 2016) (appointing class counsel that had "successfully prosecuted securities class actions in courts throughout the country").

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion for Class Certification should be granted thereby: (i) certifying the Class as defined herein; (ii) appointing the Oklahoma Firefighters Pension and Retirement System; Plymouth County Retirement Association; and Electrical Workers Pension Fund, Local 103, I.B.E.W. as the Class Representatives; and (iii) appointing Bernstein Liebhard LLP and Thornton Law Firm LLP as Class Counsel.

Dated: December 7, 2020                          Respectfully submitted,

**LAW OFFICES OF JAN MEYER & ASSOCIATES, P.C.**

/s/ Richard L. Elem
Richard L. Elem, Esq.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Telephone: (201)-862-9500
Email: relem@janmeyerlaw.com

*Liaison Counsel for Lead Plaintiff*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein (*pro hac vice*)
Michael S. Bigin (*pro hac vice*)
Peter J. Harrington (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email:  bernstein@bernlieb.com
         bigin@bernlieb.com
         pharrington@bernlieb.com

**THORNTON LAW FIRM LLP**
Guillaume Buell (*pro hac vice*)
Madeline Korber (*pro hac vice*)
1 Lincoln Street
Boston, MA 02111
Telephone:  (617) 531-3933
Email:  gbuell@tenlaw.com

23

Email:  mkorber@tenlaw.com

*Co-Lead Counsel for Lead Plaintiff and the Proposed Class*

**WOLF POPPER LLP**
Robert C. Finkel (*pro hac vice*)
Joshua W. Ruthizer
845 Third Avenue
New York, NY 10022
Telephone:  (212) 759-4600
Email:  rfinkel@wolfpopper.com

*Additional Counsel for Lead Plaintiff*

24

**CERTIFICATE OF SERVICE**

I, Richard L. Elem, hereby certify that on December 7, 2020, a true and correct copy of the annexed **MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL** was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: December 7, 2020                                    /s/ Richard L. Elem
                                                                       Richard L. Elem