**KING & SPALDING LLP**
Israel Dahan
1185 Avenue of the Americas, 36th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Fax: (212) 556-2222
idahan@kslaw.com

*Counsel for Defendants*

[*Additional counsel appear on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
|  | ) Case No. 2:19-cv-08237-SDW-LDW |
|  | ) |
| IN RE CONDUENT INC. | ) Hon. Susan D. Wigenton, U.S.D.J. |
| SECURITIES LITIGATION | ) Hon. Leda D. Wettre, U.S.M.J. |
|  | ) |
|  | ) Motion Day:  March 1, 2021 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT
OF CLASS COUNSEL**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................3

I. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY
ARE ADEQUATE REPRESENTATIVES UNDER RULE 23(a)............5

    A. Plaintiffs Cannot Adequately Represent The Class Because
They Do Not Control This Litigation. ...............................................6

    B. Plaintiffs' Lawyer-Driven Representative "Group" Cannot
Adequately Represent Any Putative Class. ....................................13

    C. There Are Additional, Independent Reasons To Conclude
That The Putative Class Representatives Are Inadequate. ..........19

II. PLAINTIFFS CANNOT SHOW PREDOMINANCE UNDER
RULE 23(b)(3)......................................................................................23

    A. Plaintiffs Present No Evidence That They Can Measure
Classwide Damages Consistently With Their Theory Of
Liability. .......................................................................................24

    B. Defendants' Expert Report Shows That Plaintiffs Have Not
Proposed A Methodology That Can Measure Classwide
Damages Consistently With Their Theory Of Liability. ...............27

CONCLUSION....................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................................23

*Avila v. LifeLock Inc.,*
2:15-cv-01398 (D. Ariz.) ..........................................................................20

*Bell v. Ascendant Sols., Inc.,*
422 F.3d 307 (5th Cir. 2005) ....................................................................34

*Berger v. Compaq Comput. Corp.,*
257 F.3d 475 (5th Cir. 2001) ..................................................................5, 7

*In re BP P.L.C. Sec. Litig.,*
No. 10-MD-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .......................26

*In re Campbell Soup Co. Sec. Litig.,*
No. 1:18-cv-14385 (D.N.J.) .......................................................................20

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ..........................................................5, 6, 13, 14

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.,*
No. 03-1027, 2003 WL 27391614 (E.D. La. Aug. 28, 2003)..........................20

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)..............................................................................*passim*

*Cunha v. Hansen Nat. Corp.,*
Nos. ED CV 08-01249-SGL(JCx), ED CV 08-01278-SGL(JCx),
2009 WL 2029797 (C.D. Cal. July 13, 2009)...............................................20

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
301 F.R.D. 116 (S.D.N.Y. 2014)................................................................27

*Freeman on behalf of Testla, Inc. v. Musk,*
  Civil Action No. 17-317-VAC-CJB, Civil Action No. 17-461-
  VAC-CJB (D. Del.) ................................................................................20

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
  529 F. Supp. 2d 644 (S.D. Tex. 2006) ...................................................13

*In re Farfetch Ltd. Sec. Litig.,*
  1:19-cv-08657 (S.D.N.Y.) ......................................................................20

*In re Finisar Corp. Sec. Litig.,*
  5:11-cv-01252 (N.D. Cal.) .....................................................................20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ......................................................................5

*Gluck v. CellStar Corp.,*
  976 F. Supp. 542 (N.D. Tex. 1997) .......................................................14

*Gross v. GFI Group,*
  No. 14CV9438, 2017 WL 3668844 (S.D.N.Y Aug. 23, 2017) .............32

*Gross v. GFI Group,*
  310 F. Supp. 3d 384 (S.D.N.Y. 2018) ...................................................32

*Hall v. Rent-A-Center, Inc.,*
  No. 4:16-cv-0978 (E.D. Tex.) ................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  573 U.S. 258 (2014) .................................................................................4

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008) .............................................................23, 24

*Johnson v. HBO Film Mgmt., Inc.,*
  265 F.3d 178 (3d Cir. 2001) .................................................................3, 4

*Kelley v. Mid-Am. Racing Stables, Inc.,*
  139 F.R.D. 405 (W.D. Okla. 1990) .......................................................22

*Kirkpatrick v. J.C. Bradford & Co.,*
  827 F.2d 718 (11th Cir. 1987) .............................................................6, 21

*Knurr v. Orbital ATK, Inc.*,
  220 F. Supp. 3d 653 (E.D. Va. 2016) ....................................................................19

*In re Kosmos Energy Ltd. Sec. Litig.*,
  299 F.R.D. 133 (N.D. Tex. 2014) ...........................................................8, 11, 12, 13

*Logan v. Propetro Holding Corp.*,
  7:19-cv-00217 (W.D. Tex.) .................................................................................20

*London v. Wal-Mart Stores, Inc.*,
  340 F.3d 1246 (11th Cir. 2003) ..............................................................................6

*Loritz v. Exide Techs.*,
  No. 2:13–cv–02607–SVW–E, 2015 WL 6790247 (C.D. Cal. July
  21, 2015) ........................................................................................................24, 26

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015) ...............................................................................24

*Mielo v. Steak n' Shake Operations, Inc.*,
  897 F.3d 467 (3d Cir. 2018) ...................................................................................4

*Miller v. Asensio & Co., Inc.*,
  364 F.3d 223 (4th Cir. 2004) ..........................................................................30, 31

*Mulquin v. Nektar Therapeutics*,
  No. 4:18-cv-06607 (N.D. Cal.) .............................................................................20

