**LAW OFFICES OF JAN MEYER**
**& ASSOCIATES, P.C.**
Richard Elem, Esq.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Telephone: 201-862-9500
Email: relem@janmeyerlaw.com

*Liaison Counsel for Lead Plaintiff*

[Co-Lead Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Case No.: 2:19-cv-08237-SDW-LDW<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br><br>Motion Day: March 1, 2021 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.  The Plaintiffs Are Adequate Under Rule 23(a)(4) ............................................................. 2

    A.  The Proposed Class Representatives Are Engaged in the Litigation ...................... 3

    B.  The Three Proposed Class Representatives Should Represent the Class ............... 7

    C.  The Separate Attacks on OFPRS and Local 103 Have No Merit ......................... 11

II.  The Class Satisfies Rule 23(b)(3) as Questions of Law or Fact Common to the Class Predominate Over Individual Questions ........................................................................... 13

CONCLUSION ......................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..................................................................................................... 16

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................... 13

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ......................................................................................... 3

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018), *aff'd sub nom.*
*Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019)................................. 14

*Chiaretti v. Orthodontic Centers of Am., Inc.*,
No. CV 03-1027, 2003 WL 27391614 (E.D. La. Aug. 28, 2003) ......................................... 12

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018)................................................................................. 17

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ..................................................................................... 6

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
No. CIV.A. 12-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) ......................................... 16

*City of Sunrise Gen. Employees' Ret. Plan v. FleetCor Techs., Inc.*,
No. 1:17-CV-02207-LMM, 2019 WL 3449671 (N.D. Ga. July 17, 2019) ............... 15, 16, 17

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)................................................................................................. *passim*

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) ....................................................................................... 2,3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................... 16

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ..................................................................................... 16

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ............................................................................... 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................................................................................... 13

*Howard v. Liquidity Servs. Inc.*,
322 F.R.D. 103 (D.D.C. 2017) ..................................................................................... 15

*In re Am. Italian Pasta Co. Sec. Litig.*,
No. 05-0725-CV-W-ODS, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ............................. 6

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) .................................................................................... 15

*In re BP P.L.C. Sec. Litig.*,
No. 10-md-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ........................................ 15

*In re BP P.L.C. Sec. Litig.*,
No. 10-md-2185, 2014 WL 2112823 (S.D. Tex. May 20, 2014),
*aff'd sub nom. Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015) .................................... 16

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................................................... 3

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................... 7, 8, 9

*In re DaimlerChrysler AG Sec. Litig.*,
216 F.R.D. 291 (D. Del. 2003) ..................................................................................... 11

*In re Diasonics Sec. Litig.*,
599 F. Supp. 447 (N.D. Cal. 1984) ............................................................................... 10

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ............................................................................ 3

*In re Heckmann Corp. Sec. Litig.*,
No. CA 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013) .............................. 14

*In re Herley Indus. Inc.*,
No. CIV.A. 06-2596, 2010 WL 176869 (E.D. Pa. Jan. 15, 2010) ..................................... 11

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ........................................................................... 3, 5, 6

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
No. CIV.A. 05-1151 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013) ........................... *passim*

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ....................................................................................... 3

*In re Novo Nordisk Sec. Litig.*,
No. 3:17-CV-00209-BRM-LHG, 2020 WL 502176 (D.N.J. Jan. 31, 2020).................. 5, 8, 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013)..................................................................................... 16

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) .......................................................................... 7

*In re SanDisk LLC Sec. Litig.*,
No. 15-CV-01455-VC, 2018 WL 4293336 (N.D. Cal. Sept. 4, 2018) ................................ 15

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020) ....................................................................................... *passim*

*In re Vicuron Pharm., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)................................................................................... 11

*In re Vicuron Pharm., Inc. Sec. Litig.*,
233 F.R.D. 421 (E.D. Pa. 2006)................................................................................... 3

*In re Willis Towers Watson PLC Proxy Litig.*,
No. 1:17-CV-1338 (AJT/JFA), 2020 WL 5361582 (E.D. Va. Sept. 4, 2020)......................... 6

*In re Wilmington Trust Sec. Litig.*,
310 F.R.D. 243 (D. Del. 2015) .................................................................................... 8

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009) ........................................................................ 5, 6

*Kelley v. Mid-Am. Racing Stables, Inc.*,
139 F.R.D. 405 (W.D. Okla. 1990) ............................................................................. 13

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ..................................................................................... 5

*Knurr v. Orbital ATK, Inc.*,
220 F. Supp. 3d 653 (E.D. Va. 2016) .......................................................................... 12

*Levy v. Gutierrez*,
   448 F. Supp. 3d 46 (D.N.H. 2019)..................................................................................... 15

*Loritz v. Exide Techs.*,
   No. 2:13-CV-02607-SVW-E, 2015 WL 6790247 (C.D. Cal. July 21, 2015) ....................... 16

*Luna v. Marvell Tech. Grp., Ltd.*,
   No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)................................. 16

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
   No. CV 07-7114 CAS (FMOx), 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010)................. 12

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) ................................................................................. 14, 15, 16

*Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ...................................... 16

