NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Civil Action No. 19-8237 (SDW) (AME)<br><br>**OPINION**<br><br>February 28, 2022 |

**WIGENTON**, District Judge.

Before this Court is Lead Plaintiff Conduent Institutional Investor Group's ("Lead Plaintiff")[1] Motion for Class Certification pursuant to Federal Rule of Civil Procedure ("Rule") 23. (D.E. 76.) This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Lead Plaintiff's Motion for Class Certification is **GRANTED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Defendant Conduent Inc. ("Conduent") is a corporation with a common stock that trades on the New York Stock Exchange. (D.E. 18 ("Am. Compl.") ¶ 33.) The company provides business processing services to commercial and government clients, including electronic toll collection (*e.g.*, E-ZPass) for government clients. (*Id.* ¶¶ 42–43, 45.) During the relevant time period, Defendants Ashok Vemuri and Brian Webb-Walsh (collectively with Conduent, the "Defendants") served as Conduent's Chief Executive Officer and Chief Financial Officer,

---

[1] Lead Plaintiff consists of Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA"); Oklahoma Firefighters Pension and Retirement System ("OFPRS"); Plymouth County Retirement Association ("PCRA"); and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103"). (D.E. 10 at 1.)

respectively. (*Id.* ¶¶ 35–36.) This action arises from allegations that, between February 21 and November 6, 2018, Defendants overstated to investors the progress that Conduent was making in modernizing the IT infrastructure supporting its electronic toll collection business, resulting in a significant drop in the company's stock price when Mr. Vemuri revealed the truth on November 7, 2018. (*Id.* ¶¶ 8–27.)[2] Plaintiff ERS-PREPA filed the instant suit on March 8, 2019, and Lead Plaintiff filed the Amended Class Action Complaint on September 13, 2019. (D.E. 1, 18.) The Amended Complaint asserts two counts for violations of the Securities Exchange Act of 1934, specifically Sections 10(b) and 20(a). (Am. Compl. ¶¶ 218–33.)

Pursuant to Rule 23(a) and (b)(3), Lead Plaintiff now moves to certify a class of "[a]ll persons who purchased Conduent Inc. common stock on the open market on a United States stock exchange between February 21, 2018 and November 6, 2018, inclusive (the 'Class Period'), and who were damaged thereby (the 'Class')." (D.E. 76-2 at 4.)[3, 4] Lead Plaintiff asks this Court to appoint three of its four members as Class Representatives: OFPRS, PCRA, and Local 103 (collectively, "Plaintiffs"). (*Id.* at 1.) Lead Plaintiff also asks this Court to appoint Bernstein Liebhard LLP and Thornton Law Firm LLP as Class Counsel, pursuant to Rule 23(g). (*Id.*)

---

[2] This Court summarized Lead Plaintiff's factual allegations in its June 5, 2020, opinion denying Defendants' Motion to Dismiss the Amended Complaint. (D.E. 39.)

[3] "Excluded from the Class are (1) Conduent, Inc. and its officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest or are a parent; and (2) Defendants, their immediate families, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which any of them has a controlling interest." (D.E. 76-2 at 4.)

[4] Lead Plaintiff filed the instant motion on December 7, 2020, and the parties timely completed briefing. (D.E. 76-2, 78, 90.) Defendants' opposition brief and Lead Plaintiff's reply were filed under seal. (D.E. 78, 90.) However, the parties filed redacted versions that are publicly available. (D.E. 79, 91.) In April 2021, the parties filed a joint motion to administratively terminate this action pending mediation, and Magistrate Judge André M. Espinosa granted the motion. (D.E. 97, 98.) Following an unsuccessful mediation, Judge Espinosa reinstated this action and the parties filed supplemental submissions. (D.E. 100, 101, 102.)

## II.     LEGAL STANDARD

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence [its] compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)).  Specifically, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4).  These requirements are, respectively, referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 590–91.

A party seeking class certification under Rule 23(b)(3) must satisfy several additional requirements.  First, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163.  To do so, the plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).  Second, Rule 23(b)(3) requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These additional

3

requirements are, respectively, referred to as the ascertainability, predominance, and superiority requirements. *See, e.g.*, *Byrd*, 784 F.3d at 161 n.4, 162, 164.

