**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Case No.: 2:19-cv-08237-SDW-AME<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J. |

MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...................................................................................................................... 1

OVERVIEW OF THE ACTION ............................................................................................... 2

TERMS OF THE SETTLEMENT............................................................................................. 8

IMPLEMENTATION OF THE NOTICE PLAN....................................................................... 8

ARGUMENT ............................................................................................................................ 9

I.    THE STANDARDS GOVERNING FINAL APPROVAL OF THE SETTLEMENT ...... 9

II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................... 11

      A.    Class Representatives and Co-Class Counsel Have Adequately Represented
            the Class ............................................................................................................ 11

      B.    The Settlement Was Negotiated at Arm's-Length................................................ 13

      C.    The Relief Provided for the Class Is Adequate.................................................... 13

            1.    The Risks of Establishing Liability at Trial............................................. 16

            2.    The Risks of Establishing Loss Causation and Damages at Trial ............ 17

            3.    The Settlement Eliminates the Additional Costs and Delay of
                  Continued Litigation ............................................................................... 19

            4.    The Proposed Process for Distributing Relief Is Effective....................... 19

            5.    Co-Class Counsel's Request for Attorneys' Fees Is Reasonable.............. 21

            6.    The Parties' Agreements in Connection with the Settlement ................... 22

      D.    The Settlement Treats Class Members Equitably Relative to Each Other ........... 22

III.  THE PLAN OF ALLOCATION TO DISTRIBUTE FUNDS TO THE CLASS
      SHOULD BE APPROVED ............................................................................................ 23

IV.   CERTIFICATION OF THE CLASS ............................................................................... 24

V.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS AND THE
      REACTION OF THE CLASS TO DATE SUPPORTS APPROVAL OF THE
      SETTLEMENT ............................................................................................................... 25

i

CONCLUSION ................................................................................................................ 26

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Alves v. Main,*
  No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd,*
  559 F. App'x 151 (3d Cir. 2014) ................................................................................ 13

*Bell Atl. Corp. v. Bolger,*
  2 F.3d 1304 (3d Cir. 1993) ........................................................................................ 25

*Burns v. FalconStor Software, Inc.,*
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ................. 23

*Castro v. Sanofi Pasteur Inc.,*
  Civ. No. 11-7178 (JMV)(MAH), 2017 WL 4776626 n.3 (D.N.J. Oct. 23, 2017) .................... 26

*Christine Asia Co. v. Yun Ma,*
  No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................... 22

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005) ................................................................................................... 18

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010) ................................................................................... 9, 10

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ................................................................................................... 25

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ...................................................................................... 10

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.,*
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ....................................... 14

*In re AT & T Corp. Sec. Litig.,*
  455 F.3d 160 (3d Cir. 2006) ........................................................................... 10, 11, 14

*In re Carrier IQ, Inc., Consumer Privacy Litig.,*
  12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in part sub. nom.*
  *In re Carrier Iq, Inc.,*
  No. 12-MD-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ................. 22

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*,
  264 F.3d 201 (3d Cir. 2001)............................................................................. 13

*In re Cendant Corp.*,
  264 F.3d 201 (3d Cir. 2001)............................................................................. 13

*In re Citigroup Inc. Sec. Litig.*,
  No. 07 Civ. 9901(SHS), 2014 WL 2445714 (S.D.N.Y. May 30, 2014)............................. 19, 20

*In re Datatec Sys. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................................... 23

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................... 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Lia*b*. Litig.*,
  55 F.3d 768 (3d Cir. 1995)................................................................................. 17

*In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ................................. 23

*In re Merck & Co. Vytorin ERISA Litig.*,
  No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................................ 23

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015), *amended*,
  No. 2:12-MD-02323-AB, 2015 WL 1282803 (E.D. Pa. May 8, 2015), *aff'd*,
  821 F.3d 410 (3d Cir. 2016).............................................................................. 18

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016).............................................................................. 13

*In re Ocean Power Techs., Inc. Sec. Litig.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................ 18, 23, 24, 26

*In re Par Pharm. Sec. Litig.*,
  No. CIV.A. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) .................................. 17

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)........................................................................ 10, 11, 16

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. Civ.03- 0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .................................. 13, 14

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  No.CIV. A. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec 9, 2008)..................................... 16

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No.02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ................................................ 17

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*,
  No. 3:15-CV07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020).......................... 25

*In re ViroPharma Inc. Sec. Litig.*,
  No. CIV.A. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)..................................... 14, 18

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)............................................................................................... 9

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*,
  166 F.3d 581 (3d Cir. 1999)..................................................................................... 14, 15, 19

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ............................................. 20

*Pollak v. Portfolio Recovery Assocs., LLC*,
  285 F. Supp. 3d 812 (D.N.J. 2018) .................................................................................. 11

*Pro v. Hertz Equip. Rental Corp.*,
  No. CIV.A. 06-3830(DMC), 2013 WL 3167736 (D.N.J. June 20, 2013) ............................. 17

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
  No. CV 16-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017)........................................... 13

*Schuler v. Medicines Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)............................. 11, 14

*Serio v. Wachovia Sec., LLC*,
  No. CIV.A. 06-4681 (MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ............................... 26

*Shapiro v. Alliance MMA, Inc.*,
  No. CIV.A. 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018)..................... 25

*Smith v. Merck & Co.*,
  No. CIV.A. 13-2970 (MAS) (LHG), 2019 WL 3281609 (D.N.J. July 19, 2019) ................... 13

