**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Case No.: 2:19-cv-08237-SDW-AME<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J. |

**CO-CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES, <u>AND AWARD OF COSTS AND EXPENSES TO THE CLASS REPRESENTATIVES</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 4

I. CO-CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT .................... 4

II. THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
COMMON FUND ........................................................................................................... 5

III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE
PERCENTAGE-OF-RECOVERY METHOD ................................................................... 6

IV. FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT
CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE..................... 8

    A. The Size of the Common Fund Created and the Number of Persons Benefited
Support Approval of the Fee Request.................................................................... 9

    B. The Absence of Objections to Date Supports Approval of the Fee Request................. 10

    C. The Skill and Efficiency of the Attorneys Involved Support the Fee Request.............. 10

    D. The Complexity and Duration of the Litigation Support Approval of the Fee
Request.................................................................................................................. 11

    E. The Risk of Non-Payment Supports Approval of the Fee Request ............................. 14

    F. The Time Devoted to this Case by Counsel Supports Approval of the Fee
Request.................................................................................................................. 15

    G. The Requested Fee of 25% of the Settlement Amount Is Within the Range of
Fees Typically Awarded in Actions of this Nature......................................................... 17

    H. The Lack of Government Investigation and the Fact that All Benefits of the
Settlement Are Attributable to the Efforts of Counsel Support Approval of
the Fee Request ..................................................................................................... 17

    I. The Percentage Fee That Would Have Been Negotiated Had the Case Been
Subject to a Private Contingent Fee Arrangement Supports Approval of the
Fee Request ........................................................................................................... 18

V. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE
LODESTAR CROSS-CHECK .......................................................................................... 18

VI.   CO-CLASS COUNSEL'S APPLICATION FOR REASONABLY INCURRED
LITIGATION EXPENSES SHOULD BE APPROVED ...................................................... 21

VII.  THE CLASS REPRESENTATIVES' REQUESTS FOR PSLRA
REIMBURSEMENT ................................................................................................ 22

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995) .......................................................................................... 21

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ....................................................................................... 15

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ............................................................................................ 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) .......................................................................................................... 5

*Bentley v. Legent Corp.*,
   849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom.*,
   *Herman v. Legent Corp.*,
   50 F.3d 6 (4th Cir. 1995) ............................................................................................... 15

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................................................ 18

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................................................... 4

*Dartell v. Tibet Pharms, Inc.*,
   No. 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017) .............................................. 11

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ......................................................................................... 5, 8

*Hall v. AT&T Mobility LLC*,
   No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ................................. 10, 11, 21

*Hensley v Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................................... 9

*Hicks v. Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................... 23

*Honeywell Int'l*,
   2022 WL 1320827 ............................................................................................. 8, 18, 21, 23

*In re Aetna Inc. Sec. Litig.*,
   No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ................................. 7

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................. 15

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ........................................................................... 20, 23

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) .................................................................................. passim

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ....................................................................................... 5

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................................... 4, 6

*In re Cigna Corp. Sec. Litig.*,
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...................................... 18

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)................................ 11, 12

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009)................................................................................... 4, 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)......................................................................................... 6

*In re Genta Sec. Litig.*,
No. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)............................... 12

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................. passim

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)..................................................................................... 6

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-O2-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ........................... 15

*In re Linerboard Antitrust Litig.*,
MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004), *order amended by*,
MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ......................................... 10

*In re Merck & Co., Vytorin ERISA Litig.*,
No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ....................................... 14

iv

*In re Ocean Power Techs., Inc. Sec. Litig.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................... 6, 18

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) ............................................ 4, 23

*In re PNC Fin. Servs. Grp., Inc. Sec. Litig.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006) ...................................................................................... 7

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012).................................................. 18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).............................................................................. 8, 17, 18, 19

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023)............................................. 16

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................................... 16

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................................................... 20

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................................... 20

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)...................................................................................... 6, 9, 19

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No.CIV. A. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec 9, 2008)...................................... 23

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................................. 21, 23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-1432, 2012 WL 1964451 (D.N.J. May 31, 2012).................................................. 14, 20

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. 08 Civ. 397, 2013 WL 5505744 (D.N.J. Oct. 1, 2013).................................................... 23

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ............................................ 14

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*,
No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) ......... 6, 11, 12, 14

*In re ViroPharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ............................................................. 9

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*,
798 F.2d 35 (2d Cir. 1986) ............................................................. 13

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) ............................................ 6, 7, 14

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987) ............................................................. 15

*McDermid v. Inovio Pharms., Inc.*,
No. CV 20-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ............................................. 19

