UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | No. 2:19-cv-08237-SDW-AME<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J. |

**DECLARATION OF MICHAEL S. BIGIN IN SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND AWARD OF COSTS AND EXPENSES TO THE CLASS REPRESENTATIVES**

I, Michael S. Bigin, hereby declare as follows:

1.      I am a member of the New York Bar in good standing and am appearing in this case *pro hac vice*. I am a partner at Bernstein Liebhard LLP ("Bernstein Liebhard"). My firm is one of the firms appointed Co-Lead Counsel and Co-Class Counsel in this Action for the certified Class and Class Representatives Oklahoma Firefighters Pension and Retirement System ("OFPRS"), Plymouth County Retirement Association ("PCRA"), and Electrical Workers Pension Fund, Local 103, I.B.E.W ("Local 103" and, collectively, "Class Representatives").

2.      I have personal knowledge of the matters stated herein and if called as a witness, I could and would competently testify thereto.[1]

3.      I respectfully submit this Declaration in support of the: (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Motion for an Award of

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement filed with the Court on December 2, 2022 ("Stipulation") (ECF No. 133-3).

1

Attorneys' Fees and Payment of Litigation Expenses, and Award of Costs and Expenses to the Class Representatives.

## I.    INTRODUCTION

4.      The Class Representatives agreed to the proposed Settlement on behalf of themselves and the certified Class for a payment of $32 million in cash to resolve all claims against Defendants and the other Released Defendant Parties.

5.      The Honorable Magistrate Judge André M. Espinosa preliminarily approved the Settlement on January 27, 2023 (ECF No. 137).[2]

6.      There has been no change in circumstances since the preliminary approval of the Settlement. As previously briefed, there were significant risks to a future recovery, and the $32 million Settlement is both greater than the median settlement value for securities class actions in 2021 and 2022, and a larger percentage of estimated damages recovered than in other securities class action settlements during the same time.  Accordingly, the Settlement remains a very good result for the Class and warrants final approval.

7.      Co-Class Counsel also respectfully request that the Court approve the proposed award of attorneys' fees in the amount of 25% of the Settlement Amount ($8,000,000), and payment of $412,276.40 for Litigation Expenses.   This case was litigated on a wholly contingent-fee basis over the past four years with a high risk that there would be no recovery.  The fee and expense requests are reasonable in light of counsels' extensive efforts in creating this tangible and immediate benefit for the Class, and as recognition for the risks faced and overcome.

---

[2] The Parties consented to Magistrate Judge Espinosa's jurisdiction over Class Representative's Motion for Preliminary Approval and the instant motion for Final Approval. *See* ECF Nos. 134, 135.

The fee and expense request are also in line with awards of attorneys' fees and reimbursement of litigation expenses in similar common fund cases in this District and Circuit.

8.      Co-Class Counsel also respectfully request that the Court approve a $15,768 award to the Class Representatives for the costs and expenses, including lost wages, they spent litigating this Action and achieving the Settlement for the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4). This award is included as part of the Litigation Expenses.

## II.      LITIGATION EVENTS DEMONSTRATING BENFITS CONFERRED ON THE CLASS

### A.      Initial Complaint and Appointment of Lead Plaintiffs

9.      On March 8, 2019, Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA") filed an initial securities class action complaint against Defendants. ECF No. 1.

10.      On May 7, 2019, OFPRS, PCRA, Local 103, and ERS-PREPA moved to be appointed as Lead Plaintiffs pursuant to the PSLRA (ECF No. 6) and were so appointed on July 15, 2019 (ECF No. 10). They were the only class members who sought to litigate this action for the Class. *See* ECF No. 7. The Court also approved Bernstein Liebhard and Thornton Law Firm LLP ("Thornton") as co-lead counsel. ECF No. 10.

### B.      The Complaint and Defendants' Motion to Dismiss the Complaint

11.      On September 13, 2019, Lead Plaintiffs filed the Amended Class Action Complaint (the "Complaint"), asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act, on behalf of all persons and

entities that purchased Conduent common stock from February 21, 2018 through November 6, 2018, both dates inclusive (the "Class Period"). ECF No. 18.

