# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE CONDUENT INC. SECURITIES LITIGATION | Case No.: 2:19-cv-08237-SDW-AME<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J. |

**DECLARATION OF JOSHUA W. RUTHIZER ON BEHALF OF**
**WOLF POPPER LLP IN SUPPORT OF APPLICATION**
**FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, JOSHUA W. RUTHIZER, declare as follows:

1.      I am a partner of the law firm of Wolf Popper LLP.  I am submitting this declaration in support of Wolf Popper's application for an award of attorneys' fees and expenses in connection with services rendered in the above-entitled action (the "Action") from inception through April 10, 2023 (the "Time Period").  As discussed below, Wolf Popper's lodestar for time spent prosecuting this Action is $953,823.00.

2.      Wolf Popper served as counsel to The Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA").  ERS-PREPA filed the initial Complaint in this Action (ECF No. 1), and was appointed a Co-Lead Plaintiff by this Court (ECF No. 10).[1]  Wolf Popper assisted Co-Class Counsel with various matters throughout the course of the litigation, which is described in detail in the accompanying motion papers.  Among other things, Wolf Popper drafted the initial Complaint and issued the initial PSLRA Notice of Pendency of the Action, assisted in drafting the consolidated Amended Complaint and in opposing defendants' motions to dismiss that

---

[1] Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland") served as Wolf Popper's liaison counsel in connection with the preparation and filing of the initial Complaint (ECF No. 1).  Wolf Popper anticipates sharing a portion of its attorneys' fees in this matter with Cohn Lifland consistent with the time Cohn Lifland dedicated to the litigation, which totals approximately $12,500.  The Class's recovery will not be affected by Wolf Popper sharing its fee with Cohn Lifland.

complaint, assisted lead plaintiffs in briefing the class certification motion and preparation of mediation statements, and did extensive work assisting in reviewing discovery documents.

3.      The information in this declaration regarding Wolf Popper's time and expenses is taken from time and expense records prepared and maintained by Wolf Popper in the ordinary course of business.  These records (and backup documentation where necessary) were reviewed by others at Wolf Popper, under my direction, to confirm both the accuracy of the entries as well as the necessity for and reasonableness of the time and expenses committed to the Action.  The review also confirmed that Wolf Popper's guidelines and policies regarding expenses were followed.

4.      As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  For example, I removed from the lodestar calculation any time expended by law school interns and summer associates for legal research (notwithstanding that the work performed was of excellent quality and contributed to the successful prosecution of this action). As a result of this review and the adjustments made, I believe that the time reflected in Wolf Popper's lodestar calculations and the expenses for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the Action. In addition, I believe that the expenses are all of a type that would normally be paid by a fee-paying client in the private legal marketplace.

5.      The schedule attached hereto as Exhibit A is a summary indicating the amount of time spent by attorneys and professional support staff members of Wolf Popper who were involved in the prosecution of the Action, and the lodestar calculation based on Wolf Popper's current hourly rates.  For personnel who are no longer employed by Wolf Popper, the lodestar calculation is based upon the rates for such personnel in his or her final year of employment by Wolf Popper.  The schedule was prepared from daily time records regularly prepared and maintained by Wolf Popper,

- 2 -

which are available at the request of the Court. Time expended in preparing this application for fees and payment of expenses has not been included in this request.

6.     The total number of hours spent on this Action reported by Wolf Popper during the Time Period is 1,830.80. The total lodestar amount for reported attorney/professional staff time based on Wolf Popper's current rates is $953,823.00.

7.     The hourly rates for the attorneys and professional support staff of Wolf Popper included in Exhibit A are Wolf Popper's usual and customary hourly rates, which have been approved by courts in other securities class action litigations, and are comparable to the rates submitted by comparable firms for lodestar-cross checks in other securities class action fee applications. Wolf Popper's lodestar figure is based upon Wolf Popper's hourly rates, which do not include expense items. Expense items are recorded separately and are not duplicated in Wolf Popper's hourly rates.

8.     As detailed in Exhibit B, Wolf Popper has incurred a total of $48,728.22 in expenses in connection with the prosecution of the Action. The expenses are reflected on the books and records of Wolf Popper. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

9.     The following is additional information regarding certain of these expenses:

(a)     Filing, Witness and Other Fees: $641.25. These expenses relate to the fees of the U.S. District Court for the District of New Jersey and process servers for service of the Summons and the initial Complaint in the Action.

(b)     PSLRA Required Notice of Pendency: $825. This expense relates to the PSLRA required press release stating the pendency of the action, the claims asserted in the action, the purported class period, and that any member of the class may move the court for appointment as lead plaintiff no late than 60 days after the date of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

- 3 -

(c)      Electronic Legal and Financial Research: $9,159.18.  These expenses relate to the usage of electronic databases, such as PACER, Westlaw, and LexisNexis.  These databases were used to obtain access to factual information and legal research.

(d)      Expert and Consultant Fees:  $9,212.25.  These expenses were paid to a financial expert for damages and other analysis, and to investigators who helped to contact potential witnesses and locate facts or evidence for the Action.

10.      With respect to the standing of Wolf Popper, attached hereto as Exhibit C is a brief biography of Wolf Popper as well as biographies of Wolf Popper's partners and attorneys.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of April 2023.

_____
Joshua W. Ruthizer

**Exhibit A**

*IN RE: CONDUENT INC. SECURITIES LITIGATION*

**EXHIBIT A**

**LODESTAR REPORT**

FIRM: WOLF POPPER LLP
REPORTING PERIOD:  INCEPTION THROUGH APRIL 10, 2023

| PROFESSIONAL | STATUS | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|---|
| Chet B. Waldman | P | $950 | 6.50 | $6,175.00 |
| Carl L. Stine | P | $950 | 2.60 | $2,470.00 |
| Robert C. Finkel | P | $950 | 157.80 | $149,910.00 |
| Joshua W. Ruthizer | P | $850 | 191.30 | $162,605.00 |
| Matthew Insley-Pruitt | P | $850 | 1.80 | $1,530.00 |
| Adam J. Blander | P | $825 | 2.20 | $1,815.00 |
| Philip M. Black | P | $750 | 109.90 | $82,425.00 |
| Sasha Marseille | A | $500 | 138.50 | $69,250.00 |
| Steven Fleisig | FA | $475 | 32.20 | $15,295.00 |
| Sandra Vidal-Pellon | OC | $435 | 12.80 | $5,568.00 |
| Hallie Cohen | SA | $425 | 74.00 | $31,450.00 |
| Madison Forsander | SA | $425 | 85.20 | $36,210.00 |
| Hairong Basil | A | $400 | 212.90 | $85,160.00 |
| Sean Doucet | A | $380 | 774.30 | $294,234.00 |
| Karina J. Castro | SA | $380 | 6.00 | $2,280.00 |
| Melissa Gianfagna | PL | $380 | 2.50 | $ 950.00 |
| Christopher Dunleavy | LC | $320 | 20.30 | $6,496.00 |
| **TOTALS** | | | **1,830.80** | **$953,823.00** |

| | | | | | |
|---|---|---|---|---|---|
| Partner | (P) | Research Analyst | (RA) | Staff Attorney | (SA) |
| Of Counsel | (OC) | Investigator | (I) | Law Clerk | (LC) |
| Associate | (A) | Paralegal | (PL) | Financial Analyst | (FA) |

**Exhibit B**

*IN RE: CONDUENT INC. SECURITIES LITIGATION*

**EXHIBIT B**

**EXPENSE REPORT**

FIRM: WOLF POPPER LLP
REPORTING PERIOD: INCEPTION THROUGH APRIL 10, 2023

| CATEGORY | | TOTAL AMOUNT |
|---|---|---|
| Duplicating and Scanning | | $385.14 |
| Long Distance Telephone / Fax/ Conference Calls | | $5.40 |
| PSLRA Notice of Pendency (PR Newswire) | | $825.00 |
| Court / Witness / Service Fees | | $641.25 |
| Electronic Research Fees | | $9,159.18 |
| Expert / Consultant Fees | | $9,212.25 |
| Financial Experts | $4,800.00 | |
| Investigations | $4,412.25 | |
| Contribution to Joint Litigation Fund | | $28,500.00 |
| **TOTAL** | | **$48,728.22** |

# Exhibit C

**WOLFPOPPER**

845 Third Avenue
New York, NY 10022
212-759-4600
wolfpopper.com

### BIOGRAPHICAL SKETCH OF WOLF POPPER LLP

Wolf Popper LLP ("Wolf Popper" or "the Firm") is a nationally recognized law firm with decades of experience in the fields of securities, consumer, and ERISA class actions and securities derivative actions. Since the Firm was founded in 1945, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors, consumers, and employees, prosecuting hundreds of actions under federal and state laws throughout the United States, and recovering billions for aggrieved parties.

The Firm also has a substantial practice in corporate and commercial law. Wolf Popper's commercial litigation practice encompasses the representation of defendants as well as plaintiffs. The Firm's corporate practice includes business transactions, employer/employee relations, and the law of foreign missions. Among the Firm's clients are domestic and international individuals and businesses, and foreign missions to the United Nations.

The Firm's members are active members in a variety of professional legal associations, including serving on or chairing a number of committees of such associations and they have written extensively on a variety of subjects for numerous professional associations and legal periodicals, including internationally. Many of the Firm's current and former members have held responsible positions in government both at the federal and the state level. For example, Benedict Wolf (now deceased) was the First Secretary and Chief Trial Examiner of the National Labor Relations Board, and Martin Popper (now deceased) was a consultant to the U.S. Delegation to the Founding Conference of the United Nations and an observer at the Nuremberg war crimes trials.

Wolf Popper has an exemplary record in its representation of plaintiffs, and the skill and experience of the attorneys at the Firm have been repeatedly recognized by Courts throughout the country. In recognition of its high standing at the bar, Courts have frequently appointed Wolf Popper to serve as lead or co-lead counsel in complex, multi-party actions, including securities, consumer, and ERISA actions. Many of the Wolf Popper attorneys are regularly selected as New York "Super Lawyers"®. This selection represents the top 5% of attorneys practicing in New York City.

Wolf Popper has achieved notable and significant successes over the years. Some of the outstanding recoveries achieved and decisions obtained by the Firm are described below.

*Securities Actions*:

• <u>Kirkland v. WideOpenWest, Inc.</u>, No. 653248/2018 (Sup. Ct. N.Y. Cnty.) was a securities class action in New York State Supreme Court alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 against Defendants WideOpenWest, Inc. ("WOW"), certain of its officers and directors, and the underwriters for WOW's May 2017 initial public offering ("IPO"). The Complaint alleged that Registration Statement and Prospectus for WOW's IPO contained materially misleading statements and omissions concerning (i) WOW's "technologically advanced platform," and in particular, its much touted "Ultra DVR" product offering; (ii) WOW's maintenance of its customer quality by using internal customer information, identification verification tools, and credit bureau data; (iii) the status of WOW's build-out of its fiber network in Chicago; and (iv) WOW's overstatement of its goodwill and franchise operating rights.

Wolf Popper's client, the Employees Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA"), was a co-Lead Plaintiff in the litigation, and Wolf Popper was Co-Lead Counsel to the Class

**WOLF POPPER**

Page -2-

of WOW investors.    On May 18, 2020, the Court denied, in substantial part, the Defendants motion to dismiss. While Defendants' appeal of the Court's motion to dismiss order was pending and discovery was ongoing, the parties engaged in mediation and were able to agree to settle the litigation.    On January 20, 2022, the Court held a hearing in which it gave final approval of the $7,025,000 settlement.

•    In <u>Martinek v. AmTrust Financial Services, Inc.</u>, Case No. 19-cv-8030 (KPF) (S.D.N.Y.), on August 14, 2020, Judge Katherine Polk Failla denied the defendants' motion to dismiss a securities fraud action prosecuted by Wolf Popper LLP on behalf of preferred stockholders of AmTrust Financial Services, Inc., a large insurance company.    The complaint filed by Wolf Popper described how AmTrust and three of its directors falsely assured the investing public that, unlike AmTrust's common shares, which would be delisted as part of a merger in which these three directors would be taking the company private, AmTrust preferred stock would continue to be listed on the New York Stock Exchange.    In rejecting the defendants' arguments, Judge Failla concluded that "[t]he fact of the matter is that, prior to the Merger, Defendants repeatedly assured investors that the preferred stock would remain listed, and then, less than two months after the transaction closed, decided to delist the preferred stock."    The Court found that the "professed reasons for delisting the stock…were known to the Individual Defendants before the Merger," a fact "only strengthen[ing] Plaintiff's argument this was a classic bait and switch." A $13 million settlement has been reached and was approved by the Court on November 16, 2022, with the Court stating that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…."

•    In <u>Jackson v. Microchip Technology Inc.</u>, No. CV-18-02914-PHX-JJT (D. Ariz.), on March 11, 2020, Judge John J. Tuchi issued an order denying, in substantial part, defendants' motion to dismiss.    The Court concluded, *inter alia*, that the complaint properly alleges that the defendants' statements concerning the historical performance of a competitor acquired by Microchip were misleading given Microchip's use of differing accounting practices.    The Court further concluded that the complaint properly alleges the defendants' intent to defraud investors.    On February 22, 2021, the Court granted Lead Plaintiff's motion for Class Certification, appointed the Lead Plaintiff as the Class Representative, and appointed Wolf Popper as Lead Class Counsel. A settlement in the amount of $9 million has been approved by the Court.

•    In <u>Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.</u>, Case No. 16-cv-10632 (N.D. Ill.), the Court, on November 16, 2021, approved a $27 million settlement in an action challenging statements in which TreeHouse Foods overstated its success after buying a Conagra unit for $2.7 billion, wrongly inflating TreeHouse's stock price.

•    In <u>Bach v. Amedisys, Inc.</u>, 10-CV-00395 (C.D. La.), Wolf Popper represents one of the Co-Lead Plaintiffs, the Puerto Rico Teachers Retirement System.    Plaintiffs allege that Amedisys, a home health care company, engaged in Medicare fraud, misrepresenting its financial statements and history of compliance with Medicare rules and regulations, and improperly securing revenue from Medicare billings.    In essence Amedisys hid a Medicare fraud scheme by which Amedisys improperly inflated Medicare reimbursements by pressuring and intimidating nurses and therapists to provide unnecessary treatment to trigger higher fees. The District Court granted Defendants' motions to dismiss the Complaint.    However, Co-Lead Plaintiffs successfully appealed that dismissal to the Fifth Circuit, which reversed the dismissal and remanded the case to the District Court for further proceedings.    Following substantial discovery, the parties reached a settlement in the amount of $43.75 million.    The Court granted final approval to the settlement on December 13, 2017.

•    In <u>Flynn v. Sientra, Inc.</u>, Case No. 2:15-cv-07548-SJO-RAO (C.D. Cal.), Wolf Popper served as co-lead counsel for the class in an action asserting claims under both the Securities Act of 1933 (in connection with a secondary public offering ["SPO"]) and the Securities Exchange Act of 1934, on behalf of purchasers of Sientra, Inc. ("Sientra") common stock.    Sientra sold breast implants made by a Brazilian manufacturer in a single facility in Rio de Janeiro, Silimed Indústria de Implantes Ltda. ("Silimed"), with whom Sientra had extensive relationships.    Plaintiffs alleged that, unbeknownst to the investing public, in the spring and summer 2015, European regulators discovered that the implants manufactured in that facility were

WOLF POPPER

Page -3-

contaminated with foreign particulates, and that Silimed had performed its own inspection and reached the same conclusion.   Shortly thereafter, Sientra, which needed a cash infusion, announced a $65 million SPO.  Plaintiffs alleged that the SPO's offering documents represented that Sientra, not Silimed, was "primarily responsible for the manufacturing and quality assurance of [Sientra's] products," including inspections of all products from Silimed; and that the offering documents discussed the manufacturing of Sientra's products at the Rio facility, including regulatory compliance and current good manufacturing practices ("cGMP"), without disclosing that widespread contamination at that facility had been found by regulators, and confirmed by Silimed, well before the SPO.   Plaintiffs alleged that, notwithstanding Defendants' knowledge of the regulatory and internal findings, they recklessly continued with the SPO, raising more than $65 million.   Minutes after the SPO closed, the contamination was revealed by the European regulators, causing the price of Sientra's common stock to plummet.   On June 9, 2016, Judge S. James Otero denied in substantial part defendants' motions to dismiss the Section 10(b), Section 11 and 12(b)(2) claims.   Flynn v. Sientra, Inc., 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016).  On May 22, 2017, the court approved a settlement of the litigation for $10.9 million in cash.

        •        In Anwar v. Fairfield Greenwich Ltd., No. 09-cv-0118 (VM) (S.D.N.Y.), Wolf Popper was co-lead counsel for investors in the multi-billion "feeder" funds, managed by affiliates of the Fairfield Greenwich Group (FGG).   These funds lost virtually all of their assets in the Ponzi scheme orchestrated by Bernard L. Madoff.   The case included claims under both the federal securities laws and New York state common law.  Wolf Popper helped recover hundreds of millions of dollars for these Madoff victims.

        Based upon the strength of plaintiffs' arguments and briefing, in a groundbreaking decision Judge Marrero broke from substantial existing precedent in the New York courts and the district courts within the Second Circuit in denying defendants' motion to dismiss, concluding that the Martin Act did not preempt any existing claims under New York law.   Anwar v. Fairfield Greenwich, Ltd., 728 F. Supp. 2d 354 (S.D.N.Y. 2010).  That decision was approved and substantially followed by the New York Court of Appeals in Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc., 18 N.Y.3d 341, 353 (N.Y. 2011).   On March 22, 2013, the court approved a partial settlement in the amount of $80,250,000, including a minimum of $50,250,000 to be distributed to the settlement class upon final approval, and an additional $30,000,000 to be distributed if not used to resolve other claims.   An additional $5,000,000 partial settlement with defendant GlobeOp was approved by the Court on November 22, 2013.   On November 20, 2015, the Court gave final approval to a $125 million settlement with the Citco Group defendants.   In 2016, the Court approved a settlement with PricewaterhouseCoopers in the amount of $55 million.   Thus, Wolf Popper's efforts helped recover up to $265 million for these victims of the Madoff Ponzi-scheme scandal.