*Murphy v. Precision Castparts Corp.*,
  3:16-cv-00521 (D. Or.) ........................................................................................20

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ...........................................................................23, 24

*In re Nice Sys. Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999) ................................................................................6

*In re Novo Nordisk Sec. Litig.*,
  No. 3:17-cv-00209 (D.N.J.) ..................................................................................19

*Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ....................27

iv

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags v. Six Flags Entm't Corp.*,
4:20-cv-00201 (N.D. Tex.) ...................................................................................20

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
725 F.3d 244 (D.C. Cir. 2013)...........................................................................27

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ...............................................................13

*Rothenberg v. Sec. Mgmt. Co., Inc.*,
667 F.2d 958 (11th Cir. 1982) .............................................................................7

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ..............................................................................21

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007)........................................................................13

*Sicav v. Wang*,
No. 12 Civ. 6682 (PAE), 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ........................................................................................................24, 27

*Takata v. Riot Blockchain, Inc.*,
Civil Action No. 18-2293(FLW)(TJB), 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ....................................................................................13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................4

*In re Weight Watchers Int'l, Inc. Sec. Litig.*,
1:19-cv-02005 (S.D.N.Y.) .................................................................................20

*Weiner v. Tivity Health Inc.*,
No. 3:17-cv-1469 (M.D. Tenn.)..........................................................................19

**Statutes**

15 U.S.C. § 78u-4.....................................................................................2, 14, 19

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................*passim*

## INTRODUCTION

Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Dkt. 76) (the "Motion") mistakenly treats class certification as a foregone conclusion. But Plaintiffs fail to acknowledge the "rigorous" certification analysis required under Federal Rule of Civil Procedure 23. Plaintiffs bear the burden of proof at this stage, and an appropriately rigorous analysis will reveal that Plaintiffs fail to satisfy their burden under Rule 23.

First, Plaintiffs' three Proposed Class Representatives cannot adequately represent the class. Discovery has revealed that the Proposed Class Representatives have abdicated control of this action to their counsel. Moreover, the lawyer-created "group" of the three previously unaffiliated Conduent investors who are the Proposed Class Representatives cannot function cohesively and independently as required to protect the interests of any putative class. Given the potential for issues among this group, there is no need to have all three as Proposed Class Representatives.

Second, Plaintiffs fail to satisfy the demanding predominance requirements of Rule 23(b). Plaintiffs have not offered any model for calculating damages on a class-wide basis that is consistent with their theory of liability as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Plaintiffs instead offer only the

1

general and vague musings of their expert that he can later calculate class-wide damages with an event study analysis. The theoretical, generic methodology proposed by Plaintiffs' expert is insufficient to meet Plaintiffs' burden.

For these fundamental deficiencies, Plaintiffs' Motion should be denied.

## BACKGROUND

This putative securities fraud class action is brought by four Plaintiffs: Oklahoma Firefighters Pension and Retirement System ("OFPRS" or the "System"); Plymouth County Retirement Association ("PCRA" or "Plymouth"); Electrical Workers Pension Fund, Local 103, I.B.E.W.'s ("Local 103"); and Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA"). These four Plaintiffs collectively comprise the "Conduent Institutional Investor Group," which this Court appointed as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3) ("PSLRA"). *See* Dkt. 10. Plaintiffs assert claims of securities fraud against Conduent Incorporated ("Conduent" or "Company"), Ashok Vemuri, and Brian Webb-Walsh (the "Individual Defendants," and with Conduent, "Defendants"). *See* Am. Class Action Compl. (Dkt. 18) ("AC").

Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. *See* AC ¶ 2. Plaintiffs claim that certain of Defendants' public statements issued during the putative "Class Period" of

2

February 21, 2018 to November 6, 2018 were materially false and misleading.  *See* AC ¶¶ 147–76.

Plaintiffs now move to certify a class of shareholders who purchased Conduent common stock between February 21, 2018 and November 6, 2018 and who were allegedly damaged thereby.  *See* Motion at 1.  Plaintiffs request that the Court appoint the following three "Proposed Class Representatives": OFPRS, PCRA, and Local 103.  Plaintiffs do not request that the Court appoint the fourth Lead Plaintiff, ERS-PREPA, purportedly "[t]o avoid redundant effort[.]"  Mem. at 5 n.3.  In support of their Motion, Plaintiffs submit a supporting Memorandum of Law (Dkt. 76-2) ("Mem."), as well as the Declaration of Peter J. Harrington (Dkt. 76-1), together with certain exhibits, including an expert report by Chad Coffman, CFA (Dkt. 76-10) ("Coffman Report") and firm resumes for Proposed Class Counsel Bernstein Liebhard LLP and Thornton Law Firm LLP (Dkt. 76-11, 76-12).

## ARGUMENT

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  To justify a departure from that rule, a putative class representative must establish all four elements of Federal Rule of Civil Procedure 23(a) and one of three provisions of Rule 23(b).  *See Johnson v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001).  Rule 23(a) requires demonstrating:

3

(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See id.* Only if all of these requirements are met may the Court find that the class action is maintainable under Rule 23(b)(1), (2), or (3). *See id.* at 184.

These requirements are neither formalities nor merely rules of pleading. Rather, "plaintiffs wishing to proceed through a class action must actually *prove*— not simply plead—that their proposed class satisfies each requirement of Rule 23." *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("*Halliburton II*"); *see also Mielo v. Steak n' Shake Operations, Inc.*, 897 F.3d 467, 483–84 (3d Cir. 2018). The Court cannot rely on mere allegations or inferences to certify a class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, the Court must conduct "a rigorous analysis" of the evidence submitted in support of, and in opposition to, class certification—delving into the merits wherever they overlap with Rule 23's standards. *See id.* at 350–51. "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23" have been met. *See id.* (citation and internal marks omitted). If the Court harbors any doubt as to whether Plaintiffs have carried their burden under Rule 23, the class should not be certified. *See Mielo*, 897 F.3d at 483–84.