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
   No. CV 18-871 (MJD/HB), 2020 WL 5757695 (D. Minn. Sept. 28, 2020)........................... 6

*Pub. Employees' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
   No. 16-CV-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ....................................... 3, 15

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019)......................................................................................... 3, 5, 9

*Sicav v. James Jun Wang*,
   No. 12 Civ. 6682(PAE), 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ................................ 16

*Takata v. Riot Blockchain, Inc.*,
   No. CV 18-2293 (FLW) (TJB), 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ........................... 7

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
   No. CV 13-6731, 2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ........................................... 15

*Weiner v. Tivity Health, Inc.*,
   334 F.R.D. 123 (M.D. Tenn. 2020) .................................................................................... 14

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................... 8, 11

15 U.S.C. § 78u-4(a)(3)(B)(vi) ............................................................................................ 11

**Other Authorities**

7 Newberg on Class Actions § 22:34 ........................................................................................... 11

**INTRODUCTION**

There is no serious opposition to certifying this securities fraud action as a Rule 23(b)(3) class action and appointing OFPRS, PCRA, and Local 103 ("Plaintiffs") as class representatives.[1] The Parties agree that the proposed Class is numerous with common claims, Plaintiffs' claims are typical of the Class, a class action here is superior to individual actions, and that Class Counsel is qualified. *See* Rule 23(a)(1-3), (g). The only issues Defendants raise involve Rule 23(a)(4) (whether the Plaintiffs are adequate to represent the Class) and Rule 23(b)(3) (whether common questions predominate).

The Plaintiffs easily satisfy Rule 23(a)(4). The Third Circuit's adequacy test is simple: the class representatives must represent the class by having a "minimal degree of knowledge about the case." If that test is met, then defendants can only rebut the representatives' adequacy by showing a fundamental, intra-class conflict.

Testimony shows the Plaintiffs are knowledgeable about this case, and Defendants' brief admits Plaintiffs are "aware of the facts and circumstance at issue in this litigation." Opp'n at 7, 8. Yet Defendants, who contest adequacy, do not identify any intra-class conflicts. In truth, there is absolutely no evidence of any conflict between the Plaintiffs and the Class or their counsel—let alone any fundamental conflict. Thus, the Plaintiffs are adequate under controlling law.

Undeterred by the facts and precedent against them, Defendants argue that the Court should create a new test to determine whether three plaintiffs can serve as class representatives under Rule 23(a)(4). The Court should summarily reject this invitation. There is no support in this Circuit for changing the Rule 23 adequacy analysis. Defendants also claim the Court should

---

[1].Unless otherwise defined, capitalized terms have the same definitions as in the Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification, (ECF No. 76-2). "Compl. ¶__" refers to paragraphs in the Amended Complaint. "Opp'n" refers to Defendants' Opposition to Lead Plaintiff's Motion to Class Certification (ECF No. 79).

review the Lead Plaintiff determination, but with Defendants' input about whether the Plaintiffs (who already sustained a meritorious complaint against Defendants) should be able to sue them as a group. Courts in this District, however, repeatedly reject such arguments at the class certification stage because Congress designed the lead plaintiff provision as a way for plaintiffs and the court to organize plaintiffs at the outset of the case only.

Defendants' challenge to Rule 23(b)(3) is also unfounded. Lead Plaintiff's expert opined that damages can be calculated on a class-wide basis using the out-of-pocket method and an event study. Courts routinely and typically accept this type of expert opinion as sufficient to show damages questions predominate in securities class actions. Defendants, however, claim that Lead Plaintiff must submit a damages model at class certification in order to explore loss causation issues. This argument holds no weight in the Third Circuit and in dozens of courts across the country. Punctuating the flimsiness of this challenge, Defendants' expert essentially opines that calculating damages may be complicated, but does not dispute that damage issues will be resolved on a class-wide basis in this case.   Therefore, common questions will predominate.

Accordingly, the Class should be certified as defined in the motion, OFPRS, PCRA, and Local 103 should be appointed class representatives, and Bernstein Liebhard LLP and Thornton Law Firm LLP appointed Class Counsel.

## ARGUMENT

### I.      The Plaintiffs Are Adequate Under Rule 23(a)(4)

"The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). Class representatives are adequate if they have "'[a] minimal degree of knowledge' about the case, and have no conflict of interest with

class counsel, and members of the class." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020); *Roofer's Pension Fund* v. *Papa*, 333 F.R.D. 66, 77 (D.N.J. 2019).

Only "'fundamental' conflicts 'will defeat the adequacy requirement.'" *In re Suboxone,* 967 F.3d at 272 (citing *Dewey*, 681 F.3d at 184 (internal quotations omitted). In order to claim a fundamental conflict, Defendants must show an intra-class conflict "where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Dewey* 681 F.3d at 184; *In re Merck & Co. Sec., Deriv., & ERISA Litig.*, No. CIV.A. 05-1151 SRC, 2013 WL 396117, at *8 (D.N.J. Jan. 30, 2013). A fundamental conflict cannot be speculative, as "hypothetical conflicts cannot defeat adequacy." *Suboxone Antitrust Litig.*, 967 F.3d at 273.[2]

As shown below, the Plaintiffs are knowledgeable about the action and Defendants have no evidence of any conflict, let alone a fundamental one that could defeat adequacy. Accordingly, the Plaintiffs are adequate to represent the Class.