Upon certifying a class, Rule 23(g) requires the court to appoint Class Counsel. The court must consider: (i) the work counsel performed investigating the claims; (ii) counsel's experience handling similar class actions; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). If these factors are met and counsel will "fairly and adequately represent the interests of the class," then the court may appoint the applicant as Class Counsel. Fed. R. Civ. P. 23(g)(2) and (4).

## III. DISCUSSION

Defendants do not dispute that the proposed Class meets the numerosity, commonality, typicality, ascertainability, and superiority requirements. (*See* D.E. 79); Rule 23(a)(1)–(3), (b)(3).[5] Nor do Defendants dispute that the proposed Class Counsel are qualified. (*See* D.E. 79); Rule 23(g). The only issues Defendants raise in opposition to certification are whether Plaintiffs are adequate to represent the Class under Rule 23(a)(4) and whether common questions predominate under Rule 23(b)(3). (*See.* D.E. 79 at 5–33.) This Court will address both issues in turn.

---

[5] Briefly and in an abundance of caution, this Court notes that the undisputed Rule 23 requirements are clearly met. The Class is sufficiently numerous as there are likely thousands of Class members. Common questions of law or fact include: (1) whether Defendants made materially false or misleading statements or omissions and did so with scienter; (2) whether Mr. Vemuri and Mr. Webb-Walsh are control persons of Conduent under the Securities Exchange Act; and (3) the extent to which the Class sustained damages. Plaintiffs' claims are typical because they arise from the same alleged conduct by Defendants that gives rise to the claims of all proposed Class members. The Class is ascertainable because it is defined with reference to objective criteria—purchases of Conduent common stock in a specified time period—and the list of shareholders is readily obtainable. A class action is superior because litigating the Class members' claims individually would cost many more millions of dollars and take a substantially greater toll on judicial resources. Finally, this Court finds that the proposed Class Counsel satisfy Rule 23(g), and notes that they have zealously and knowledgeably litigated this action thus far, defeating Defendants' Motion to Dismiss.

### A.     Adequacy

The adequacy requirement requires a showing that the class representatives "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), because they "have the ability and incentive to vigorously represent the claims of the class," *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015) (citation omitted). "'[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *Id.* (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)). Class representatives are adequate if they "have '[a] minimal degree of knowledge' about the case, and have no conflict of interest with class counsel, and members of the class." *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (internal citations omitted). "Only 'fundamental' conflicts 'will defeat the adequacy requirement.'" *Id.* (quoting *Dewey*, 681 F.3d at 184). "A fundamental conflict exists where some class members claim to have been harmed by the same conduct that benefitted other members of the class." *Dewey*, 681 F.3d at 184 (quotation and brackets omitted). A fundamental conflict cannot be "'unduly speculative,'" however, as "hypothetical conflicts cannot defeat adequacy." *Suboxone*, 967 F.3d at 273 (quoting *Dewey*, 681 F.3d at 184).

Here, Defendants raise multiple arguments as to why Plaintiffs are not adequate class representatives under Rule 23(a)(4). First, relying primarily on caselaw from outside the Third Circuit, they argue that Plaintiffs' lawyers, and not Plaintiffs, are controlling this litigation. (*See* D.E. 79 at 6–13.) However, Plaintiffs testified that they supervise their lawyers, receive updates from and discuss the case with their lawyers, reviewed the Court's orders in this matter, are familiar with the factual allegations and claims in this matter, participated in discovery, and reviewed and approved their lawyers' motions and Amended Complaint in this matter prior to filing. (*See*

OFPRS Tr. at 16–18, 119–22, 160–61, 172–73, 187, 221, 230–31; PCRA Tr. at 15, 17, 125–26, 138, 153, 155, 170, 180, 217, 229; Local 103 Tr. at 23, 152–54, 162, 182–83, 200, 210, 265, 285–87.)[6]  As Defendants' own brief concedes, Plaintiffs are "aware of the facts and circumstances at issue in this litigation." (D.E. 78 at 7.)  This meets the minimum level of knowledge required of class representatives in the Third Circuit.  *See Suboxone*, 967 F.3d at 272.[7]

      Second, Defendants raise concerns regarding Plaintiffs' ability to adequately function as a cohesive group. (*See* D.E. 79 at 13–19.)  It is true that a group of plaintiffs can be "too large to represent the class in an adequate manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).  "[C]ourts should generally presume that groups with more than five members are too large to work effectively." *Id.* at 267–68.  However, this Court does not have such concerns regarding Lead Plaintiff, a four-member group, or its three proposed class representatives.  This Court previously approved Lead Plaintiff as the presumptive most adequate plaintiff, (D.E. 10), pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3).  The PSLRA only permits other purported *class members* to rebut that presumption, with "'proof'" that the group is not adequate.  *Cendant Corp.*, 264 F.3d at 268 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).  Most importantly, Defendants do not identify any past or present conflicts between Plaintiffs, and primarily argue that Plaintiffs lack adequate procedures to resolve