*Somogyi v. Freedom Mortg. Corp.*,
  495 F. Supp. 3d 337 (D.N.J. 2020) ................................................................................... 19

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011).............................................................................................. 23

*Talone v. Am. Osteopathic Ass'n*,
  No. 1:16-cv-04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018)............................... 19

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .................................................................................. 13

*Walsh v. Great Atl. & Pac. Tea Co.*,
96 F.R.D. 632 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983) ..................................... 11, 14

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) .................................................................................. 25, 26

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Fed. R. Civ. P. 23(a) ................................................................................................ 24

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 25

Fed. R. Civ. P. 23(e)(1) .............................................................................................. 8

Fed. R. Civ. P. 23(e)(1)(B)(ii) .................................................................................. 24

Fed. R. Civ. P. 23(e)(2) .................................................................................... 2, 10, 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................. 21

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................. 22

**INTRODUCTION**

Court-appointed Class Representatives Oklahoma Firefighters Pension and Retirement System ("OFPRS"), Plymouth County Retirement Association ("PCRA"), and Electrical Workers Pension Fund, Local 103, I.B.E.W ("Local 103" and, collectively, "Class Representatives"), on behalf of themselves and all other members of the previously certified Class (defined below), respectfully submit this memorandum in support of their motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking: (i) final approval of the proposed settlement ("Settlement") set forth in the Stipulation and Agreement of Settlement, dated December 1, 2022,[1] as fair, reasonable, and adequate; (ii) entry of the proposed Judgment dismissing the Action with prejudice against Defendants, and granting the releases specified in the Stipulation (and in the Notice); and (iii) approval of the proposed Plan of Allocation for distribution of the proceeds of the Net Settlement Fund. Defendants do not oppose the relief requested in this motion.

The proposed Settlement, if finally approved, will resolve all claims against Defendants, and related claims, in exchange for a $32,000,000 cash payment, plus earned interest, for the benefit of Class Members. The Settlement is a product of good-faith and arm's-length negotiations between highly experienced counsel, following extensive fact and expert discovery, and facilitated by two well-respected mediators (Michelle Yoshida of Phillips ADR on June 3, 2021 and Robert Meyer, Esq. of JAMS on August 15, 2022). The Settlement is a favorable outcome considering the substantial risks and costs attendant to continued litigation, particularly those in connection with summary judgment, trial, appeals, and a contested claims process.

---

[1] Unless otherwise defined, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of December 1, 2022 (the "Stipulation"), previously filed at ECF No. 133-3. Unless otherwise noted, all internal citations and quotation marks are omitted.

Moreover, the proposed Plan of Allocation treats all Class Members equitably, and all Authorized Claimants will recover from the Settlement on a *pro rata* basis, based on a recognized loss formula defined in the Plan of Allocation included in the Notice, which is consistent with Class Representatives' expert's damage analysis.

In its January 27, 2023 Preliminary Approval Order, the Court: (i) preliminarily approved the Settlement; (ii) approved the form, content, and manner of providing Notice of the Settlement to the Class; and (iii) set a schedule for final approval of the Settlement, including deadlines for Class Members to opt out or object, and set a May 24, 2023 Settlement Hearing date. ECF No. 137. The Court also found that it will likely be able to finally approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Class, subject to further consideration. *Id.* ¶1. The Court authorized the retention of JND Legal Administration ("JND") as the Claims Administrator and directed dissemination of the approved forms of Notice to the Class. There have been no changes in circumstances since filing the motion for preliminary approval (ECF No. 133).

Class Representatives now move this Court for final approval of the Settlement and the proposed Plan of Allocation of the Settlement Fund.

## **OVERVIEW OF THE ACTION**

On March 8, 2019, Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA") filed an initial securities class action complaint against Defendants.[2] ECF No. 1. On May 7, 2019, OFPRS, PCRA, Local 103, and ERS-PREPA, denominated as the Conduent Institutional Investors Group (the "Investors Group"), moved to be appointed as Lead

---

[2] "Defendants" are Conduent Inc. ("Conduent" or the "Company"), its former CEO, Ashok Vemuri, and its former CFO, Brian Webb-Walsh.

Plaintiffs pursuant to the PSLRA.  ECF No. 6.  They were the only class members who sought to litigate this action for the Class.  *See* ECF No. 7.  On July 15, 2019, the Court appointed the Investors Group as Lead Plaintiffs and approved Bernstein Liebhard LLP and Thornton Law Firm LLP as Co-Lead Counsel.  ECF No. 10.  On September 13, 2019, the Investor Group filed the Amended Class Action Complaint (the "Complaint"), asserting claims against the Defendants under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, on behalf of "all persons who purchased Conduent common stock on the open market on a U.S. stock exchange between February 21, 2018 and November 6, 2018, inclusive."  *See* ECF No. 18 (Complaint) at ¶3.

Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions concerning: (i) the status and condition of the Company's legacy Information Technology ("IT") systems and infrastructure; and (ii) whether Conduent's IT infrastructure had been inventoried, or mapped, prior to, and then, during the Class Period, which was a necessary step before the Company could consolidate and migrate its data centers.  For example, on February 21, 2018, when announcing Conduent's guidance for the 2018 fiscal year, Defendant Vemuri (Conduent's CEO) allegedly falsely represented to investors that Conduent had "addressed" the Company's well-known issues with its legacy vendors and had inventoried its technology platforms.  ECF No. 18 (Complaint) ¶¶10-11.