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................. 16

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................. 15

*Schuler v. Meds. Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ............................................ 4

*Sullivan v. DB Invs. Inc.*,
667 F.3d 273 (3d Cir. 2011) ............................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................. 5

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CV 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ............................................. 7

*Whiteley v. Zynerba Pharms., Inc.*,
No. 19-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ............................................. 17

**Statutes**

15 U.S.C. §78u-4(a)(6) ............................................................. 6

15 U.S.C. § 78u-4(a)(4) ............................................................. 22

## PRELIMINARY STATEMENT

Bernstein Liebhard LLP and Labaton Sucharow LLP,[1] Court-appointed Co-Class Counsel for Class Representatives Oklahoma Firefighters Pension and Retirement System ("OFPRS"), Plymouth County Retirement Association ("PCRA"), and Electrical Workers Pension Fund, Local 103, I.B.E.W ("Local 103" and, collectively, "Class Representatives"), on behalf of the certified Class, have successfully negotiated a settlement of this securities class action with Defendants Conduent Incorporated ("Conduent" or the "Company"), Ashok Vemuri, and Brian Webb-Walsh in the amount of $32,000,000 in cash.[2] The proposed Settlement represents a very favorable recovery for the Class, especially when viewed in light of the risks and costs attendant to further, protracted litigation. Accordingly, Co-Class Counsel request, on behalf of all Plaintiffs' Counsel: (i) an award of attorneys' fees in the amount of 25% of the Settlement Amount, plus accrued interest; (ii) payment of Litigation Expenses incurred in prosecuting and settling the Action, in the amount of $396,508.40, plus accrued interest; and (iii) reimbursement of the Class Representatives' costs and expenses, in the amount of $15,768, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

As detailed in the accompanying Bigin Declaration,[3] it is respectfully submitted that the Settlement was achieved through the skill, experience, and effective advocacy of Co-Class

---

[1] On May 6, 2022, the Court approved the substitution of Labaton Sucharow LLP for the Thornton Law Firm LLP ("TLF") as Co-Class Counsel. ECF No. 127.

[2] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of December 1, 2022 (the "Stipulation", ECF No. 133-3) or in the Declaration of Michael S. Bigin in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation; Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Award of Costs and Expenses to the Class Representatives (the "Bigin Declaration" or "Bigin Decl."), filed herewith.

[3] The Bigin Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action and a description of the services Plaintiffs' Counsel provided for

Counsel. Co-Class Counsel, with the assistance of all other Plaintiffs' Counsel, vigorously pursued the claims in the Action for the benefit of the Class. To achieve the recovery here, Plaintiffs' Counsel devoted substantial resources to the Action by, among other things: (i) conducting a thorough and wide-ranging factual investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which involved a careful review of documents filed publicly by the Company with the U.S. Securities and Exchange Commission (the "SEC") and other publicly available information, including press releases, news articles, transcripts of investor calls, and other public statements issued by or concerning the Company and the Defendants; (ii) preparing and filing an Amended Class Action Complaint (the "Complaint"); (iii) opposing Defendants' motion to dismiss the Complaint; (iv) moving for, and obtaining, class certification, which included the preparation of an expert report from Class Representatives' economic expert; (vi) engaging in extensive fact discovery, which included Co-Class Counsel's review of more than 300,000 documents produced by Defendants (totaling approximately one million pages of documents) and defending the depositions of the Class Representatives and their economic expert; and (vii) engaging in a rigorous mediation process with two mediators on two separate occasions, which included preparing detailed mediation briefs and participating in lengthy follow-up negotiations. *See generally* Bigin Decl. ¶¶13-29.

Counsel's efforts to date have been without compensation of any kind and a fee has been wholly contingent upon the result achieved. As compensation for their efforts on behalf of the Class and the risks of non-payment they faced in bringing the Action on a contingent basis,

---

the benefit of the Class; the nature of the claims; the negotiations leading to the Settlement; the risks and uncertainties of the litigation; and the facts and circumstances underlying Co-Class Counsel's request for fees and expenses. Citations to "¶" in this memorandum refer to paragraphs in the Bigin Declaration.