12.     Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions concerning: (i) the status and condition of the Company's legacy Information Technology ("IT") systems and infrastructure; and (ii) whether Conduent's IT infrastructure had been inventoried, or mapped, prior to, and then, during the Class Period, which was a necessary step before the Company could consolidate and migrate its data centers. The Complaint further alleges that the price of Conduent publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and declined when the alleged truth was revealed at the end of the Class Period.

13.     Prior to filing the Complaint, Plaintiffs' Counsel conducted a comprehensive investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, transcripts of investor calls, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Plaintiffs' Counsel also consulted with a damages expert and hired an investigator to interview former Conduent employees about the allegations in this case.

14.     On November 12, 2019, Defendants moved to dismiss the Complaint. ECF No. 33. Lead Plaintiffs opposed the motion and briefing was completed after Defendants filed their reply. ECF Nos. 37-38. On June 5, 2020, the Court denied Defendants' motion to dismiss (the "Motion

4

to Dismiss Order") and found that the Complaint adequately pled violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  ECF Nos. 39-40.

### C.   Discovery

15.    Shortly after the Motion to Dismiss Order, the Parties met with the Magistrate Judge Mannion and began discovery on class certification and merits issues.   Specifically, Plaintiffs' Counsel engaged in extensive fact discovery, including composing a joint discovery plan, issuing and responding to discovery requests and interrogatories, exchanging correspondence with Defendants and third-parties on the confines of discovery, participating in meet and confers on those issues, submitting letter-motions to compel and discovery status updates to the Court, reviewing more than 300,000 documents produced by Defendants (totaling approximately one million pages), producing documents to Defendants, identifying and working closely with Lead Plaintiffs' market efficiency and damages expert (Chad Coffman of Global Economics Group) to analyze loss causation and damages issues, overseeing the exchange of expert reports, reviewing documents produced by Global Economics Group in response to a subpoena, challenging Defendants' expert opinions, and defending the depositions of representatives from OFPRS, PCRA and Local 103 and Plaintiffs' expert, Chad Coffman, on market efficiency and damages issues.

### D.   Class Certification Motion

16.    On December 7, 2020, Lead Plaintiffs filed their motion to certify the Action as a class action and to appoint OFPRS, PCRA, and Local 103 as Class Representatives and Bernstein Liebhard and Thornton as Co-Class Counsel.  ECF No. 76.  To avoid redundant effort, Lead Plaintiffs did not advance ERS-PREPA as a fourth-class representative. ERS-PREPA, however, had filed the initial complaint, and its counsel, Wolf Popper LLP, was involved in drafting the amended complaint, and briefing the motion to dismiss and eventual mediation statements.  Wolf

Popper also participated in document review and analyses. In the interest of efficiency and continuity, ERS-PREPA continued as a non-class representative Lead Plaintiff and Wolf Popper continued to work on this litigation under the supervision of Lead Counsel.

17. In connection with this motion, Lead Plaintiffs filed an expert report on market efficiency by Chad Coffman, CFA (ECF No. 76-10). Mr. Coffman conducted a detailed event study to determine whether the price of Conduent common stock reacted to earnings announcements in a manner significantly different from how the stock price moved on days with no Conduent-related news. Based on the event study, Mr. Coffman opined that there was a clear cause-and-effect relationship between new material public information about Conduent and the market price of Conduent common stock. Mr. Coffman also evaluated the market for Conduent common stock during the Class Period under each of the *Cammer* factors, as well as additional factors that courts have also considered in assessing market efficiency. Mr. Coffman concluded that the market for Conduent's common stock was efficient during the Class Period.

18. Defendants deposed Mr. Coffman on December 22, 2020 concerning his expert report and opinion. Co-Class Counsel defended the deposition of Mr. Coffman.

19. Defendants also deposed (1) Chase Rankin, on behalf of OFPRS, on December 8, 2020; (2) David Sullivan, on behalf of PCRA, on December 10, 2020; and (3) Michael Donovan, on behalf of Local 103, on December 11, 2020. Co-Class Counsel defended those depositions.