        •        In Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust et al. v. J.P. Morgan Acceptance Corp. I et al., 2:09-cv-01713 (E.D.N.Y.) (PKC) (WDW), Wolf Popper represented the Public Employees' Retirement System of Mississippi ("MissPERS"), as lead plaintiff, in an action against JPMorgan Acquisition Corp. ("JPMAC"), certain individuals employed by JPMAC or its affiliates, and JP Morgan Securities, Inc.   The class consisted of investors who purchased certain mortgage pass-through certificates (mortgage-backed securities) across 26 Offerings, with an initial face value of approximately $23 billion.  MissPERS's consolidated complaint alleged that the offering documents pursuant to which the JPMAC securities were sold contained misrepresentations and omitted to disclose information concerning the underwriting of the mortgage loans serving as collateral for the securities.   The parties engaged in extensive motion practice and discovery.   In February 2012, Lead Plaintiff defeated Defendants' motion to dismiss in substantial part.

        On July 24, 2014, the Honorable Pamela K. Chen entered an order approving the settlement which resolved the action for a total of $280 million.   It is one of the largest settlements in a class action against banks that issued mortgage-backed securities.   The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs, I know, expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy."   The Action "was a difficult case.   Certainly in the beginning, at

WOLFPOPPER

Page -4-

the time when some of the principles, the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work, I think, in trying to establish some of those principles… [T]his is a good result in this particular case."

•    In the State of New Jersey, Department of Treasury, Division of Investment v. Merrill Lynch & Co., Inc. and Bank of America Corp., Docket No. L-3855-09 (New Jersey Superior Court, Hudson County), Wolf Popper represented the State of New Jersey, Division of Investment ("NJ") in an individual action against Merrill Lynch.   On January 16, 2009, Bank of America Corp. ("BAC") announced that Merrill Lynch & Co., Inc. ("Merrill"), BAC's subsidiary, reported a net loss after taxes for the fourth quarter of 2008 of $15.3 billion.   In researching potential claims against Merrill, Wolf Popper learned that NJ had invested $300 million in January 2008 in a private placement of Merrill preferred stock and that NJ had converted those preferred shares to common stock pursuant to an exchange agreement in July 2008.   Further investigation revealed that a different investor, at that same time, had converted its preferred shares to a new series of preferred on terms that were preferential to the terms Merrill had offered to NJ.   Prior to filing the Complaint, Wolf Popper was able to obtain discovery with respect to a class action settlement of claims against Merrill then pending in the Southern District of New York for purposes of advising NJ whether to opt out of the class action and file an individual complaint.   NJ, subsequent to that discovery, determined to opt out of the class settlement.   Wolf Popper filed an individual complaint on NJ's behalf on July 28, 2009, in state court in New Jersey asserting claims against Merrill Lynch for breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation.   After defendants removed the case to federal court, the U.S. Court of Appeals for the Third Circuit unanimously affirmed the remand of the action back to the New Jersey state court on May 18, 2011.   The New Jersey Superior Court thereafter denied defendants' motion to dismiss in its entirety. Following merits and expert discovery, the Court on September 29, 2012, denied in all material respects Merrill's motion for summary judgment.   The action settled in April 2013 for $45 million, approximately one month before trial.   New Jersey Attorney General Jeffrey S. Chiesa stated, in announcing the settlement, that "this is a fair and equitable outcome, and we are pleased to be recovering a substantial amount of dollars on behalf of New Jersey taxpayers."

•    In Tsereteli, et ano., v. Residential Asset Securitization Trust 2006-A8 et al., No. 08 Civ. 10637 (LAK) (S.D.N.Y.) (IndyMac), Wolf Popper is lead counsel, representing a British Virgin Islands corporation, on behalf of investors who purchased mortgage pass-through certificates (RMBS) backed by IndyMac Bank, N.A. ("IndyMac") loans.   The court denied the motion to dismiss filed by defendant Credit Suisse Securities (USA) LLC, the underwriter that sold the mortgage-backed securities in the case.   The claims alleged untrue statements and omissions related to the origination, by IndyMac, of the home mortgage loans backing the securities sold in the offering.   The court upheld plaintiff's allegations that IndyMac had abandoned the loan origination procedures and underwriting standards that were disclosed to investors in the offering.   Plaintiff's class certification motion, which addressed several novel issues, including whether a single class could include claims brought on behalf of different certificate purchasers within a complex "waterfall" capital structure, was granted on June 29, 2012.

On January 27, 2014, Judge Kaplan approved the parties' proposed settlement, which provides an $11 million benefit to the class.   The settlement is believed to be one of the largest percentage recoveries to date (as a function of statutory damages) in an RMBS Securities Act class action.

•    In In re Tycom Ltd. Sec. Litig., No. 03-3540 (GEB) (D.N.J.), Wolf Popper, representing the Lead Plaintiff, served as co-lead counsel for the class, securing a $79 million cash settlement for the class following extensive motion practice and full discovery.   At the August 25, 2010 hearing at which the Court approved the settlement, the Honorable Garrett E. Brown, Jr., Chief Judge of the U.S. District Court for the District of New Jersey, praised the Firm for its "very extensive and professional representation of the class."

•    In the In re Motorola Sec. Litig., No. 03-C-287 (RRP) (N.D. Ill.), Wolf Popper represented the Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment.   On the eve of trial,

WOLF POPPER

Page -5-

the defendants paid $190,000,000 to the class to resolve the federal securities litigation.   This recovery was obtained after more than four years of litigation. During the litigation, Wolf Popper, among other things, defeated Motorola's motion to dismiss the complaint (2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004, N.D. Ill.)) and Motorola's motions for summary judgment (2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007, N.D. Ill.)).

• In Middlesex Retirement System v. Quest Software, Inc., No. 06-06863-DOC (RNBx) (C.D. Cal.), Wolf Popper was appointed lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products.   The case is based on allegations that Quest issued materially false and misleading statements to cover up its failure to account properly for backdated stock options, causing Quest's operating and net income to be overstated and its stock price to be artificially inflated.   Following comprehensive briefing opposing defendants' initial motion to dismiss, the Court denied virtually all of defendants' motion.   Defendants filed subsequent motions to dismiss challenging the amended complaint which had added additional allegations.   The Court denied defendants' motions to dismiss the claims under § 10(b) and § 20(a) of the Securities Exchange Act of 1934. See Middlesex Retirement System v. Quest Software, Inc., 527 F. Supp. 2d 1164 (C.D. Cal. 2007); and Amended Order (C.D. Cal. July 10, 2008).   After comprehensive discovery and the grant of plaintiff's motion to compel discovery and plaintiff's motion for class certification, see Middlesex Retirement System v. Quest Software, Inc., Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Jul. 8, 2009), aff'd, Order (C.D. Cal. Sept. 18, 2009) (order granting Plaintiff's motion to compel); and Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Sept. 8, 2009) (Granting Lead Plaintiff's Motion for Class Certification), the parties entered into a proposed settlement of the action for $29.4 million (plus the cost of providing notice of the settlement to the class).   The Court preliminarily approved the settlement, stating "[Y]ou really have the court's profound congratulations and compliments," and, on April 26, 2010, gave final approval to the settlement.

• In Huberman v. Tag-It Pacific Inc., No. 2:05-cv-07352-R(Ex) (C.D. Cal.), Wolf Popper successfully appealed the district court's grant of summary judgment to defendants and the denial of class certification.   In addition to reversing summary judgment, the Ninth Circuit Court of Appeals also reversed the district court's denial of class certification, and ordered the district court to certify the class.   Huberman v. Tag-It Pacific Inc., 2009 U.S. App. LEXIS 2780 (9th Cir. Jan. 16, 2009).   The Court approved the subsequent settlement of the litigation for an amount that was almost 50% of the court-appointed independent expert's estimate of maximum potential losses.

• In Thurber v. Mattel, Master File No. CV-99-10368-MRP (CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the Dusek v. Mattel §14(a) claims.   After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the largest settlement of a § 14(a) case.   Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result."   The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

• Wolf Popper LLP was a co-lead settlement counsel for the plaintiff class in In re Service Corp. Int'l, No. H-99-280 (S.D. Tex.).   The action alleged that defendants made material misrepresentations in connection with Service Corp.'s January 1999 stock-for-stock acquisition of Equity Corp. International.   Based on the strength of the amended complaint, and presentation at mediation sessions, Wolf Popper recovered $65 million for the plaintiff class, 64.7% of the class' recognized losses.   The settlement, approved in 2004, was an extraordinary recovery inasmuch as there were no allegations of insider trading, a SEC investigation, or an accounting restatement, and the District Court had spent over four years deliberating over defendants' motion to dismiss the complaint, lessening plaintiffs' leverage in settlement negotiations.

WOLF POPPER

Page -6-

- In <u>Stanley v. Safeskin</u>, No. 99cv454-BTM (LSP) (S.D. Cal.), Wolf Popper served as Court-appointed Co-lead Counsel for Plaintiffs, in which the Court approved a $55 million settlement in favor of plaintiffs on March 20, 2003.  The Honorable Barry T. Moskowitz thereafter complimented Plaintiffs' Co-Lead Counsel, noting his "incredible respect for the work that the lawyers did."  Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."  The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard."  Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane.  If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

- In <u>Buxbaum v. Deutsche Bank, A.G.</u>, No. 98 Civ. 8460 (JGK) (S.D.N.Y.), Wolf Popper recovered $58 million as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer.  The action alleged that Deutsche Bank defrauded Bankers Trust shareholders by misrepresenting the status of takeover negotiations for Deutsche Bank to acquire Bankers Trust.  The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000).  The decision denying defendants' motion for summary judgment is reported at 2002 U.S. Dist. LEXIS 1893 (S.D.N.Y., Jan. 30, 2002).  The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

- In <u>In re Sunbeam Sec. Litig.</u>, No. 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel.  The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap.  Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

- In <u>In re Providian Financial Sec. Litig.</u>, MDL No. 1301 (E.D. Pa.), Wolf Popper was co-lead counsel for the plaintiff class and obtained a $38 million recovery from the defendants.  The Court, in approving the settlement, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation.  The Court also noted the "extremely high quality" of Wolf Popper's work is reflected in the result which it obtained and in the fact that it is a nationally prominent firm with extensive experience in the field.

- Wolf Popper was the plaintiffs' co-lead counsel in a litigation that resulted in the then largest recovery in the history of securities class actions.  In <u>In re The Standard Oil Company/British Petroleum Litig.</u>, Consolidated Case No. 12676, Court of Common Pleas, Cuyahoga County, Ohio, plaintiffs' counsel negotiated and obtained a benefit for the class in excess of $600 million.  The Court commented favorably on the quality of co-lead counsel:

> The professional skill required to achieve the resultant benefits to this Class has been evidenced on nearly a daily basis by this Court.
>
> As a result of this professional skill and excellent representation, these benefits to the Class would not have otherwise been achieved.

WOLF POPPER

Page -7-

The Court has fully weighed in its decision the benefits bestowed on the Class. At this juncture the Court finds that the benefit is unprecedented.

• Wolf Popper was co-lead counsel in the case producing the then largest recovery in a securities class action prior to the Standard Oil litigation. In Joseph, et al v. Shell Oil Company, et al., Consolidated Civil Action No. 7450 (Del. Ch., April 19, 1985), the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company, 482 A.2d 335, Del. Ch. 1984). In approving the $205 million recovery in the Shell Oil litigation, Vice Chancellor Maurice Hartnett stated: "The results achieved in this case for the class are outstanding."

• Wolf Popper played a major role in representing the rights of shareholders in the notorious Boesky/Drexel/Milken trading scandal involving Ivan F. Boesky, Dennis B. Levine, Kidder Peabody & Co. Incorporated, Goldman, Sachs & Co., Drexel, Michael R. Milken, and others. These actions arose from the illegal use by various individuals of non-public information about publicly traded corporations, conveyed to them from high level executives at these large investment firms, to reap illicit profits for personal gain. Wolf Popper was co-lead counsel in several of these actions, including the Boesky insider trading class litigation brought in the Southern District of New York, to represent classes of shareholders who suffered losses. In re Ivan F. Boesky Sec. Litig., MDL 732, MDL-21-45-MP (S.D.N.Y.). The Firm was also one of the lead counsel in the Drexel/Milken litigation also brought in the Southern District of New York. In re Drexel Burnham Lambert Group Inc., et al., Debtors, Nos. 90 Civ. 6954 (MP), 90-B-10421 (FGC) (S.D.N.Y.). After intensive litigation, the Firm helped recover in excess of $800 million for investors. In the global settlement of these Milken related litigations, the Court specifically certified a worldwide class of investors after notice was given throughout the world, in addition to publications in newspapers worldwide.

• The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (Co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

The Firm acted as sole lead or co-lead counsel for plaintiffs in dozens, if not hundreds, of other cases throughout the United States, achieving recoveries which aggregated in the billions of dollars, many of which settlements recovered well over 50% and, in several cases, 90-100% of the damages in such cases.

***Consumer Class Actions****:*

Wolf Popper's strong presence in prosecuting class actions on behalf of defrauded consumers has similarly resulted in the return of millions of dollars to victims of unfair business practices. These litigations in which the Firm served as sole lead or co-lead counsel include, among others:

• Kaur v. Envision Healthcare Corporation, et al., Case No. 4:19-cv-02480 (S.D. Tex.), is a consumer class action on behalf of patients who went to an in-network emergency department in Texas (over 200 hospitals) and were charged inflated rates for out-of-network physician services. The complaint alleged that defendants failed to disclose information that would allow patients to avoid—or even know that they were receiving—out-of-network care at an in-network hospital, and then billed at rates far beyond the fair market value of the services. The court granted preliminary and final approval to a settlement which provided refunds or write-offs of amounts in excess of what class members' insurance companies determined was the "allowable charge" for the services, for class members who file valid proof of claim forms.

WOLFPOPPER

Page -8-

•        Kline v. Envision Healthcare Corporation, et al., CV 2019-003061 (Superior Court, Maricopa County, AZ), is a consumer class action on behalf of patients who had surgery at an in-network hospital in Arizona where the anesthesia services were performed by an out-of-network provider affiliated with any of the defendants and were charged inflated rates for these services.   The complaint alleged that defendants failed to disclose information that would allow patients to avoid—or even know that they were receiving—out-of-network care at an in-network hospital, and then billed at rates far beyond the fair market value of the services. On February 3, 2021, the court granted final approval to a settlement which provided refunds or write-offs of amounts in excess of what class members' insurance companies determined was the "allowable charge" for the services, for class members who file valid proof of claim forms.

•        Bozarth v. Envision Healthcare Corporation, et al., Case No. 5:17-cv-01935-FMO-SHK (C.D. Cal.), is a consumer class action filed by the Firm on behalf of patients who went to an in-network emergency department in California (40 hospitals) and were charged inflated rates for out-of-network physician services. The complaint alleged that defendants failed to disclose information that would allow patients to avoid—or even know that they were receiving—out-of-network care at an in-network hospital, and then overcharged patients, billing at rates far beyond the fair market value of the services.   On June 30, 2020, the court granted final approval to a settlement which provided refunds or write-offs of amounts in excess of what class members' insurance companies determined was the "allowable charge" for the services, for class members who file valid proof of claim forms.

•        In a novel ruling under the Truth in Lending Act ("TILA")/Regulation Z in which the Firm represents the plaintiff, Jamison v. Bank of America, N.A., No. 2:16-cv-00422-KJM-AC, 2016 WL 3653456 (E.D. Ca., July 7, 2016), the Court in the Eastern District of California found the reasoning of the McLaughlin case prosecuted by the Firm and described below "to be persuasive and consistent with TILA's remedial purpose. . . As a result, an 'accurate' payoff statement should have disclosed the [insurance] proceeds."

•        McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA (N.D. Cal.), in a precedent setting Order under the Truth in Lending Act's ("TILA") Regulation Z, the Court in the Northern District of California, in denying the motion to dismiss of Wells Fargo Bank, held that the bank is required under TILA to indicate the amount of property insurance proceeds held by the bank on the plaintiff customer's payoff statement.   The Court noted that "[n]o decision from our court of appeals has ever addressed the issue of whether TILA compels lenders to include 'potential' credits in payoff statements."   In holding for the plaintiff, the Court found, "[a]s a matter of law, the bank is wrong on this one."   McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA, Order that TILA Required Insurance Proceeds to be Reflected in Payoff Statement (N.D. Cal. Oct. 29, 2015).   A settlement providing for recovery of 88% of the maximum statutory damages in a class action under TILA was approved by the Court in 2017.

•        Belfiore v. The Procter & Gamble Co., 14-cv-4090 (E.D.N.Y.), a consumer class action litigation, arises from Procter & Gamble's representations that its Charmin Freshmates flushable wipes products are "flushable" and "safe for sewer and septic systems."   The plaintiff alleges that, contrary to Procter & Gamble's representations, Freshmates do not break down sufficiently and, as a result, cause serious problems for septic tanks and household plumbing.   Judge Weinstein granted class certification for a class of New York consumers after six days of evidentiary hearings with multiple expert witnesses. On July 23, 2020, Judge Chen approved the settlement on behalf of New York consumers, which included significant changes to the product's labels and a monetary component that allows consumers with proof of purchase to receive up to $50.20—an amount that exceeds the actual and statutory damages potentially available at trial.

•        Smajlaj v. Campbell Soup Company, No. 10-CV-1332-JBS (D.N.J.), in which four New Jersey consumers sued Campbell Soup in a national class action charging that the labels on Campbell's more expensive low sodium tomato soup products were misleading in that the "low sodium" soups actually contained as much sodium as Campbell's regular tomato soup. They claim they were misled into paying for more expensive soup even though it did not contain less sodium than the less expensive alternative.   Defendants

WOLF POPPER

Page -9-

moved to dismiss the complaint and the United States District Judge Jerome B. Simandle denied the motion in a precedent setting opinion decided under the New Jersey Consumer Fraud Statute.   In November 2011, the Court approved a settlement creating a $1.05 million cash fund to reimburse class members and providing for certain changes to Campbell's soup labels.   The creation of the settlement fund was a substantial recovery for the class, considering that it exceeded the proceeds that defendants received as a result of the premium charged for their "low sodium" soups and provided a cash payment to class members after only a relatively short period of litigation.

•       In re Coordinated Title Insurance Cases, No. 009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount.   In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had before us on all sides – Plaintiffs' side, which involves two firms, and the Defendants, eight Defendants which involve five firms representing the eight different Defendants – was lawyering of the highest quality.   It's always enjoyable for the Court to have high quality lawyering in front of it.   It's always my opinion that it raises the level of the Bench when the lawyers before it proceed in a very high fashion, which has happened in this case.

•       Sims v. First Consumers National Bank, No. 01/604536 (Sup. Ct., New York Cnty.), this consumer fraud action challenged the misleading disclosure of fees in fine print in connection with the issuance of the bank's credit cards.   The lower court's dismissal of the action was unanimously reversed by the appellate court and the action was settled in 2005 with a recovery of 100% of the damages for the class.