In this case, Plaintiffs have not carried their burden under Rule 23. As discussed below, Plaintiffs have not demonstrated that they will fairly and adequately represent any putative class as required under Rule 23(a). Nor have they

put forth any evidence sufficient to meet their burden under Rule 23(b)(3)'s "predominance" requirement. Plaintiffs' Motion should be denied.

## I. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE ADEQUATE REPRESENTATIVES UNDER RULE 23(a).

Plaintiffs bear the burden of establishing that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is intended to address the due process concern that absent members of the class are "bound by the operation of res judicata," even though they are not present to assert and defend their own interests. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

To evaluate whether a movant satisfies Rule 23(a)'s adequacy requirement, the Court should consider whether the putative class representative has "the ability and incentive to represent the claims of the class vigorously, whether [they] have obtained adequate counsel, and whether there is [a] conflict between [their] claims and those asserted on behalf of the class." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (citation and internal marks omitted). The PSLRA, moreover, "raises the standard adequacy threshold" insofar as it requires "that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation." *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 (5th Cir. 2001).

Plaintiffs fail to meet this adequacy requirement. First, because they have ceded control of this case to their counsel, the three Proposed Class Representatives cannot adequately represent the interests of any putative class. Second, the three Proposed Class Representatives have not demonstrated that they are capable of functioning as a coherent and cohesive group. Finally, there are independent reasons to question the adequacy of two of the individual Proposed Class Representatives.

## A.     Plaintiffs Cannot Adequately Represent The Class Because They Do Not Control This Litigation.

Adequacy under Rule 23(a)(4) requires that a proposed class representative demonstrate its "ability and incentive to represent the claims of the class vigorously." *Cendant*, 264 F.3d at 265 (citation and internal marks omitted); *see also In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999) (noting adequacy requirement is "contingent upon . . . a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action"). That requirement is not satisfied where a plaintiff has merely lent its name to a class action that is controlled by its lawyers. Putative class members are "entitled to 'more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.'" *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (citation omitted); *see also London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (noting a "stringent examination" of the plaintiff's adequacy is especially

6

necessary where attorney's fees will vastly exceed the class representative's recovery).

The adequacy requirement is especially important in securities class actions like this one. The PSLRA makes clear "Congress's emphatic command that competent plaintiffs, rather than their lawyers, direct [securities] cases." *See Berger*, 257 F.3d at 484. Therefore, the Court's adequacy inquiry must assess "the degree of control exercised by the attorneys over the litigation." *See Rothenberg v. Sec. Mgmt. Co., Inc.*, 667 F.2d 958, 961 (11th Cir. 1982).

Here, the Proposed Class Representatives have not satisfied the adequacy requirement because the Proposed Class *Counsel*, not the Proposed Class Representatives, are controlling and directing this litigation. As the Proposed Class Representatives' deposition testimony makes clear, ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ [1] OFPRS and PCRA further explained ██████

███████████████████████████████████████████

███████████████████████████████████████████

---

[1] Excerpts of the confidential deposition transcripts of OFPRS, PCRA, and Local 103 are attached to the Declaration of Bethany M. Rezek submitted in support of this Memorandum in Opposition as Exhibits 1, 2, and 3, respectively.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

These monitoring services have been criticized as "fostering the very tendencies toward lawyer driven litigation that the PSLRA was designed to curtail" because they "create[] a clear incentive for the securities monitoring law firm to discover 'fraud' in the investments it monitors and to recommend that the client, at no cost to itself, bring a class action lawsuit." *See In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 149 (N.D. Tex. 2014) (citation and internal marks omitted).

Moreover, not one of the Proposed Class Representatives stated ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

To the contrary, the Proposed Class Representatives' understanding of this case is informed by the Complaint that was drafted by the very counsel now directing this case. OFPRS testified, for instance:

_____

[2] ████████████████████████████████████████████████████
████████████████████████████████████

[3] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

8

Counsels' arrangements for participation in this case only underscore the lawyer-driven nature of this litigation. For instance, the Motion for Class

_____



9

Certification provides that the Wolf Popper law firm "will continue to work on this litigation under the supervision of Lead Counsel," Mem. at 5, and it ███████████

███████████████████████████████████████████████████████

█████████████████████████████. But the Wolf Popper law firm does not represent any of the three Proposed Class Representatives, and ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████ In a similar vein, the Thornton Law Firm's retention agreements with PCRA and Local 103 each provide

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████  ██  ███████████████████

███████████████████████████████████████████████████████

In short, the proposed representative group is little more than a vehicle for counsel to bring this case with the eventual hope of a fee award.[5]

---

[5] When asked directly who came up with the idea to form the Lead Plaintiff group,

████████████████████████████████████████████████████████

10

Plaintiffs' Motion for Class Certification asserts that adequacy has already been demonstrated by the Proposed Class Representatives' "researching and filing the Complaint and successfully opposing Defendants' motion to dismiss, and actively participating in discovery and this motion for class certification." Mem. at 11–12. But that assertion is belied by their deposition testimony described above, which reveals that this litigation is being driven by counsel. *See supra* at pp.7–10. Plaintiffs also suggest each Proposed Class Representative is motivated to vigorously prosecute this case because each suffered losses "in excess of $200,000." *See* Mem. at 12. Again, that claim is hardly convincing in light of deposition testimony establishing ███████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████