**A.      The Proposed Class Representatives Are Engaged in the Litigation**

 A class representative is adequate if it has "'a minimal degree of knowledge' about the litigation ….", 967 F.3d at 273 (*citing In re Nat'l Football League Players Concussion Injury*

---

[2] Defendants claim the PSLRA "raises the standard adequacy threshold" based on the Fifth Circuit rule of *Berger v. Compaq. Computer Corp.*, 257 F.3d 475, 483-84 (5th Cir. 2001), and then use Texas cases like *Kosmos* and *Enron* to challenge adequacy. *See* Opp'n at 5, 7-8, 11-13. Those cases are inapplicable here as the *Berger* rule is unique to the Fifth Circuit. Courts within the Third Circuit and nationwide find the PSLRA "did not change the standard for adequacy…." *In re Cavanaugh*, 306 F.3d 726, 736-37 (9th Cir. 2002) (discussing why the *Berger* rule is incorrect); *In re Vicuron Pharms. Inc. Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) ("there is no reason to believe that the PSLRA altered the preexisting [Rule 23(a)(4)] standard"); *Public Employees' Ret. Sys. of Miss. v. TreeHouse Foods*, No. 16-CV-10632, 2020 WL 919249, at *7 n.5 (N.D. Ill. Feb. 26, 2020) (stating the Fifth Circuit's "idiosyncratic adequacy standards" are limited to that circuit).

*Litig.*, 821 F.3d 410, 430 (3d Cir. 2016). Moreover, challenges to a class representative's degree of knowledge are meritless when the class representative is an engaged representative. *See Suboxone*, 967 F.3d at 273 (3d Cir. 2020). Plaintiffs meet and exceed this requirement.

Defendants admit that each Plaintiff is "aware of the facts and circumstances at issue in this litigation …" Opp'n at 7, 8. Indeed, Plaintiffs each testified to a sophisticated understanding of the factual and legal underpinnings of the litigation. OFPRS Tr. 119:20-122:21; Local 103 Tr. 153:8-23; 154:17-19; PCRA Tr. 125:25-126:25.[3] Additionally, Plaintiffs testified at length about their active involvement with, and oversight of, their counsel. Each stated that they receive regular updates and discuss the case with counsel either monthly or quarterly. Local 103 Tr. 200:12-14; OFPRS Tr. 187:9-20; PCRA Tr. 15:3-9; 170:15-20. Each has stayed abreast of developments in the case, testifying to how they reviewed the Court's orders (Local 103 Tr. 23:3-14; PCRA Tr. 17:15-21; OFPRS Tr. 16:18-17:9); and each participated in discovery, including responding to interrogatories, producing documents, and testifying. Local 103 Tr. 285:11-287:24; OFPRS Tr. 221:2-8; 230:8-231:7; PCRA Tr. 229:2-20. Plaintiffs also reviewed and approved filing their Lead Plaintiff motion, Amended Complaint, and class certification motion. OFPRS Tr. 17:10-18:8, 160:14-161:1; PCRA Tr. 138:8-22, 180:5-11, 217:12-19; Local 103 Tr. 162:5-21; 210:3-15; 265:9-24.

Furthermore, the Plaintiffs testified about how they interact with class counsel:

- OFPRS:

---

[3] Complete transcripts of the proposed class representatives' deposition are attached as exhibits: Exhibit A, Deposition Transcript of Chase Rankin on behalf of OFPRS ("OFPRS Tr."), Exhibit B, Deposition Transcript of David Sullivan on behalf of PCRA ("PCRA Tr.") and Exhibit C, Deposition Transcript of Michael Donovan, on behalf of Local 103 ("Local 103 Tr."), to the Declaration of Michael S. Bigin filed herewith.

████████████████████████████████ OFPRS Tr. 172:25-173:24.

- PCRA: ████████████████████████
████████████████████████████████
████████ PCRA Tr. 153:4-6; 155:18-23.

- Local 103: ████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

Local 103 Tr. 182:15-183:8; *see also* 273:4-19.

This evidentiary record is akin to what courts in this District have noted in deeming similar proposed class representatives as adequate in securities class actions. *See Papa*, 333 F.R.D. at 77 (rejecting argument that six securities class representatives were "[m]outhpieces for '[l]awyer [d]riven' litigation," where they demonstrated familiarity with the litigation, appeared for deposition, corresponded with counsel regularly, reviewed and discussed relevant pleadings and discovery with counsel, had a general understanding of the allegations and issues in dispute, and retained adequate counsel); *In re Novo Nordisk Sec. Litig.*, No. 3:17-CV-00209-BRM-LHG, 2020 WL 502176, at *6-7 (D.N.J. Jan. 31, 2020) (certifying a group of five plaintiffs); *Merck*, 2013 WL 396117, at *9 (certifying a group of four plaintiffs).[4]

Defendants' arguments concerning whether Plaintiffs have enough control over the action are meritless because they provide no evidence of disengagement or any fundamental conflict. First, Defendants state that Lead Plaintiff lacks control because OFPRS and PCRA had monitoring agreements with counsel, ████████████████████████. Opp'n at 7.[5]

---

[4] Defendants mistakenly rely on *Kirkpatrick* v. *J.C. Bradford*, 827 F.2d 718 (11th Cir. 1987) in which the Eleventh Circuit stated that proposed representatives "abdicated their role" to counsel if they have "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class." *Id.* at 727. That is not the case here.