---

[6] This opinion's page citations to Plaintiffs' depositions are to the exhibits attached to D.E. 90-1 (Declaration of Michael Bigin, Esq.): Exhibit A, Deposition Transcript of Chase Rankin on behalf of OFPRS ("OFPRS Tr."); Exhibit B, Deposition Transcript of David Sullivan on behalf of PCRA ("PCRA Tr."); and Exhibit C, Deposition Transcript of Michael Donovan on behalf of Local 103 ("Local 103 Tr.").

[7] Defendants' remaining arguments related to control and engagement are unpersuasive.  It is of no moment that Plaintiffs may have learned of this case through a portfolio monitoring service, *see City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y. 2012), or that their understanding of this case is informed by the Amended Complaint as drafted by their attorneys, *see In re Merck & Co. Sec., Deriv., & ERISA Litig.*, Civ. No. 05-1151, 2013 WL 396117, at *9 (D.N.J. Jan. 30, 2013).

hypothetical future conflicts.  (*See* D.E. 79 at 14–18.)  Such speculation will not defeat Plaintiffs' appointment as class representatives.  *See Suboxone*, 967 F.3d at 273.

Third, Defendants raise specific concerns regarding OFPRS and Local 103.  (*See* D.E. 79 at 19–22.)  With respect to OFPRS, Defendants argue that it is barred from serving as a class representative by the PSLRA's "[r]estrictions on professional plaintiffs" provision, 15 U.S.C. § 78u–4(a)(3)(B)(vi), which states that, "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions . . . during any 3-year period."  Although OFPRS exceeds this limit,[8] the provision does not apply to institutional investors like OFPRS.  *See In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004); *In re Herley Indus. Inc.*, Civ. No. 06-2596, 2010 WL 176869, at *4 n.4 (E.D. Pa. Jan. 15, 2010) (quoting *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003)).[9]  Furthermore, for the reasons discussed above, this Court finds that OFPRS is monitoring this litigation.  Thus, the PSLRA provision's purpose to limit unengaged professional plaintiffs does not appear to be at issue here.  For the same reasons discussed above, this Court also does not share Defendants' stated concern that Local 103 is disinterested and unknowledgeable about the case.  Accordingly, all three Plaintiffs are sufficiently adequate to serve as class representatives.

## B. Predominance

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

---

[8] Lead Plaintiff concedes that OFPRS exceeds the 5-in-3 limit, (*see* D.E. 91 at 11), and Defendants assert that OFPRS served as lead plaintiff in 13 securities class actions in the three years prior to the instant motion, (*see* D.E. 79 at 19–20 n.9 (listing cases)).

[9] The mechanical application of the 5-in-3 limit to institutional investors appears to be a minority view and Defendants cite only one case from the Eastern District of Virginia in support.  (*See* D.E. 79 at 19 (citing *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 659–62 (E.D. Va. 2016)).)

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' . . . and assesses whether a class action 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting *In re Ins. Broker. Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009), and Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment).

Here, Defendants do not dispute that Lead Plaintiff can demonstrate class-wide reliance on Defendants' alleged misstatements through a "fraud-on-the-market" theory. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 246–47 (1988) (establishing the rebuttable presumption of reliance in securities fraud class actions where the security trades in an efficient market). Instead, Defendants argue that Lead Plaintiff fails to satisfy the predominance requirement because its expert, Chad Coffman, CFA, does not set forth a methodology for determining damages on a class-wide basis. (*See* D.E. 79 at 23–33.) Defendants rely on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), in which the Supreme Court "held that an antitrust litigation class could not be certified because the plaintiffs' damages model did not demonstrate the theory of antitrust impact that the district court accepted for class-action treatment." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015) (analyzing *Comcast's* holding). However, the Third Circuit has stated that *Comcast's* "predominance analysis was specific to the antitrust claim at issue" in that case. *Id.*