The truth concerning Defendants' false and misleading statements was allegedly revealed to the public on November 7, 2018, when Conduent surprised the market by revealing that the Company's earnings per share and revenue were below analysts' expectations.  Additionally, the Company cut its revenue guidance for the 2018 fiscal year by 2.5%, lowered adjusted EBITDA [earnings before interest taxes depreciation and amortization] guidance by 4.4%, and lowered

3

adjusted free cash flow guidance by 12.8%.  On that date, Defendant Vemuri disclosed that "continued suboptimal performance from an inherited legacy technology vendor," including the vendor's "inability to deliver on service level agreements" and a "poorly structured contract which [Conduent] inherited," as well as the Company's "outdated and historically under-invested legacy IT infrastructure," were material issues causing the Company to lower its guidance. *Id.* ¶¶23-26. Allegedly as a result of the revelations, on November 7, 2018, Conduent's common stock price fell $5.60 per share, or over 29%, to close at $13.62 per share on very heavy volume. *Id.* ¶27.

On November 12, 2019, Defendants moved to dismiss the Complaint. ECF No. 33. Lead Plaintiffs opposed the motion and briefing was completed after Defendants filed their reply. ECF Nos. 37-38. On June 5, 2020, the Court denied Defendants' motion to dismiss, and found that the Complaint adequately pled violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. ECF Nos. 39-40.

After the Court's order denying Defendants' motion to dismiss, the parties complied with the procedures and disclosures required by Rule 26, negotiated a case management plan, and conferenced with the Magistrate Judge. Pursuant to the case management plan, throughout the litigation, Plaintiffs' Counsel engaged in extensive fact discovery, including composing a joint discovery plan, issuing and responding to discovery requests and interrogatories, exchanging correspondence with Defendants on the confines of discovery, participating in meet and confers on those issues, submitting letter-motions to compel and discovery status updates to the Court, reviewing more than 300,000 documents produced by Defendants (totaling approximately one million pages), producing documents to Defendants, identifying and working closely with Lead Plaintiffs' market efficiency and damages expert (Chad Coffman, CFA, of Global Economics Group) to analyze loss causation and damages issues, overseeing the exchange of expert reports,

reviewing documents produced by Global Economics Group in response to a subpoena, challenging Defendants' expert opinions, and defending the depositions of representatives from OFPRS, PCRA and Local 103 and Plaintiffs' expert, Chad Coffman, on market efficiency and damages. *See* Declaration of Michael S. Bigin in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Motion for an Award of Attorneys' Fees and Payment of Litigations Expenses, and Award of Costs and Expenses to the Class Representatives, dated April 19, 2023 ("Bigin Decl."), submitted herewith, at ¶15.[3]

On December 7, 2020, Lead Plaintiffs moved the Court to certify the "Class" of all persons who purchased Conduent common stock on the open market on a United States stock exchange from February 21, 2018 through November 6, 2018, both dates inclusive, and who were damaged thereby, and to appoint OFPRS, PCRA, and Local 103 as Class Representatives[4] and Bernstein Liebhard LLP and Thornton Law Firm LLP as Co-Class Counsel. ECF No. 76-2. Lead Plaintiffs' motion for class certification was supported by Chad Coffman's expert report on market efficiency. ECF No. 76-10. Defendants opposed the motion for class certification and briefing was completed with the filing of reply papers in further support of the motion on February 19, 2021. ECF Nos. 90-91.

In early 2021, the Parties began exploring the possibility of a settlement. On April 29, 2021, the Court granted the Parties' joint motion and administratively terminated the case pending mediation. ECF No. 98.

---

[3] All exhibits referenced herein are attached to the Bigin Declaration.

[4] To avoid redundant effort, Lead Plaintiffs did not advance ERS-PREPA as a fourth class representative. ERS-PREPA, however, filed the initial complaint in this Action, and its counsel, Wolf Popper LLP, was involved in drafting the amended complaint and briefing the motion to dismiss. In the interest of efficiency and continuity, ERS-PREPA continued as a non-class representative Lead Plaintiff, and Wolf Popper continued to work on this litigation under the supervision of Co-Class Counsel.

The Parties began their first attempt at mediating the Action on June 3, 2021 with Michelle Yoshida of Phillips ADR.  Prior to the mediation session, the Parties exchanged detailed opening mediation statements.  The Parties engaged experts to address loss causation and damages, while using document discovery to address liability issues.  After the session ended without a settlement being reached, the Parties agreed to convene a second day of mediation.  The Parties provided additional expert analysis for consideration.  However, the Parties could not reach an agreement on the second day of mediation.  Lead Plaintiffs then updated the Court and on July 26, 2021, the Court reopened the Action.  ECF No. 100.  Discovery resumed with the Parties, at times, consulting the Magistrate Judge and negotiating issues amongst themselves.

In an Opinion and Order dated February 28, 2022 (ECF No. 114 at 1), the Court granted the Class Certification Motion, appointed OFPRS, PCRA, and Local 103 as Class Representatives and Bernstein Liebhard LLP and Thornton Law Firm LLP as Co-Class Counsel.[5]  ECF No. 114. The certified Class is:

> All persons who purchased Conduent common stock on the open market on a United States stock exchange from February 21, 2018 through November 6, 2018, both dates inclusive, (the "Class Period") and who were damaged thereby. Excluded from the Class are: (1) Conduent Incorporated and its Officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest or are a parent; and (2) Defendants, their Immediate Family members, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which any of them has a controlling interest.