Co-Class Counsel now seek on behalf of themselves and all other Plaintiffs' Counsel, an attorneys' fee award of 25% of the Settlement Amount, plus accrued interest. The attorneys' fee request is fair and reasonable when one considers, among other things: (i) the result achieved for the Class; (ii) the complexities and risks faced by counsel and their efforts during the litigation; and (iii) the amount of fees awarded by courts within the Third Circuit and this District in comparable cases. Furthermore, Class Representatives, sophisticated institutional investors that actively supervised the Action, have evaluated the request for fees and expenses and have authorized it as reasonable. *See* Ex. 9 at ¶6; Ex. 10 at ¶4; Ex. 11 at ¶4.[4]

In addition, while the deadline set by the Court for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requests for fees, Plaintiffs' Counsel's expenses, or Class Representatives' expenses have been received. ¶¶79. Pursuant to the Preliminary Approval Order, 90,458 copies of the Notice have been mailed to potential Class Members and their nominees through April 18, 2023, and the Summary Notice was published in *The Wall Street Journal* and transmitted across the internet using *PR Newswire. See* Declaration of Luiggy Segura Regarding: (A) Mailing of Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Mailing Decl."), attached as Exhibit 1 to the Bigin Declaration, at ¶¶2-10. The Notice advised potential Class Members that Co-Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus accrued interest, and for payment of Litigation

---

[4] All exhibits referenced herein are annexed to the Bigin Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit and the second alphabetical reference is to the exhibit designation within the exhibit.

3

Expenses in an amount not to exceed $600,000.  *See* Ex. 1-A at ¶¶4, 44.  The fees and expenses sought by Co-Class Counsel do not exceed the amounts set forth in the Notice.

For the reasons set forth herein and in the Bigin Declaration, Co-Class Counsel respectfully submit that the attorneys' fees requested are fair and reasonable under the circumstances now before this Court, and that the expenses requested are reasonable in amount and should be approved.

## **ARGUMENT**

**I.     CO-CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT**

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[5]

District Courts within the Third Circuit have consistently adhered to these teachings.  *See, e.g.*, *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here

---

[5] All internal quotations and citations are omitted unless otherwise noted.

is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"). Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement' of the securities laws and are a necessary supplement to [SEC] action").

## II.     THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Co-Class Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Class. In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving the creation of common fund. *See Sullivan v. DB Invs. Inc.,* 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The Third Circuit has "several times reaffirmed that the application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1). The method is almost

universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *11 (D.N.J. June 15, 2020) (noting that the percentage-of-recovery method is "generally favored in common fund cases"); *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016) (same).

Additionally, the PSLRA, which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. PSLRA, 15 U.S.C. §78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage-of-recovery method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Cendant*, 404 F.3d at 188 n.7; *Rite Aid*, 396 F.3d at 300.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE PERCENTAGE-OF-RECOVERY METHOD

The requested fee of 25% of the Settlement Amount is reasonable under the percentage-of- recovery method. While there is no general rule or benchmark, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"). Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *La. Mun. Police Emps.*

6

*Ret. Sys. v. Sealed Air Corp.*, No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same).

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in the Third Circuit supports the reasonableness of the requested fee. *See, e.g., City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin. Inc., et al.*, No. 2:12-cv-05275-MCA-LDW, slip op. at 1 (D.N.J. Sept. 29, 2016) (awarding 30% of $33 million settlement) (Ex. 12);[6] *In re Heckman Corp. Sec. Litig.*, No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2015) (awarding 33.3% of $27 million settlement) (Ex. 12); *In re PNC Fin. Servs. Grp., Inc. Sec. Litig.*, 440 F. Supp. 2d 421, 455 n.6 (W.D. Pa. 2006) (awarding 28% of $36.6 million settlement); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CV 13-6731, 2017 WL 4167440, at *8 (E.D. Pa. Sept. 20, 2017) (awarding 25% of $30 million settlement and noting, "a fee award of 25% of the total settlement here is reasonable and in keeping with similar precedent"); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 2 (D. Del. Aug. 5, 2008) *aff'd*, 396 F. App'x. 815 (3d Cir. 2010) (awarding 30% of $21.5 million settlement) (Ex. 12).

Awards of greater than 25% are also common in courts within the Third Circuit in cases with much larger settlement amounts. *See, e.g., In re Novo Nordisk Sec. Litig.*, Master File No. 3:17-cv-209, slip op. at 2 (D.N.J. July 13, 2022) (awarding 29% of $100 million settlement) (Ex. 12); *Alaska Elec. Pension Fund. v. Pharmacia Corp.*, No. 03-1519, slip op. at 4 (D.N.J. Jan. 30, 2013) (awarding 27.5% of $164 million settlement) (Ex. 12); *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *14 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million

---

[6] All unreported decisions are submitted herewith in a compendium attached to the Bigin Declaration as Ex. 12.

settlement net of expenses); *Ikon*, 194 F.R.D. at 192-97 (awarding 30% of $111 million settlement net of expenses).