20. While the depositions of the Class Representatives and Mr. Coffman provided support for Class Representatives' claims and for class certification, the deposition of Mr. Coffman also provided a preview of some of the difficulties that lay ahead in proving Class Representatives' claims with respect to loss causation and damages.

21. Defendants opposed the class certification motion and briefing was completed with the filing of reply papers in further support of the motion on February 19, 2021. ECF Nos. 90-91.

22. On February 28, 2022, the Court granted Class Representatives' motion and certified the Class, appointed OFPRS, PCRA, and Local 103 as Class Representatives, and appointed Bernstein Liebhard and Thornton as Co-Class Counsel. ECF No. 114 at 1.[3]

### E. Mediations

23. In early 2021, the Parties began exploring the possibility of a settlement. On April 28, 2021, the Parties submitted a joint motion to administratively terminate the case pending mediation. ECF No. 97. On April 29, 2021, the Court granted the joint motion and administratively terminated the case pending mediation, including the pending motion for class certification, appointment of class representatives and appointment of class counsel. ECF No. 98.

24. The Parties began their first attempt at mediating the Action on June 3, 2021 before a well-regarded mediator, Michelle Yoshida of Phillips ADR. Prior to the mediation session, the Parties exchanged detailed opening mediation statements. The Parties also engaged experts to address loss causation and damages issues, while using document discovery to address liability issues. After the session ended without a settlement, the Parties agreed to convene a second day of mediation. The Parties thereafter provided additional expert analysis for consideration. However, the Parties could not reach an agreement on the second day of mediation. Lead Plaintiff updated the Court on July 26, 2021, and the Court reopened the Action. ECF No. 100. Discovery resumed with the Parties, at times, consulting the Magistrate and negotiating discovery issues amongst themselves.

---

[3] On May 6, 2022, the Court approved the substitution of Labaton for Thornton as Co-Class Counsel. ECF No. 127.

25.     By March of 2022, Defendants had substantially concluded their document production.  At that time, the Parties again explored the possibility of settlement.  On April 4, 2022, the Parties filed a joint stipulation to stay the Action pending mediation, which allowed certain discovery concerning third parties and privilege issues.  ECF No. 119.  On May 11, 2022, the Court entered the Parties' joint stipulation to stay the Action pending mediation (ECF No. 129) and administratively terminated the Action (ECF No. 131).

26.     The Parties engaged the mediator Robert Meyer, Esq. of JAMS to assist them in negotiating a potential resolution of the claims.  Prior to the mediation session, on August 8, 2022, the Parties exchanged detailed mediation statements.  The Parties' mediation statements presented expert analysis and used updated document discovery to argue the strengths of their respective positions.  On August 15, 2022, the Parties engaged in a full-day mediation session.  While an agreement was not reached at the conclusion of the session, the Parties continued to negotiate through the mediator.

27.     On August 17, 2022, the Parties reached an agreement in principle on the primary terms of a settlement to resolve the Action and on August 31,2022 parties executed a Term Sheet.

28.     The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment of $32,000,000 for the benefit of the Class, which was signed on December 1, 2022.

29.     It required considerable skill to achieve the proposed Settlement.  Plaintiffs' Counsel were required to contend with, among other things, complex issues particular to legacy Information Technology ("IT") systems and infrastructure, and data center consolidation and

8

migration.  These issues carried over into the difficult elements inherent in the Class's claims, particularly, pleading and proving materiality, falsity, scienter, loss causation and damages.

## III.    COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

30.    On December 2, 2022, the Class Representatives filed the Unopposed Motion for Preliminary Approval of Class Action Settlement and Authorization to Provide Notice to the Class, along with Class Representatives' supporting memorandum of law, and proposed notices to the Class Members.  ECF No. 133.

31.    Class Representatives requested that the Court approve the forms of notice, including a Summary Notice for publication, the long-form Notice and the Proof of Claim and Release form (the "Claim Form").  The notices, among other things, described the terms of the Settlement, advised Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Class Members of the maximum amount of attorneys' fees and expenses that Co-Class Counsel and Class Representatives would request, and explained the procedures and deadline for filing a Claim Form in order to be eligible to receive a payment from the Net Settlement Fund.