•       Canning v. Concord EFS, Inc., No. L-6609-02 (Super. Ct., NJ, Law Division, Camden County), a consumer fraud action brought in New Jersey on behalf of recipients of certain public assistance benefits who were being illegally surcharged to access their benefits through ATM machines.   The settlement, approved in May 2005, provided for a recovery of 90% of the surcharges and an injunction halting the illegal surcharging.

•       Taylor v. American Bankers Insurance Group, Inc., 700 N.Y.S.2d 458 (App. Div., 1st Dept. 1999), in which the Firm successfully defended against an appeal by defendants of the certification of a nationwide class on behalf of consumers who alleged that defendants had violated §§349 and 350 of the General Business Law by misleading consumers about the purchase of insurance and improperly denying insurance claims.   The Firm achieved a complete recovery for class members as defendants agreed to pay class members' disputed coverage claims in full, as well as revise their solicitations to prevent a recurrence.

•       Princeton Economics Group, Inc. v. American Telephone & Telegraph Co., No. L-91-3221 (N.J. Super. Ct. 1995), the largest class action ever brought in New Jersey State Court.   The action, based upon AT&T's marketing and sales of a telephone system that it advertised as well suited to small businesses because of its "conference call" features, revealed that the phone system did not function as advertised.   The participants to calls could not hear each other because the conference feature lacked amplification.   This litigation resulted in a settlement valued by the Court at $85-90 million.   At the conclusion of the case, the Court noted the complexity and difficulty of the issues involved and favorably commented that, "[i]f not for the skill and experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

•       Tanzer v. HIP, (1997 WL 773695), the New York Court of Appeals, New York's highest court, unanimously upheld a class action complaint on behalf of insureds who had been denied medical insurance

WOLF POPPER

Page -10-

coverage.   The Firm subsequently obtained partial summary judgment against HIP for breach of HIP's contract with its insurance subscribers for failing to reimburse them for anesthesia-related expenses in conjunction with surgical procedures performed in New York State since June 7, 1993.   Tanzer v. HIP, No. 114263-95, slip op., January 27, 1999.   Ultimately, a settlement was reached which paid members of the class 100% of their damages.

***Transactional Litigation and Corporate Governance****:*

Wolf Popper has represented plaintiffs in Delaware and other states' courts when in class and derivative actions, representing investors in companies where shareholders believe that officers, directors, and others have engaged in self-dealing actions or who, in the context of proposed mergers or tender offers, are offered inadequate compensation for their stock or are provided inadequate information to allow such investors to make informed decisions concerning whether to vote for such transactions.   Wolf Popper has achieved significant corporate governance reforms and often recovered funds for shareholders victimized by such conduct.   Examples where Wolf Popper acted as lead or co-lead counsel in such circumstances include:

•       In In re AmTrust Financial Services, Inc. Stockholder Litigation, No. 2018-0396-AGB (Del. Ch.), Vice Chancellor Lori W. Will approved a $40 million settlement of this breach of fiduciary duty action in which Wolf Popper serves as co-lead counsel.   The action arose from a 2018 transaction whereby AmTrust's controlling stockholder family purchased all unaffiliated common stock for $14.75 per share.   In a memorandum dated February 26, 2020, the Court of Chancery largely denied the defendants' motions to dismiss, finding, among other things, that the plaintiffs' complaint "raise[s] significant questions" about the fairness of the merger process.   While discovery was proceeding the parties reach the settlement, which was approved by the Vice Chancellor on November 22, 2021.

•       In re PHC, Inc. Shareholder Litigation, C.A. No. 11-11049-PBS, in which Chief Judge Patti Saris in the U.S. District of Massachusetts certified a class of stockholders who voted against or did not vote in connection with the merger of PHC, Inc. and Acadia Healthcare Corp.   After a two-week jury trial, the Court awarded $2,964,396 plus interest to the plaintiff class, which represented the full amount of the damages plaintiff's expert had calculated to have arisen from the controlling stockholder's breach of fiduciary duty in negotiating a multi-million side-payment, almost all for himself, as part of the merger.   Judge Saris complimented counsel for their skill and professionalism at the end of the trial.   On July 2, 2018, the United States Court of Appeals for the First Circuit affirmed the post-trial order.   The First Circuit also complimented counsel for their "unusually good arguments," stating that "It's more of a pleasure to be a judge when we get such good arguments." Chris Villani, *CEO Asks 1st Circ. To Nix $3M 'Little Red Hen' Payout*, https://www.law360.com/articles/1042069/ceo-asks-1st-circ-to-nix-3m-little-red-hen-payout (last visited Mar. 29, 2021). The First Circuit further noted that the issues on appeal were "intricate, entangled, and in some instances novel."   MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), Nos. 17-1821, 17-1904, 2018 U.S. App. LEXIS 18035, *1 (1st Cir. July 2, 2018).

•       Frechter v. Zier (Nutrisystem), C.A. No. 12038-VCG (Del. Ch.), Wolf Popper, on behalf of the public shareholders of Nutrisystem Inc., brought a class action lawsuit challenging the company's bylaw that required a two-thirds vote of the shareholders to remove a director.   .   Wolf Popper argued that the bylaw provision violated Delaware law and that only a simple majority should be required.   In an eleven-page decision, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017), Delaware Vice Chancellor Sam Glasscock III agreed with Wolf Popper, concluding: "Section 141(k) [of Delaware's General Corporation Law] unambiguously confers on a majority the power to remove directors, and the contrary provision of the Company bylaws is unlawful."

WOLF POPPER

Page -11-

• In re: Cornerstone Therapeutics Inc. Stockholder Litig., Case 8922, (Del. Ch.), in which the Firm served as Co-Lead Counsel, on January 26, 2017, Vice Chancellor Glasscock approved a settlement that established a gross settlement fund of $17.9 million for the benefit of Cornerstone's minority stockholders. The Court stated that class attorneys achieved "almost nothing short of the best result."   The Court pointed out that "[t]here was a great deal of litigation done.   Interesting and undetermined areas of law had to be explored by counsel for both sides."   Vice Chancellor Glasscock later said at the hearing that it was "vanishingly unlikely" that shareholders left any claims behind in the deal.

• In re Venoco, Inc. Shareholder Litig., C.A. No. 6825-VCG (Del. Ch.), Wolf Popper, as Co-Lead Counsel, challenged the going private transaction led by Venoco's founder and controlling shareholder.   After almost five years of litigation, the Firm achieved a fund for the shareholders of $19 million.   (Had the company not filed for bankruptcy, the settlement would have also provided 25% of Venoco's founder's ownership interest in Venoco.)   The Delaware Chancery Court approved the settlement in October 2016.

• In re: Bluegreen Corporation Shareholder Litig., Case No. 502011CA018111 (Circuit Court, 15th Judicial Circuit, Palm Beach County, Fl.), Wolf Popper, as Co-Lead Counsel, challenged the terms of a merger pursuant to which Bluegreen was acquired by its majority shareholder through an allegedly unfair process and the allegedly unfair price of $10.   After four years of intense litigation, the parties reached a settlement of $36.5 million, which increased the payout to the shareholders by 25%.   The settlement fund is the largest for a lawsuit challenging a merger in Florida legal history, dwarfing the prior record by more than 400%.   According to the Court, "[t]he recovery in the instant case stands in sharp contrast to Florida common fund recoveries and merger suits over the past few years.   The success of this resolution is well above the norm."

• In re Yongye International, Inc. Shareholder Litigation, consolidated Case No. A-12-670468-B (Eighth Judicial District Court, Clark County, NV), in which as Co-Lead Counsel for Plaintiffs, Wolf Popper litigated the acquisition of Yongye International, Inc. on behalf of its public shareholders, securing not only an initial increase in the acquisition price, but an additional settlement fund in the amount of $6 million, as well as substantial additional public disclosures in conjunction with the deal.   According to Cornerstone Research, fewer than 8% of such cases result in settlement funds. The Court in Nevada approved the proposed settlement at a hearing held on March 3, 2016.

• Semon and Meister v. Swenson, No. 5:10-cv-143 (D. Vt. March 11, 2013) (cash settlement increasing the buyout price paid to minority shareholders of Rock of Ages Corporation ("ROAC") by 14.5%, after having initially increased the offer price after plaintiff filed suit and having made significant additional public disclosures of previously undisclosed information; Court described case as "tenacious" litigation by Wolf Popper LLP, with the Judge stating that she will "pay the compliment of tenaciousness" to Wolf Popper, that the Firm "stuck with the litigation, continued to vigorously pursue it, and convince[d] [her], through that, that they were willing to stick with the class through thick and thin …")

• In re Playboy Enterprises, Inc. Shareholders Litig., C. A. No. 5632-VCN (Del. Ch.)(in class action challenging the buyout of the minority stockholders of Playboy Enterprises, Inc. by the majority stockholder, at a March 19, 2013 hearing, Vice Chancellor John W. Noble approved the $5.25 million post-merger closing settlement, further increasing the price to be paid to shareholders in the buyout by approximately 4% and included other, non-monetary benefits; (Defendants had earlier published the disclosures that plaintiffs had complained were missing, and had previously increased the buyout price after plaintiffs had filed suit).   The Vice Chancellor recognized "that a common fund of $5.25 million was created as a direct result of the efforts of plaintiffs' counsel.   That is as concrete a metric as one can hope for."   He also stated that "[t]he standing and ability of counsel may not be questioned.")

• In re Atheros Communications, Inc. Shareholder Litig., C.A. No. 6124-VCN (Del. Ch. Mar. 4, 2011) ($3.1 billion merger enjoined pending material disclosures ordered by the Court).

WOLF POPPER

Page -12-

- In re FTD.com, Inc. Shareholder Litig., C.A. No. 19458-NC (Del. Ch.), Wolf Popper was co-lead counsel in an action that alleged that members of the board of directors of FTD.com abused their control of the company by taking FTD.com private under terms advantageous to them but not to FTD.com's public shareholders.   After mediation, co-lead counsel obtained a recovery which came to more than 99% of the damages claimed by members of the class.

- Ehrenhaus v. Baker (Wachovia Corp.), No: 08-CVS-22632 (N.C. Super. Ct.)

- Rice v. Lafarge North America, Inc., Civ. No. 268974-V (Md. Cir.) ($383 million aggregate benefit)

- In re Aramark Corp. Shareholders Litig., C.A. No. 2117-N (Del. Ch.) ($222 million aggregate benefit)

- Cuti v. Anthony, et al., 24-c-06-008163 (Md. Cir.)

- In re Nortek, Inc. Shareholder Litig., C.A. No. 19538-NC (Del. Ch.) ($63 million aggregate benefit)

- In re New Valley Corp. Shareholder Litig., C.A. No. 1678-N (Del. Ch.) ($28 million aggregate benefit)

- In re The Topps Co. Shareholder Litig., 926 A.2d 58 (Del. Ch. 2007) (enjoining transaction pending release of standstill agreement and disclosures)

- In re Net2Phone, Inc. Shareholders Litig., C.A. No. 1467-N (Del. Ch.)

- In re William Lyon Homes Shareholder Litig., C.A. No. 2015-N (Del. Ch.)

Wolf Popper has served as lead or co-lead counsel in other cases challenging transactions involving, among many others:   American Surgical Holdings, Inc., Venoco, Inc., KSW, Inc., OpenTV Corp., EDO Corp., James River Group, Inc., CentraCore Properties Trust, Bioenvision, Inc., Mossimo, Inc., Centerpoint Inc., Genencor International Inc., Uni-Marts, Inc., Nassda Corp., and Chaparral Steel, Co.

***Trial Experience***:

One of the reasons Wolf Popper maintains a favorable, formidable reputation is because of the Firm's demonstrated willingness to prosecute cases through trial in order to achieve a favorable result for our clients. The Firm's trial (and arbitration) experience includes, among other cases:

- In re PHC, Inc. Shareholder Litig., C.A. No. 11-11049-PBS, Chief Judge Patti Saris, who oversaw the two-week jury trial in federal court in Boston in February-March 2017, entered a post-trial judgment ordering the former chief executive officer of PHC to disgorge $2,964,396, plus interest, which the United States Court of Appeals for the First Circuit affirmed on July 2, 2018, noting that the issues on appeal were "intricate, entangled, and in some instances novel." MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), Nos. 17-1821, 17-1904, 2018 U.S. App. LEXIS 18035, *1 (1st Cir.), cert. denied, 139 S. Ct. 489 (2018).   The District Court Chief Judge complimented counsel for their skill and professionalism, stating:

> I think you all [ ] did a great job trying this case.   I was telling my law clerks you don't often see commercial litigation actually go to trial so [this is] a great example ….

WOLF POPPER

Page -13-

•       Zuckerman v. FoxMeyer Health Corp., 3-96-CV 2258-L (N.D. Tex. 2002), where Wolf Popper successfully prosecuted a mini-trial before a former Magistrate Judge in the context of an ADR Proceeding to determine a binding fair value of a settlement of the action.   Notwithstanding the fact that the defendant company was on the brink of insolvency (and subsequently filed for bankruptcy), the company providing the initial layer of insurance coverage was in liquidation, and the individual defendants were not wealthy, after presentation of the evidence, the neutral arbiter determined in plaintiffs' favor.

•       In an arbitration before a court appointed arbitrator in Retsky Family Limited Partnership v. Price Waterhouse LLP, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

•       Plaintiffs' co-trial counsel in Abzug, et ano. v. Kerkorian, et al., CA 000981, Superior Court, Los Angeles, California, which was settled during trial for $35 million.

•       The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (Co-lead counsel for derivative actions).   There the Los Angeles Superior Court in September 1989 approved a settlement at trial providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

•       Citron v. E.I. duPont de Nemours & Co., Del. Ch. (Civil Action No.  6219), in Delaware Chancery Court in which the Vice-Chancellor complimented plaintiffs' counsel "for the able way in which they presented the case," their "well-done" pre-trial briefs, and the "good job" done.

•       The Firm also has tried several other actions on behalf of plaintiffs and plaintiff classes in securities and other actions in other federal courts, as well as in Delaware Chancery Court and elsewhere.

***Court Commentary On The Firm***:

Throughout the history of the Firm, the Courts before whom Wolf Popper has appeared have commented favorably and repeatedly on the ability and performance of the Firm and its members.   A sampling of some of the praise the Firm has consistently received over the course of its practice include the following cases:

•       Judge Josephine Stanton of the Central District of California granted preliminary approval of a consumer class action settlement in Casey v. Doctor's Best, Inc., (Case No. 8:20-cv-01325-JLS-JDE) (Feb. 28, 2022).   In so doing, the Court stated, "Wolf Popper LLC has focused on representing plaintiffs in class actions for a significant portion of its 75-year history, and the individual attorneys from Wolf Popper have a wealth of experience in class actions in general, as well as, in litigating dietary supplement labelling class actions in particular."   Order, at 18.

•       Judge Sandra L. Lynch of the United States Court of Appeals for the First Circuit noted the quality of the Firm's oral argument in In re PHC, Inc. Shareholder Litigation, MAZ Partners LP v. Bruce A. Shear, Nos. 17-1821, 17-1904 (1st Cir., May 9, 2018), stating "I'd just like to say, this was an unusually good argument from both sides.   It's more of a pleasure to be a judge when we get good arguments from counsel. Thank you."   Chris Villani, *CEO Asks 1st Circ. To Nix $3M 'Little Red Hen' Payout*, https://www.law360.com/articles/1042069/ceo-asks-1st-circ-to-nix-3m-little-red-hen-payout (last visited Mar. 29, 2021).   Judge Raul R. Torruella, who also sat on the First Circuit panel, agreed: "I join Judge Lynch's statement." (The Firm ultimately prevailed on appeal). Chief Judge Patti Saris of the District of Massachusetts,

WOLF POPPER

Page -14-

who had presided at trial, remarked that counsel "did a great job trying this case" and that "someone should study the case in terms of how attorneys should treat one another."

•        In certifying the class in a comprehensive consumer class action against, *inter alia*, the Procter & Gamble Company and other manufacturer and retailer defendants for defects in labeling "flushable toilet wipes", the Court in Belfiore v. The Procter & Gamble Company, 14-CV-4090 (E.D.N.Y. March 27, 2017), stated that "Counsel for plaintiff have handled the case with great skill and full attention."

•        At a settlement hearing before the Delaware Chancery Court on January 26, 2017, in In re: Cornerstone Therapeutics Inc. Stockholder Litigation, Case 8922, (Del. Ch.), in which the Firm served as Co-Lead Counsel, Vice Chancellor Glasscock approved a settlement that established a gross settlement fund of $17.9 million for the benefit of Cornerstone's minority stockholders.   The Court stated that class attorneys achieved "almost nothing short of the best result."   The Court pointed out that "[t]here was a great deal of litigation done.   Interesting and undetermined areas of law had to be explored by counsel for both sides." Vice Chancellor Glasscock later said at the hearing that it was "vanishingly unlikely" that shareholders left any claims behind in the deal.

•        In Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al., v. J.P. Morgan Acceptance Corp., et al., No. 08-cv-1713 (PKC) (E.D.N.Y. May 1, 2014), in preliminarily approving a $280 million settlement on behalf of persons who acquired mortgage pass-through certificates and asset-backed pass-through certificates pursuant and/or traceable to certain registration statements and prospectus supplements, Judge Pamela K. Chen stated "it's very clear that this has been a hard fought and well negotiated, seemingly well negotiated, result.   So I think that's kudos to you all certainly better than any kinds of trial I would say."

•        In Semon and Meister v. Swenson, No. 5:10-cv-143 (D. Vt. March 11, 2013), following what the Court described as "tenacious" litigation by Wolf Popper LLP on behalf of the minority stockholders of Rock of Ages Corporation ("ROAC") in this class action challenging the buyout of the stockholders by ROAC's majority stockholder, Judge Christina Reiss approved the $3.2 million settlement and certified the case as a class action.   The settlement further increased the price to be paid to shareholders in the buyout by 14.5% and included other, non-monetary benefits (including Defendants earlier publication of extensive disclosures that plaintiffs had complained were lacking in the defendants' public filings about the buyout, and that Defendants had also increased the buyout price after plaintiffs had brought suit.)   The Judge said that she will "pay the compliment of tenaciousness" to Wolf Popper, noting that Wolf Popper "stuck with the litigation, continued to vigorously pursue it, and convince[d] [her], through that, that they were willing to stick with the class through thick and thin …" The Judge further found that the firm was "experienced, competent, zealous," and that "it's been an interesting case for me and very professionally handled. . . ."