This case is similar to *In re Kosmos Energy Ltd. Securities Litigation*, where the Court refused to certify a putative securities class action once it became clear that the putative class representative (also an institutional investor) was being used

████████████████████████████████████

███████████████████████████

11

as a vehicle for its counsel to bring the case. *See* 299 F.R.D. 133 (N.D. Tex. 2014). In *Kosmos*, the plaintiff was unaware of any potential securities claims until a securities monitoring firm urged it to pursue the lawsuit pursuant to a free portfolio monitoring service. *See id.* at 149. Moreover, deposition testimony revealed that the plaintiff lacked an understanding of or involvement with key matters in the case, including that the plaintiff had not reviewed the registration statement that was challenged in that case. *See id.* at 149–50. In light of those factors, the Court concluded the plaintiff had not carried its burden of demonstrating adequacy and therefore denied certification.

This Court should reach the same conclusion in this case. Simply put, the Proposed Class Representatives cannot satisfy the adequacy requirement because they have merely lent their names to this lawyer-driven class action. As PCRA aptly summarized: ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ And as OFPRS acknowledged, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The class cannot be certified under such circumstances, where the Proposed Class Representatives are merely a vehicle for Proposed Class Counsel to bring this case.

12

*See Kosmos*, 299 F.R.D. at 149–50; *see also*, *e.g.*, *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007) (representative was inadequate where deposition testimony revealed he pursued litigation "based only on [counsel's] investigation and research" and explained he "defer[ed] to counsel" with respect to key litigation matters); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 734–38 (S.D. Tex. 2006) (designated representative's deposition testimony "reveal[ed] his inadequacies" where "no interest in, no less the ability for, controlling or monitoring the lawyers prosecuting the litigation").

**B.    Plaintiffs' Lawyer-Driven Representative "Group" Cannot Adequately Represent Any Putative Class.**

Courts in the Third Circuit have consistently expressed skepticism of lead plaintiff "groups."   *See*, *e.g.*, *Cendant*, 264 F.3d at 266–67; *Takata v. Riot Blockchain, Inc.*, Civil Action No. 18-2293(FLW)(TJB), 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307–08 (S.D.N.Y. 2001).  Such groups may be "too large for its members to operate effectively as a single unit," or they may have been created for the purposes of their lawyers rather than any putative class.  *See Cendant*, 264 F.3d at 267.  In any case, the touchstone is adequacy—*i.e.*, whether the group is able fairly and adequately to protect the interests of the putative class.  *See id.* at 266–67.

We have moved beyond the early procedural stage of this securities case, when such plaintiff groups need only make "a threshold showing of typicality of

13

adequacy." *See Cendant*, 264 F.3d at 267 (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997)); 15 U.S.C. § 78u-4(a)(3)(B). Notably, when (as here) a plaintiff group later seeks appointment as class representative, the group must satisfy its burden under Rule 23 to prove that it can function cohesively and independently as an adequate class representative, and the defendant may rebut the group's arguments with evidentiary proof.[6] *See Gluck*, 976 F. Supp. at 550.

Discovery has revealed that Plaintiffs' proposed "group" of three Proposed Class Representatives is precisely the kind that the Third Circuit cautioned against in *Cendant*: a group created by counsel that cannot function cohesively to protect the interests of a putative class. For example, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] This requirement is especially important given defendants are not generally heard at the earlier procedural stage to oppose lead plaintiff appointment. *See Cendant*, 264 F.3d at 267–68 (citing *Gluck*, 976 F. Supp. at 550).

[7] The first phone call occurred just one day before Plaintiffs filed the Joint Declaration of Maria Hernandez, David Sullivan, Michael P. Donovan, and Chase Rankin in Support of the Conduent Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Joint Declaration"). *See* Dkt. 6-10 at PageID 93, ¶ 9. The second call took place ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14

██████████████████████   As another example, ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Perhaps most concerning, none of the Proposed Class Representatives could explain how they would resolve a conflict among the group regarding the litigation—a reasonably likely and significant event, should it arise.  PCRA, for instance, attempted to gloss over the issue:  ████████████████████

████████████████████████████████████████████████████

██████████████   OFPRS, by comparison, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████   In addition, should a disagreement arise solely between PCRA and Local 103 regarding this litigation, that would present a conflict

15

for their mutual counsel, the Thornton Law Firm.  The likelihood of a disagreement with respect to some aspect of this litigation is high given that there are three Proposed Class Representative institutional investors, the case is being directed by two different Proposed Class Counsel law firms, and a third law firm continues to be involved without representing any Proposed Class Representative (not to mention Local Counsel).[8]

The Proposed Class Representatives' Joint Declaration cannot suffice to overcome these shortcomings.  *See* Dkt. 6-10 at PageID93.  These kinds of declarations have been viewed with skepticism by courts even at the lead plaintiff stage.  *See, e.g., Takata*, 2018 WL 5801379, at *5.  Here, moreover, discovery has revealed that the Joint Declaration ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ and the Proposed Class

---

[8] One potential dispute may be over the amount of any fee award, which directly impacts any recovery for the putative class. ████

16

Representatives ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

Moreover, discovery has confirmed that the Joint Declaration is hardly supported by substance. For instance, the Joint Declaration asserts superficially that the group discussed "procedures and mechanisms for communication and decision-making," and that they "established procedures for overseeing the progress of the litigation and communicating both separate and apart from and with counsel as necessary." *See* Dkt. 6-10 at PageID93. When asked about the referenced "procedures" and "mechanisms," however, ████████████████████



17



None of the Proposed Class Representatives were able to provide any convincing or consistent explanation that the referenced "procedures" and "mechanisms" are substantive provisions adequately designed to protect the interests of the putative class.