[5] The criticism for portfolio monitoring agreements that Defendants rely on (Opp'n at 8) comes from a discussion of *Iron Workers Local No. 25 Pen. Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) within *In re Kosmos*, 299 F.R.D.

5

Portfolio monitoring services, however, are consistent with an institution's fiduciary obligations to protect the assets of their participants. *See In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745, at *5 (W.D. Mo. 2007) (approving institutional investor as lead plaintiff with monitoring agreement and noting a duty to monitor for fraud). That is why "courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives. . . . [and Courts] find [] unpersuasive the argument that [a] potential lead plaintiff 'abdicated its oversight role' because counsel may have performed free monitoring services." *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y. 2012). Accordingly, Defendants' attack on the propriety of portfolio monitoring should be rejected here, just as it is "routinely rejected" across the country. *In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-CV-1338 (AJT/JFA), 2020 WL 5361582, at *15 (E.D. Va. Sept. 4, 2020) (collecting decisions); *see also Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, No. CV 18-871 (MJD/HB), 2020 WL 5757695, at *7-8 (D. Minn. Sept. 28, 2020) (rejecting similar adequacy arguments).

Second, Defendants take issue with the fact that the Plaintiffs base their understanding of the allegations on the Amended Complaint. *See* Opp'n at 8-9. However, this is not only permissible, but expected. *Merck*, 2013 WL 396117, at *9 ("The Third Circuit has held that the adequacy … test is not concerned with whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel. Indeed, it is to be expected in a complex lawsuit such as the one at bar that a litigant may rely heavily on his counsel"). Unsurprisingly, Defendants do not (and cannot) cite any decision showing why their protests are relevant. Opp'n at 8-9; *see also Patterson Cos.*, 2020 WL 5757695, at *7-8 (deeming Plymouth an adequate representative, rejecting identical attacks on adequacy).

---

at 149. In *Iron Workers*, Judge Rakoff was concerned that a free monitoring agreement obligated a pension fund to use specific counsel. 616 F. Supp. 2d at 464. No such arrangements exist here.

6

Third, Defendants claim, without basis, that Lead Counsel formed the Lead Plaintiff group as a vehicle to generate a fee.[6] This is untrue. The Plaintiffs testified that they independently decided to get involved in the litigation and their desire to proceed as a group. *See* PCRA Tr. 148:20-25 ███████████████████████████████; OFPRS Tr. 155:25-156:16; 171:7-13; Local 103 Tr. 157:16-17; 215:3-23; 241:20-22.[7] Moreover, Defendants wrongly claim the Plaintiffs' losses may not motivate them to prosecute this action because they are large institutional investors. But this argument ignores the PSLRA's goal to entice institutional investors to lead actions and shows that Defendants do not understand what it means to be a fiduciary for systems that provide compensation to government workers and first responders. Opp'n at 11.

Accordingly, the Plaintiffs have sufficient knowledge and are engaged in this case.

**B.      The Three Proposed Class Representatives Should Represent the Class**

At the Lead Plaintiff stage this Court independently considered whether the four institutional investor, Lead Plaintiff "movant group [was] too large to represent the class in an adequate manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). This determination was made early in the case because a lead plaintiff group that is too large could conflict with "the PSLRA's goal of having an engaged lead plaintiff actively supervise the

---

[6] Defendants' argument at Opp'n at 9-10 with respect to the Wolf Popper law firm, who are working as additional counsel consistent with the Court's Order (ECF 10, ¶ 3) is a red herring. Plaintiffs testified that they are aware of Wolf Popper's role as additional counsel, and Defendants' efforts to find out what specific tasks they are working on has no bearing on the Plaintiffs' adequacy. *See* OFRPS Tr. 128:1-7; PCRA Tr. 157:21-158:14; Local 103 Tr. 190:9-12.

[7] Defendants' cited decisions expressing hesitation towards groups are distinguishable because they concerned lead plaintiff motions – not class certification. *See* Opp'n at 13 (citing *Takata* v. *Riot Blockchain*, No. CV 18-2293 (FLW) (TJB), 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) and *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001)). Moreover, the plaintiff group in *Takata* did not communicate until *after* filing for lead plaintiff, which is not the case here. *See* 2018 SWL 5801379, at *5.

conduct of the litigation and the actions of class counsel ….” *Id.* (citing decisions declining to appoint groups with over 250 unrelated investors). Accordingly, the Third Circuit presumes that lead plaintiff “groups with more than five members are too large to work effectively.” *Id*. at 267-68. The lead plaintiff group here is precisely the kind that courts in the Third Circuit have certified as class representative. *See, e.g.*, *Novo Nordisk*, 2020 WL 502176, at *6-7 (appointing a group of five institutional investors as class representatives); *In re Wilmington Trust Sec. Litig.,* 310 F.R.D. 243, 244 (D. Del. 2015) (appointing a group of five institutional investors as class representatives).