Nonetheless, upon review, this Court finds that Mr. Coffman's proposed methodology is capable of measuring class-wide damages and consistent with Lead Plaintiff's theory of liability. Mr. Coffman proposes using an event study and "out-of-pocket" methodology to measure damages, applying a common technique to quantify the artificial inflation of Conduent's share price due to misstatements. (*See* D.E. 76-10 (Mr. Coffman's Expert Report) ¶¶ 79–84.) Most

8

actions brought under Section 10(b) of the Securities Exchange Act are subject to this methodology. *See, e.g.*, *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137 (M.D. Tenn. 2020) (finding that Mr. Coffman's "[u]se of the out-of-pocket damages model in securities cases is hardly new or novel – it is the standard measurement of damages in Section 10(b) securities cases" and noting that "*Comcast* did not change this, or render the model improper" (emphasis added) (quotation marks and citations omitted)); *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, Civ. No. 16-10632, 2020 WL 919249, at *9 (N.D. Ill. Feb. 26, 2020*)* (noting that Mr. Coffman's expert opinions have supported class certification in "dozens of cases" and that "using an event study to determine out of pocket losses due to inflation is widely considered an accepted method for the evaluation of [] damages to a class of stockholders in a defendant corporation, even in the face of confounding information" (quotation marks and citations omitted)); *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64–65 (D.N.H. 2019) (holding that Mr. Coffman's "out-of-pocket" methodology satisfies *Comcast*); *Howard v. Liquidity Servs.*, 322 F.R.D. 103, 139–141 (D.D.C. 2017) (finding that, even after *Comcast*, Mr. Coffman's use of an event study to calculate out-of-pocket damages is an approved methodology at the class certification stage); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105–06 (S.D.N.Y. 2016) (finding Mr. Coffman's theory of out-of-pocket damages "entirely consistent with [plaintiffs'] theory of Section 10(b) liability and [] measurable on a class-wide basis").

Defendants also raise three specific issues with Mr. Coffman's methodology: (1) it does not account for the fact that the stock price drop following Mr. Vemuri's November 7, 2018, disclosure partly reflected the realization of other risks that were disclosed prior to November 7, 2018; (2) it does not account for the impact of other news that was released on November 7, 2018; and (3) it does not account for time-varying inflation throughout the proposed Class Period. (*See*

D.E. 79 at 28–33.)  These concerns are premature, as a damages model is not required at class certification.  *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, Civ. No. 13-6731, 2016 WL 4138613, at *14 (E.D. Pa. Aug. 4, 2016) ("Subsequent to the decision in *Comcast*, it remains the law in the Third Circuit that the need to perform individual damages calculations does not foreclose class certification under Rule 23(b)(3)." (citing *Neale*, 794 F.3d at 374–75)). Furthermore, how Lead Plaintiff will ultimately prove loss causation (*i.e.*, distinguish the impact of Mr. Vemuri's November 7, 2018, disclosure from other disclosures, news, and inflation) is a merits question that need not be answered at class certification.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("The Court of Appeals erred by requiring [the plaintiff] to show loss causation as a condition of obtaining class certification."); *City of Sterling Heights General Emps.' Ret. Sys. v. Prudential Financial, Inc.*, Civ. No. 12-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015) ("The argument that the drop may have been caused by other contemporaneous disclosures, . . . goes to loss causation, an issue inappropriate for consideration at class certification.").[10]

Notably, Defendants do not cite any cases involving Mr. Coffman in which a court denied class certification.  This Court is persuaded that common issues of fact or law predominate over individual issues in this case, and that the other applicable Rule 23 requirements are met.  This Court will therefore certify the proposed Class.

---

[10] As Judge Arleo explained:

> Price impact and loss causation are distinct. Price impact asks "whether the alleged misrepresentations affected the market price" of the stock. *Halliburton I*, 131 S.Ct. at 2187. Loss causation, on the other hand, asks whether the subsequent decline in the price of the stock was caused by a correction of the prior misrepresentations or by other confounding factors. *Id.* at 2185 . . . . This is particularly important at class certification because evidence of loss causation is irrelevant at that stage, [s]ee id. at 2187, while evidence of price impact, or lack thereof, is highly relevant. *See Halliburton II*, 134 S.Ct. at 2415–16.

*City of Sterling Heights*, Civ. No. 12-5275, 2015 WL 5097883, at *11.

## IV. CONCLUSION

For the reasons set forth above, Lead Plaintiff's Motion for Class Certification is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      André M. Espinosa, U.S.M.J.
          Parties