Although the Court granted Lead Plaintiffs' motion for class certification, notice of the pendency of the Action was deferred in anticipation of a possible settlement of the Action prior to summary judgment.

---

[5] On May 6, 2022, the Court approved the substitution of Labaton Sucharow LLP for Thornton Law Firm LLP as Co-Class Counsel.  ECF No. 127.

By March of 2022, Defendants had substantially concluded their document production, producing more than 300,000 documents (totaling approximately one million pages). Class Representatives had not yet started fact depositions. At that time, the Parties again explored the possibility of settlement. On May 11, 2022, the Court entered the Parties' joint stipulation to stay the Action pending mediation (ECF No. 129) and administratively terminated the Action (ECF No. 131).

The Parties engaged the mediator Robert Meyer, Esq. of JAMS to assist them in a potential negotiated resolution of the claims. Prior to the mediation session, the Parties exchanged detailed mediation statements. The Parties presented additional expert analysis and used updated document discovery to argue the strengths of their respective arguments. On August 15, 2022, the Parties engaged in a full-day mediation session. While an agreement was not reached at the conclusion of the session, the Parties continued to negotiate through Mr. Meyer. On August 16, 2022, Mr. Meyer made a "mediator's recommendation" to settle the Action. On August 17, 2022, Mr. Meyer advised the Parties that both sides had accepted the mediator's recommendation and accordingly had reached an agreement in principle on the primary terms of a settlement to resolve the Action. The Parties executed a Term Sheet memorializing the basic terms of the Settlement on August 31, 2022.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by, or on behalf of, Defendants of $32,000,000, for the benefit of the Class. The Parties executed the Stipulation on December 1, 2022, and filed it with the Court the following day. ECF No. 133-3.

7

## TERMS OF THE SETTLEMENT

As a result of the Settlement, Defendants have caused the deposit of $32,000,000 in cash into the Escrow Account. Bigin Decl. ¶37. Once Court-awarded Attorneys' Fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court are deducted from the Settlement Fund, the remaining balance, i.e., the Net Settlement Fund, will be distributed to Authorized Claimants pursuant to the Stipulation and Plan of Allocation. *See* Stipulation ¶¶21-24. There will be no reversion to Defendants of any portion of the Settlement Fund. *Id*. ¶11. In exchange, each of the Class Representatives and each of the other Class Members, will be deemed to have fully released any and all of the Released Claims against the Defendants and the other Released Defendant Parties, and will be forever barred and enjoyed from prosecuting any and all of the Released Claims against any of the Released Defendant Parties. *Id*. ¶3.

The Stipulation also anticipates that Co-Class Counsel, on behalf of all Plaintiffs' Counsel, will apply to the Court for a collective award from the Settlement Fund of attorneys' fees and payment of Litigation Expenses incurred in prosecuting the Action. *Id*. ¶12. However, such fee and expense awards are not a condition or material term of the Settlement, nor are such requests the subject of any agreement between the Parties. *Id*. ¶18.

## IMPLEMENTATION OF THE NOTICE PLAN

On December 2, 2022, Class Representatives filed their motion for preliminary approval, which included the Stipulation and proposed notices to the Class. ECF No. 133-1. On January 27, 2023, the Court entered the Preliminary Approval Order pursuant to Fed. R. Civ. P. 23(e)(1), preliminarily approving the Settlement as "fair, reasonable and adequate", approving the form, content and manner of providing notice to the Class, approving the retention of JND as Claims Administrator, and authorizing that the Notice be sent to the Class. ECF No. 137. Through April

18, 2023, the Claims Administrator has mailed 90,458 copies of the Notice and Claim Form to potential Class Members, brokers, and nominee holders, advising them of the proposed settlement, the last date to submit claims, the last date by which requests for exclusions or objections must be received, and directing them to the Settlement website for more information. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated April 19, 2023 ("Mailing Decl."), attached as Exhibit 1 to the Bigin Declaration, at ¶¶2-10. On February 21, 2023, the Claims Administrator established the Settlement website, www.ConduentSecuritiesLitigation.com, which posts copies of the Notice, the Claim Form, the deadlines for Class Members to submit objections and requests for exclusions, the Stipulation, the Order granting Preliminary Approval, and the Order granting Lead Plaintiffs' Motion for Class Certification, among other things. *Id.* ¶12. JND also established a case-specific telephone number for Class Members to call and ask questions. On March 7, 2023, the Summary Notice was published in *The Wall Street Journal* and disseminated using PR Newswire. *Id.* ¶11.

Objections and requests for exclusion must be received no later than May 3, 2023. As of April 18, 2023, there have been no objections and only one request for exclusion. *Id.* ¶¶15-17; Bigin Decl. ¶¶57, 79.

**ARGUMENT**

**I.    THE STANDARDS GOVERNING FINAL APPROVAL OF THE SETTLEMENT**

It is well established that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (the "strong presumption in favor of voluntary settlement agreements" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is

9

an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Federal Rule of Civil Procedure Rule 23(e)(2) instructs that the Court should consider the following factors when determining whether a proposed class action settlement is "fair, reasonable, and adequate" before granting approval:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]

While approval of the Settlement is within the Court's discretion (*see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)), the Third Circuit has instructed that a district court should not substitute its own judgment for that of the parties who negotiated a settlement. *See Girsh v. Jepson*, 521 F.2d 153, 160 (3d Cir. 1975) ("the task of the district court is to determine whether the proposed settlement should be accepted and approved— a determination substantially different than a decision on the merits"). *See also Ehrheart,* 609 F.3d

---

[6] In addition, prior to Rule 23(e)(2), courts within the Third Circuit have considered the following "Girsh Factors," which largely overlap with Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164- 65 (3d Cir. 2006).

at 595 ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings"); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983); *In re AT & T Corp.*, 455 F.3d 160, 164-65.