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2013-2022, the median attorneys' fee award for settlements of between $25 million and $100 million was 25%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA 2023), Ex. 13 at 21.

Accordingly, the requested fee is comparable to fees awarded in similar cases.

## IV. FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Third Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1. "Several of these factors overlap considerably with those already considered by the Court in approving the Settlement." *Honeywell Int'l*, 2022 WL 1320827, at \*10. The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;" (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained;" and (3) any "innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40). The fee award factors "'need not be applied in a formulaic way' because each case is different, 'and in

8

certain cases, one factor may outweigh the rest.'" *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301).

An analysis of the relevant factors further confirms that the fee requested here is fair and reasonable under the circumstances before the Court and should be approved.

A. **The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request**

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Co-Class Counsel, on behalf of Class Representatives and with the assistance of other Plaintiffs' Counsel, have secured a Settlement that provides for a substantial and certain payment of $32,000,000 for the benefit of the Class. As detailed in the Bigin Declaration, the Settlement provides a favorable recovery when viewed in the aggregate and as a proportion of estimated damages. The Settlement is significantly greater than the median settlement value in securities class action settlements in 2022, which was reported by Cornerstone Research to be $13 million and $10.2 million from 2017 through 2021. *See* Exhibit 2, Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2022 Review and Analysis, at 1 (Cornerstone Research 2022). In 2022, the median securities class action settlement as a percentage of simplified damages was 4.4%. *Id.* at 7. The Settlement recovers approximately 7% of Class Representatives' expert's estimate of $431 million in maximum damages, a very favorable recovery, particularly in light of Defendants' countervailing arguments, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all. ¶¶44-49.

The Settlement will also benefit a large number of investors. To date, the Claims Administrator has mailed 90,458 Notice Packets to potential Class Members and their nominees. *See* Ex. 1 at ¶¶2-10.  Accordingly, while the deadline for submission of the Claim Forms is not until May 19, 2023, it is clear that a large number of Class Members can be expected to benefit from the Settlement. *See, e.g., In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at \*5 (E.D. Pa. June 2, 2004), order amended by, MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

**B.      The Absence of Objections to Date Supports Approval of the Fee Request**

The Notice provided a summary of the terms of the Settlement and stated that Co-Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus accrued interest.  *See* Ex. 1-A at ¶¶4, 44.  The Notice also advised Class Members that they could object to the Settlement, Plan of Allocation, or fee request and explained the procedure for doing so.  *See id*. at ¶¶45-48. While the deadline set by the Court for Class Members to object has not yet passed, to date, no objections have been received.[7]

**C.      The Skill and Efficiency of the Attorneys Involved
Support the Fee Request**

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."  *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at \*19 (D.N.J. Oct. 13, 2010).

---

[7] The deadline for submitting objections is May 3, 2023. As provided in the Preliminary Approval Order, Co-Class Counsel will file reply papers no later than May 17, 2023, addressing any objections that may be received.

It required considerable skill to achieve the proposed Settlement. Plaintiffs' Counsel were required to contend with, among other things, complex issues particular to legacy Information Technology ("IT") systems and infrastructure, and data center consolidation and migration. These issues carried over into the difficult elements inherent in the Class's claims, particularly, pleading and proving materiality, falsity, scienter, loss causation and damages. ¶29.

With respect to "the experience and expertise" of counsel, as set forth in the firm resumes attached to the respective declarations of Plaintiffs' Counsel, Plaintiffs' Counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in securities cases throughout the country. *See* Exs 3-D; 4-C; 5-C; 6-C; 7-B; ¶39. *See also Valeant Pharms.,* 2020 WL 3166456, at \*8 (noting the skill of counsel, as further demonstrated by the biographies of the firms).

"The quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 WL 4053547, at \*19; *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at \*7 (D.N.J. Nov. 28, 2007). Co-Class Counsel was opposed in this litigation by King & Spalding LLP, a prominent firm with undeniable experience and skill in the securities arena. The ability of Co-Class Counsel to obtain a favorable outcome for the Class in the face of this formidable legal opposition further confirms the quality of Co-Class Counsel's representation.