32.    By the Preliminary Approval Order dated January 27, 2023, Magistrate Judge Espinosa preliminarily approved the Settlement and approved the forms of notice to the Class. ECF No. 137.  The Court also appointed JND Legal Administration ("JND") as Claims Administrator and instructed JND to disseminate notice to the Class.  *See id.*

33.    The Declaration of Luiggy Segura Regarding: (A) Mailing of Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date

9

("Mailing Declaration") represents that the Claims Administrator has provided notice to the Class in compliance with the Preliminary Approval Order. *See id.* ¶¶2-14 (Exhibit 1 hereto). [4]

34.    As stated in the Mailing Declaration, in addition to mailing 90,458 copies of the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice") and the Claim Form to potential Class Members and nominees, JND caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over *PR Newswire. Id.* ¶¶2-11.

35.    JND also maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.ConduentSecuritiesLitigation.com (the "Settlement Website,"), to provide Class Members with information about the Action (including relevant deadlines to file a Claim Form, object, or seek exclusion from the Class), as well as downloadable copies of the Notice, Claim Form and Stipulation, and relevant Court documents, such as the Order granting Preliminary Approval, and the Order granting Lead Plaintiffs' Motion for Class Certification. The Settlement Website also includes an online claim-filing portal. *Id.* ¶¶13-14.

36.    Pursuant to the Preliminary Approval Order, the deadline for Class Members to submit objections to the Settlement, the proposed Plan of Allocation, or the Fee and Expense Application, or to request exclusion from the Class is May 3, 2023. To date, Co-Class Counsel and JND have received no objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application, and only one exclusion from the Class. *See also id.* ¶¶15-17. Should any

---

[4] Citations to "Exhibit" or "Ex.___" herein refer to exhibits to this Declaration. For clarity, citations to exhibits that have internal exhibits will be referenced as "Exs. __-__." The first numerical reference is to the designation of the entire exhibit attached hereto and the second alphabetical reference is to the exhibit designation within the exhibit itself.

objections or additional requests for exclusion be received, Co-Class Counsel will address them in Class Representatives' reply papers.

37.     Pursuant to the Stipulation, entry of the Preliminary Approval Order was a precondition to funding the Escrow Account.   Defendants have since caused the Settlement Amount to be paid into the Escrow Account pursuant to the terms of the Stipulation.

## IV.   ADDITIONAL FACTORS SUPPORTING FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES

### A.      The Settlement Was Negotiated at Arm's-Length

38.     As set forth above, the terms of the Settlement were negotiated by the Parties at arm's-length through adversarial good-faith negotiations before an experienced mediator.  The Parties were well versed in the risks of the claims and defenses after litigating the Action through class certification and reviewing substantially all the document discovery for this Action. Additionally, the fact that the Parties were unable to settle the Action during the first mediation in 2021 shows that the Parties remained adversarial throughout settlement discussions.  Further, the fact that the Settlement was facilitated by a mediator also supports that the Settlement was negotiated at arm's length.

39.     Co-Class Counsel are well-versed in prosecuting securities class actions and have successfully prosecuted hundreds of similar class actions in courts throughout the country.  *See* Exhibit 3-D hereto (Bernstein Liebhard Declaration, Bernstein Liebhard firm resume); *see also* Exhibit 4-C hereto (Labaton Sucharow LLP Declaration, Labaton firm resume).  Co-Class Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement.

40.     Defendants are represented by King & Spalding LLP, a capable and prominent law firm that is experienced in complex securities class action litigation.   Notwithstanding this

11

opposition, Co-Class Counsel were able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

41.    As a result of the litigation efforts and the discussions during the Parties' settlement negotiations, Co-Class Counsel were able to identify issues that were critical to the outcome of this case. Co-Class Counsel have considered the risks of continued litigation, the likelihood of defeating *Daubert* and summary judgment motions after completion of fact and expert discovery and, if successful, the risk, expense, and length of time to prosecute the Action through trial and the inevitable subsequent appeals.