•        In Tsereteli, et ano., v. Residential Asset Securitization Trust 2006-A8 et al., No. 08 Civ. 10637 (LAK) (S.D.N.Y. June 29, 2012), the Court granted plaintiff's motion for class certification over the vigorous objections of defendants, commenting that ". . . lead counsel Wolf Popper is qualified and capable of prosecuting this action. It has conducted discovery, engaged in motion practice, and protected the interests of Vazurele and the prospective class throughout the more than three years this case has been before the Court. It has done so diligently and professionally. . . ."

•        In Middlesex Retirement System v. Quest Software, Inc., No. CV 06-6863 DOC (RNBx) (C.D. Cal. Dec. 7, 2009), in which Wolf Popper had been appointed by the Court as Lead Counsel and Class Counsel, the Court stated in preliminarily approving the $29.4 million (plus cost of providing notice) proposed settlement of the action, "once again on the record . . .I want to compliment counsel for working extraordinarily hard; . . .this appears to be an extraordinarily fair settlement for all parties concerned. * * * [Y]ou really have the court's profound congratulations and compliments."

WOLFPOPPER

Page -15-

•      In approving the $190,000,000 recovery for the Class in the <u>Motorola Sec. Litig.</u>, No. 03C287 (N.D. Ill.), where Wolf Popper represented the lead plaintiff, the Court stated as follows "You did a great very professional job here.   This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

•      Wolf Popper served as co-lead counsel for plaintiffs in <u>Conolly v. Universal American Financial Corp.</u>, No. 13422/07 (Sup. Ct. Westchester Cnty.).   At the final hearing in the action, Transcript Dec. 9, 2008 at 74-75, Hon. Alan D. Scheinkman complimented plaintiffs' co-lead counsel, stating: "The Court has had the opportunity to see these lawyers on numerous occasions and read their submissions, not just those relating to fees but those relating to the merits of the case and the Court has become familiar with counsel and is impressed with their skill and knowledge and their professionalism."

•      On October 7, 2008, the Court approved the settlement reached by Wolf Popper LLP and its co-counsel, on behalf of former and current employees of AIG, in the amount of $24.2 million in <u>In re AIG ERISA Litig.</u>, No. 04 Civ. 9387 (JES)(AJP) (S.D.N.Y.), stating that "without the work of these [plaintiffs'] attorneys there would be nothing."

•      In <u>In re TJX Companies Retail Security Breach Litig.</u>, Master Docket No. 07-10162, MDL Docket No. 1838 (D. Mass.), in which Wolf Popper was Co-Lead Counsel, the Court in approving the settlement on July 15, 2008, stated that Plaintiffs' counsel achieved an "excellent settlement" for the consumer class, that they "have been very creative" and performed "a wonderful job."

•      In <u>Dusek v. Mattel</u>, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.), in approving the settlement of the action along with a companion action, for $122 million, the Judge, in her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the <u>Dusek</u> action and zealously represented the interests of the <u>Dusek</u> Class members," and that Wolf Popper performed in a "very capable and professional manner."

•      The Firm served as Co-Lead Counsel for plaintiffs in <u>Stanley v. Safeskin</u>, No. 99cv454-BTM (LSP) (S.D. Cal.), in which the Judge noted in approving a $55 million settlement that "Plaintiffs' counsel are highly skilled in these cases" and that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."   The Honorable Barry T. Moskowitz subsequently further complimented Co-Lead Counsel at a hearing on November 20, 2003, stating:

> I think I learned more about the honorability of the firms and the competency -- and competency is too weak of a word -- the extraordinary ability of these firms in handling the cost aspects of it, and expenses aspect of it, . . .I don't think I've seen lawyers so honest with the Court . . . .I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard.
>                  * * *
> And it's not usual that the court sees lawyers behave -- we usually see them behave well, but this is extraordinarily positive.   And I wanted to make that notation. . . I can -- come out of it having incredible respect for the work that the lawyers did in this case.
>                  * * *
> From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane.   If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case.

_____



**CHET B. WALDMAN**
Senior Partner

Chet B. Waldman, born in the Bronx, New York, is a graduate of Cornell University (A.B. 1982) and Boston University School of Law (J.D., 1985) where Chet was both a G. Joseph Tauro Scholar and a Paul J. Liacos Scholar and was a member of the American Journal of Law and Medicine. Chet was admitted to the bar in 1986 for the State of New York, the United States District Court, Southern and Eastern Districts of New York in 1988, the United States Court of Appeals for the First Circuit in 2013, the United States Court of Appeals for the Second Circuit in 2022, and the United States Court of Appeals for the Eighth Circuit in 2020. Following law school, Chet joined the New York office of Weil, Gotshal & Manges, where he was predominantly involved in antitrust litigation. Chet has been at Wolf Popper since 1988 where he has concentrated in federal securities class actions, state and federal merger and acquisition litigation, and consumer rights litigation. Chet has extensive experience in litigating health care and consumer fraud cases, including multiple surprise bill litigations, cases against title insurance companies, tax services companies and cases involving false labeling claims.

Chet became a partner of the firm as of January 1, 1995. As of January 1, 2015, Chet became a member of Wolf Popper's Executive Committee.

Chet has been a member of the Securities Litigation Committee and the Mergers & Acquisition Committee of the New York City Bar Association. Chet is currently serving as a member of that Bar Association's Inter-American Affairs Committee. On June 30, 2017, the individual members of the Inter-American Bar Association ("IABA"), an association made up of more than 30 countries from North America, Central America, South America, England, Spain, and France, elected Chet to represent them as a member of the IAB Council.

Chet is a frequent lecturer on securities litigation matters, healthcare litigation, and the fiduciary duties of pension system trustees throughout the U.S., Latin America, and Canada, including speaking engagements at conferences of the National Conference of Public Employee Retirement Systems ("NCPERS") (most recently on October 24, 2022, where Chet spoke on medical surprise bills in Nashville, TN), Council of Institutional Investors, Mid-Atlantic Pension Systems, National Association of Police Organizations, the Illinois Public Pension Fund Association ("IPPFA"), and the KORIED Plan SPonsor Educational Institute, among others. Additional examples of his presentations include:

- The Case for and Against Shareholders Litigating ESG Issues, NCPERS, Washington, D.C., May 25, 2022;
- How the Global Financial System Helps the World's Rich Get Richer, The 2018 KORIED Global Summit, Coral Gables, FL, July 12, 2018;
- How the Global Financial System Helps the World's Rich Get Richer: Part 2 - The Pandora Papers, KORIED Plan Sponsor Educational Institute, Key West, FL, January 21, 2022;
- Class Actions in Latin America and Their Interaction with the U.S. Market, Hispanic National Bar Association, October 2021;
- Ten Years After the Financial Crisis, National Association of Police Organizations, Las Vegas, NV, Feb. 5, 2019; and KORIED Plan Sponsor Educational Institute, Key West, FL, Jan. 16, 2019;
- 10 Years After the Financial Crisis: Where Do Shareholder Rights Stand?, 12th Annual PAPERS Fall Workshop, Philadelphia, PA, Nov. 27, 2018;
- Case Study on Lessons Learned from the Petrobras Bribery Scandal, KORIED Plan Sponsor Educational Institute, Jan. 18, 2018;
- The Long and Winding Saga of the Wyly Brothers, NCPERS, New Orleans, LA, Oct. 27, 2014;
- More Bad Corporate Behavior - What's a Fiduciary to do? IPPFA, Lake Geneva, WI, Oct. 2, 2013;

1

- <u>Defending Your Defined Benefit: Capital Stewardship</u>, NCPERS 2013 Annual Conference and Exhibition, Honolulu, HI, May 19, 2013;
- <u>U.S. Class Actions: What Are They And Why Are They Necessary?</u> Mexico Investors Forum, Mexico City, Mexico, Nov. 12, 2012; and
- <u>Gordon Gekko Lives: The Galleon Insider Trading Scandal</u>, Inter-American Bar Association, Isla Margarita, Venezuela, June 6, 2012, and NCPERS Conference, New York, NY, May 7, 2012.

Chet is also a co-author of the Chapter on "Managing Class Actions" in the American Bar Association's <u>Guide for In-House Counsel: Practical Resource to Cutting-Edge Issues</u>, March 2019.

Experience

Chet has been involved in litigating numerous multi-district and consolidated actions including some of the more prominent cases in which Wolf Popper has been involved.

Reported notable decisions recognizing Chet as counsel include:

- <u>Edwards v. McDermott Int'l</u>, Inc., 2021 U.S. Dist. LEXIS 71758 (S.D. Tex. Apr. 14, 2021);
- <u>Lipman v. GPB Capital Holdings, LLC</u>, C.A. No. 2020-0054-SG, 2020 WL 6778781 Del. Ch. (Dec. 3, 2020);
- <u>Bozarth v. Envision Healthcare Corp.</u>, 2020 U.S. Dist. LEXIS 117294 (C.D. Cal, June 30, 2020);
- <u>Pub. Empls. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.</u>, Case No. 16-cv-10632, 2020 U.S. Dist. LEXIS 32586 (N.D. Ill. Feb 26, 2020);
- <u>MAZ Partners LP v. First Choice Healthcare Sols., Inc.</u>, Case No.: 6:19-cv-619-Orl-4OLRM, 2020 U.S. Dist. LEXIS 38799 (M.D. Fl. Feb. 14, 2020);
- <u>MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.)</u>, Nos. 17-1821, 17-1904, 2018 U.S. App. LEXIS 18035 (1st Cir. July 2, 2018), <u>cert. denied</u>, 139 S. Ct. 489 (2018); <u>MAZ Partners LP v. PHC, Inc. (In re PHC S'holder Litig.)</u>, 762 F.3d 138 (1st Cir. 2014); <u>MAZ Partners LP v. Shear</u>, 2017 U.S. Dist. LEXIS 108678 (D. Mass. July 13, 2017); <u>MAZ Partners LP v. Shear</u>, 2016 WL 4574640 (D. Mass. Sept. 1, 2016); <u>In re PHC, Inc. S'holder Litig.</u>, 2012 U.S. Dist. LEXIS 44616 (D. Mass. Mar. 30, 2012);
- <u>Flynn v. Sientra, Inc.</u>, 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016);
- <u>In re Cornerstone Therapeutics Inc. Stockholder Litig.</u>, C.A. No. 8922-VCG, 2014 Del. Ch. LEXIS 170 (Del. Ch. Sept. 10, 2014), <u>rev'd sub nom., In re Cornerstone Therapeutics Inc. S'holder Litig.</u>, 115 A.3d 1173 (Del. 2015);
- <u>Anwar v. Fairfield Greenwich, Ltd.</u>, 09 Civ. 0118 (VM), 2010 U.S. Dist. LEXIS 86716 (S.D.N.Y. Aug. 18, 2010); <u>Anwar v. Fairfield Greenwich, Ltd.</u>, 09 Civ. 0118 (VM), 2010 U.S. Dist. LEXIS 78425 (S.D.N.Y. Jul. 29, 2010);
- <u>Watts v. Jackson Hewitt Tax Serv.</u>, 579 F. Supp. 2d 334 (E.D.N.Y. 2008);
- <u>Ehrenhaus v. Baker (Wachovia/Wells Fargo)</u>, 717 S.E.2d 9, 2011 N.C. App. LEXIS 2161 (N.C. App. Oct. 4, 2011), <u>appeal dism'd</u>, <u>review den'd</u>, 2012 N.C. LEXIS 1099 (N.C. Dec. 12, 2012);
- <u>In re Netsmart Technologies, Inc. Shareholders Litigation</u>, 924 A.2d 171 (Del. Ch. 2007);
- <u>Middlesex Retirement System v. Quest Software, Inc.</u>, 527 F.Supp.2d 1164 (C.D. Cal. 2007);
- <u>Corr. Officers' Benevolent Ass'n of the City of N.Y. v. Express Scripts (In re Express Scripts)</u>, 522 F. Supp. 2d 1132 (E.D. Mo. 2007);
- <u>In re Mutual Funds Investment Litigation</u>, 478 F. Supp. 2d 833 (D. Md. Feb. 2007); <u>In re Mutual Funds Investment Litigation</u>, 384 F. Supp. 2d 845 (D. Md. 2005);
- <u>In re Coordinated Title Insurance Cases</u>, 784 N.Y.S.2d 919 (Sup. Ct. Nassau Co. 2004);
- <u>In re Loewen Group Inc. Sec. Litig.</u>, No. 98-6740, 2004 WL 1853137 (E.D. Pa. Aug. 18, 2004);
- <u>In re Sunbeam Sec. Litig.</u>, 89 F. Supp. 2d 1326 (S.D. Fla. 1999);
- <u>In re WebSecure, Inc. Sec. Litig.</u>, 182 F.R.D. 364 (D. Mass. 1998); <u>Nager v. WebSecure, Inc.</u>, [1998 Supp. Transfer Binder] Fed. Sec. L. Rep. (CCH) 90,111 (D. Mass. Nov. 26, 1997);
- <u>Zuckerman v. FoxMeyer Health Corp.</u>, 4 F. Supp.2d 618 (N.D. Tex. 1998); and
- <u>In re JWP Inc. Securities Litigation</u>, 928 F. Supp. 1239 (S.D.N.Y. 1996).

2

Memberships & Associations

- New York City Bar Association's Inter-American Affairs Committee, member
- Inter-American Bar Association, Council Member

Recognition

- Top-rated attorney by *Super Lawyers* (New York - Metro Edition) in securities litigation, 2009 - 2020
- *Super Lawyers* (New York - Metro Edition) in consumer law, 2021-2022



**ROBERT C. FINKEL**
Senior Partner

Robert C. Finkel is a graduate of the Columbia Law School, Class of 1981 (where he was a Harlan Fiske Stone Scholar), and the University of Pennsylvania, Class of 1978, where he obtained a B.S. in accounting from the Wharton School of Business and a B.A. in history from the College of Arts and Sciences. Robert began his employment in the 1980s with two large New York City defense firms. Robert has been repeatedly designated a *Super Lawyer®* in Securities Litigation.

Robert has written for The New York Law Journal on subjects including shareholder voting rights and ERISA class actions.

Robert became a partner at Wolf Popper LLP effective January 1, 1992.

Experience

Robert was one of the co-lead counsel in litigation involving the Fairfield Greenwich funds – the largest group (exceeding $7 billion) of feeder funds to the Bernard L. Madoff Investment Securities Ponzi scheme. Robert was instrumental in securing $225 million in recoveries against the Fairfield Greenwich defendants (investment advisors to the funds) and three service providers to the funds (GlobeOp Financial Services LLC, the Citco Group (the funds' administrator and custodian)), and PricewaterhouseCoopers (the funds' auditors).

Robert has represented the State of New Jersey, Division of Investment in litigation against Motorola, Inc. (securing a $190 million recovery) and against Merrill Lynch & Co., Inc. (securing a $45 million recovery).

Robert was also an active participant in Wolf Popper's representation of the plaintiff classes in the following securities fraud class actions, among others:

- In re Amedisys, Inc. Securities Litigation, Civil Action No. 10-00395-BAJ-RB (M.D. La.) ($43.75 million recovery);
- In re TyCom Ltd. Securities Litigation, MDL Docket No. 02-1335-B (D.N.H.) ($79.1 million recovery);
- In re Service Corp. International, Case No. H-99-280 (S.D. Tex.) ($65 million recovery);
- In re Transkaryotic Therapies Inc. Securities Litigation, Civil Action No. 03-10165-RWZ (D. Mass.) ($50 million recovery);
- In re Providian Financial Securities Litigation, MDL 1301 (E.D. Pa.) ($38 million recovery);

3

- In re TCW/DW North American Government Income Trust, 95 Civ. 0167 (PKL) (S.D.N.Y.); ($30 million recovery);
- In re Columbia Securities Litigation, 89 Civ. 6821 (S.D.N.Y.) ($25 million recovery);
- In re Cephalon Securities Litigation, 96 CV-0633 (E.D. Pa.) ($17 million recovery);
- In re Donnkenny Securities Litigation, 96-CV-8452 (MGC) (S.D.N.Y.) ($14.75 million cash and common stock recovery);
- In re Marion Merrell Dow Inc. Securities Litigation, Master File No. 92-0609-CV-W-6 (W.D. Mo.) ($13.85 million recovery)
- In re Medical Care America, Inc. Securities Litigation, Civil Action No. 3-92-CV-1996-R (N.D. Tex.) ($12 million recovery);
- In re PictureTel Corp. Securities Litigation; C.A. No. 97-12135-DPW (D. Mass.) ($12 million recovery);
- In re Anicom, Inc. Sec. Litig., No. 00-C-4391 (N.D. Ill.) ($11.5 million recovery);
- In re National TechTeam Securities Litigation, Case No. 97-74587 (E.D. Mich.) ($11 million recovery).

Robert also prosecuted the following shareholder action:

- In re Triarc Companies, Inc. Class and Derivative Litigation, Civil Action No. 15746-NC (Del. Ch.)