At this stage of the case, the Proposed Class Representatives bear the burden of demonstrating to the Court that they will adequately protect the interests of the putative class, especially given their stated desire to represent the class as a group of three. The Proposed Class Representatives have not met their burden here. Instead, discovery has made clear that this lawyer-driven group cannot function cohesively

18

and independent from counsel, such that it cannot fairly and adequately protect the interests of any putative class.

## C.    There Are Additional, Independent Reasons To Conclude That The Putative Class Representatives Are Inadequate.

This Court can and should conclude that Plaintiffs have not met the adequacy threshold based on either of the two arguments set forth above: that the Proposed Class Representatives have ceded control of this case to counsel, or that the lawyer-created group of Proposed Class Representatives cannot function cohesively and independent from counsel such that it cannot adequately represent any putative class. But there are also additional, independent reasons why OFPRS and Local 103 cannot serve as adequate class representatives in this litigation.

**OFPRS.**   The PSLRA presumptively bars individuals and entities from serving as lead plaintiff in "more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi).  The provision applies to individuals and institutional investors alike.  *See*, *e.g.*, *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 659–62 (E.D. Va. 2016).  In this case, OFPRS has far exceeded this statutory presumption, having served as lead plaintiff in at least **thirteen** securities class actions in the last three years.[9]

---

[9] *Hall v. Rent-A-Center, Inc.*, No. 4:16-cv-0978 (E.D. Tex.); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209 (D.N.J.); *Weiner v. Tivity Health Inc.*, No. 3:17-cv-1469

OFPRS cannot avoid this issue by arguing that it has already been appointed lead plaintiff in this case. This is because a "primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs who may not adequately monitor numerous litigations and counsel simultaneously." *See Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, No. 03-1027, 2003 WL 27391614, at *2 (E.D. La. Aug. 28, 2003). OFPRS's serial involvement in numerous securities class actions in the last three years, exceeding the PSLRA's statutory presumption, is a clear indication that it should not be appointed class representative in this case.[10]

**Local 103.** To obtain class certification, each Proposed Class Representative must demonstrate that it is prepared to represent the interests of the putative class

---

(M.D. Tenn.); *In re Campbell Soup Co. Sec. Litig.*, No. 1:18-cv-14385 (D.N.J.); *Mulquin v. Nektar Therapeutics*, No. 4:18-cv-06607 (N.D. Cal.); *Murphy v. Precision Castparts Corp.*, 3:16-cv-00521 (D. Or.); *Avila v. LifeLock Inc.*, 2:15-cv-01398 (D. Ariz.); *In re Weight Watchers Int'l, Inc. Sec. Litig.*, 1:19-cv-02005 (S.D.N.Y.); *Okla. Firefighters Pension & Ret. Sys. v. Six Flags v. Six Flags Entm't Corp.*, 4:20-cv-00201 (N.D. Tex.); *Logan v. Propetro Holding Corp.*, 7:19-cv-00217 (W.D. Tex.); *In re Farfetch Ltd. Sec. Litig.*, 1:19-cv-08657 (S.D.N.Y.); *In re Finisar Corp. Sec. Litig.*, 5:11-cv-01252 (N.D. Cal.); *Freeman on behalf of Testla, Inc. v. Musk*, Civil Action No. 17-317-VAC-CJB, Civil Action No. 17-461-VAC-CJB (D. Del.). "[T]he 5-in-3 rule is *not* confined to simply the number of *presently* active cases a party is serving as a lead plaintiff in, but applies to all cases (active or otherwise) the party in question has served as a lead plaintiff in the past three years." *Cunha v. Hansen Nat. Corp.*, Nos. ED CV 08-01249-SGL(JCx), ED CV 08-01278-SGL(JCx), 2009 WL 2029797, at *4 (C.D. Cal. July 13, 2009).

[10] This is especially true given there are two other Proposed Class Representatives. The Court need not appoint yet a third, whose litigation track record clearly violates the spirit of the PSLRA's goal to avoid repeat plaintiffs facilitating lawyer-driven securities class actions.

vigorously. Indeed, the primary indicator of adequacy, or the lack thereof, is "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *See Kirkpatrick*, 827 F.2d at 726. The Court should consider whether a prospective lead plaintiff "may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim." *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009).

Local 103's deposition testimony establishes that it is either unable or unwilling to serve as an adequate representative in this case. Throughout the entirety of Local 103's deposition, it either could not recall the answers to simple questions regarding this litigation or refused to answer them. For instance, when questioned about critical class certification documents, including its lead plaintiff certification and the Joint Declaration, ███████████████████████████████

████████████████████████████████████████████

███████████ Local 103 also repeatedly refused to answer ████████████

████████████████████████████████████████████

██ ██████████████████████████████████████████

████████████████████████████████████████████

21

███████████████████████ [11] Underscoring its inability to prove its adequacy to

represent the putative class, Local 103 confirmed that █████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

Local 103's inability (and in some cases outright refusal) to answer

straightforward and illustrative questions about its involvement in this litigation is a

clear indication that it is not prepared to act as an adequate class representative. *See*

*Kelley v. Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 409–10, 412 (W.D. Okla.