Once the Court approved the four-member Lead Plaintiff group at the lead plaintiff stage as the presumptive most adequate plaintiff, the PSLRA only permitted other class members to rebut that presumption with “proof” that the group was not adequate. *Cendant Corp.*, 264 F.3d at 268 (the presumption that a lead plaintiff is adequate is a judicial determination that “may be rebutted only upon proof by a member of the purported plaintiff class”) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *Novo Nordisk*, 2020 WL 502176, at *7 (same). Defendants now argue that the Court should revisit the formation of the Lead Plaintiff group during this Rule 23 motion. The standard Defendants manufacture for this proposition is that “the group must satisfy its burden under Rule 23 to prove that it can function cohesively and independently as an adequate class representative … and the defendant may rebut the group’s arguments ….” Opp’n at 14. This standard does not exist in this Circuit or as Defendants claim in *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997). Under Rule 23 class representatives, who have some knowledge of the litigation, while relying on adequate class counsel, adequately protect the interests of the class. *Suboxone*, 967 F.3d at 272. Defendants can only rebut adequacy by showing a fundamental conflict – which they cannot and do not show here. *Id*.

8

Nevertheless, Plaintiffs have been working effectively as a group to protect the interests of the Class as demonstrated by their work and success in this case. *See* ECF Nos. 18, 37, 40, 76. Contrary to Defendants' assertions, Plaintiffs are actively supervising the litigation and class counsel. They frequently communicate with counsel; reviewed the initial complaint; reviewed and authorized the filing of the Amended Complaint, lead plaintiff motion, and class certification; and discuss litigation events and strategy with counsel. *See supra* at 4-5. Contrary to Defendants' argument, Plaintiffs have also monitored costs and expenses. *See e.g.,* OFPRS Tr. 186:7-22; PCRA Tr. 170:6-20 ███████████████████████████████ ███████████████████████; *Cf.* Opp'n at 5. Thus, Plaintiffs surpass the Rule 23(a)(4) bar and satisfy the goals of PSLRA, which seek engaged plaintiffs to represent the class. *Accord Cendant*, 264 F.3d at 267; *Novo Nordisk,* 2020 WL 502176, at *7; *Merck*; 2013 WL 396117, at *9; *Papa*, 333 F.R.D. at 77.

Defendants claim that Plaintiffs are somehow inadequate because, in addition to their monthly telephone calls and in-person meetings with counsel, they have only held two joint conference calls. *See* Opp'n at 10. Defendants ignore, however, that these joint calls occurred at critical junctures: prior to filing their Lead Plaintiff motion; and after the motion to dismiss was denied, at which point Plaintiffs decided to move for class certification. Local 103 Tr. 172:3-20; PCRA Tr. 140:20-141:5. Plaintiffs also testified that any of the Plaintiffs may request such calls whenever they want. *See* e.g., OFPRS Tr. 163:8-11 ████████████████████████ ███████████████████████; Local 103 Tr. 195:15-24 ████████████████████████ ██████████████████; PCRA Tr. 160:23-24 ██████████████████████████ ████████; 162:11 ███████████████████████. Defendants do not, because they cannot, cite any authority that requires a plaintiff group to meet collectively any set number of times beyond what

9

they consider necessary. In addition, Defendants are concerned that counsel organized the two calls; but this makes sense: counsel work for the Plaintiffs, and are the natural ones to set up the calls.[8]

Defendants also put forth baseless speculation regarding conflict resolution among the Plaintiffs (Opp'n at 15) and ignore the unrebutted testimony that two years into this litigation, there have been no conflicts. *See* Sulllivan Tr. 167:3-8. Defendants cannot defeat adequacy by raising only the specter of conflict because "hypothetical conflicts cannot defeat adequacy." *Suboxone*, 967 F.3d at 273 (rejecting conflicts that were "speculative or without basis"). Plaintiffs also testified that ██████████████████████████████████ ██████████████████████████████. *See* PCRA Tr. 166:5-18. When Defendants tried to elicit Plaintiffs' privileged litigation strategy regarding how their adversaries would resolve hypothetical internal conflicts, Plaintiffs refused. Defendants now seek to weaponize their failed attempt to invade Plaintiff's privilege. Opp'n at. 15-16. This type of stratagem is why courts are typically skeptical of defendants' attacks on adequacy at class certification: it "is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451 (N.D. Cal. 1984).

Plaintiffs are united in interest, suffering damages from Defendants' misstatements. Pls' Mot. at 10-11. As they testified: there has been and is no conflict. Defendants' entire line of argument is speculative innuendo, contrary to Third Circuit law. *Suboxone*, 967 F.3d at 273. Accordingly, Plaintiffs satisfy the adequacy requirement and should be appointed Class

---

[8] Defendants claim they are unconvinced that the procedures to oversee counsel in the joint declaration in support of the Conduent Institutional Investor Group's motion to be appointed lead plaintiff (ECF No. 6-10 at ¶ 10) are "adequate" is without merit. *See* Opp'n at 17-18. However, none of the testimony Defendants cite supports a finding that Plaintiffs' procedures are deficient or not working. *Compare* Opp'n at 17-18 *to* ECF No. 6-10 at ¶ 10.