The proposed Settlement readily satisfies Rule 23(e)(2). Accordingly, the Settlement should be approved.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Class Representatives and Co-Class Counsel Have Adequately Represented the Class

"[W]hen making an adequacy determination, the Court must consider (1) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation; and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 24, 2016). "A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 844 (D.N.J. 2018) (citing *Prudential*, 148 F.3d at 312).

Class Representatives and Co-Class Counsel vigorously represented the Class in this Action. On February 28, 2022, the Court certified this Action, finding that the Class Representatives and Co-Class Counsel had adequately represented the Class throughout the preliminary stages of the litigation, after reviewing evidence of adequacy and detailed briefing from the Parties. ECF No. 114. The Court was presented with summaries of the work performed by the Class Representatives and Co-Class Counsel, which included: moving for Lead Plaintiffs appointment, amending the Complaint, successfully opposing Defendants' motion to dismiss,

11

producing documents, responding to interrogatory requests, requesting and analyzing discovery from the Defendants, and testifying at depositions on behalf of the Class.

Since the briefing of the motion for class certification through the present motion, the Class Representatives and Co-Class Counsel have continued to vigorously represent the interests of the Class. As described above and in the Bigin Declaration, Co-Class Counsel engaged in extensive factual discovery. Throughout the litigation, they explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims as well as the risks of continuing litigation. Class Representatives and Co-Class Counsel litigated the case through vigorous document discovery by pressing discovery disputes, processing facts learned in discovery, challenging damages theories, and fine tuning their litigation strategy. Co-Class Counsel drafted mediation statements and argued the merits of the claims during two mediation sessions. The Class Representatives were consulted during the course of the mediations and both the Class Representatives and Co-Class Counsel had sufficient information to make informed and intelligent decisions about whether to settle. Ultimately, the Class Representatives, in consultation with Co-Class Counsel, agreed to the fair, reasonable and adequate settlement terms set forth in the Stipulation.

In addition, throughout the Action, Class Representatives benefited from the advice of knowledgeable counsel well-versed in securities class actions. Co-Class Counsel are among the most experienced and skilled firms in the securities litigation field and have a long and successful track record, serving as lead counsel in many high profile and influential cases. *See* Bigin Decl. Exs. 3-7.

In sum, the Class Representatives and Co-Class Counsel have adequately represented the Class.

12

**B.   The Settlement Was Negotiated at Arm's-Length**

The Settlement here was negotiated at arm's-length, was reached after two full day mediation sessions, and was the result of a mediator's proposal by Mr. Meyer.  Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Rudel Corp. v. Heartland Payment Sys., Inc.*, No. CV 16-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (citations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *In re Cendant Corp.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).  Likewise, it is appropriate for this Court to give "substantial weight to the recommendations of experienced attorneys" who engaged in arm's-length negotiations.  *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness"); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation), *aff'd*, 264 F.3d 201 (3d Cir. 2001). Furthermore, "the participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Smith v. Merck & Co.*, No. CIV.A. 13-2970 (MAS) (LHG), 2019 WL 3281609, at *4 (D.N.J. July 19, 2019); *see also Alves v. Main,* No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

**C.    The Relief Provided for the Class Is Adequate**

The relief provided by the Settlement here is certainly adequate.  The adequacy of a proposed settlement depends on "whether the settlement is within a range of reasonableness that responsible and experienced attorneys could accept, considering all relevant risks."  *See In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03- 0085 FSH, 2005 WL 3008808, at *4

13

(D.N.J. Nov. 9, 2005) (citing *Walsh*, 96 F.R.D. at 642).  That analysis recognizes the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id.*  "However, there is no specific formula, threshold, or equation that a Court must use to determine whether a settlement amount is reasonable.  Even a settlement that is only a 'fraction of the potential recovery' can be deemed appropriate."  *In re ViroPharma Inc. Sec. Litig.*, No. CIV.A. 12-2714, 2016 WL 312108, at *13 (E.D. Pa. Jan. 25, 2016).

The $32 million Settlement presents a very favorable recovery when compared to the median settlement value in securities class settlements in 2022, which was reported by Cornerstone Research to be $13 million, and $10.2 million from 2017 through 2021.  *See* (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2022 Review and Analysis*, at 1 (Cornerstone Research 2023), attached as Exhibit 2 to the Bigin Declaration.

The Settlement also provides a favorable recovery as a proportion of estimated damages, were the Action to continue.  The Settlement recovers approximately 7% of Class Representatives' expert's estimate of $431 million in maximum damages if the Class were successful at trial on all claims and the jury accepted in full the Class's damages theory.  Bigin Decl. ¶44.  This recovery is well-above what courts in the Third Circuit have determined were adequate recoveries for other class actions.  *See*, *e.g.*, *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, 7, 13 (E.D. Pa. Nov. 21, 2008) (approving settlement for 2.5% damages); *Schuler*, 2016 WL 3457218, at *8   (approving settlement amount of approximately 4% of recoverable damages); *In re AT & T Corp.*, 455 F.3d at 169-70 (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement

14

for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

When viewed as a percentage of more conservative damages estimates, the Settlement is even more favorable to the Class because the $431 million in maximum estimated damages would be subject to formidable challenges from economic experts, including whether the revelation of the alleged fraud caused any material losses, and if so, could Class Representatives quantify the amount of loss for each Class Member using a reliable method measuring inflation caused by the misstatements. Bigin Decl. ¶45. This case involved facts and circumstances that arguably could require material reductions to damages if the Class Representatives were required to "disaggregate" the price impact of multiple revelations that were not related to the alleged fraud. Specifically, when the truth concerning Defendants' alleged false and misleading statements was allegedly revealed to the market, it was in connection with Conduent's Third Quarter 2018 earnings announcement. That announcement disclosed five pieces of negative information that explained the reasons why Conduent missed projections and was revising its forecast. The Class Representatives maintain that all five reasons disclosed information revealing that the alleged false statements were false and therefore jointly caused the stock price to drop. However, there were compelling arguments that the Class Representatives would not be able to prove that all five reasons related to the fraud. Reliably disentangling the market's valuation for each of the five reasons was very difficult and could have a large, negative impact on any recovery. For example, the Class Representatives' expert estimated that if the Class could only prove that 20% of the stock drop was related to the fraud, recoverable damages could be only $83 million. Though the Class Representatives believe they could show a larger effect if required, at this lower level of recoverable damages, the Settlement represents a nearly 39% recovery. *Id.* ¶46. While Class

15

Representatives believe that their expert's damages and causation theory was sound and would be admissible and accepted by the Court and the jury, damages could be cut substantially through a variety of negative rulings in connection with motions in limine or on summary judgment, or if the jury did not find for the Class on all of its claims or accept the entirety of the Class's damages theory.

The Settlement is also reasonable because it provides Class Members, whose claims have been pending since 2019, with a certain and substantial tangible recovery, without additional risk, expense, and delay. In continued litigation, the remaining expert discovery would have been protracted, and it is likely that Defendants would have sought summary judgment and exclusion of vital expert testimony. There was no guarantee that the Class would prevail against Defendants' challenges and, even if it did, how the Court's rulings would affect damages or how the case would be presented to the jury. Moreover, the trial of the Class Representatives' claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. Indeed, courts recognize that settlement of securities fraud cases are often reasonable because of the difficulty in proving the elements of the claims. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec 9, 2008) ("Federal securities class actions by definition involve complicated issues of law and fact").

### 1. The Risks of Establishing Liability at Trial

The risks of establishing liability at trial here weigh in favor of granting approval of the Settlement. The adequacy of the Settlement should be judged on "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted

16

for the risk of not prevailing, with the amount of the proposed settlement." *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 (ES), 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)).

Courts have long recognized that "[a] trial on the merits always entails considerable risks." *See*, *e.g.*, *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830(DMC), 2013 WL 3167736, at *4 (D.N.J. June 20, 2013). Moreover, the significant unpredictability and complexity posed by securities class actions in particular generally weigh in favor of final approval. *See In re Par Pharm.*, 2013 WL 3930091, at *4 ("[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (complexity of securities class actions supports final approval).

These risks aside, remaining discovery also would have been protracted and may not have produced evidence supporting Class Representatives' case. Furthermore, the trial of Class Representatives' claims would inevitably have been long and complex and even a favorable verdict would undoubtedly have spurred a lengthy post-trial and appellate process.

As discussed above, had Class Representatives continued litigating the Action, they would have had to overcome many difficult challenges. Given this uncertainty, settling the Action at this juncture will provide the Class with a very good and certain result. Accordingly, the pre-trial risks and risk of establishing liability at trial support the reasonableness of the Settlement.

### 2. The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing loss causation and damages at trial also weigh in favor of approving the Settlement. If this litigation were to continue, as discussed above, Class Representatives would have encountered significant loss causation and damages defenses at the summary judgment phase and at trial.

Pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), Class Representatives would need to show that the disclosure of the alleged securities violations caused investors' losses, as opposed to other unrelated matters. *See, e.g.*, *ViroPharma*, 2016 WL 312108, at *12 ("Lead Plaintiff would need to show that Defendants' omissions caused the drop in the ViroPharma Securities' prices following the corrective disclosure"). The Supreme Court's decision in *Dura*, and subsequent cases interpreting it, have made proving loss causation even more difficult and uncertain than in the past. *See In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff"); *see also ViroPharma*, 2016 WL 312108, at *12 ("proof [of loss causation] would necessitate a battle of the experts. Class Representatives would be permitted to present expert testimony on their theory of loss causation, and Defendants would be permitted to submit a rebuttal expert report arguing that the omissions had no impact on the value of ViroPharma Securities").

Adding to the complexity and expense of this case is that Class Representatives must also prove damages. The Settling Parties' experts would inevitably express diverging views on the range of recoverable damages at trial, even if loss causation were established. Because it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have long recognized the need for compromise.[7]

---

[7] *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts") *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd*, 821 F.3d 410 (3d Cir. 2016); *Lazy Oil Co.*, 95 F. Supp. 2d at 337 ("[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated 'battle of experts'").

18

Even if Class Representatives overcame the risks relating to loss causation and damages and prevailed at trial, such a victory would not guarantee the Class a better recovery than the $32 million Settlement. These uncertainties thus further weigh in favor of final approval.