**D.      The Complexity and Duration of the Litigation Support Approval of the Fee Request**

Securities litigation is regularly acknowledged to be particularly complex and arduous, usually requiring extensive fact and expert testimony on multiple issues. *See, e.g., Dartell v. Tibet Pharms, Inc.,* No. 14-3620, 2017 WL 2815073, at \*10 (D.N.J. June 29, 2017) (approving counsel's fee request of one-third of the settlement amount and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive

due to the need for experts"); *Valeant Pharms.*, 2020 WL 3166456, at \*15 (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 WL 2229843, at \*3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *Datatec*, 2007 WL 4225828, at \*3 ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would be lengthy and costly to the parties").

As discussed in the Bigin Declaration, the Action alleged violations of the Securities and Exchange Act of 1934 ("Exchange Act"), raising numerous difficult legal and factual issues, that required creativity and sophisticated analysis. Continued litigation would have included the completion of fact and expert discovery, and it is unknown whether Class Representatives' claims would have withstood a summary judgment challenge, as well as whether Class Representatives would be able to convince a jury to accept their theories over Defendants' competing narrative.

For example, although Co-Class Counsel believe that Class Representatives have a strong case for liability, the claims against Defendants presented unique challenges given the highly technical nature of the alleged fraud. To prove their case, Class Representatives would need to show that Defendants made false or misleading material statements. However, Defendants were confident that the evidence would confirm that the challenged statements, including statements regarding the Company's Strategic Transformation program, were not rendered false or misleading by allegedly undisclosed issues with operational level infrastructure and technology initiatives. Regarding scienter, Defendants would likely argue that to the extent the allegedly undisclosed infrastructure and technology issues did not reach the Individual Defendants, and that there was insufficient evidence that these Defendants believed those issues rendered any of their statements

12

false or misleading or would prevent the Company from achieving its 2018 financial guidance. ¶48.  Accordingly, there was a very real risk that a jury would conclude that the Defendants did not act with the requisite scienter.  *See AT&T*, 455 F.3d at 170 (re-emphasizing that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request").

Regarding loss causation and damages, Defendants would likely argue, both at summary judgment and to the jury, that the decline in the Company's stock price that followed its Third Quarter 2018 earnings announcement reflected a number of confounding pieces of news, many of which did not relate in any way to the alleged fraud, and that these confounding factors would make it challenging for Class Representatives to put forth a reliable method to disaggregate price impact. ¶46.

Had this litigation continued, Class Representatives, through Co-Class Counsel, would have been required to conduct further extensive deposition discovery and substantial expert discovery (including preparation of additional expert reports and expert depositions).  After the close of discovery, Defendants would undoubtedly have moved for summary judgment and would have vigorously challenged Class Representatives' experts' testimony. Substantial time and expense would need to be expended in order to prepare the case for trial, filing and responding to myriad *in limine* motions, and the trial itself would be protracted and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . . An

appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, and complexity of this securities case – especially when compared against the significant and certain recovery achieved by the Settlement – Co-Class Counsel's fee request is reasonable.

### E.   The Risk of Non-Payment Supports Approval of the Fee Request

Plaintiffs' Counsel undertook the Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses. This Court and others have consistently recognized that the risk of non-payment is an important factor favoring an award of attorneys' fees. *See*, *e.g.*, *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 WL 4730185, at *8 (same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same); *see also Valeant Pharms.*, 2020 WL 3166456, at *13 (noting that the risk of nonpayment weighed in favor of the requested fee, where, among other things, the "recovery was uncertain due to the difficulty of prevailing in securities cases generally").

The risk of no recovery in complex cases of this type is real. Indeed, even if Class Representatives had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years. Co-Class Counsel know from experience that despite the

14

most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in expenses and received ***nothing*** for their efforts.[8] Indeed, even judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery. *See*, *e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This strongly favors approval of the requested fee.

**F.      The Time Devoted to this Case by Counsel Supports Approval of the Fee Request**

As discussed above and detailed in the Bigin Declaration and the individual declarations submitted by Plaintiffs' Counsel, Exs. 3-A; 4-A; 5-A; 6-A; 7-A, Plaintiffs' Counsel have devoted 11,688.75 hours to the prosecution and resolution of the Action. *See* Ex. 8 (Summary Table of Lodestars and Expenses).

---

[8] For illustrative examples, *see*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-O2-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (case tried by Labaton Sucharow, defense verdict after four weeks of trial).

The time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement show that the requested fee is justified.  As set forth in greater detail in the Bigin Declaration, Plaintiffs' Counsel:

- Reviewed and analyzed: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, transcripts of investor calls, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses (¶13);

- drafted and filed a detailed Amended Complaint (¶¶11-12);

- successfully opposed Defendants' motion to dismiss the Complaint (¶14);

- moved for and obtained class certification (¶¶16-22);

- defended four depositions, including those of representatives of each of the Class Representatives and their economic expert (¶¶18-19);

- engaged in fact discovery, including Co-Class Counsel's review of approximately one million pages of documents produced by Defendants (¶15); and

- drafted mediation statements and engaged in extensive mediation efforts with two experienced mediators (¶¶23-29).