**B.    The Settlement Is a Strong Result Considering the Risks of Continued Litigation**

42.    Co-Class Counsel believe that the Settlement represents a very favorable resolution for the Class, particularly when considering the substantial risks and obstacles to recovery if the Action were to continue through summary judgment, to trial, and then likely post-trial motions and appeals. In particular, there were substantial challenges ahead with respect to proving loss causation and damages, falsity, and scienter (one of the most difficult elements in a claim under the Exchange Act).

43.    The $32 million Settlement compares very favorably to the median settlement amount in securities class action settlements in 2022, which was reported by Cornerstone Research to be $13 million and $10.2 million from 2017 through 2021. *See* Exhibit 2 hereto (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2022 Review and Analysis*, at 1 (Cornerstone Research 2022)).

44.    The Settlement also provides a favorable recovery when viewed as a percentage of estimated damages. The median securities class action settlement was 4.4% of damages according

12

to Cornerstone Research 2022. *Id.* at 7. The Settlement here recovers approximately 7% of Class Representatives' expert's estimate of $431 million in maximum damages.

45. When viewed as a percentage of conservative damages estimates, the Settlement is even more favorable to the Class given that the $431 million is an estimate of maximum damages. Achieving this maximum damage estimate at trial was very much in doubt. The claims would be subject to formidable challenges from economic experts including whether the revelation of the alleged fraud caused any material losses, and if so, could plaintiffs quantify the amount of loss for each Class member using a reliable method measuring inflation caused by the misstatements.

46. This case involved facts and circumstances that arguably could require material reductions to damages if the Class Representatives were required to "disaggregate" the price impact of multiple revelations that were not related to the alleged fraud. Specifically, when the truth concerning Defendants' alleged false and misleading statements was revealed to the market, it was in connection with Conduent's Third Quarter 2018 earnings announcement. That announcement disclosed five pieces of negative information that explained the reasons why Conduent missed projections and was revising its forecast. The Class Representatives maintain that all five reasons revealed information revealing the alleged false statements were false and therefore jointly caused the stock price to drop. However, there were compelling arguments that the Class Representatives would not be able to prove all five reasons related to the fraud. Reliably disentangling the market's valuation for each of the five reasons was very difficult and could have a large, negative impact on any recovery. For example, the Class Representatives' expert guided that if the Class could only prove that 20% of the stock drop was related to the fraud, recoverable damages could be only $83 million. Though the Class Representatives believe they could show a

larger effect if required, at this lower level of recoverable damages, the Settlement represents a nearly 39% recovery.

47.     The Settlement is also very favorable because it provides Class Members, whose claims have been pending since 2019, with a certain and substantial tangible recovery, without additional risk, expense, and delay.  In continued litigation, the remaining expert discovery would have been protracted and it is likely that Defendants would have sought summary judgment and the exclusion of vital expert testimony.

48.     Moreover, Class Representatives faced the serious risk that summary judgment could have been granted in Defendants' favor on the issues of falsity and scienter, particularly in light of the highly technical nature of the alleged fraud.  Concerning falsity, Defendants would have likely argued that the evidence demonstrated that the challenged statements, including statements regarding the Company's Strategic Transformation program, were not rendered false or misleading by allegedly undisclosed issues with operational level infrastructure and technology initiatives.  Defendants would have also likely claimed that Class Representatives were not able to demonstrate scienter, because even if information about the allegedly undisclosed infrastructure and technology issues reached the Individual Defendants, there was no evidence that these Defendants believed those issues rendered any of their statements false or misleading or would prevent the Company from achieving its 2018 financial guidance.

49.     There was no guarantee that the Class would prevail against Defendants' challenges and, even if it did, how the Court's rulings would affect damages, falsity, and scienter, or how the case would be presented to the jury.  Moreover, the trial of the Class Representatives' claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process.

## V.    THE PLAN OF ALLOCATION

50.    Pursuant to the Stipulation, the Preliminary Approval Order, and as set forth in the Notice and Summary Notice, after deducting all appropriate Taxes, administrative costs, and attorneys' fees and expenses (as well as reimbursement to the Class Representatives), the remainder of the Settlement Fund (the "Net Settlement Fund") shall be distributed among Class Members who submit valid Claim Forms according to the Plan of Allocation.