Among the reported decisions in which Robert has appeared as counsel of record are:

- Northstar Financial Advisors, Inc. v. Schwab Investments, 779 F.3d 1036 (9th Cir. 2015) (reversing dismissal of state law claims);
- Public Emples. Ret. Sys. of Miss. v. Amedisys, Inc., 769 F.3d 313 (5th Cir. 2014) (reversing District Court dismissal of complaint on ground of loss causation);
- Anwar v. Fairfield Greenwich Limited, 728 F. Supp. 2d 354 (S.D.N.Y. Aug. 18, 2010) (denying defendants' motion to dismiss in substantial part);
- State of New Jersey v. Merrill Lynch & Co., Inc., 2010 N.J. Super. Unpub. LEXIS 2309 (Law Div. Apr. 23, 2010) (denying defendants' motion to dismiss); 2012 N.J. Super. Unpub. LEXIS 2055 (Law Div. Aug. 29, 2012) (denying defendants' motion for summary judgment);
- In re Tycom Ltd. Securities Litigation, 2005 U.S. Dist. LEXIS 19154 (D.N.H. Sept. 2, 2005) (denying in part defendants' motion to dismiss); 2007 U.S. Dist. LEXIS 42970 (D.N.J. 2007) (granting plaintiffs' motion for class certification);
- In re Motorola Securities Litigation, 03C287 (RRP), 2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004 N.D. Ill.) (denying motion to dismiss the complaint) (N.D. Ill.); 2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007 N.D. Ill.) (denying motion for summary judgment);
- In re Transkaryotic Therapies Inc. Securities Litigation, 319 F. Supp. 2d. 152 (D. Mass. 2004) (denying in part defendants' motion to dismiss);
- In re Cephalon Securities Litigation, [1998 Transfer Binder] Fed. Sec. L. Rep. 90,268 (E.D. Pa. Aug. 12, 1998) (granting class certification of a class broadly defined to include short sellers and option traders);
- In re Anicom, Inc. Securities Litigation, [2001 Transfer Binder] Fed. Sec. L. Rep. 91,458 (N.D. Ill. May 15, 2001) (denying defendants' motion to dismiss the complaint);
- In re TCW/DW North American Government Income Trust Securities Litigation, 941 F. Supp. 326 (S.D.N.Y. 1996); 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997) (denying defendants' motion to dismiss and motions to reargue, and granting class certification);
- In re Providian Financial Corporation Securities Litigation, 152 F. Supp.2d 814 (E.D. Pa. 2001) (denying defendants' motion to dismiss);
- In re Gaming Lottery Securities Litigation, [1998 Transfer Binder] Fed. Sec. L. Rep. 90,236 (S.D.N.Y. May 27, 1998) (denying defendants' motion to dismiss the complaint); 58 F. Supp. 2d 62 (S.D.N.Y. 1999) (granting certification of a class consisting of U.S. and Canadian investors), and [2000-2001 Transfer Binder] Fed. Sec. L. Rep. 91,339 (S.D.N.Y. 2001) (granting summary judgment against the individual defendants);

- <u>Chalverus v. Pegasystems, Inc.</u>, 59 F. Supp.2d 226 (D. Mass. 1999) (denying defendants' motion for summary judgment);
- <u>In re Quintel Entertainment Securities Litigation, Inc.</u>, 72 F. Supp.2d 283 (S.D.N.Y. 1999) (denying defendants' motion to dismiss);
- <u>In re Donnkenny, Inc. Securities Litigation</u>, 171 F.R.D. 156 (S.D.N.Y. 1997) (appointing lead plaintiff).

Recognition

- *Super Lawyers* (New York – Metro Edition) 2007, 2013 – 2022.



**EMILY MADOFF**
Managing Partner

Emily Madoff is the Managing Partner of Wolf Popper LLP.

Throughout her career, Emily has used the law to drive socio-political change, often protecting the public from consumer fraud. Emily recently focused on the rampant problems with surprise medical bills; she was instrumental in developing the Firm's cases in this area, several of which have settled with full recovery for the class. Emily presently is concentrating on using the law to expedite the benefits of diversity and Inclusion.

A commercial attorney, Emily was mentored by Marty Popper, eventually inheriting his practice. As such, Emily has represented several missions to the United Nations and various governments and government officials. She is proud to have represented personally some early social justice luminaries, such as Freda Diamond and Ring Lardner Jr. To this day, Emily represents the Georgian artist, Zurab Tsereteli, an internationally-acclaimed monumentalist and UNESCO Goodwill Ambassador, whose works are installed worldwide, including "Good Defeats Evil," which statue sits on the front grounds of the United Nations headquarters in New York City. The Tsereteli family owns the largest winery in Georgia, producing Tsereteli Wine.

Emily has published many articles about the law, including for the New York Law Journal, an article explaining litigation funding (Analyzing the Fundamentals of Litigation Funding, August 19, 2013) and one about arbitration clauses in consumer contracts (Mandatory Arbitration Clauses in Consumer Contracts, July 5, 2016) and for Latin Lawyer, an article about the securities litigation spawned in the United States as a result of the Petrobras scandal in Brazil (Bringing 'big oil' to the Big Apple, March 2015), for a few examples.

Ms. Madoff is a graduate of Connecticut College (B.A., 1973), and Northeastern University School of Law (J.D., 1979). She is admitted to the Bars of the State of New York, the Commonwealth of Massachusetts and the United States District Court for the Southern District of New York.



**CARL L. STINE**
Senior Partner

Carl L. Stine is a graduate of Fordham University School of Law (J.D., 1989) where he was the Editor in Chief of the Fordham International Law Journal. After law school, Carl was a litigation associate in the New York office of Willkie Farr & Gallagher. Carl has been recognized by Super Lawyers as one of the Top 100 lawyers in the New York metropolitan area from 2014 through 2020, and for 2022.

Since joining Wolf Popper in June of 1995, Carl has participated in the prosecution of merger and acquisition litigation challenging transactions involving, among others, MSG Networks, Inc., GGP, Inc., Lineage Cell Therapeutics, Inc., AmTrust Financial Services, Inc., Hansen Medical, Handy & Harman, Metrologic Instruments, Inc., Zale, Fusion-io, National Interstate, M&F Worldwide Corp., Venoco, Inc., EDAC Technologies Corp., KSW Inc., MModal, Inc., RAE Systems, Inc., eResearch Technology, Inc., Icagen, Inc., American Surgical Holdings, Inc., Wachovia Corporation, OpenTV Corp., Indevus Pharmaceuticals, Inc., The Topps Co., EDO Corp., James River Group, Inc., ftd.com, Genencor International, Inc., Uni-Marts, Inc., Nassda Corp., William Lyon Homes, and Net2Phone, Inc. Carl has also litigated securities class actions such as against AmTrust Financial Services, Inc., Seitel, Inc., Sunbeam Corp., Archer Daniels Midland Co., Caremark, Inc., and Leslie Fay Co., and consumer fraud class actions against, for example, Walgreen Co., Walmart Inc., GNC Holdings, Inc., Nutra Manufacturing LLC, International Vitamin Corp., Dr.'s Best, Inc., related to their roles in selling and marketing fake dietary supplements, and Express Scripts, Inc., H.I.P of Greater New York, Sprint PCS, Chase Manhattan Mortgage Corp., and NYNEX.Carl is admitted to the New York State Bar, and the Bars of the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Michigan, the District of Colorado, the Third Circuit Court of Appeals, and the Supreme Court of the United States.

Carl became a partner at Wolf Popper on January 1, 2002.

Publications

- Wolf Popper Partner Carl Stine Authors Article on Delaware Law Appearing in the Delaware Journal of Corporate Law
- Wolf Popper Partner Carl Stine Authors Article on Merger and Acquisition Law in the Age of Trump

Experience

Selected decisions where Carl served as counsel include:

- In re GGP, Inc. Stockholder Litigation, 282 A.3d 37 (Del. 2022)
- Martinek v. AmTrust Fin. Servs., 2022 U.S. Dist. LEXIS 20056 (S.D.N.Y. Feb. 3, 2022)
- Martinek v. AmTrust Fin. Servs., 2020 U.S. Dist. LEXIS 146542 (S.D.N.Y. Aug. 14, 2020)
- In re AmTrust Fin's Services, Inc. Stockholder Litigation, Consolidated C.A. No. 2018-0396-AGB (Del. Ch. Feb. 26, 2020)
- Kosinski v. GGP, Inc., 2019 Del. Ch. LEXIS 328 (Del. Ch. Aug. 28, 2019)
- In re Hansen Medical, Inc. Stockholder Litigation, 2018 Del. Ch. LEXIS 197 (Del. Ch. June 18, 2018)
- In re Handy & Harman Ltd. Stockholder Litigation, 2018 N.Y. Misc. LEXIS 1712 (N.Y. Sup. Ct. N.Y. County May 9, 2018)
- In re Metrologic Instruments, Inc. S'holders Litigation, 2017 N.J. Super. Unpub. LEXIS 317 (N.J. Super Ct. App. Div. Feb. 10, 2017)
- Frechter v. Zier (Nutrisystem), 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017)

6

- <u>Kahn v. M&F Worldwide Corp</u>., 88 A.3d 635 (Del. 2014)
- <u>Frank v. Elgamal (American Surgical)</u>, 2012 Del. Ch. LEXIS 62 (Del. Ch. Mar. 30, 2012)
- <u>Alaska Elec. Pension Fund v. Brown</u>, 988 A.2d 412 (Del. 2010)
- <u>Ehrenhaus v. Baker (Wachovia/Wells Fargo)</u>, 2008 NCBC 20 (N.C. Super. Ct. 2008)
- <u>Alaska Elec. Pension Fund v. Brown</u>, 941 A.2d 1011 (Del. 2007)
- <u>In re Scientific Atlanta, Inc. Sec. Litig.</u>, 571 F. Supp. 2d 1315 (N.D. Ga. 2007)
- <u>In re The Topps Company S'holders Litigation</u>, 926 A.2d 58 (Del. Ch. 2007)
- <u>In re The Topps Company S'holders Litigation</u>, 924 A.2d 951 (Del. Ch. 2007)
- <u>In re Seitel, Inc. Securities Litigation</u>, 447 F. Supp. 2d 693 (S.D. Tex. 2006);
- <u>Yang v. Odom</u>, 2005 U.S. Dist. LEXIS 18089 (D.N.J. 2005);
- <u>Yang v. Odom</u>, 392 F. 3d 97 (3d Cir. 2004);
- <u>In re U.S. Liquids Securities Litigation</u>, 2002 U.S. Dist. LEXIS 26713 (S.D. Tex. 2002);
- <u>Blatt v. Muse Technologies, Inc</u>., 2002 U.S. Dist. LEXIS 18466 (D. Mass. 2002);
- <u>In re Sunbeam Securities Litigation</u>, 176 F. Supp. 2d 1323 (S.D. Fla. 2001);
- <u>In re Sunbeam Securities Litigation</u>, 261 B.R. 534 (S.D. Fla. 2001);
- <u>Collmer v. U.S. Liquids, Inc</u>., 268 F. Supp. 2d 718 (S.D. Tex. 2001);
- <u>In re World Access, Inc. Securities Litigation</u>, 119 F. Supp. 2d 1348 (N.D. Ga. 2000);
- <u>In re Sunbeam Securities Litigation</u>, 89 F. Supp. 2d 1326 (S.D. Fla. 1999);
- <u>Taylor v. American Bankers Ins.Group, Inc.</u>, 267 A.D.2d 178, 700 N.Y.S.2d 458 (1st Dep't 1999);
- <u>In re WebSecure, Inc. Securities Litigation</u>, 182 F.R.D. 364 (D. Mass. 1998);
- <u>Tanzer v. Health Insurance Plan of Greater New York</u>, 238 A.D.2d 109, 665 N.Y.S.2d 493 (N.Y. App. Div. 1st Dep't), <u>rev'd</u>, 91 N.Y.2d 850 (1997);
- <u>In re Caremark International, Inc. Securities Litigation</u>, 1997 U.S. Dist. LEXIS 10948 (N.D. Ill. 1997);
- <u>Lerner v. Tele-Communications, Inc</u>., 215 A.D.2d 731, 627 N.Y.S.2d 733 (N.Y. App. Div. 2d Dep't 1995);
- <u>Sheerbonnet, Ltd. v. American Express Bank Ltd</u>., 17 F.3d 46 (2d Cir. 1994).

Recognition

- *Super Lawyers*  "Top 100"  (New York - Metro area), 2014 – 2020, and for 2022
- *Super Lawyers* in Securities Litigation (New York - Metro Edition), 2009 - 2022
- Fellow of the American Bar Foundation, 2015
- Nominated to be a Fellow of the Litigation Counsel of America, 2019
- New York Partner Carl L. Stine Named Fellow of American Bar Foundation

7



**PATRICIA I. AVERY**
Partner

Patricia I. Avery is a senior partner of Wolf Popper. Patricia holds a B.A. from New York University (1973) and is a graduate of New York University School of Law (J.D., 1976), where she was a staff member and then an editor of the Moot Court Board. Since graduation from NYU, Patricia has concentrated on securities and other complex civil litigation, including antitrust and consumer fraud. Patricia has had sole or major responsibilities for many leading decisions in the securities field and in the general area of Federal Civil Procedure.

Patricia is the co-author of "To Stay or Not to Stay," Practicing Law Institute (1996); "Selection of Lead Plaintiff Under the Private Securities Litigation Reform Act of 1995," Practicing Law Institute (1996); as well as the co-author (or ghost writer) of a number of other articles on securities law practice and procedure published by the Practicing Law Institute; "The State Court Class Action--A Potpourri of Differences," The Forum, ABA, Vol. XX, No. 4, Summer 1985; and "Proving Damages in Non-Class Securities Cases," presented at the Commercial Law section of the Association of Trial Lawyers of America, annual convention, July 1986. Patricia was admitted to the New York Bar in January 1977.

Patricia is admitted to the Bar of the State of New York, the U.S. Supreme Court, U.S. Court of Appeals for the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits, and U.S. District Court for the Southern and Eastern Districts of New York, the Northern District of Texas, and Central District of Illinois.

Experience

Since joining Wolf Popper in 1982, Patricia has been involved principally in securities (both class action and derivative), antitrust, and consumer fraud litigation. In addition to playing major roles in many of the leading decisions and substantial judgments obtained by the Firm over the years, Patricia has had sole or principal responsibility at the Firm for numerous securities and consumer cases, including, among many others:

- Leventhal v. Streamlabs LLC, 2022 U.S. Dist. LEXIS 231211 (N.D. Cal., Dec. 23, 2022), Patricia, ably aided by Wolf Popper attorney Philip Black, succeeded in defeating the motion to dismiss filed by Defendant. This lawsuit alleges that Streamlabs misleads consumers and fails to disclose that adding a GIF or effect to a onetime donation to a streamer using Streamlabs results in enrollment in Streamlabs Pro, which charges consumers $5.99 per month automatically, even if they do not have a Streamlabs account.
- Martinek v. AmTrust Fin. Servs., 2020 U.S. Dist. LEXIS 146542 (S.D.N.Y. Aug. 14, 2020), Patricia is involved in this securities fraud class action on behalf of preferred stockholders of AmTrust Financial Services, Inc., a large insurance company, in which the judge denied the defendants' motion to dismiss, and subsequently granted plaintiff's motion for class certification, appointing Wolf Popper as lead counsel, 2022 U.S. Dist. LEXIS 20056 (S.D.N.Y. Feb 3, 2022).

- Bozarth v. Envision Healthcare Corp., 2020 U.S. Dist. LEXIS 117294 (C.D. Cal. June 30, 2020), the Wolf Popper team headed by senior partners Chet B. Waldman, Emily Madoff, and Patricia I. Avery achieved an extraordinary settlement of virtually a 100% recovery for class members who filed documented claims in this California surprise medical billing class action (Case No. 5:17-cv-1935 FMO (SHKx)). Plaintiffs brought claims on behalf of patients who went to emergency rooms at hospitals that were in-network to their insurance plans, only to find out later when they received large bills that the ER physicians were out-of-network to their insurance. Plaintiffs alleged that defendants violated state statutes and the common law. The settlement provides for refunds of payments over the "allowed amounts" indicated by their insurance companies or writeoffs of such bills if they were not paid. The settlement also provides for nonmonetary relief in the form of disclosure requests made by defendants to the dozens of California hospitals at which defendants provide ER physicians. In an order entered on June 30, 2020, the Court found that the settlement "affords class members immediate and potentially significant monetary benefits in the face of various defenses to plaintiffs' claims," that the "[c]lass recovery is potentially 100%," and that "the relief provided to the class is more than adequate."

- McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA (N.D. Cal.), in a precedent setting Order under the Truth in Lending Act's ("TILA") Regulation Z, the Court in the Northern District of California, in denying the motion to dismiss of Wells Fargo Bank, held that the bank is required under TILA to disclose the amount of property insurance proceeds held by the bank on the homeowner's payoff statement. The Court noted that "[n]o decision from our court of appeals has ever addressed the issue of whether TILA compels lenders to include 'potential' credits in payoff statements." The Court found, "[a]s a matter of law, the bank is wrong." McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA, Order that TILA Required Insurance Proceeds to be Reflected in Payoff Statement (N.D. Cal. Oct. 29, 2015). On March 15, 2017, the Court granted final approval of a settlement providing Damages Class members with 88% of the maximum available monetary recovery under TILA and requiring Wells Fargo to alter its practices to comply with TILA. Damages Class members received over $2,500 per account.

- In re: PHC, Inc. Shareholder Litigation, 1:11-cv-11049-PBS (D. Mass.): Patricia is a member of the trial team in this litigation on behalf of shareholders of a behavioral health company, for damages arising from an unfairly priced stock-for-stock merger in which the company's CEO and chief negotiator also received a cash payment of several million dollars. Following a two-week jury trial in which the jury found that the CEO controlled the company and failed to demonstrate that the merger was entirely fair to the minority shareholders, the Court ordered the CEO to disgorge $2,964,396, plus interest. The Court also complemented counsel, stating "I think you all [ ] did a great job trying this case. I was telling my law clerks you don't often see commercial litigation actually go to trial so [this is] a great example not only it being litigated but also, you know, the skills . . . . and I thank the folks in [your office] for so much support that they've given along the way because I know it's a big case with a lot of paper.... And someone should study the case in terms of how attorneys should treat one another, and I appreciate that…." The United States Court of Appeals for the First Circuit complimented counsel and subsequently affirmed the award, noting that the issues on appeal were "intricate, entangled, and in some instances novel." MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), Nos. 17-1821, 17-1904, 2018 U.S. App. LEXIS 18035, *1 (1st Cir. July 2, 2018).

- Jamison v. Bank of America, N.A., No. 2:16-cv-00422-KJM-AC, 2016 WL 3653456 (E.D. Ca., July 7, 2016), the Court in the Eastern District of California found the reasoning of the McLaughlin case prosecuted by Patricia and described above "to be persuasive and consistent with TILA's remedial purpose. . . As a result, an 'accurate' payoff statement should have disclosed the [insurance] proceeds."

- In re Atheros Communications, Inc. Shareholder Litig., 2011 Del. Ch. LEXIS 36 (March 4, 2011), as Co-Lead Counsel for Plaintiff shareholders, secured an injunction against $3.1 billion acquisition of Atheros Communications, Inc. by Qualcomm Incorporated pending further disclosures to shareholders.

- Huberman v. Tag-It Pacific, Inc., 2009 U.S. App. Lexis 2780 (9th Cir. Jan. 16, 2009) (Ninth Circuit reversed grant of summary judgment to defendants and directed that District Court grant class certification as requested by Plaintiff). Subsequent settlement approved by the Court in December 2009.

9

- Middlesex Retirement System v. Quest Software, Inc., 527 F.Supp.2d 1164 (C.D. Cal. 2007); and Middlesex Retirement System v. Quest Software, Inc., CV 06-6863 DOC (RNBx), Amended Order (C.D. Cal. July 10, 2008) (decisions primarily denying defendants' motions to dismiss in options backdating case); Middlesex Retirement System v. Quest Software, Inc., Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Jul. 8, 2009), aff'd, Order (C.D. Cal. Sept. 18, 2009) (order granting Plaintiff's motion to compel); and Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Sept. 8, 2009) (Granting Lead Plaintiff's Motion for Class Certification). After extensive discovery, in December 2009, the court preliminarily approved the settlement, stating counsel "really have the court's profound congratulations and compliments." The court thereafter gave final approval to the $29.4 million settlement in April 2010.