1990) (denying motion for certification on adequacy grounds because of plaintiffs'

inability or refusal to answer deposition questions, noting plaintiffs knew little about

the case "other than that told them by their counsel"). This is yet another reason, in

addition to the compelling reasons already noted above, to deny Plaintiffs' request

for Local 103's appointment.

---

[11] During redirect, ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

22

## II.   PLAINTIFFS CANNOT SHOW PREDOMINANCE UNDER RULE 23(b)(3).

Under Rule 23(b), the Court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Court's inquiry under Rule 23(b)(3) is "even more demanding" than the already "rigorous" Rule 23(a) analysis. *See Comcast*, 569 U.S. at 34. Indeed, the Supreme Court has stated that district courts should take a "close look" at the predominance requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Plaintiffs have failed to satisfy the predominance requirement because they have failed to set forth a methodology demonstrating that damages can be determined on a class-wide basis consistent with Plaintiffs' theory of liability. *See Comcast*, 569 U.S. at 34–35. Plaintiffs cannot meet their burden on this point with mere "assurance to the court that [they] intend[] or plan[]" to do so in the future. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008). Indeed, "[e]very question of class certification will depend on the nature of the claims and evidence presented by the plaintiffs." *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015).[12] Plaintiffs have failed to meet this requirement in this case.

---

[12] In *Neale*, the Third Circuit declined an invitation to apply strictly the requirements of *Comcast* in a consumer class action, holding "'individual damages calculations

**A.      Plaintiffs Present No Evidence That They Can Measure Class-wide Damages Consistently With Their Theory Of Liability.**

Plaintiffs have failed to put forth any model for calculating class-wide damages that is consistent with Plaintiffs' theory of liability in this case.  Instead, Plaintiffs rely exclusively on the Coffman Report to postulate that "[d]amages here can be calculated using standard, well-accepted methods."  Mem. at 13 n.4.  Notably, however, Plaintiffs cannot meet their burden with mere "assurance to the court that [they] intend[] or plan[]" to create such a model in the future.  *See Hydrogen Peroxide*, 552 F.3d at 318.

Mr. Coffman's proposed damages methodology is limited to a conclusory statement that "there is a well-accepted method to compute damages in a Section 10(b) action such as this," namely the "out-of-pocket method."  *See* Dkt. 76-10 Coffman Report ¶¶ 79–80.  As Mr. Coffman acknowledges, the methodology he offers here is *not* case-specific:

do not preclude class certification under Rule 23(b)(3).'"  *See Neale*, 794 F.3d at 374–75 (quoting *Comcast*, 133 S. Ct. at 1437 (Ginsburg, J. & Breyer, J., dissenting)).  But separate from that question in the context of a securities class action is the threshold question of whether Plaintiffs' damages methodology itself is consistent with their theory of liability in this case—a point that depends on "the nature of the claims and evidence presented by the plaintiffs."  *See Neale*, 794 F.3d at 374.  On that point, the "straightforward application of class-certification principles" discussed in *Comcast* are instructive, *see Comcast*, 569 U.S. at 34, as numerous courts have found in the context of securities class actions.  *See*, *e.g.*, *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 677 (5th Cir. 2015); *Loritz v. Exide Techs.*, No. 2:13–cv–02607–SVW–E, 2015 WL 6790247, at **22-23 (C.D. Cal. July 21, 2015); *Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015).

> Q.     Mr. Coffman, how, if at all, is Section 8 of your report here different from similar sections of our other expert reports in securities class actions?
>
> A.     I mean, the wording of the section and sort of the bases for the conclusion aren't any different. . . .

Ex. 7, Coffman Dep. at 178:5-11, 181:22-182:7.  Mr. Coffman's explanation, that "the whole point" is "the out-of-pocket methodology is the appropriate methodology with which to calculate damages," *see id.* at 178:9-20, fails to provide insight as to how that methodology would be utilized in this particular case such that it is consistent with Plaintiffs' theory of liability.

Mr. Coffman attempts to avoid this issue by distinguishing "inputs" to the damages methodology as a separate question requiring a loss causation analysis, generally performed through an "event study." *See* Dkt. 76-10 Coffman Report at ¶ 81–82.  Mr. Coffman's explanation, however, makes clear that he has not provided any meaningful insight into how those inputs would be obtained or utilized in this particular case.  For instance, Mr. Coffman acknowledges that disaggregation of other confounding news that may have impacted Conduent's stock price the same day as the alleged corrective disclosure is "an inherently case-specific question that depends on specific facts and circumstances." *See id.* ¶ 82.  Mr. Coffman provides no insight as to how he would perform such a disaggregation analysis in this case other than pointing to a non-exhaustive list of "techniques" for performing that task. *See id.*  Similarly, Mr. Coffman acknowledges that utilization of a "constant dollar

inflation" or "constant percentage inflation" to calculate alleged artificial inflation is case-specific. *See id.* ¶ 83. But he acknowledges that he has not evaluated whether either method or a "varying inflation band" would be appropriate in this particular action. *See id.*; Ex. 7, Coffman Dep. at 203:22-204:7.

After *Comcast*, simply invoking the words "event study" has lost the power upon which Mr. Coffman seems to rely. As the *BP* Court explained in rejecting Mr. Coffman's similarly vague proposal:

> Simply invoking the event study methodology may have . . . satisfie[d] the first half of *Comcast*'s test: that damages be measurable on a class-wide basis. But it does not satisfy the second half of that test. It does not assuage the Court that the class-wide damages methodology proposed will track Plaintiffs' theories of liability, as the Supreme Court expressly required in *Comcast* before a class may be certified.