Representatives.[9]

### C.  The Separate Attacks on OFPRS and Local 103 Have No Merit

OFPRS and Local 103 are adequate class representatives who have demonstrated their knowledge of the case and commitment to representing the Class. Defendants' challenges to their adequacy are without merit.

First, Defendants claim the Court should disqualify OFPRS pursuant to the PSLRA's "restrictions on professional plaintiffs" lead plaintiff provision. 15 U.S.C. § 78-u(4)(3)(B)(vi). This restriction states that a person may be a lead plaintiff in no more than five securities class actions over a three-year period. *Id*. OFPRS exceeds this limit. However, this provision does not apply to institutional investors like OFPRS because it is inconsistent with the PSLRA to restrict institutional investors from serving as lead plaintiff. Congress "made it quite clear that the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors." *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004). That is why Courts reject applying this rule to institutional investors. *See In re Herley Indus. Inc.*, No. CIV.A. 06-2596, 2010 WL 176869, at *4 n.4 (E.D. Pa. Jan. 15, 2010) (quoting *In re DaimlerChryslerAG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003)); *Merck*, 2013 WL 396117, at *9 (same); *see also* 7 Newberg on Class Actions § 22:34 (noting that the "vast majority of courts … have not applied the 5-in-3 rule to institutional investors" and collecting decisions). Accordingly, Defendants are wrong; the Court did not err by appointing OFPRS Lead Plaintiff, nor is OFPRS in inadequate class representative.

---

[9] Defendants also incorrectly argue that the fee provisions in Plaintiffs' retainers are inconsistent and could create a hypothetical conflict. Opp'n at 16, n.8. ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ *See* PCRA Tr. 209:4-10; OFPRS Tr. 211:17-22.

Moreover, Defendants cannot (and did not) assert that OFPRS is conflicted from this litigation by serving as a lead plaintiff in other actions, or is somehow not monitoring this action or its other securities litigations. As the testimony of the Executive Director showed, OFPRS is well versed in the facts of its litigation. *See* OFPRS Tr. 119:20-122:21. ████████████████

████████████████████████████████████████████

████████████   *See id* at 46:24-47:10; 87:12-17. ████████████████████

████████████████████████████and OFPRS' board receives updates of significant litigation events. *Id.* at 50:1-19. Accordingly, Defendants' protest is without credence and should be disregarded. *See Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 WL 11507255, at *6 (C.D. Cal. Aug. 27, 2010) (rejecting defendants' argument that class certification should be denied where defendants presented no evidence that a plaintiff exceeding the five in three rule would have issues managing multiple litigations).[10]

Second, Defendants' argument that Local 103 supposedly "could not recall the answers to simple questions regarding this litigation or refused to answer them" (*see* Opp'n at 22) is belied by Local 103's extensive testimony regarding:  what this case is about (Local 103 Tr. 152:20-154:19); its damages (*Id.* at 215:3-23); frequent communication with, and oversight of counsel (*Id.* at  189:11-23; 200:12-14); its review of the Amended Complaint and other filings before they were filed (*Id.* at 210:3-15; 265:9-24); and why a class action is appropriate and more efficient for this matter (*Id.* at 259:4-261:1). Local 103 also rebuts Defendants' questions about oversight, testifying that Local 103 and its fellow plaintiffs, not counsel, are making the

---

[10] Defendants fail to cite a single decision from this Circuit supporting their PSLRA argument at class certification. In the two out-of-circuit decisions cited by Defendants, the courts addressed lead plaintiff motions, and appointed competing movants with substantial losses. *See Knurr* v. *Orbital ATK* 220 F. Supp. 3d 653, 662 (E.D. Va. 2016); *Chiaretti* v. *Orthodontic Centers of Am.*, No. CV 03-1027, 2003 SWL 27391614, at *1 (E.D. La. Aug. 28, 2003).

decisions in the case. *See* Local 103 Tr. 260:11-19. Local 103 further testified to its sophisticated understanding of the case, discussing, for example, Plaintiffs' economics expert Chad Coffman. *Id.* at 274:10-13.

Unable to refute this testimony, Defendants cite to Local 103's frequent testimony that it "worked with its attorneys" in drafting and assembling documents, suggesting the answer was improper. It is not. *Compare* Opp'n at 25 *with* Local 103 Tr. 178:6-9 ███████████

███████████████████████████████████████████████

███████. Defendants also chide Local 103's initial testimony that it could not recall precisely when it had learned of this litigation, but Defendants then concede in a footnote that Local 103 later did recall that fact. *See* Opp'n. at 22. And as discussed *supra*, the fact that Local 103 relied on its attorneys to investigate this action is proper. Finally, Defendants' argument that Local 103 is not adequate because ████████████████████████████

███████████████████████████████████████████████

███████████████████████. *Id.* at 31:10-14. Defendants' effort to paint Local 103 as disinterested or unknowledgeable does not withstand scrutiny.[11] Accordingly, Defendants' efforts to exclude OFPRS and Local 103 fail.