### 3. The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The continued litigation of this Action would certainly have been lengthy and costly, with no guarantee of any return for investors. The Settlement provides the Class with a prompt and tangible recovery, without the additional risk and delay of litigating the Action to completion, which further supports approval of the Settlement. *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 350 (D.N.J. 2020) ("The parties are better off with the certainty of a prompt settlement and payment rather than the uncertainty of whether they will get any recovery at some future unknown date"); *cf. Talone v. Am. Osteopathic Ass'n*, No. 1:16-cv-04644-NLH-JS, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018) (settlement favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial"). Indeed, "much of the value of a settlement lies in the ability to make funds available promptly." *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901(SHS), 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014).

### 4. The Proposed Process for Distributing Relief Is Effective

The proposed method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. JND is an experienced claims administrator and is processing claims under the guidance of Co-Class Counsel, as authorized in the Preliminary Approval Order. *See* Bigin Decl. ¶¶32-36.

19

The Claims Administrator is employing a well-established protocol for the processing of claims in a securities class action. Potential class members submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants,[8] the Claims Administrator is determining each claimant's eligibility to participate and calculating each Claimant's respective "Recognized Claim" based on the Court-approved Plan of Allocation. *See id.* ¶¶53-55. Class Representatives' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection and cure deficiencies. Any claim disputes that cannot be resolved will be presented to the Court for determination. This claims process is similar to that typically used in securities class action settlements. *See, e.g.*, *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *9 (D.N.J. June 26, 2017).

After the Settlement reaches its Effective Date (*see* Stipulation ¶37), and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable period of time from the date of initial distribution of the Net Settlement Fund, and after payment of outstanding Notice and Administration Expenses, Taxes, and Tax Expenses, the Claims Administrator shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Thereafter, if Class Counsel, in consultation with the Claims Administrator, determines that it is not economical to reallocate and distribute any remaining balance of the Net Settlement Fund then, after payment of outstanding Notice and Administration Expenses, and Taxes, the balance shall be

---

[8] The deadline to submit a Proof of Claim is May 19, 2023.

20

donated to the Consumer Federation of America, or a non-profit and non-sectarian organization(s) chosen by the Court. *Id.* ¶25.[9]

In sum, the claim-processing program for the Settlement is the type regularly used in securities class actions. As such, it militates in favor of approving the Settlement.

### 5.   Co-Class Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Co-Class Counsel's memorandum of law in support of the motion for an award of attorneys' fees and expenses, filed concurrently herewith (the "Fee Brief"), Co-Class Counsel are seeking attorneys' of 25% of the Settlement Fund ($8,000,000) and litigation expenses of $412,276.40, which includes an application for reimbursement of time and expenses to the Class Representatives pursuant to the PSLRA.

As set forth in the Fee Brief and in the Bigin Declaration, this request is reasonable under the circumstances before the Court and in line with fee awards within the Third Circuit in similar common-fund cases. *See* Fee Brief at 6-7.[10]

Accordingly, this factor also supports final approval.

---

[9] Consumer Federation of America ("CFA") is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org. CFA has been approved as a *cy pres* beneficiary in several securities cases, including *In re Livent Corp. Sec. Litig.*, Case No. 190501229 (Pa. Com. Pl. 2021), *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.), and *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D. Cal.).

[10] With respect to the timing of the award of fees and expenses, it is common for such fees to be paid, as provided by the Stipulation here (*see* Stipulation ¶13), at the time the court makes its award. *See, e.g., Pepe v. Cocrystal Pharma, Inc.*, No. 2:18-cv-14091-KM-JBC (D.N.J. Dec. 16, 2020), slip op. at 3 (Dkt. No. 86) (approving timing of payment of attorneys' fees as agreed in stipulation, within three days after court's entry of order awarding fees) (Bigin Decl., Ex. 10).

**6.      The Parties' Agreements in Connection with the Settlement**

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with the motion for preliminary approval (*see* ECF No. 133-1 at n. 6), the Parties have entered into a Term Sheet memorializing the basic terms of the Settlement, the Stipulation, and the confidential Supplemental Agreement. The Supplemental Agreement establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased a certain number of shares of Conduent common stock request exclusion (or "opt out") from the Settlement. This type of agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).[11]

**D.  The Settlement Treats Class Members Equitably Relative to Each Other**

The Settlement provides for one cash sum that is payable to all Class Members that submit eligible claims. As discussed below, the Plan of Allocation, drafted with the assistance of Class Representatives' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably. Each Authorized Claimant, including the Lead Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan of Allocation, and each will be subject to the same formulas for calculating claims.

---

[11] *See also*, *e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in part sub. nom. In re Carrier Iq, Inc.*, No. 12-MD-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

### III.   THE PLAN OF ALLOCATION TO DISTRIBUTE FUNDS TO THE CLASS SHOULD BE APPROVED

A Plan of Allocation "need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *6 (E.D.N.Y. Apr. 11, 2014).  The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (*citing In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)).

Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).  Here, Class Representatives and Co-Class Counsel formulated the Plan of Allocation to be consistent with the securities laws and to reflect the single alleged corrective disclosure on November 7, 2018.  *See In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (approving plan because it was "rational and consistent with [Counsel's] theory of the case").[12]  Simply put, Class Members who submit a valid Claim Form and who purchased shares of Conduent common stock during the Class Period and held those shares on November 7, 2018, when the price of Conduent common stock is alleged to have

---

[12] *See also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *see also Ocean Power*, 2016 WL 6778218, at *23 ("*pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan*, 667 F.3d at 328).

fallen in response to the disclosure of Defendants' false and misleading statements, will be eligible to receive a payment from the Net Settlement Fund.