Plaintiffs' Counsel have expended 11,688.75 hours through April 11, 2023, investigating, prosecuting, and resolving the Action, resulting in a combined "lodestar" amount of $7,190,454.50 at Plaintiffs' Counsel's current hourly rates.[9]  *See* Exs. 3-A; 4-A; 5-A; 6-A; 7-A. With respect to counsel's rates, which range from $825 to $1250 per hour for partners, $750 to $1000 per hour for of counsels/senior counsels, and $380 to $7000 per hour for associates (*id.*), Co-Class Counsel submit that the rates are comparable to or less than those used by peer law firms litigating matters of similar magnitude. *See, e.g., In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *27 (E.D. Pa. Mar. 15, 2023) (finding that class counsel hourly rates ranging from

---

[9] Applying current hourly rates is permitted by the United States Supreme Court and the other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

$115 to $1,325 "fall within the range of rates charged by other attorneys in this market."); *Whiteley v. Zynerba Pharms., Inc.*, No. 19-4959, 2021 WL 4206696, at *14 (E.D. Pa. Sept. 16, 2021) (finding that hourly rates ranging from $110 to $1,100 were "well within the range of what is reasonable and appropriate in this market"). Co-Class Counsel's efforts for the benefit of the Class will continue, if the Court approves the Settlement. Co-Class Counsel will continue to work through the settlement administration process and the distribution process, without seeking any additional compensation.

Co-Class Counsel respectfully submit that this *Gunter* factor weighs in favor of the requested attorneys' fee.

### G.   The Requested Fee of 25% of the Settlement Amount Is Within the Range of Fees Typically Awarded in Actions of this Nature

As discussed above in Section III, the requested fee of 25% of the Settlement Amount is within the range of fees awarded in comparable cases under the percentage-of-recovery method. Accordingly, this factor supports approval of the requested fee.

### H.   The Lack of Government Investigation and the Fact that All Benefits of the Settlement Are Attributable to the Efforts of Counsel Support Approval of the Fee Request

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See In re Prudential, Ins. Co. Am. Sales Practice Litig. Action* 148 F.3d 283, 338 (3d Cir. 1998). Here, there was no governmental civil or criminal investigation or prosecution of the alleged securities fraud that produced helpful testimony, admissions, or findings and, accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Plaintiffs' Counsel in this Action.  This fact supports the reasonableness of the requested fee

17

award. *See, e.g.*, *AT&T*, 455 F.3d at 173; *Honeywell*, 2022 WL 1320827, at \*11; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at \*6 (E.D. Pa. July 13, 2007).

**I.    The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. A 25% fee is less than typical attorneys' fees in non-class contingent fee cases. *See Ocean Power*, 2016 WL 6778218, at \*29. If this had been an individual action, the customary contingent fee would likely range from 30 to 40 percent of the recovery. *See, e.g.*, *Id.; Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 903 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Co-Class Counsel's requested fee of 25% of the Settlement Amount is fully consistent with private standards.[10]

**V.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE LODESTAR CROSS-CHECK**

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable.[11]

---

[10] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 340. This Settlement does not, because Co-Class Counsel believes that an all-cash recovery is the best remedy for the injury suffered by the Class. In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at \*6 (E.D. Pa. Nov. 9, 2012).

[11] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to

*See, e.g., AT&T*, 455 F.3d at 164. However, "[t]he lodestar cross-check, while useful, should not

displace a district court's primary reliance on the percentage-of-recovery method." *Id*.; *see also*

*Rite Aid*, 396 F.3d at 305 (holding "it was proper for the District Court to apply the percentage-of-

recovery method, with an abridged lodestar analysis serving as a cross-check"). "The lodestar

cross-check calculation need entail neither mathematical precision nor bean-counting. The district

courts may rely on summaries submitted by the attorneys and need not review actual billing

records." *Rite Aid*, 396 F.3d at 306-07; *see also Prudential*, 148 F.3d at 342 (same); *McDermid v.*

*Inovio Pharms., Inc.*, No. CV 20-01402, 2023 WL 227355, at *12 (E.D. Pa. Jan. 18, 2023) (same).