51.    The Plan of Allocation was reported in the Notice for Class Members to review. In sum, Class Members who purchased shares of Conduent common stock during the Class Period and held those shares as of November 7, 2018, and who submit a valid Claim Form will be eligible for a distribution from the Net Settlement Fund.

52.    The Plan of Allocation is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible Claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D) of the Federal Rules of Civil Procedure. The Plan of Allocation was formulated after consultation with Class Representatives' damages expert to calculate an equitable method for dividing the Net Settlement Fund for distribution among Class Members who submit valid claims.

53.    The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their "Recognized Claims," calculated according to the Plan's formulas, which are consistent with the Class Representatives' theories of liability and alleged damages under the Exchange Act. These formulas consider the amount of alleged artificial inflation in the prices of Conduent's common stock as estimated by Class Representatives' damages expert.

54.    Claimants will be eligible for a payment based on when they purchased, acquired, held, or sold their Conduent common stock. The Court-approved Claims Administrator, under

15

Co-Class Counsel's direction, will calculate Claimants' Recognized Claims using the transactional information provided in their Claim Forms. Claims may be submitted to the Claims Administrator through the mail, online using the settlement website, or for large investors with hundreds or thousands of transactions, through email to the Claims Administrator's electronic filing team. (Neither the Parties nor the Claims Administrator independently have Claimants' transactional information.) Class Representatives' losses will be calculated in the same manner.

55.     Once the Claims Administrator has processed all submitted claims and provided Claimants with an opportunity to cure deficiencies or challenge rejection determinations, payments will be made to eligible Authorized Claimants whose Recognized Claim totals more than $10.00 using checks and wire transfers. After an initial distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable period of time from the date of initial distribution, Co-Class Counsel will, if feasible and economical, re-distribute the balance, after payment of outstanding Notice and Administration Expenses, Taxes, and Tax Expenses, among Authorized Claimants who have cashed their checks. Re-distributions will be repeated until the balance in the Net Settlement Fund is no longer economically feasible to distribute. If Co-Class Counsel and Class Representatives, in consultation with the Claims Administrator, determine that any balance that remains in the Net Settlement Fund after re-distribution(s) is not economical to reallocate, then that balance, after payment of any outstanding Notice and Administration Expenses, Taxes, or Tax Expenses, will be donated to the Consumer Federation of America ("CFA"), or a non-profit and non-sectarian organization(s) chosen by the Court.

56.     CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary,

16

Congress, the White House, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org. CFA has been approved as a *cy pres* beneficiary other securities cases, including *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.) at ECF No. 760.

57.     To date, there have been no objections to the Plan of Allocation.

## VI.   CO-CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE

58.     This litigation was undertaken by Plaintiffs' Counsel on a wholly contingent basis. From the outset, Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking this responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of this Action and that funds were available to compensate staff and the considerable costs which a case such as this requires.

59.     When Co-Class Counsel were appointed and continued acting on behalf of Class Representatives and the Class in this Action, it was with the knowledge that they would spend many hours litigating against well-represented Defendants with no assurance of obtaining any compensation for those efforts. The benefits conferred on the Class by this Settlement were obtained despite the substantial risks of no recovery.

60.     None of Plaintiffs' Counsel have received any payment for their services in prosecuting this litigation to date, nor have they been paid for expenses incurred in the prosecution of this Action.

61.     The Notice advised the Class that Co-Class Counsel may apply, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees not to exceed 25% of the Settlement Fund, or

17

$8,000,000, plus payment of Litigation Expenses of up to $600,000, including an award to the Class Representatives to compensate them for time and expenses, including lost wages, spent prosecuting this Action, as permitted by the PSLRA.

62. Co-Class Counsel are requesting attorneys' fees of 25% of the Settlement Fund, or $8,000,000, plus Litigation Expenses of $412,276.40, which includes the requests for an award pursuant to the PSLRA. The requested fee will be divided amongst Plaintiffs' Counsel. As set forth in the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, the requested fee is well within the range of fees awarded by courts in this Circuit and courts throughout the country.