- Thurber v. Mattel, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the Dusek v. Mattel §14(a) claims. After more than three years of extremely hard-fought litigation in which Patricia handled the day-to-day prosecution of the case, including motions, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the then largest settlement of a §14(a) case. Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result."

- Stanley v. Safeskin, Lead Case No. 99cv454-BTM(LSP)(Consolidated) ($55 million settlement approved by the Court in 2003) (the Court complimented plaintiffs' co-lead counsel, Patricia on behalf of Wolf Popper, for their work, noting that plaintiffs' co-lead counsel "are highly skilled in these cases," who "vigorously" and "diligently" prosecuted the case and "procured an exceptional award for the class," that they had a "great deal of experience in class action litigation" and are "highly regarded in this area of the law"; indeed, the Judge noted "I was kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."; paying them perhaps the ultimate compliment, the Court further said, "From the plaintiffs' perspective . . . you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example. . . .").

- Bell v. New Horizons Worldwide, Inc., Case No. BC 289898 (Complex Litigation Program) (Superior Court of the State of California, County of Los Angeles) (innovative settlement on behalf of a nationwide class of consumers who had purchased technical training courses from Computer Learning Centers).

- In re Grand Casinos, Inc. Sec. Litig., Master File No. 4-96-890 (JRT/RLE) (settlement approved in August 2001, one of the very early decisions sustaining various claims brought under the Private Securities Litigation Reform Act of 1995, finding that plaintiffs met the rigorous pleading standards of the then new Act, 988 F. Supp. 1270 (D. Minn. 1997)).

Patricia has also prosecuted numerous consumer fraud and antitrust cases. For example, Patricia was the primary litigator at the firm responsible for negotiating the settlement of a consumer fraud action in New Jersey, negotiating a settlement for 90% of the single damages, plus a 20-year injunction against the alleged misconduct, as well as other relief. Patricia also successfully negotiated a settlement against a nationwide chain of computer training centers involving the sale of packages of computer training programs. Patricia has also been largely involved in many of the antitrust cases prosecuted by the firm.

10

Patricia also has significant trial experience including, serving as trial or co-trial counsel in a variety of federal and state court cases. Most recently she served as a member of the trial team in In re PHC, Inc. Shareholder Litigation, which was tried for two weeks in federal court in Boston in February-March 2017, in which the Court ordered PHC's CEO to disgorge almost $3 million, which decision was affirmed on appeal. Patricia served as lead trial counsel in a shareholder corporate freeze-out case in Delaware, and in business transaction trials in New York (both state and federal court), and in several bankruptcy court trials in the Southern District of New York. Patricia was also co-trial counsel in, among other cases, Abzug, et ano. v. Kerkorian, et al, CA 000981, Superior Court, Los Angeles, California (settled before jury verdict rendered), and Citron v. E.I. duPont de Nemours & Co. in Delaware Chancery Court (co-trial counsel with a senior partner of the Firm) in which the Vice-Chancellor complimented counsel "for the able way in which they presented the case" and the "good job" done. Patricia was also the sole lead trial counsel in the defense of a $100 million arbitration on behalf of an international airline that was in arbitration hearings for many weeks over the course of two years, successfully reducing damages 99% before settlement. (Patricia also has served as trial or co-trial counsel in other matters tried to panels of arbitrators.)

Memberships & Associations

- Survey of Securities Class Actions and Derivative Suits, American Bar Association, Litigation Section, Securities Litigation Committee, Subcommittee, contributor;
- Member, American Bar Association (and several sections) - Member since 1977; Member, New York County Lawyers' Association - Member since 1977.

Recognition

- *Super Lawyers*® (New York Metro Edition) in Securities Litigation, 2007, 2014-2022.
- Has held Martindale-Hubbell's highest rating for legal ability and ethical standards for decades.



**CARLOS E. LÓPEZ LÓPEZ**
Senior Partner

Carlos E. López López, has over 25 years of experience in corporate, government affairs, and international business law, in counseling and litigation practices in the state courts, U.S. Federal District Court for the District of Puerto Rico, and state and federal appellate courts, as well as international organizations.

Carlos personally attended to the most sophisticated, high profile, and complex cases and clients, which included the Executive Governor's Office, the Secretary of Justice, the Secretary of Labor, the Secretary of Education, the Executive Director of the Electric Power Authority, as well as many other departments and public corporations in the Executive Branch of the Government of Puerto Rico. He was an Examining Officer of the Environmental Quality Board for the Commonwealth of Puerto Rico. As corporate counselor in government affairs, attorney López advises in licensing and permits, environmental impact assessments, administrative rules and regulations drafting, federal and state legislation drafting, among other areas. In the International field he advises on international commercial contracts negotiations and drafting of contracts.

11

Carlos further offers trainings, conferences and seminars on international business and economic law and international investment transactions (Joint Ventures, research and development, affiliations, subsidiaries, etc). His practice includes litigation and negotiation in the areas of business law and practice, permits and new business advice, contracts, administrative law, environmental law, products liability claims, and labor disputes. Attorney López has taught academic courses in Business and International Business Law, International Commercial Arbitration, Legal Research Analysis and Writing, and Management and Labor Relations at the Business Administration Faculty in the University of Puerto Rico, Río Piedras Campus, and at the Eugenio María de Hostos School of Law and the Inter-American University School of Law.

Carlos is a Partner at Wolf Popper LLP New York, and is the Managing Partner of Wolf Popper PSC at San Juan, Puerto Rico.

**Inter-American Bar Association (IABA)**

Carlos is Past President (2015-2016) of the Inter-American Bar Association (IABA). The IABA was founded on May 16, l940 by a group of distinguished lawyers and jurists representing forty-four professional organizations and seventeen nations of the western hemisphere, the Inter-American Bar Association represents a permanent forum for the exchange of professional views and information for lawyers to promote the Rule of Law and protect the democratic institutions in the Americas.

Approximately every 12 months, the IABA holds an international conference in one of the countries of the Americas during which time special seminars on legal topics are presented and IABA Committees and Sections meet. These meetings serve as a forum for the presentation of papers and the consideration of issues and resolutions related to them. They facilitate networking and discussion of current issues of interest to lawyers of the Americas, their respective governments, and various international organizations.

In addition, social events are held which emphasize local culture and cuisine. The IABA also offers regional seminars, has an active Young Lawyers Section, and participates in international conferences and meetings sponsored by other international and national legal organizations.

Memberships & Associations

- Inter-American Bar Association (IABA) (*Federación Interamericana de Abogados*),  Past President (2015 - 2016)
- American Bar Association Section of International Law, Puerto Rico liaison
- IABA Network of Law Firms, Chair
- Puerto Rico District Export Council Board Member
- Jesús T. Piñero Library and Center for Social Research of the Ana G. Méndez University, Advisory Board Member
- American Society of International Law, member
- Puerto Rico Bar Association (*Colegio de Abogados de Puerto Rico*) International Association of Lawyers (*Union Internationale des Avocats*), member
- The National Institute for Lobbying Ethics, member
- Latin American Business Council (*Consejo Empresarial de América Latina-CEAL*), member
- Member of the board of directors of SER of Puerto Rico, a nonprofit organization and global affiliate of Easter Seals, dedicated to providing medical, therapeutic, and educational services to people with disabilities and special needs.



**JOSHUA W. RUTHIZER**
Partner

Joshua Ruthizer was lead counsel in the securities class action litigation against Microchip Technology Inc. related to Microchip's alleged false statements concerning the acquisition of Microsemi Corporation. In 2022, the litigation resulted in a settlement of $9 million for investors in Microchip common stock. In 2017, Josh and Wolf Popper recovered $43.75 million in settlement for investors in Amedisys, Inc. common stock. This securities fraud litigation alleged Amedisys was engaged in an undisclosed Medicare fraud scheme by which it improperly inflated Medicare reimbursements by pressuring and intimidating nurses and therapists to provide unnecessary treatment to trigger higher fees. Josh and Wolf Popper also recovered $280 million for investors in Residential Mortgage Backed Securities issued by an affiliate of JPMorgan, and also secured a $45 million recovery for the State of New Jersey, Division of Investment in its opt-out litigation against Merrill Lynch.

Prior to joining Wolf Popper, Josh spent six years practicing commercial, securities, and intellectual property litigation at Proskauer Rose LLP. Josh also participated in a six month public interest externship with the Corporation Counsel of the City of New York, first chairing more than fifteen jury trials in New York Supreme Court, Bronx County.

Josh also lectures concerning securities fraud and fiduciary duty issues at investor and pension plan forums. Some of his recent presentations and panel discussions include:

- The Case For and Against Shareholders Litigating ESG Issues, National Conference on Public Employee Retirement Systems Annual Conference & Exhibition, May 25, 2022;
- Will Crypto Currency ever be appropriate for Institutional Investors?; KORIED Plan Sponsor Educational Institute, January 21, 2022
- Law & Disorder…Ripped from the Headlines, KORIED Plan Sponsor Educational Institute, January 19, 2022;
- Securities Fraud Litigation in the Age of Covid-19: Trends, Issues, and Practical Implications, KORIED Global Summit, July 15, 2021;
- Securities Fraud in the Age of COVID-19: Protecting Your Portfolio, National Conference on Public Employee Retirement Systems Virtual Fall Conference, February 2, 2021;
- Securities Litigation Q&A, Florida Public Pension Trustees Association Trustee School, February 4, 2019;
- Ten Years After the Financial Crisis: Where Are We Now? Texas Association of Public Employee Retirement Systems' 2018 Summer Educational Forum, August 13, 2018; and
- Hot Topics in Corporate Governance, Texas Association of Public Employee Retirement Systems' 2018 Annual Conference, April 16, 2018.

Memberships & Associations

- American Bar Association
- Federal Bar Council
- Federal Courts Committee, former member
- Federal Courts Committee's Supreme Court Subcommittee, former chair
- National Association of Public Pension Attorneys (NAPPA)
- New York City Bar Association's Judiciary Committee, member
- New York State Bar Association

13

- The Florida Bar

Recognition

- Legal Aid Society's Award for Outstanding Pro Bono service award, 2005
- Empire State Counsel honoree, 2008
- *Super Lawyers* (New York - Metro Edition) in Securities Litigation, 2019 - 2022
- *Super Lawyers* Rising Star in Securities Litigation, 2014 - 2018



**MATTHEW INSLEY-PRUITT**
Partner

Matthew Insley-Pruitt became a partner at Wolf Popper LLP on January 1, 2016. Matthew is a graduate of the University of Chicago (B.A., Sociology & Public Policy, 2000) and the University of Pennsylvania Law School (J.D., 2005). During law school he served as Technology Editor of the University of Pennsylvania Law Review. Prior to joining Wolf Popper, Matthew was an associate in the New York office of Paul, Weiss, Rifkind, Wharton and Garrison LLP.

Matthew recently co-authored an article published by the New York Law Journal on July 5, 2016, titled "Mandatory Arbitration Clauses in Consumer Contracts and CFPB's Proposed Rules."

Matthew is admitted to the bar of the State of New York, as well as the U.S. Court of Appeals for the Second, Fourth, and Ninth Circuits, and the U.S. District Courts for the Southern and Eastern Districts of New York.

Experience

Matthew was part of the team that recovered $280 million on behalf of investors in *JPMorgan Acceptance Corp*. Matthew also represented the minority shareholders in In re Venoco, Inc. Shareholder Litigation, which settled days before the company declared bankruptcy and established a $19 million fund for class members. These were just some of the several substantial recoveries for investors Matthew was involved in, including *In re Prospect Medical Holdings, Inc. Shareholders Litigation* (establishing a common fund of $6.25 million for public shareholders) and *In re Playboy Enterprises, Inc. Shareholders Litig.* (establishing a common fund of $5.25 million for public shareholders). Matthew is currently representing the Public Employees' Retirement System of Mississippi in *Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.*, No. 1:16-CV-10632 (N.D. Ill.), in which the court granted preliminary approval of a proposed class action settlement in the amount of $27 million, after having denied defendants' motion to dismiss; and *Edwards v. McDermott International, Inc., et al.*, Case No.: 4:18-cv-04330 (S.D. Tex.), which is currently in discovery after the court denied defendants' motion to dismiss.

Matthew's cases have also accomplished real benefits for consumers across the country. Matthew was one of plaintiff's counsel in McLaughlin v. Wells Fargo Bank, NA., in which the Court in the Northern District of California issued a precedent setting Order under the Truth in Lending Act's ("TILA") Regulation Z, finding that the bank is required under TILA to indicate the amount of property insurance proceeds held by the bank on the plaintiff customer's payoff statement. The Court recently approved a settlement where eligible homeowners will receive approximately $2,500 each and Wells Fargo will change its practices going forward. A settlement in an action in Oklahoma against Bank of America established a common fund that provided eligible home owners in the class with payments of approximately $1,300 each and also required Bank of America to change its practices. In Belfiore v. Procter & Gamble, Matthew represents consumers of Charmin Freshmates flushable wipes, who allege that they paid too much for wet bathroom tissue that was not actually flushable. After defeating the motion to dismiss and repeatedly defeating defendant's attacks on class certification, Wolf Popper negotiated a settlement with P&G where class members are eligible to receive up to $50.20 per household and P&G agreed to remove the representation that Freshmates are "safe for sewer and septic systems." The court approved the settlement on July 23, 2020.

Recognition

- *Super Lawyers* (New York – Metro Edition) *Rising Star,* 2013-2018
- *Super Lawyers* (New York – Metro Edition) 2020-2022



**ADAM J. BLANDER**
Partner

Adam Blander joined Wolf Popper LLP in April 2015 and was elevated to partner effective January 1, 2021. His practice focuses on commercial, corporate governance, securities, and consumer rights litigation. Adam has been recognized by Super Lawyers as a Rising Star in securities litigation in the New York metropolitan area from 2017 through 2022.

Before joining the firm, Adam clerked for New York State Supreme Court Justice Barbara Jaffe. A graduate of McGill University (with great distinction) and a Brooklyn Law School Health Law and Policy Fellow (*cum laude*), Adam's note "Codifying Common Law: The Self-Critical Analysis Privilege and the New Jersey Patient Safety Act," 21 J.L. & Pol'y 577, was published in the Journal of Law and Policy in 2013. Adam also served as a research assistant for Professor Aaron Twerski and the late Professor Richard T. Farrell and as an intern with the Health Care Bureau of the New York State Attorney General's Office. In 2011, Adam won the National Law Review's Student Legal Writing Contest for his essay on a tax issue.

Experience

Below are some of Adam's representative matters:

- *MAZ Partners L.P. v. Shear (In re: PHC Shareholder Litigation)*, 265 F. Supp. 3d 109 (D. Mass. 2017), *aff'd* 894 F.3d 419 (1st Cir. 2018), *cert. denied*, 202 L.Ed.2d 378: On behalf of stockholders of a behavioral health company arising from a stock-for-stock merger. Following a two-week jury trial, the Court ordered the acquired company's CEO to disgorge a majority of the cash side-payment he received in exchange for the extinguishment of his super-voting shares.

15

- *McLaughlin v. Wells Fargo Bank, N.A.*, C15-02904-WHA (N.D. Cal.): In a precedent-setting Order, the Court ruled that the Truth in Lending Act ("TILA") requires mortgage payoff statements to disclose property insurance proceeds creditable against the debt, observing that "[n]o decision from our court of appeals has ever addressed the issue" but that "[a]s a matter of law, the bank is wrong." Wolf Popper ultimately secured a settlement providing homeowners with 88% of the maximum available monetary recovery and requiring Wells Fargo to alter its practices to comply with TILA. Class members received over $2,500 per account.
- *In re AmTrust Financial Services, Inc. Stockholder Litigation*, Consolidated C.A. No. 2018-0396-AGB ($40 million settlement on behalf of common stockholders arising from controller buyout); *Martínek v. AmTrust Financial Services, Inc.*, Case No. 19-cv-8030-KPF (S.D.N.Y.) ($13 million settlement on behalf of preferred stockholders arising from the delisting of securities following the controller buyout).
- *Lipman v. GPB Capital Holdings, LLC*, C.A. No. 2020-0054-SG, 2020 WL 6778781 Del. Ch. (Nov. 18, 2020): In this derivative action on behalf of limited partnerships (LPs) investing in automotive dealerships, the Delaware Court of Chancery denied the motions to dismiss filed by the LPs' general partner (GP), finding that the plaintiffs had adequately demonstrated that the GP's executives had "looted" partnership assets, thereby excusing the plaintiffs from first demanding that the GP take corrective action. "I find none of [defendants'] arguments persuasive," the Court found.
- *In re Metrologic Inc. Shareholders Litigation*, No. L-6430-06 (N.J. Super. Ct.): The plaintiffs in this action alleged breach of fiduciary duty claims on behalf of stockholders of a technology company who were cashed out in a going-private merger. In March of 2018, the Court approved a settlement with the last remaining defendants, bringing the total recovery to $21,700,000.
- *In re Hansen Medical Inc. Stockholder Litigation*, No. 12316-VCMR (Del. Ch.) ($7,500,000 settlement): On behalf of investors in a medical robotics company. In a much-discussed opinion, the Court of Chancery denied the defendants' motion to dismiss, holding, among other things, that the plaintiffs sufficiently demonstrated that certain large stockholders who negotiated for themselves valuable "rollover" equity in the newly-merged company could be held liable to the public stockholders, who were denied this benefit.
- *Anwar v. Fairfield Greenwich Limited*, 09-cv-118-VM (S.D.N.Y.): This action, on behalf of investors in feeder funds to the Bernard L. Madoff Investment Securities Ponzi scheme, completed in May 2016, when the Court approved a settlement with the last remaining defendant, bringing the total recovery to $235,250,000.
- *Kosinski v. GGP, Inc.*, 214 A.3d 944 (Del. Ch. 2019) & *In re GGP Inc. Stockholder Litigation,* No. 2018-0267 (Del. Ch.): Following trial, the Court of Chancery authorized the plaintiff-stockholder to investigate the acquisition of a commercial real estate company valued at approximately $15 billion, praising him for "doing his homework." In 2022, a subsequently-filed breach of fiduciary duty lawsuit challenging the acquisition was reinstated by the Delaware Supreme Court, which found that the complaint sufficiently demonstrated that the company's disclosures regarding stockholders' entitlement to seek the fair value of their shares in appraisal proceedings were "at best, materially misleading."