*See In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013); *see also Loritz v. Exide Techs.*, No. 2:13–cv–02607–SVW–E, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015) (denying class certification under Rule 23(b)(3) where plaintiffs' expert discussed techniques for computing damages in securities fraud cases but "fail[ed] to tie these theories to the facts of this case or to each other—in other words, he fail[ed] to propose one model explaining how he would use these techniques in concert to calculate damages in this case").

Plaintiffs' "trust me" approach is therefore clearly deficient under Rule 23 and *Comcast*. By failing to put forth a damages model consistent with its theory of liability, Plaintiffs have failed to satisfy their burden to demonstrate predominance

26

under Rule 23(b)(3). *See Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08CV0160, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts . . . that there are unspecified 'tools available to measure damages, the model amounts to 'no damages model at all,' and the class cannot be certified.") (citation omitted); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) ("[W]ithout assurance beyond [expert's] say-so, the Court cannot conclude that there is a damages model that will permit the calculation of damages on a classwide basis."); *Sicav*, 2015 WL 268855, at *5 (similar); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253–54 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification. . . . It is not enough to submit a questionable model whose unsubstantiated claims cannot be refuted through *a priori* analysis.").

**B.      Defendants' Expert Report Shows That Plaintiffs Have Not Proposed A Methodology That Can Measure Class-wide Damages Consistently With Their Theory Of Liability.**

As Professor René M. Stulz, Ph.D. explains in his Rebuttal Report (Ex. 8): "A damages methodology should measure artificial price inflation and investor losses attributable only to the alleged misrepresentations and/or omissions for which Plaintiffs claims Defendants are liable . . . any price drops attributable to other causes . . . should be excluded." *See* Ex. 8, Stulz Report ¶ 26. In order to do that, "it is

27

necessary to examine Plaintiffs' theory of liability and the fact pattern of a case in order to demonstrate that a damages methodology that is economically sound can be used to estimate damages on a class-wide basis consistent with this theory." *See id.* ¶ 27.

As Professor Stulz observes, however, Mr. Coffman provides only a "generic, boilerplate overview of a damages approach," and his damages discussion lacks even "a single reference to Conduent or the facts in this case." *See id.* ¶¶ 25, 27. In short: "Mr. Coffman has not proposed a damages methodology that can be applied on a class-wide basis and that is consistent with Plaintiff's theory of liability." *See id.* ¶ 31. His failure to do so is apparent for at least the following three reasons.

*First*, Mr. Coffman fails to propose a scientific and reliable methodology that can account for the fact that the stock price drop following the alleged corrective disclosure at least partly reflected realizations of risks that were described prior to and throughout the proposed Class Period. *See id.* ¶¶ 33–64. As Professor Stulz explains, risks associated with vendor and legacy IT issues were undoubtedly known to the market at some level, *even if* (as Plaintiffs allege and Defendants refute) Defendants misrepresented the severity of those risks by making false or misleading statements concerning those subjects. For instance, Professor Stulz explains how market participants were already aware of financial risks regarding Conduent's use of subcontractors, *id.* ¶¶ 41–44, as well as execution risks related to work performed

28

as a part of the Strategic Transformation, *id.* ¶¶ 45–55. Even if Conduent did not provide the market with an accurate understanding of the true probability of risks relating to these subjects, "Mr. Coffman has not described a methodology that could distinguish the stock price impact from *concealed* risk being disclosed versus the impact from *disclosed* risk materializing into reality, which would have no bearing in measuring inflation." *See id.* ¶ 40 (emphasis added).

Professor Stulz provides a "simplified example" in his Report to illustrate this issue. *See id.* ¶¶ 58–60. In his example, he assumes that the likelihood of IT-related client service disruptions at a given company is 10%. *See id.* ¶ 58. In an efficient market, any expected loss resulting from such disruptions would already be factored into the market price of the stock. *See id.* Professor Stulz further assumes that the given company's misstatements about vendor management and IT infrastructure resulted in maintaining the market's belief that the risk of disruptions was 10% when, in fact, the likelihood was 20%. *See id.* ¶ 59. Ultimately, if IT-related client service disruptions did in fact occur, "the *actual* drop in the value of the equity" for the company "will be equal to the cost of the problems, less what had *already been anticipated* by the market[.]" *See id.* ¶ 60 (emphasis added).

The problem, then, is that "Mr. Coffman has not explained how his proposed damages approach can reliably estimate the price effect (if any) of the *concealed* degree of risk based on the price movements that reflect the materialization of

29

previously *disclosed* risks." *See id.* ¶ 63 (emphasis added). Mr. Coffman acknowledged this much is required, observing that "to the extent a company misrepresents a risk either the nature or existence or degree of a risk in some material way, that can cause a divergence between the market price and what the market price would have traded at had there been a fuller disclosure of what the nature, magnitude, or existence of that risk was." *See* Ex. 7, Coffman Dep. at 243:19–244:7. He further stated, "the loss causation analysis would have to figure out how different the price would be upon disclosure of what they could have disclosed at each point in time." *See id.*; *see also* Ex. 8, Stulz Report ¶ 63. But Mr. Coffman "does not describe a methodology that would allow him to 'figure out how different the price would be upon disclosure.'" *See* Ex. 8, Stulz Report ¶ 64. As a result, he has not proposed a methodology that can measure damages consistently with Plaintiffs' theory of liability in this case.