## II. The Class Satisfies Rule 23(b)(3) as Questions of Law or Fact Common to the Class Predominate Over Individual Questions

Defendants concede Lead Plaintiff can demonstrate that Class-wide reliance on the alleged misstatements through the fraud-on-the-market presumption. *Basic, Inc. v. Levinson,* 485 U.S. 224, 246-47 (1988); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).

---

[11] Defendants' citation to *Kelley* v. *Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405 (W.D. Okla. 1990) misses the mark. Unlike Local 103 here, the plaintiffs in *Kelley* demonstrated "an almost total lack of personal knowledge of their claims," including an inability to "summarize his allegations …." *Id.* at 409-10.

In a securities fraud class action, finding class-wide reliance generally satisfies the predominance element. *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 345 (D.N.J. 2018) (Because "Plaintiffs' presumption of reliance stands unretbutted… [Plaintiffs] have satisfied the Rule 23(b)(3) [] predominance requirement"), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019).

Nevertheless, Defendants wrongly contend that predominance is still in question concerning whether Plaintiffs can measure damages Class-wide "consistent with Plaintiff's theory of liability." Opp'n at 24. Defendants make this argument by relying on the predominance ruling in the antitrust litigation of *Comcast Corp. v. Behrend*, 569 U.S. 27, (2013) (finding a damages model that included dismissed theories of liability was inconsistent with the theory of that case). Opp'n at 24-27. But "the [*Comcast*] predominance analysis was specific to the antitrust claim at issue." *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 374 (3d Cir. 2015). The concerns expressed in *Comcast* do not apply to a securities class action alleging liability for misstatements relied on by all Class members prior to disclosing the truth to the Class through a single public statement. *See In re Heckmann Corp. Sec. Litig.*, No. CA 10-378-LPS-MPT, 2013 WL 2456104, at *14 (D. Del. June 6, 2013) (*Comcast* "was not in regard to a securities fraud litigation, which have generally been certified for class status").

The expert opinion of Chad Coffman also puts any *Comcast* concerns to rest. Coffman opines that damages here—as in virtually all Section 10(b) actions—are subject to the "out-of-pocket" methodology pursuant to a common formula quantifying the misstatements' artificial inflation reflected in the share price. ECF 76-10 (the "Coffman Rpt.") at ¶¶ 79-84. Courts have universally approved this methodology and rejected *Comcast*-based attacks in securities class actions where, as here, plaintiffs propose an event study methodology to measure out-of-pocket

14

damages. *Id.*; s*ee Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137 (M.D. Tenn. 2020) (finding that Coffman's "use of the out-of-pocket damages model in securities cases is hardly new or novel – it is the standard measurement of damages in Section 10(b) securities cases"); *TreeHouse*, 2020 WL 919249, at *9 (noting that Coffman's expert opinions have supported class certification in "dozens of cases" and that "using an event study to determine out of pocket losses due to inflation is 'widely considered an accepted method for the evaluation of [] damages to a class of stockholders in a defendant corporation,' even in the face of confounding information."); *City of Sunrise Gen. Employees Ret. Plan v. FleetCor Techs.*, No. 1:17-CV-02207-LMM, 2019 WL 3449671, at *6-7 (N.D. Ga. July 17, 2019) (finding Coffman's use of the out-of-pocket method sufficiently linked to Plaintiff's theory of liability under Section 10(b) to satisfy predominance).[12]

Defendants' remaining predominance challenges conflict with controlling Third Circuit precedent. First, Defendants wrongly claim a damage model is required at class certification. Opp'n at 26-27. The Third Circuit, however, has confirmed that *Comcast* did not alter Circuit law that a damages model is not required at class certification. *Neale*, 794 F.3d at 374; *see also W. Palm Beach Police Pension Fund v. DFC Global*, No. CV 13-6731, 2016 WL 4138613, at *14-15 (E.D. Pa. Aug. 4, 2016) ("in the Third Circuit the need to perform individual damages

---

[12] *See also Levy v. Gutierrez,* 448 F. Supp. 3d 46, 64-65 (D.N.H. 2019) (holding Coffman's "out-of-pocket" methodology satisfied the criteria set by *Comcast*); *Howard v. Liquidity Servs.*, 322 F.R.D. 103, 139-141 (D.D.C. 2017) (finding even after *Comcast*, Coffman's use of an event study to calculate out-of-pocket damages is an approved methodology at the class certification stage); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105-06 (S.D.N.Y. 2016) (finding Coffman's theory of out-of-pocket damages "entirely consistent with [plaintiffs'] theory of Section 10(b) liability and would be measurable on a class-wide basis"); *In re: SanDisk LLC Sec. Litig.,* 2018 WL 4293336, at *2 (N.D. Cal. Sept. 4, 2018) (same).