Each Claimant, including the Class Representatives, who has a Recognized Claim of $10.00 or more will receive a *pro rata* distribution pursuant to the Plan of Allocation.  The Class Representatives will be subject to the same formulas.  Bigin Decl. ¶55. *See Ocean Power*, 2016 WL 6778218, at *3 (approving a settlement agreement where the settlement fund would be distributed on a *pro rata* basis).

In sum, Class Representatives and Co-Class Counsel submit that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members with damages suffered due to the conduct alleged in the Amended Complaint and, thus, should be approved.

## IV.    CERTIFICATION OF THE CLASS

The Class, as previously approved by the Court in the Order granting Lead Plaintiffs' Motion for Class Certification (ECF No. 114), satisfied Rule 23's requirements for certification, as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. *See also*, Preliminary Approval Order (ECF No. 137 ¶2). The Class bound by the Settlement and the certified Class are the same. *Compare* Stipulation at ¶1(f) to ECF No. 114.  Nothing has changed since the Court's original certification or entry of the Preliminary Approval Order to alter the propriety of certification of the Class.  Accordingly, the Class meets the requirements of Rule 23(b)(3) and is appropriate for purposes of judgment on the proposal.  Fed. R. Civ. P. 23(e)(1)(B)(ii).

V.       **NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS AND THE
         REACTION OF THE CLASS TO DATE SUPPORTS APPROVAL OF THE
         SETTLEMENT**

Notice of the proposed Settlement, as approved by the Court in the Preliminary Approval

Order (ECF No. 137), satisfied Rule 23's requirement of "the best notice practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S.

156, 173-75 (1974).  Notice must "fairly apprise the prospective members of the class of the terms

of the proposed settlement and of the options that are open to them" in connection with the

proceedings.  *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1318 (3d Cir. 1993).

The Claims Administrator mailed 90,458 copies of the long-form Notice and Claim Form

to all identified Class Members,[13] published the Summary Notice in *The Wall Street Journal*, and

disseminated the Summary Notice using PR Newswire.  *See* Mailing Decl. ¶¶2-10.  The Notice

and Claim Form were also posted on the Settlement website, along with copies of relevant Court

documents and a list of deadlines to submit objections, request exclusion from the Class, and

submit Claim Forms.  Sending the Notice by first-class mail, combined with publishing the

Summary Notice using a widely disseminated wire service and in a major newspaper, while

posting the Notice on the Settlement website, is typical of the notice provided in other class actions

that satisfies the requirements of Rule 23 and due process.  *See*, *e.g.*, *In re Valeant Pharms. Int'l*

*Inc. Sec. Litig.*, No. 3:15-CV07658-MAS-LHG, 2020 WL 3166456, at *6 (D.N.J. June 15, 2020);

Ocean Power, 2016 WL 6778218, at *10*; Shapiro v. Alliance MMA, Inc.*, No. CIV.A. 17-2583

(RBK/AMD), 2018 WL 3158812, at *7 (D.N.J. June 28, 2018);  *See also*, *Zimmer Paper Prod.,*

---

[13] Class Members were identified and located using information provided by Conduent's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases.  *See* Mailing Decl. ¶3.

25

*Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause"). Thus, notice has been given to the Class as required by the Preliminary Approval Order and the due process requirements of Rule 23.

While the deadlines have not yet passed, to date, no Class Member has objected to any aspect of the Settlement, and only one Class Member has requested exclusion from the Class. Bigin Decl. ¶¶57, 79; Mailing Decl. ¶¶15-17.

It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See Castro v. Sanofi Pasteur Inc*., Civ. No. 11-7178 (JMV)(MAH), 2017 WL 4776626, at *4 n.3 (D.N.J. Oct. 23, 2017) ("the lack of objectors provides a strong indication that the settlement is fair and reasonable"); *Serio v. Wachovia Sec., LLC,* No. CIV.A. 06-4681 (MF), 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("the low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair"). Such support from the Class here further militates in favor of approval of the Settlement.

## CONCLUSION

For all the foregoing reasons, Class Representatives and Co-Class Counsel respectfully request that the Court: (i) grant final approval of the Settlement; and (ii) approve the Plan of Allocation. A proposed Judgment negotiated by the Parties and proposed Order approving the Plan of Allocation will be submitted with Class Representatives' reply papers, after the deadlines for objecting or seeking exclusion have passed.

26

Dated: April 19, 2023                Respectfully submitted,

/s/ *Richard L. Elem*
Jan Meyer
Richard L. Elem
**LAW OFFICES OF JAN MEYER &
 ASSOCIATES, P.C.**
1029 Teaneck Road
Second Floor
Teaneck, New Jersey 07666
Tel: (201) 862-9500
Email: jmeyer@janmeyerlaw.com
      relem@janmeyerlaw.com

*Liaison Counsel for Class Representatives
and the Class*

**BERNSTEIN LIEBHARD LLP**

*/s/ Stanley D. Bernstein*
Stanley D. Bernstein
Michael S. Bigin
Adam Federer
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bernstein@bernlieb.com
bigin@bernlieb.com
afederer@bernlieb.com

**LABATON SUCHAROW LLP**

*/s/ Christine M. Fox*
Christine M. Fox
Carol C. Villegas
Guillaume Buell
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cfox@labaton.com
cvillegas@labaton.com
gbuell@labaton.com

27

*Co-Class Counsel for Class Representatives and the Class*


**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: rfinkel@wolfpopper.com
jruthizer@wolfpopper.com

*Additional Counsel for Class Representatives*

28