Here, Plaintiffs' Counsel devoted a total of 11,688.75 hours to the prosecution and

resolution of the Action. Ex. 8 and Exs. 3-A; 4-A; 5-A; 6-A; 7-A.[12] Plaintiffs' Counsel's lodestar

– which is derived by multiplying the hours spent on the litigation by each firm's current hourly

rates for attorneys, paralegals and other professional support staff – is $7,190,454.50.   *Id*.

Accordingly, the requested 25% fee, which equates to $8,000,000 (plus interest at the same rate as

---

reflect such factors as the risk and contingent nature of the litigation, the result obtained and the
quality of the attorneys' work.  The multiplier is intended to "account for the contingent nature or
risk involved in a particular case and the quality" of the work.  *Rite Aid*, 396 F.3d at 305-06.

[12] On May 6, 2022, the Court approved the substitution of Labaton Sucharow for TLF as
Co-Class Counsel in the Action. Labaton's substitution resulted from TLF attorneys (including
attorneys Guillaume Buell and Garrett Bradley) resigning from TLF and joining Labaton
beginning in March 2022. As a result of the resignation of the primary TLF attorney appearing in
this matter, Mr. Buell, TLF agreed to withdraw from the representation of the class as Co-Lead
Counsel. Ex. 4 at ¶2 (Fox Declaration); Ex. 5 at ¶2 (Lesser Declaration). Upon its replacement of
TLF as Co-Class Counsel, Labaton shared litigation responsibilities with Bernstein Liebhard
LLP. All of the time and expenses reported in the TLF declaration were incurred before Labaton
replaced TLF as Co-Class Counsel. All of the time and expenses reported in the Fox Declaration
were incurred after Labaton was appointed as Co-Class Counsel and there is no overlap with the
time reported by TLF and Labaton. Given these unique circumstances, the hourly rates reported
in the Fox Declaration for former TLF attorneys are TLF's rates, rather than Labaton's current
hourly rates. Ex. 4-A.

earned by the Settlement Fund), would represent a 1.11 "multiplier" on counsel's lodestar – meaning Plaintiffs' Counsel are seeking 11% in addition to their lodestar. ¶67.[13]

This "multiplier" is additional evidence that the requested attorneys' fee is reasonable. Lodestar multipliers of one to four are often awarded in common fund cases. *In re Prudential Inc.*, 148 F.3d at, 341; *see also AT&T*, 455 F.3d at 172 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] was neither legally nor factually complex"); *Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *8 (awarding 1.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) and *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding multiplier of between 4.5 and 8.5 on 2001 settlement and multiplier of 6.96 on the 2005 settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding 4.3 multiplier).

Accordingly, the lodestar cross-check firmly supports the reasonableness of the 25% fee request.

---

[13] Additional Plaintiffs' Counsel, Wolf Popper LLP, served as counsel to Lead Plaintiff The Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA"). ERS-PREPA filed the initial complaint in this Action and was appointed a lead plaintiff by this Court (ECF No. 10). Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland") served as Wolf Popper's liaison counsel in connection with the preparation and filing of the initial complaint (ECF No. 1). Wolf Popper anticipates sharing a portion of its attorneys' fees in this matter with Cohn Lifland consistent with the time Cohn Lifland dedicated to the litigation, which totals approximately $12,500. The Class's recovery will not be affected by Wolf Popper sharing its fee with Cohn Lifland. Ex. 6 at ¶2 (Ruthizer Decl.).

## VI. CO-CLASS COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Co-Class Counsel also request payment of $396,508.40 in expenses incurred in connection with the prosecution and settlement of this litigation. This is less than the maximum that was reported in the Notice. Counsel's individual firm fee declarations attest to the amount and accuracy of their expenses. Exs. 3-B; 4-B; 5-B; 6-B. To date, there has been no objection to the request for expenses. ¶79.

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (expenses for experts or consultants, computer research, and travel "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund"); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants."). The categories of expenses for which counsel here seek payment are the type routinely charged to hourly clients in the private legal marketplace and, therefore, should be paid out of the common fund.

Plaintiffs' Counsel engaged experts for the benefit of the Class at the cost of $132,219 (approximately 33.35% of total expenses). ¶71. Co-Class Counsel consulted with experts in the fields of market efficiency, technology integration, loss causation and damages. Co-Class Counsel utilized these experts and consultants in connection with class certification, to assist with discovery and provide expert opinion, in preparation for mediation, and in connection with the development

21

of the proposed Plan of Allocation.  These experts and consultants were essential to the prosecution of the Action.  *Id.*

Plaintiffs' Counsel also incurred expenses in connection with the two mediations, totaling $20,381.17 (approximately 5.14% of total expenses). ¶73.