**A.** **The Class Representatives Support the Fee and Expense Application**

63. The Class Representatives have evaluated and fully support the Fee and Expense Application. *See* Exs. 9-11. In coming to this conclusion, the Class Representatives – who were involved throughout the prosecution of the Action and negotiation of the Settlement – considered the recovery obtained as well as the vigorous prosecution of the claims to obtain a favorable recovery.

**B.** **Time and Labor of Plaintiffs' Counsel**

64. Co-Class Counsel are applying for attorneys' fees on behalf of all Plaintiffs' Counsel. Plaintiffs' Counsel dedicated 11,688.75 hours to prosecuting this Action resulting in a lodestar of $7,190.454.50, as shown through the declarations of each law firm provided as Exhibits 3-7 herewith. *See* Declaration of Bernstein Liebhard (Exs. 3-A); Declaration of Christine M. Fox on Behalf of Labaton Sucharow LLP (Exs. 4-A); Declaration of Michael A. Lesser Behalf of Thornton Law Firm LLP (Exs. 5-A); Declaration of Joshua W. Ruthizer Behalf of Wolf Popper (Exs. 6-A); Declaration of Richard Elem on Behalf of Jan Meyer & Associates, P.C. (Exs. 7-A).

65.     Included with these declarations are schedules that summarize the time of each firm, as well as each firm's Litigation Expenses by category (the "Fee and Expense Schedules").[5] The attached declarations and the Fee and Expense Schedules report the amount of time spent by Plaintiffs' Counsel and professional support staff and the "lodestar" calculations, *i.e.*, their hours multiplied by their current hourly rates.

66.     The hourly rates of Plaintiffs' Counsel here range from $825 to $1250 for partners, $750 to $1000 for of-counsel attorneys, and $380 to $700 for associates. *See* Exs. 3-A; 4-A; 5-A; 6-A; 7-A. It is respectfully submitted that the hourly rates for attorneys and professional support staff included in these schedules are reasonable and customary within the securities class action bar.

67.     Plaintiffs' Counsel have collectively expended 11,688.75 hours prosecuting the Action. *See* Ex. 8. The resulting collective "lodestar" is $7,190.454.50. *Id.* The requested fee of $8,000,000 (25% of the Settlement Fund) results in a "multiplier" of 1.11 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers awarded by District courts.

**C.      The Expense Reimbursement Request is Reasonable**

68.     Plaintiffs' Counsel incurred expenses in the amount of $396,508.40 to successfully prosecute the Action. *See* Exs. 3-B; 4-B; 5-B; 6-B. Plaintiffs' Counsel's expenses were reasonably and necessarily incurred in prosecuting this Action. *Id.*

69.     From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Thus, Plaintiffs' Counsel were motivated to take steps to manage expenses without jeopardizing the vigorous and efficient prosecution of the case. Co-Class

---

[5] Attached hereto as Ex. 8 is a summary table of the lodestars and expenses of Plaintiffs' Counsel.

19

Counsel maintained control over the primary expenses in the Action by managing a joint litigation fund ("Litigation Expense Fund"). Counsel collectively contributed $144,018.32 to the Litigation Expense Fund. A description of the expenses incurred by the Litigation Expense Fund by category is included in the individual firm declaration submitted on behalf of Bernstein Liebhard. *See* Ex. 3 at ¶9.

70.     Plaintiffs' Counsel's expenses include fees and costs for, among other things: (i) experts and consultants in connection with various stages of the litigation; (ii) the hiring of outside investigation firms to develop facts and other allegations for the initial and amended complaints; (iii) establishing and maintaining a database to house the documents produced in discovery; (iv) online factual and legal research; (v) mediation; and (vi) document reproduction. Courts have consistently found that these kinds of expenses are payable from a fund recovered by counsel for the benefit of a class.

71.     Plaintiffs' Counsel advanced substantial funds to litigate this action. Fees for experts alone were $132,219.40. As noted above, Co-Class Counsel consulted with experts in the fields of market efficiency, technology integration, loss causation and damages. Co-Class Counsel utilized these experts and consultants in connection with class certification, to assist with discovery and provide expert opinion, in preparation for mediation, and in connection with the development of the proposed Plan of Allocation. These experts and consultants were essential to the prosecution of the Action.