Recognition

- *Super Lawyers* (New York - Metro Edition) Rising Star in securities litigation, 2017-2022

16



**PHILIP M. BLACK**
Partner

Philip Black is a graduate of the University of Notre Dame (B.B.A., 2011, summa cum laude), where he received the Brother Cyprian, C.S.C. award for achieving the highest grade point average among Accountancy majors. Philip then attended the University of Minnesota Law School (J.D., 2014, magna cum laude), where he was Editor-in-Chief of Volume 29 of the ABA Journal of Labor & Employment Law. Philip joined Wolf Popper in 2020 after serving as an Assistant Attorney General in the Litigation Bureau of the New York State Office of the Attorney General.

Recognition

• Super Lawyers (New York - Metro Edition) Rising Star in securities litigation, 2021-2022



**MARSHALL G. BENNETT**
Of Counsel

Marshall Bennett has a distinguished and lauded public service career in law and government, fighting for the rights of consumers, citizens, workers, and other victims.

Marshall G. Bennett, after serving four elected terms as Treasurer of the State of Mississippi, joined the Wolf Popper Law Firm in New York on July 1, 2003.

Marshall brings vast knowledge and experience of 16 years as the State's chief financial officer, directly managing $10.5 billion in public funds and $3 billion of bonded indebtedness, as well, as Trustee and Board Chairman of the $17 billion Public Employees Retirement System.

After graduating from the University of Mississippi School of Law in Oxford, Mississippi with a Juris Doctor degree, Marshall Bennett began a distinguished career in law and government. While in law school, Bennett served as Chairman of the Moot Court Board and a member of the Phi Kappa Phi legal honorary. Marshall received his BA Degree from the University of Mississippi - Oxford, with a double major in history and political science. Marshall was elected to the Student Hall of Fame and was selected for Omicron Delta Kappa honorary leadership fraternity. As a Commissioned Officer, Distinguished Military Graduate, Bennett served two years active duty with the US Army Military Intelligence Command (USAINTC), and 8 years in the US Army Reserve as a Captain in the Judge Advocate General's Corps.

Marshall began his legal and public service career as Assistant District Attorney, prosecuting felony cases in the State's capital city of Jackson and practiced law there with the firm of Peters, Royals and Bennett. Marshall then served for seven years, as State Assistant Attorney General, Chief of The Consumer Fraud Division, and the Organized Crime and Public Integrity Unit. Bennett brought many cases to trial and successfully argued the case of first impression upholding the State's consumer protection laws before The Mississippi Supreme Court. He filed antitrust actions to stop price fixing in the Ampicillin and Milk Dairy cases in the US District Court as well as the General Motors/Oldsmobile engine switch cases resulting in a national settlement of millions of dollars to US consumers.

17

Governor William Winter in 1980 appointed Bennett to serve as his first legislative assistant spearheading the reform of state government executive agencies and secondary education.

Marshall was later appointed by the Governor to a six year term as the Chairman and Commissioner of the Worker's Compensation Commission where Bennett eliminated a 1600 case backlog and instituted a statewide advisory council for workers comp reforms and improvements. Marshall began the first of 20 annual workers compensation legal and educational seminars.

During his terms as State Treasurer, Bennett helped establish and was director of the State Development Bank, the Mississippi Business Finance Corporation, the Mississippi Home Corporation, the State Bond Commission, and the State Economic Development Strategic Task Force. Marshall set up the first Section 529 College Savings Plan for tax free contributions and use for higher education costs. Marshall instituted the first, and now annual, Women's Money Conference, the Bank at School Program and the Unclaimed Property Scam Jam, all to provide financial literacy programs for citizens of the state. These programs have been implemented now by most states across the nation.

As a national leader in public policy initiatives, Marshall has served as President of The National Association of State Treasurers, The National Association of State Auditors, Comptrollers and Treasurers, The National College Savings Network Association, the Southern State Treasurers Association, as well as on The Board of Directors of the National Unclaimed Property Administrators, the International Association of Industrial Accident Boards and Commissions, the Council of State Governments and its Chair of Finance.

Marshall has authored many articles on financial responsibility and practices. Marshall has given testimony before the US House Ways and Means Committee and The US Senate Finance Committee regarding legislation affecting the federal tax laws and tax exemptions for citizens, as well as state and local governments.

In recognition of his services to his nation, state and community, Marshall Bennett was selected for the nation's most outstanding State Treasurer in 1998, the NASACT Distinguished Service Award in 1999, the College Savings Plan Distinguished Service Award in 2002, the National Significant Sig Award in 2002, the Harlan Boyles Distinguished Public Service Award in 2003, the Distinguished American Award from The National Football All-American Foundation in 2003, and the NAST Treasurer Emeritus Award in 2007.

Marshall has taught at Mississippi College School of Law in Jackson for 2 years as Adjunct Professor. Marshall is admitted to practice before the United States Supreme Court, the U.S. District Court - SDMS, the US Fifth Circuit Court of Appeals, The Mississippi Supreme Court and all State Trial Courts. Marshall is a member of the Mississippi Bar. Marshall taught at The National Public Finance Institute at Northwestern University, Evanston, Illinois for 5 years.

Marshall was born in Lexington, Mississippi and is the father of three children and resides in New York City and Jackson, Mississippi.

Memberships & Associations

- Board of Directors of the MS Historical Society, 2017 - 2022, President 2021
- Advisory Board of the Department of Political Science at the University of Mississippi, 2017 - present, Chair 2023 - 2025
- National Society to Prevent Blindness, former Vice President of the National Board
- American Legion
- National Association of Public Pension Attorneys
- National Council on Teacher Retirement
- Council of Institutional Investors
- National Conference on Public Employee Retirement Systems
- Lawyers Coordinating Committee
- National Association of State Treasurers, President, 1994

18

- National Association of State Auditors, Comptrollers, and Treasurers, President 1995
- National Association of Attorneys General
- Inter-American Bar Association

Recognition

- Selected for the nation's most outstanding State Treasurer in 1998
- NASACT Distinguished Service Award in 1999
- College Savings Plan Distinguished Service Award in 2002
- National Significant Sig Award in 2002
- Harlan Boyles Distinguished Public Service Award in 2003
- Distinguished American Award from The National Football All-American Foundation in 2003
- NAST Treasurer Emeritus Award in 2007.



**DAVID A. NICHOLAS**
Of Counsel

Dave Nicholas began his career in New York City with Pryor Cashman and then in Boston with the firm Hale and Dorr (now Wilmer Hale), where he worked on cases involving civil RICO, fraud, breach of contract, and lender liability, among other disputes. In 1991 he joined the National Environmental Law Center in Boston and represented environmental organizations in federal enforcement suits against large industrial companies. Since 2003, and prior to becoming Of Counsel to Wolf Popper, Dave had been a solo attorney, continuing to represent citizen and environmental groups in public interest cases to protect natural resources and public health. In his career, Dave has been responsible for all aspects of litigation.

Dave has successfully brought cases against oil, chemical, steel, and food companies, among others. In 2014 he tried the largest Clean Air Act enforcement suit ever brought by citizens, against ExxonMobil in the Southern District of Texas for violations of emissions limits at the company's Baytown complex. The case resulted in the largest monetary penalty imposed in the history of citizen enforcement of federal environmental laws. (The judgment is currently on appeal.) Dave's cases have also resulted in record-setting monetary penalties in a number of states, including California, Florida, Pennsylvania, Rhode Island, Connecticut and Maine.

Dave's work has also resulted in halting aerial spraying of pesticides over commercial blueberry fields in Maine; cleanup of ordnance and chemical weapons at a former U.S. Army base in California; and upgrading the Newport, Rhode Island sewer system, among other achievements. He has represented public interest groups in state court cases involving a variety of constitutional issues.

Experience

In addition to the ExxonMobil case (*Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corporation*), Dave's cases have included:

- *Environment Texas v. Shell Oil Company*. Clean Air Act citizen suit against Houston area refinery and chemical plant for air pollution, including excessive emissions of air toxics. Resulted in consent decree requiring significant emissions reductions, extensive plant upgrades, enhanced monitoring of air emissions, and a $5.8 million penalty.

19

- *Environment Texas v. Pasadena Refining System, Inc*. Clean Air Act citizen suit against subsidiary of Petrobras, the state-owned oil company of Brazil, for violations of hourly and annual emissions limits on fine particulate matter, sulfur dioxide, volatile organic compounds, and other pollutants. Resulted in consent decree mandating pollution control upgrades at a 100-year old refinery, and a $3.25 million monetary penalty.
- *USPIRG v. Atlantic Salmon of Maine and Stolt Sea Farm*. Clean Water Act citizen suits against dominant companies of the Maine salmon farming industry for operating without discharge permits. Trial resulted in an injunction imposing significant changes to operating practices of companies and a shutdown of new production for up to three years. Final order reported at 257 F. Supp. 2d 407 (D. Me. 2003). Injunction upheld on appeal at 339 F.3d 23 (1st Cir. 2003). A companion case against Heritage Salmon resulted in a consent decree imposing precedent-setting environmental restrictions on salmon farms.
- *PennEnvironment v. ArcelorMittal*. Clean Air Act citizen suit against the world's largest steel company for violations at the Monessen Coke Plant in Pennsylvania. Consent decree required a full-scale trial of innovative technology to reduce sulfur dioxide emissions and other environmental, operational and plant upgrades, and a $1.8 million monetary penalty. The U.S. EPA and State of Pennsylvania joined the suit as plaintiffs.
- *Animal Protection Institute v. Martin*. Endangered Species Act citizen suit against head of Maine fish and wildlife agency for violating the ESA by authorizing trapping that captures and kills threatened Canada lynx. Resulted in consent decree that banned traps likely to capture lynx.
- *Environment Florida v. Pilgrim's Pride Corporation*. Clean Water Act citizen suit against second largest chicken producer in the world for illegally polluting the Suwannee River at its chicken processing plant in Live Oak, Florida. Resulted in consent decree requiring measures to upgrade wastewater treatment plant, reduce discharge of toxics, and reduce water use in processing, and a $1.3 million penalty.



**ADAM SAVETT**
Of Counsel

Adam is a nationally recognized leader on complex litigation, class actions, and settlement claims filing. He is a frequent speaker, author, and commentator on class actions and securities litigation, and his comments have appeared in a wide variety of publications, such as *The New York Times, Wall Street Journal, CFO Magazine,* and *Pensions & Investments*.

Adam was previously named one of the 100 Lawyers You Need to Know in Securities Litigation by Lawdragon Magazine and has been an invited speaker before numerous industry groups, including the Federal Judicial Center (FJC), National Conference on Public Employee Retirement Systems (NCPERS), Bank Depository Users Group (BDUG), National Council on Teacher Retirement (NCTR) Association of Global Custodians (AGC), and SIFMA's Global Corporate Actions Forum.

**SELECTED PUBLICATIONS**

- Best Practices for Monitoring Your Securities Portfolio, Pennsylvania Association of Public Employee Retirement Systems (PAERS) Newsletter, Spring 2022 *Checklist for Maximizing Securities Class Action Recoveries: Risk Management Questions to Minimize Liabilities and Optimize Your Institution's Securities Litigation Policies and Procedures*, Florida Public Pension Trustees Association (FPPTA), 2021
- *How to Resolve the Historical Data Conundrum and Recover More in Securities Litigation*, Michigan Association of Public Employee Retirement Systems (MAPERS), 2021

20

- *Board Diversity: The Time for Change is Now, Will Shareholders Step Up?*, Texas Association of Public Employee Retirement Systems (TEXPERS) Investment Insights, Aug/Sept 2021
- *Securities Class Action Trials in the Post-PSLRA Era*, TXT Capital, 2022
- *Update on the Options-Backdating Class Actions*, TXT Capital, 2017

**SELECTED SPEAKING ENGAGEMENTS**

- *Best Practices for Securities Litigation & Portfolio Monitoring for Public Pensions*, Opal Group's Investment Education Symposium, 2022
- *Best Practices for Securities Litigation and Portfolio Monitoring for Public Pensions*, Opal Group's Public Funds Summit, 2022
- *The Implications of ESG for Asset Allocation*, NCTR National Council on Teacher Retirement 99th Annual Conference, 2021
- *Securities Class Action Basics for Pension Trustees*, Florida Public Pension Trustees Association (FPPTA) Fall Trustee School, 2021
- *Securities Litigation Issues, Trends, and Best Practices*, National Conference on Public Employee Retirement Systems (NCPERS) Fall Conference, 2021
- *Trends in Litigating TCPA Cases*, Faegre Drinker's Telephone Consumer Protection Act webinar, 2020
- *Securities Litigation Post-Halliburton*, 11th Annual National Directors & Officers Insurance ExecuSummit, 2015
- *D&O: Regulatory, Enforcement & Securities Lit. Update*, D&O ExecuSummit, 2014
- *Securities Class Actions*, Case Western Reserve University School of Law, Guest Lecture in Securities Regulation, 2014
- *Securities Class Actions: Nuisance or Opportunity?*, FRT Webinar, 2013
- *The Evolving Securities Class Action Industry*, FRT Webinar, 2013
- *Claims Intake and Processing*, Federal Judicial Center (FJC) program on Class Action Settlements: Approval, Distribution and Oversight, Duke University, 2011
- *Current Issues Facing Institutional Investors in the Claims Filing Process*, BDUG Annual Meeting, 2010
- *Class Action D&O Trends*, American International Group (AIG) Global Underwriting Educational Session, 2010
- *Securities Class Actions Trends*: Lessons Learned & What to Expect, The Life Settlements Conference, 2009
- *The Enormous Challenges and Opportunities Facing Securities Litigation in 2009* 6th Securities Litigation Conference - Managing the Newest Risks and Exposures, 2009
- *Current Trends in Securities Litigation*, Association of Global Custodians, 2009
- *Issues Arising from Foreign Litigants in Securities Class Actions*, IQPC Fifth Securities Litigation Conference, 2008
- *Class Actions*, CorpActions 2008
- *How Great is the Current Threat of US Style Class Actions to the European D&O Liability Market*, C5's 3rd annual European D&O Liability Insurance, 2008
- *European Involvement in US Class Actions*, BVI Conference, 2008
- *Securities Litigation: Lessons Learned from the Recent JDS Uniphase & Apollo Group Securities Class Action Trials*, 2008 Institutional Shareholder Services U.S. Governance Conference
- *Principals and Practice for Class Action Shareholder Litigation around the World*, Institutional Investor Legal Forum, 2007
- *Getting Into Top "Claim Form:" Claims Administration Issues*, Forum for Institutional Investors, 2007
- *Securities Class Actions*, I.U.P.A. Benefits Conference, 2006

Recognition

21

Adam is a nationally recognized leader on complex litigation, class actions, and settlement claims filing. He is a frequent speaker, author, and commentator on class actions and securities litigation, and his comments have appeared in a wide variety of publications, such as *The New York Times, Wall Street Journal, CFO Magazine,* and *Pensions & Investments*.

Adam was previously named one of the 100 Lawyers You Need to Know in Securities Litigation by Lawdragon Magazine and has been an invited speaker before numerous industry groups, including the Federal Judicial Center (FJC), National Conference on Public Employee Retirement Systems (NCPERS), Bank Depository Users Group (BDUG), National Council on Teacher Retirement (NCTR) Association of Global Custodians (AGC), and SIFMA's Global Corporate Actions Forum.

**JEFFREY W. CHAMBERS**
Of Counsel

Jeffrey W. Chambers has over 30 years of experience representing both plaintiffs and defendants in a wide array of cases, particularly through trial and verdict. Jeffrey has won well over a billion dollars in defense verdicts and recovered over a billion dollars in awards, verdicts, and settlements for plaintiffs.

Jeffrey is a civil trial expert and a personal injury specialist certified by the Texas Board of Legal Specialization. With more than two decades of experience organizing and leading trial teams to victory in court and arbitration, Jeffrey has worked with clients from all over the world and understands communication with the client is of utmost importance.

Jeffrey is an Honors graduate of the University of Texas School of Law (J.D., 1988) and a graduate of the College of Columbia University (B.S., 1985). Jeffrey is Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization, is a Board Certified Civil Trial Advocate by the National Board of Trial Advocacy, and is a member of the American Board of Trial Advocates.

Experience

Jeffrey has represented clients in arbitration proceedings, before numerous arbitration panels organized under the arbitration rules of the International Chamber of Commerce (ICC), American Arbitration Association (AAA), and ad-hoc UNCITRAL proceedings. Chambers' arbitration experience includes shareholder oppression actions, multi-billion dollar construction matters, and complex business disputes. In these proceedings, Chambers has represented a broad range of global businesses in the energy, trading and construction industries. As lead counsel, Jeff Chambers, on behalf of claimants, prevailed in an ICC arbitration requiring a respondent majority shareholder to sell shares valued at $1.1 billion to Chambers' clients. In addition, the Arbitration panel awarded Chambers' clients a discount of 23% off the market value of the shares resulting in a $250,000,000 transfer of value to Chambers' clients. In an ICSID arbitration, as co-lead counsel, Chambers obtained an $18,000,000 settlement the week before hearing. And, in a matter fully presented under the AAA rules, Chambers obtained a $6,000,000 arbitration award on behalf of a construction company client, which the defendant ultimately paid in full, without deduction.

Jeff Chambers has also handled securities fraud and litigation matters representing individuals, brokers, securities firms and companies as plaintiffs in fraud litigation. In *Danis v. USN Communications*, Jeff Chambers acted as special trial counsel in a phase I sanctions trial that resulted in a $44,700,000 settlement. Jeffrey settled another securities fraud case for $22,000,000. Chambers also helped obtain a

22

multi-million dollar settlement on behalf of a plaintiff class as special trial co-counsel for a binding Alternative Dispute Resolution mini-trial.

In antitrust matters, Jeffrey successfully defended against antitrust price-fixing claims brought by the Department of Justice; and, in a deal worth in excess of $35,000,000, he led a team that used antitrust and injunction claims to force a well-known conglomerate to facilitate distribution of downstream gas product. In an antitrust class action, as co-lead counsel, Jeffrey obtained a $17,000,000 settlement after trying a portion of the case to a jury.

In another lengthy civil trial, Jeffrey, as co-lead counsel, obtained a $699,535,000 verdict on behalf of a plaintiffs' group against Gulf Liquids New River Project, LLC and Williams Energy Marketing and Trading Co. Jeffrey's clients alone received a $330,000,000 jury award that was later settled for a confidential sum on appeal.

In other matters, as lead counsel, Jeff Chambers received a complete trial defense verdict on a $9.5 million breach of contract and fiduciary duty claim, and, as co-counsel, obtained a trial verdict of $5,200,000 in a trial concerning an oil and gas partnership.