**Second**, Mr. Coffman fails to propose a scientific and reliable methodology to disentangle the stock price impact of the alleged corrective disclosure from the impact of other confounding news that was released the same day. *See id.* ¶¶ 65–78. As Professor Stulz observes, this much is required: "A scientific and reliable damages methodology must be able to disentangle the stock price effects of allegedly corrective information from the stock price effects of other confounding information." *See id.* ¶ 65; *see also Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 232

30

(4th Cir. 2004) ("[R]ecovering out-of-pocket damages based on the market price of a security . . . requires elimination of that portion of the price decline that is the result of forces unrelated to the wrong."). Performing this sort of disentanglement is, as Mr. Coffman explains, "not always easy to do precisely"; the analysis is "very fact specific, circumstance specific." *See* Ex. 7, Coffman Dep. at 192:22–195:5. Yet Mr. Coffman has not provided any fact or case-specific insight into how he would perform that analysis here.

Mr. Coffman's failure on this point is especially troubling in this case. As Professor Stulz observes, "there was confounding information released on the alleged corrective disclosure date." *See* Ex. 8, Stulz Report ¶ 69. For instance, the alleged November 7, 2018 corrective disclosure coincided with Conduent's 3Q 2018 earnings release, which attributed Conduent's lowered financial guidance to factors unrelated to Plaintiffs' allegations.[13] *See id.* ¶¶ 70–75. Moreover, the Company also "announced an increase in litigation reserves for Texas litigation issues," which analysts viewed as "increasing risk and uncertainty for the Company"—hardly surprising given alleged damages in the Texas case were $2 billion. *See id.* ¶¶ 70,

---

[13] As Professor Stulz observes, for instance, during the earnings call Conduent "attributed the reduced outlook for FY 2018 as a whole to five separate factors: (1) lower sales activity, (2) 'continued suboptimal performance from an inherited legacy technology vendor,' (3) 'major' operational disruptions due to 'historically underinvested legacy IT infrastructure,' (4) slower than expected European business, and (5) 'slippage of deal signings into latter quarters.'" *See* Ex. 8, Stulz Report ¶ 71 (citation omitted).

76.   Mr. Coffman has not articulated a scientific and reliable methodology for disentangling the stock price impact from these and other factors unrelated to Plaintiffs' allegations in this case.

Prior cases involving Mr. Coffman demonstrate the importance of requiring more at this stage of the case.   In *Gross v. GFI Group*, the defendants did not challenge predominance at class certification, No. 14CV9438, 2017 WL 3668844, at *2 (S.D.N.Y. Aug. 23, 2017) (opposing certification "solely" on adequacy grounds), and it was not until summary judgment that the court finally determined that Mr. Coffman's analysis failed to provide a method for disentangling confounding information from alleged corrective information, 310 F. Supp. 3d 384, 398 (S.D.N.Y. 2018) ("Coffman does not attempt to attribute any portion of the increase in GFI's share price to a corrective disclosure as opposed to other simultaneously released information.").   As *Gross* suggests (and *Comcast* requires), Mr. Coffman must articulate *at this stage* how his proposed damages methodology would account for confounding information, which he has failed to do.

*Third*, Mr. Coffman fails to propose a scientific and reliable methodology for measuring time-varying inflation throughout the proposed Class Period.   *See* Ex. 8, Stulz Report ¶¶ 79–87.   As Mr. Coffman explains in his report, estimating damages in this case "would also require an analysis of how inflation per share may have

32

evolved over the class period."[14]   *See* Dkt. 76-10 Coffman Report ¶ 83.   But as Professor Stulz observes, "Mr. Coffman does not 'have an opinion' about whether inflation specifically in this case evolved over the span of the Proposed Class Period."   *See* Ex. 8, Stulz Report ¶ 84 (quoting Ex. 7, Coffman Dep. at 201:23–202:5).   Although Mr. Coffman claimed that "a separate analysis is required" to determine how the value of stock price decline due to specific information would have evolved over time, "he did not specify what 'separate analysis' would be required."   *See id.* ¶ 86 (quoting Ex. 7, Coffman Dep. at 196:5–20).   Mr. Coffman's failure to provide any "fact or case-specific details as a basis for his conclusion that a reasonable methodology exists" on this point, *see* Ex. 8, Stulz Report ¶ 87, is inconsistent with Plaintiffs' obligation to provide a methodology that can measure damages consistent with their theory of liability.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should deny Plaintiffs' Motion, and Plaintiffs should not be permitted to try again. *See*, *e.g.*, *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 316 (5th Cir. 2005) ("Nor are we persuaded that we should require that [the plaintiffs] get a second bite at the class

---

[14] Professor Stulz provides this example: "Plaintiffs' claims appear to inherently involve the disclosure of information that could not have been disclosed at the beginning of the Proposed Class Period," such as "the client service disruptions that the Complaint alleged occurred over the summer of 2018." *See* Ex. 8, Stulz Report ¶¶ 83–84.

certification apple; inadequate briefing on an issue critical to class certification for which a party bears the burden of proof is no basis for us to order a repêchage round."). Instead, the Court should "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]" *See* Fed. R. Civ. P. 23(d)(1)(D).

Respectfully submitted this 21st day of January, 2021.

*/s/ Israel Dahan*

**KING & SPALDING LLP**
Israel Dahan
1185 Avenue of the Americas, 36th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Fax: (212) 556-2222
idahan@kslaw.com

B. Warren Pope (*pro hac vice*)
Bethany M. Rezek (*pro hac vice*)
Brian D. Barnes (*pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100
wpope@kslaw.com
brezek@kslaw.com
bbarnes@kslaw.com

*Counsel for Defendants*

34

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to attorneys of record.

DATED this 21st day of January, 2021.

*/s/ Israel Dahan*
Israel Dahan

*Counsel for Defendants*