15

calculations does not foreclose class certification under Rule 23(b)(3)").[13]

Second, how Lead Plaintiff will ultimately prove loss causation (disentangling the impact of confounding information and calculating inflation) are Class-wide merits questions, which the Supreme Court of the United States found irrelevant at class certification. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) ("The Court of Appeals erred by requiring [the plaintiff] to show loss causation as a condition of obtaining class certification"); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013) (same); *City of Sterling Heights General Employees' Ret. Sys. v. Prudential Financial, Inc.*, No. CIV.A. 12-5275, 2015 WL 5097883, at *5, 11-12 (D.N.J. Aug. 31 ,2015) ("loss causation, [is] an issue inappropriate for consideration at class certification."); *FleetCor*, 2019 WL 3449671, at *7 n.2 (finding a plaintiff is not required prove loss causation at class certification by "disentangle[ing] the impact of old or non-fraud information released on the same day as the corrective disclosures…"); *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at

---

[13] Defendants' reliance on *In re BP P.L.C. Securities Litigation*, No. 10-md-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) is misplaced. That case involved two different damage theories for before and after BP's oil spill. The BP court eventually certified the post spill class based on an event study and an out-of-pocket damages methodology. *See In re BP P.L.C. Sec. Litig.*, No. 10-md-2185, 2014 WL 2112823, at *13-14 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015). Defendants' other authority is also distinguishable. *Compare* Opp'n at 24, 27 *with Loritz v. Exide Techs.*, No. 2:13-CV-02607-SVW-E, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015) (plaintiffs' expert failed to identify any method to calculate class-wide damages); *Sicav v. James Jun Wang*, No. 12 Civ. 6682(PAE), 2015 WL 268855, at *2-3 (S.D.N.Y. Jan. 21, 2015) (plaintiff's "mechanics" theory of damages was "unusual," "ill-suited to classwide resolution," and not the same as where plaintiffs seek out-of-pocket damages); *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) (involving "complex asset backed securities" that traded in an illiquid market); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) (expert had not determined how to calculate damages). Additionally, the Third Circuit has stated in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) that it "is a misread of *Comcast*" to require proof of class-wide damages. *Neale,* 794 F.3d at 374 n.10.

*5-6 (N.D. Cal. Oct. 27, 2017) ("That lead plaintiff has not yet provided a loss-causation model does not defeat predominance").

Finally, Defendants hired René Stulz to offer a "rebuttal" to Coffman's opinion concerning Class-wide damages. However, Stulz's rebuttal opinions are unhelpful to the finder of fact for this motion since they rely on the false assumption that a damages model is required at class certification.[14] Consequently, Defendants' entire argument that Stulz's expert opinion defeats predominance is irrelevant at this stage. *See* Opp'n at Section B. But it is important to note Stulz's analysis of how loss causation issues could be calculated here does not rebut Coffman's opinions. *See* Stulz Rpt. at ¶ 10 *compare* Coffman Rpt. at ¶¶ 79-84. Stulz does not contend that the out-of-pocket method for calculating damages using an event study is inapplicable to this securities case or is otherwise rejected by economists.[15] *Id.* at ¶ 10(a).

Defendants have failed to refute Lead Plaintiff's Rule 23(b)(3) showing that common issues of fact or law predominate over individual issues in this case satisfying Rule 23(b)(3).

### CONCLUSION

For the foregoing reasons, the Court should grant Lead Plaintiff's Motion for Class Certification.

---

[14] *See City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions*, 322 F. Supp. 3d 676, 693 (D. Md. 2018) (certifying class and rejecting argument by Stulz that *Comcast* requires plaintiffs to specify a damages methodology that controls for non-fraud stock price movement); *see also FleetCor*, 2019 WL 3449671, at *6-7 (certifying class and rejecting argument by Stulz that Plaintiff has not proven predominance because Coffman has failed to present evidence that it can measure Class-wide damages consistent with its theory of liability).

[15] In any event, Coffman's methodology is flexible enough to accommodate all potential loss causation issues raised by Defendants. *See* Coffman Rpt. at ¶¶ 79-84.

Dated: February 19, 2021

Respectfully submitted,

**LAW OFFICES OF JAN MEYER & ASSOCIATES, P.C.**

/s/ *Richard Elem*
Richard Elem, Esq.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Telephone: (201)-862-9500
Email: relem@janmeyerlaw.com

*Liaison Counsel for Lead Plaintiff*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein (*pro hac vice*)
Michael S. Bigin (*pro hac vice*)
Peter J. Harrington (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bernstein@bernlieb.com
        bigin@bernlieb.com
        pharrington@bernlieb.com

**THORNTON LAW FIRM LLP**
Guillaume Buell (*pro hac vice*)
1 Lincoln Street
Boston, MA 02111
Telephone: (617) 531-3933
Email: gbuell@tenlaw.com

*Co-Lead Counsel for Lead Plaintiff and the Proposed Class*

**WOLF POPPER LLP**
Robert C. Finkel (*pro hac vice*)
Joshua W. Ruthizer
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: rfinkel@wolfpopper.com

*Additional Counsel for Lead Plaintiff*

18

**CERTIFICATE OF SERVICE**

I, Richard Elem, hereby certify that on February 19, 2021, a true and correct copy of the annexed **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL** was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: February 19, 2021                                        /s/ *Richard Elem*
                                                                Richard Elem