Another component of the Litigation Expenses was for litigation support services, which were needed to produce and host the electronic documents produced in the Action. These expenses amount to $155,759.06 (approximately 39.28% of total expenses). ¶72.

The costs of electronic factual and legal research, totaling $28,932.90 (approximately 7.30% of total expenses). ¶74. These are the costs of services such as Lexis, Westlaw, and Pacer. It is standard practice for attorneys to use Lexis and Westlaw to assist them in researching legal and factual issues.

The other expenses for which Co-Class Counsel seek payment are the types of expenses that are necessarily incurred in complex commercial litigation. These expenses include, among others, duplicating costs, transcription costs, long distance telephone and conference call charges, and filing fees. ¶75.

The Notice informed potential Class Members that Co-Class Counsel would apply for payment of Litigation Expenses in an amount not to exceed $600,000. The amount of Litigation Expenses requested, $396,508.40, is below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

## VII.   THE CLASS REPRESENTATIVES' REQUESTS FOR PSLRA REIMBURSEMENT

The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to

22

limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, Co-Class Counsel seek a combined $15,768 in costs incurred by Class Representatives OFPRS, PCRA, and Local 103 directly related to their representation of the Class. Their involvement in the litigation is detailed in each of their declarations. *See* Exs. 9-11; ¶77.

Many cases have approved reasonable payments to compensate class representatives for the time, effort, and expenses they devoted to representing a class. *See, e.g., In re Novo Nordisk Sec. Litig.*, Master File No. 3:17-cv-209, at *4 (awarding a total of $40,019.05 to five lead plaintiffs) (Bigin Decl. Ex. 12); *Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (awarding $10,000 for each of the two named class representatives for their time and effort in the action); *In re Royal Dutch/Shell Transp. Sec. Litig.,* No. 04-374 (JAP), 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 1 (D. Del. Aug. 5, 2008) (Bigin Decl. Ex. 12) (awarding each lead plaintiff $15,000); *Par Pharm.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff); *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08 Civ. 397, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) (awarding $102,447.26 to four class representatives); *In re PTC Therapeutics, Inc. Sec. Litig.,* Civil Action No. 16-1224, slip op. at 3 (D.N.J. Sept. 10, 2018) (awarding $10,287.30 in the aggregate to two lead plaintiffs) (Bigin Decl. Ex. 12). As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

23

Co-Class Counsel and Class Representatives respectfully submit that the amount sought here is reasonable based on Class Representatives active involvement in the Action from inception to settlement.

## CONCLUSION

For all the foregoing reasons, Co-Class Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Amount, or $8,000,000, plus interest at the same rate as earned by the Settlement Fund, $396,508.40 for Litigation Expenses incurred by Plaintiffs' Counsel in connection with the prosecution of the Action, and $15,768 to reimburse the Class Representatives, pursuant to the PSLRA.

Dated: April 19, 2023                     Respectfully submitted,

                                          */s/ Richard L. Elem*
                                          Jan Meyer
                                          Richard L. Elem
                                          **LAW OFFICES OF JAN MEYER &**
                                          **ASSOCIATES, P.C.**
                                          1029 Teaneck Road
                                          Second Floor
                                          Teaneck, New Jersey 07666
                                          Tel: (201) 862-9500
                                          Email: jmeyer@janmeyerlaw.com
                                                 relem@janmeyerlaw.com

                                          *Liaison Counsel for Class Representatives*
                                          *and the Class*

                                          **BERNSTEIN LIEBHARD LLP**

                                          */s/ Stanley D. Bernstein*
                                          Stanley D. Bernstein
                                          Michael S. Bigin
                                          Adam Federer
                                          10 East 40th Street
                                          New York, NY 10016
                                          Telephone: (212) 779-1414
                                          Facsimile: (212) 779-3218
                                          Email: bernstein@bernlieb.com
                                          bigin@bernlieb.com

24

afederer@bernlieb.com

**LABATON SUCHAROW LLP**

*/s/ Christine M. Fox*
Christine M. Fox
Carol C. Villegas
Guillaume Buell
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cfox@labaton.com
cvillegas@labaton.com
gbuell@labaton.com

*Co-Class Counsel for Class Representatives and the Class*

**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: rfinkel@wolfpopper.com
jruthizer@wolfpopper.com

*Additional Counsel for Class Representatives*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.


/s/ *Richard L. Elem*
RICHARD L. ELEM

26