72.     Another substantial component of Plaintiffs' Counsel's expenses was $155,759.06 for document hosting and management/litigation support.

73.     Plaintiffs' Counsel also incurred a total of $20,381.17 in connection with the mediation sessions with Michelle Yoshida and Robert Meyer.

20

74. Plaintiffs' Counsel's expenses also include the costs of computerized research services such as Lexis, Westlaw, and PACER in the amount of $28,932.90. It is standard practice for attorneys to use online services to assist them in researching legal and factual issues, and indeed courts recognize that these tools create efficiencies in litigation and ultimately save money for clients and the class.

75. The other expenses for which Plaintiffs' Counsel seek payment are the types of expenses that are necessarily incurred in complex class action litigation and routinely charged in non-contingent cases. These expenses include, among others, court fees, duplicating costs, long-distance and conference calling, and postage and delivery expenses. All of the litigation expenses incurred by Plaintiffs' Counsel were reasonable and necessary for the successful litigation of the Action. Co-Class Counsel respectfully submit that the requested fees and expenses are reasonable and should be approved by the Court.

## VII. THE CLASS REPRESENTATIVES' REQUESTS FOR REIMBURSEMENT FOR TIME SPENT LITIGATING THIS CASE AND ACHIEVING THE SETTLEMENT

76. Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), the Class Representatives are seeking reimbursement related directly to their representation of the Class, including time reviewing pleadings and court filings, communicating with counsel, responding to discovery, sitting for depositions, and participating in settlement discussions.

77. As set forth in the accompanying Declarations of OFPRS, PCRA, and Local 103 (Exhibits 9-11 hereto), the Class Representatives collectively seek a reimbursement of $15,768 for the time dedicated to the Action.

78. The Notice informed potential Class Members that Co-Class Counsel would be seeking payment of expenses in an amount not to exceed $600,000, including reimbursement to the Class Representatives related to their representation of the Class. The aggregate amount

21

requested, $412,276.40 (which includes $396,508.40 in Litigation Expenses incurred by Plaintiffs'

Counsel and $15,768 in PSLRA reimbursement to the Class Representatives) is below the cap.

79.    As of the date of this Declaration, there have been no objections to either the

requested attorney fees, the requested Litigation Expenses, or the requested reimbursement to the

Class Representatives.

**TABLE OF EXHIBITS**

80.    The following documents are true and correct copies:

| EXHIBIT | DOCUMENT |
| --- | --- |
| 1 | Declaration of Luiggy Segura Regarding: (A) Mailing of Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date |
| 2 | *Securities Class Action Settlements – 2022 Review and Analysis* |
| 3 | Declaration of Michal S. Bigin on behalf of Bernstein Liebhard LLP in Support of Application for and Award of Attorneys' Fees and Expenses |
| 4 | Declaration of Christine M. Fox on Behalf of Labaton Sucharow LLP in Support of Application for and Award of Attorneys' Fees and Expenses |
| 5 | Declaration of Michael A. Lesser on Behalf of Thornton Law Firm LLP in Support of Application for an Award of Attorneys' Fees and Expenses |
| 6 | Declaration of Joshua W. Ruthizer on Behalf of Wolf Popper LLP in Support of Application for an Award of Attorneys' Fees and Expenses |
| 7 | Declaration of Richard L. Elem in Support of Law Offices of Jan Meyer & Associates, P.C.'S Application for an Award of Attorneys' Fees |
| 8 | Summary Table of Plaintiffs' Firms Lodestar and Expenses |
| 9 | Declaration of the Oklahoma Firefighters Pension and Retirement System in Support of (I) Motion for Final Approval of Settlement and Plan of Allocation; and (II) Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff |

                                       PageID: 3510

| EXHIBIT | DOCUMENT |
|---------|----------|
| 10 | Declaration of Michael P. Donovan in Support of Approval of Proposed Class Action Settlement and Request for Attorneys' Fees and Expenses |
| 11 | Declaration of Timothy J. Smyth in Support of Approval of Proposed Class Action Settlement and Request for Attorneys' Fees and Expenses |
| 12 | Compendium of Unreported Cases |
| 13 | *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 19, 2023.

By: _____

MICHAEL S. BIGIN

23