Memberships & Associations

- American Board of Trial Advocates

Recognition

- Texas *Super Lawyers* for business litigation, 2009-2012 and 2015-2022
- Texas *Super Lawyers* for business litigation: Rising Star in Business Litigation, 2004


**SEAN MICHEL SMOOT**

Sean Michael Smoot currently serves as Director and Chief Counsel for the Police Benevolent & Protective Association of Illinois ("PB&PA") and the Police Benevolent Labor Committee ("PBLC"). In those capacities Sean is responsible for administering the provision of legal services for over 7,500 legal defense plan participants. As the organizations' primary legislative advocate, Sean writes legislation, testifies before legislative bodies, and speaks often regarding police related topics such as, Public Employment Labor Law, Pension & Benefits Law, Section 1983 Civil Rights Litigation, and Police Use of Force. Sean also serves as an Area Vice President of the National Association of Police Organizations ("NAPO"), a national law enforcement advocacy group representing over 250,000 police officers.

Mr. Sean holds several Certificates in Police Union Leadership from Harvard Law School. On November 13, 2015, Sean was appointed by Illinois Governor Bruce Rauner to serve on the Illinois Commission on Police Professionalism.

Sean is very honored to have served as a police and public safety policy advisor to the Obama-Biden Presidential Transition Teams. Sean was appointed by the President of the United States to the Task Force on 21st Century Policing on December 18, 2014.

A nationally recognized subject matter expert regarding police related topics, Sean speaks regularly at state, national, and international forums regarding community policing, public safety, and public employee labor and pension issues and Sean has written several articles for police publications and newsletters. Sean co-authored "Police Leadership Challenges in a Changing World" published in July 2012, and authored a contribution to the Special Report titled "Mending Justice: Sentinel Event Reviews" published in September 2014, both by the US Department of Justice and the National Institute of Justice. A proud veteran himself, Sean has also been a featured speaker at the National Academy of Arbitrators and several CLE programs regarding the Rights of Military Employees.

23

Sean holds a Bachelor of Science degree in Criminal Justice Sciences from Illinois State University and his Juris Doctor degree from the Southern Illinois University School of Law, where Sean served as the Business Editor of the SIU Law Journal.

Early in his career Sean served as an elected Alderman and the Police Commissioner in Leland Grove, Illinois, for twelve years.

Memberships & Associations

- Director and Chief Counsel for the Police Benevolent & Protective Association of Illinois ("PB&PA") and the Police Benevolent Labor Committee ("PBLC")
- Cleveland and Baltimore City Police Departments' consent decree monitoring teams member 21st Century Policing, LLC, Principal Consultant
- National Association of Police Organizations ("NAPO"), Area Vice President Advisory Committee for the National Law Enforcement Officers' Rights Center in Washington, D.C. ,1996 - present
- Member of the Executive Session on Policing and Public Safety at the Kennedy School of Government, Harvard University 2008 - 2014
- Chicago-Kent College of Law's Annual Illinois Public Sector Labor Relations Law Program, Advisory Committee member
- Use of Force Advisory Committee
- Police Pursuit Advisory Committee
- Racial Profiling Advisory Committee
- Task Force on Police Integrity for the Illinois Law Enforcement Training and Standards Board
- Illinois Commission on Police Professionalism, appointed by Illinois Governor Bruce Rauner
- Police and public safety policy advisor to the Obama-Biden Presidential Transition Teams Appointed by the President of the United States to the Task Force on 21st Century Policing

Recognition

- Early in his career he served as an elected Alderman and the Police Commissioner in Leland Grove, Illinois, for twelve years.
- Super Lawyers: Rising Stars 2008-2009
- Top Employment & Labor Attorneys in Illinois" by the publishers of Chicago magazine.



**SANDRA VIDAL-PELLÓN**
Of Counsel

Sandra Vidal-Pellón is a graduate of Universidad de Cantabria from where she received her Law Degree (Facultad de Derecho, Santander 1998), ESIC/FAU (International MBA, 2001) and Benjamin N. Cardozo School of Law (LLM in Intellectual Property 2006).

Sandra has previously worked for Díaz-Obregón Sainz Abogados in Santander (Spain), and interned at the United Nations Headquarters (Office of Legal Affairs, General Legal Division).

Memberships & Associations

- Cantabria Bar Association, Spain

24



**ANTOINETTE ("DEBI") ADESANYA**
Associate

An associate at Wolf Popper LLP since February 2019, Antoinette ("Debi") Adesanya is a graduate of the University of Bristol, U.K. (LL.B., 2014), Georgetown University Law Center, U.S.A. (LL.M., *Dean's list, with distinction*, 2016), and the Nigerian Law School, Nigeria (B.L., 2017). Prior to joining the firm, Antoinette ("Debi") interned in the legal department of a multi-national company based in Nigeria, and subsequently at two respected firms in New York, specializing in securities and antitrust litigation, and cross-border disputes with China-based companies doing business in the U.S., respectively. An avid volunteer, Antoinette ("Debi") regularly works with pro bono legal organizations within the City.

Experience

Antoinette ("Debi") has been involved in the litigation of several cases at Wolf Popper LLP including, but not limited to:

Pub. Empls. Ret. Sys. of Miss. v. TreeHouse Foods, Inc., Case No. 16-cv-10632 (N.D. Ill.);
*Sarah Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No. 1:19-cv-07998-VEC (S.D.N.Y.);
Jackson v. Microchip Technology Inc., No. CV-18-2914 (D. Ariz.);
In re MSG Networks Inc. Stockholder Class Action Litigation, No. 2021-0575-KSJM (Del. Ch.); and
Kaur v. Envision Healthcare Corp, et al., Case 4:19-cv-02480 (S.D. Tex.).

Memberships & Associations

- American Bar Association
- New York City Bar Association



**TIMOTHY D. BRENNAN**
Associate

Timothy Brennan is a graduate of Seton Hall University School of Law (J.D., 2012). After law school Tim served as a Judicial Law Clerk for the Honorable William A. Daniel., J.S.C., of the Superior Court of New Jersey.

Tim also worked as a Senior Staff Attorney at the New York Legal Assistance Group in New York City, where he engaged in the full representation of consumers, from client interviews through investigations, pleadings, discovery, motions, mediations, trials, and settlements.

Memberships & Associations

- NYC Bar Association, Consumer Affairs Committee



**RADHA RAGHAVAN**
Associate

Radha Raghavan completed her law degree from University Law College, Bangalore University, India (BA.L., LL.B., 2014) where she was valedictorian for the Bachelor of Academic Law (BA.L.) program. Subsequently, Radha earned a masters of law degree from NYU School of Law (LL.M., 2015).

Radha has previously worked with well-reputed dispute firms in India and New York specializing in international disputes. Radha has represented clients in international arbitrations under the UNCITRAL and ICC rules and has also worked on litigation matters in India. Radha has also interned at the New York Supreme Court.

Experience

At Wolf Popper, Radha has been involved in representing clients in several securities and consumer fraud class actions in state and federal courts across the country. Radha's representative matters include:

- *Neil Ross v. Lineage Cell Therapeutics, et. al*., Court of Chancery of the State of Delaware, Case No.: C.A. No. 2019-0822-LWW
- *Jan Martinek v. AmTrust Financial Services, Inc., et. al*., Southern District Court of New York, Case No.: 1:19-cv-08034-KPF
- *Kenneth Keslar II v. Emerus / BHS SA Thousand Oaks, LLC et. al*., Texas State Court, Case No.: 2020-CI-1862
- *Kana Liu v. Dignity Health, et. al*., Superior Court of the State of California, Case No.: 19STCV21296
- *In Re. Arlene Spencer*, Texas State Court, Case No.: 2021-64424

26



**SASHA D. MARSEILLE**
Associate

Sasha Marseille is a graduate of The George Washington University Law School (J.D., 2020). While in law school Sasha was a student attorney in the Public Justice Advocacy clinic, where she represented low-income clients in wage and hour cases.

After law school, Sasha served as an attorney advisor at The U.S. Department of Health and Human Services, Departmental Appeals Board, where she assisted the administrative appeals judges in adjudicating Medicare related exclusions imposed by Medicare providers or suppliers.

Sasha is admitted to the bar of the State of New York.



**JUSTYN MILLAMENA**
Associate

Justyn Millamena is a graduate of Brooklyn Law School, Class of 2022, and the University of Connecticut, Class of 2019, where he obtained a B.S. in environmental engineering.  While attending law school, Justyn served as a Notes and Comments editor of the Journal of Law and Policy, where his note "How Artificial Intelligence Machines Can Legally Become Inventors: an Examination of and Solution to the Decision on DABUS," 30 J. L. & Pol'y 270, was published in 2021.

Justyn also served as a judicial intern to the Honorable Judge Vera Scanlon of the U.S. District Court for the Eastern District of New York.

Throughout law school, Justyn maintained employment as a law clerk at various different firms gaining experience in civil rights law, intellectual property law, complex litigation, and consumer fraud.

27



**EMER BURKE**
Staff Attorney

Emer Burke is a graduate of the National University of Ireland, Galway (B.C.L, 2015). As a requirement of obtaining her international law degree, Emer spent one year of her studies attending the Université Toulouse 1 Capitole in Toulouse, France where she studied law through French. Before moving to the United States from Ireland, Emer completed several prestigious internships including a placement at the Office of the Director of Public Prosecutions (the Irish equivalent to the Attorney General).

Emer moved to New York after obtaining her law degree and has gained valuable experience working in a range of areas including immigration law, real estate law and litigation. Prior to joining Wolf Popper, Emer worked as a Managing Clerk at the law firm Shearman and Sterling, LLP where she became highly proficient in civil procedure and legal research. Emer is admitted to practice in New York.

Memberships & Associations

- New York City Bar Association



**MADISON FORSANDER**
Staff Attorney

Madison Forsander is a graduate of Albany Law School and Eastern Connecticut State University. During law school, she served as the Executive Managing Editor of the *Albany Law Review*. Ms. Forsander gained a variety of professional experience as an intern in Judge Alfred V. Covello's chambers at the United States District Court for the District of Connecticut, the New York State Office of the Attorney General Litigation Bureau, and the Office of General Counsel at Tapestry, Inc. Prior to attending law school she worked as a Temporary Paralegal in the Tolland Superior Court Clerk's Office and throughout law school Madison worked as a Research Assistant to Professor Melissa Breger.

28



**OMER KREMER**
Staff Attorney

Omer Kremer is a licensed NY attorney experienced in sophisticated financial and business matters and holder of an M.B.A. in international business management. Omer's legal experience includes transactional and litigation matters working in both corporate and law firm sectors.

Through his time at Wolf Popper, Omer has gained experience working on matters in commercial and securities litigation, as well as shareholder derivative actions. During Omer's time working at a publicly traded international engineering company, he was able to gain experience working on matters in corporate governance, securities regulation, contracts, and mergers & acquisitions. Omer has also represented minority investors through FINRA during his time working at the John Jay Legal Services, Pace Investor Rights Clinic.

Omer brings proven legal research, writing and communication skills, honed through achieving both a J.D. with a concentration in business law and an LL.M. with a concentration in intellectual property.

Omer comes from a richly diverse background and is fluent in multiple different languages, including Hebrew and Romanian.

Memberships & Associations

- American Bar Association
- New York State Bar Association



**HALLIE COHEN**
Staff Attorney

Hallie Cohen graduated from the Benjamin N. Cardozo School of Law in 2020 with a concentration in Intellectual Property and Information Law and focused her studies on areas involving transactional law. During law school, Hallie served as a Client Counselor in Cardozo's Fashion Law practicum, served as a Student Assistant to Professor Barbara Kolsun, and also served as a Staff Editor of the Cardozo Arts & Entertainment Law Journal.

Hallie gained substantial practical experience throughout law school, working as a judicial intern for The Honorable Martin Shulman, presiding justice of the Supreme Court Appellate Term, First Judicial Department of the State of New York, summering as a law clerk at Jaspan Schlessinger LLP, and as a legal intern in corporate offices of multiple companies, including Michael Kors (USA), Inc., Tapestry, Inc., and Louis Vuitton North America, Inc..

Hallie graduated from the University of Michigan in 2017 with a Bachelor of Arts in Spanish Language.

Hallie is admitted to practice in New York, and is awaiting admission to the United States District Court for the Southern District of New York.



**LESTER L. LEVY**
Chairman Emeritus

Lester L. Levy was the Chairman and Managing Partner of the Firm from 1992 to 2016. A graduate of Columbia Law School, Lester has prosecuted hundreds of class actions and has recovered over one billion dollars for the class members he has represented. Lester is a recognized leader in complex class action litigation and has lectured in complex litigation at the University of Illinois and the University of Miami Law Schools.

Lester is also active in charitable work.

Experience

Lester's ability to prosecute sophisticated class actions successfully has often been the subject of judicial recognition.

In certifying a class action supervised by Lester against Procter & Gamble for mislabeling certain toilet wipes as "flushable" and "safe for sewers and septic systems," Judge Jack B. Weinstein stated that Wolf Popper has "handled the case with great skill and full attention." See Belfiore v. Procter & Gamble, 14-cv-4090 (E.D.N.Y. March 27, 2017).

In the Motorola Securities Litigation, No. 03 C 287 (United States District Court, Northern District of Illinois), Lester represented the lead plaintiff, the State of New Jersey, Department of Treasury, Division of Investment. While approving a $190 million recovery, the Court stated: "You did a great very professional job here. This was hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

Lester directed the prosecution of the action, in Superior Court, Hudson County, New Jersey (State of New Jersey v. Merrill Lynch & Co., L-3855-09), that arose out of New Jersey's 2008 investment in Merrill Lynch preferred shares, and New Jersey's subsequent conversion of those preferred shares into common shares. The Superior Court of the State of New Jersey denied Merrill Lynch's motion to dismiss New Jersey's complaint, and subsequently denied Merrill Lynch's motion for summary judgment. The action was resolved approximately one month before the scheduled trial for $45 million. New Jersey Attorney General Jeffrey S. Chiesa stated, in announcing the settlement, that "this is a fair and equitable outcome, and we are pleased to be recovering a substantial amount of dollars on behalf of New Jersey taxpayers."

In In re Providian Financial Securities Litigation, MDL No. 1301 (E.D. Pa), Lester was co-lead counsel for the plaintiff class and obtained a $38,000,000 judgment from the defendants. The Court, in approving the settlement in June, 2002, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work. Judge James F. Holderman remarked on the quality of counsel's efforts in In re Salton/Maxim Securities Litigation, Docket No. 91 C 7693 (United States District Court, Northern District of Illinois), an action in which Lester was plaintiffs' co-lead counsel. At the hearing approving the settlement, the Court stated:

30

I want to not only compliment you lawyers for the professionalism that you showed in the course of reaching this compromise resolution, but I want to compliment you on the professionalism that you showed during the course of the litigation. This was a hard fought litigation. It was well briefed. The issues were presented crisply. . . . [A]s a judge presiding over this case, it was a pleasure to preside over it because of the skill and the quality of the lawyering on everyone's part in connection with this case.

Lester was co-lead counsel in one of the largest class actions brought in New Jersey State Court, Princeton Economics Group, Inc. v. American Telephone and Telegraph Company, (N.J. Super. Ct. 1995). That case resulted in a settlement valued at $85-90 million. At the conclusion of the case, the Court noted the high level of skill possessed by class counsel and stated that... "If not for the skill and the experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

Lester also headed the class action litigation against American Bankers Ins. Group Inc. Lester obtained a nationwide class determination [Taylor v. American Bankers Ins. Group Inc., 700 N.Y. S. 2d 458 (1st Dept. 1999)] and achieved a complete recovery for class members as the defendant agreed to pay the class members' disputed coverage claims in full. The defendant also agreed to revise its solicitations to prevent a recurrence.

Lester was plaintiffs' co-lead counsel in Seidman v. Stauffer Chemical Co., (United States District Court, District of Connecticut) where at the successful conclusion of the case, Chief Judge Daly remarked that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work...".

Lester played a leading role in the landmark Joseph v. Shell Oil Litigation, wherein the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company. At the conclusion of the litigation, which resulted in a $205,000,000 recovery for the class, the Court said that "the results achieved in this case for the class are outstanding".

In In re Fidelity Medical, Inc. Securities Litigation, 92-1908 (United States District Court, District of New Jersey), where Lester was a member of plaintiffs' Executive Committee that prosecuted the case, the Court at the conclusion of the case complimented counsel for their skill and professionalism and thanked them for the way the litigation was conducted.

Lester was in charge of the team of lawyers that prosecuted In re Coordinated Title Insurance Cases. That action against several large title insurance companies resulted in the largest recovery in a consumer class action in Nassau County, New York. The presiding Justice commented, in approving the settlement on July 29, 2005, that the prosecution by the Firm "was lawyering of the highest quality."

Lester was co-lead counsel in the TJX Companies Retail Security Breach Litigation, (United States District of Mass.). At the end of the case, the Court commented that co-lead counsel was "quite creative" in crafting an "excellent settlement" for the class.

The periodical, *Securities Class Action Alert*, noted in reporting on the Borman's Inc. class action, wherein Lester was the Class Counsel:

Lester Levy of Wolf Popper Ross Wolf & Jones made short work of this case by winning a quick handsome return for shareholders. In one of the highest payout ratios in recent memory, eligible investors recovered 93% of the money they were deprived of. Levy obtained the settlement in just 15 months and investors received their checks within 6 months after the claim deadline date!

Securities Class Action Alert, p.60 (April 1991).

Other important class actions, wherein Lester was either lead counsel or co-lead counsel include:

31

- <u>CLRB Hanson,etc v. Google, Inc.</u>, (United States District Court, Northern District of Calif.);
- <u>In re Archer Daniels Midland Co. Securities Litigation</u>, (United States District Court, Central District of Illinois);
- <u>In re Caremark Securities Litigation</u>, (United States District Court, Northern District of Illinois); and
- <u>Zinberg v. Washington Bancorp, Inc.</u>, (United States District Court, District New Jersey) (recovery for the class members of 200% of their damages).

Lester argued before the New York Court of Appeals in <u>Tanzer v. Health Insurance Plan of Greater New York</u>, 91 N.Y.2d 850 and won a unanimous decision upholding a class action complaint on behalf of insureds who had been denied medical insurance coverage. Thereafter, the class received 100% of their damages.

Recognition

- Lifetime Trustee Award from the National Multiple Sclerosis Society for "outstanding service to the MS community"
- *Super Lawyers* (New York - Metro Edition) in securities litigation, 2007 - 2016

32